**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| STEVEN TERRY, | ) | CASE NO. 2:24-cv-01200 |
| | ) | |
| Plaintiff, | ) | JUDGE ALEGNON L. MARBLEY |
| | ) | |
| v. | ) | **PLAINTIFF STEVEN TERRY'S** |
| | ) | **OPPOSITION TO DEFENDANTS'** |
| SHARON L. KENNEDY, *et al.* | ) | **MOTION TO DISMISS** |
| | ) | |
| Defendants. | ) | |
| | ) | |

I. **INTRODUCTION**

This case challenges the constitutionality of Ohio Gov. Bar. R. V, Section 12(B) (hereafter "Disbarment Rule"), which states that the disbarment of an attorney is permanent and marks the end of a person's ability to practice law. Ohio's Disbarment Rule stands in stark contrast to the rules in most other jurisdictions, which recognize one's right to rehabilitation and allow disbarred persons to apply for reinstatement to the bar.

Defendants have filed a motion to dismiss Mr. Terry's Complaint for several reasons, including timeliness, judicial immunity, and the alleged failure to state a constitutional violation upon which the Court can grant relief.[1] At the heart of each of these arguments is Defendants' misunderstanding of the nature of Mr. Terry's claims. Mr. Terry is not seeking to modify or reverse the disciplinary decision of the Ohio Supreme Court that disbarred him ("Disbarment Order"). This case is about the unconstitutionality of the Disbarment Rule, and it seeks prospective relief to modify the rule so that Mr. Terry and all Disbarred Persons have an opportunity to apply for

---

[1] Mr. Terry acknowledges there is case law that maintains the Supreme Court of Ohio is not *sui juris*, but at the same time, notes there are scores of cases pursued against the Supreme Court of Ohio, which begs the question why the Ohio Supreme Court is *sui juris* in some instances and not *sui juris* in others.

reinstatement. When viewed in its correct context, the Complaint is timely, Defendants are not immune, and this Court may absolutely entertain arguments challenging the constitutionality of the Disbarment Rule. For these reasons, Mr. Terry respectfully submits that Defendants' Motion to Dismiss should be **DENIED**.

## II. <u>FACTS</u>

Mr. Terry, an African American male, is one of the many victims of the Disbarment Rule. After gaining admittance to the Ohio bar in 1989, Mr. Terry dedicated his craft to public service, working as an Assistant Municipal Prosecutor for the City of Akron, Assistant Cuyahoga County Prosecutor, Chief Counsel for the Law Department of the City of Cleveland, Assistant Director for the Public Safety Department, and Director of Justice Affairs Department for Cuyahoga County. Mr. Terry was highly regarded among his professional peers and within his community. Not once during this time was Mr. Terry subject to any grievance, sanction, or other form of discipline. (*See* Complaint, ¶21-22, ECF No. 1 at PageID 5.)

In 2007, Governor Strickland appointed Mr. Terry to fill an open seat on the Cuyahoga County Court of Common Pleas. Mr. Terry had to run for election in November 2008 to retain this position. A political neophyte, Mr. Terry came to rely on Cuyahoga County Auditor Frank P. Russo, widely acknowledged as one of the most influential politicians in Cuyahoga County. (Complaint, ¶23-24, ECF No. 1 at PageID 5-6.)

At one point during the campaign, Mr. Russo asked Mr. Terry to make a certain ruling in two related cases on Mr. Terry's docket. *Id.* Mr. Terry's conduct eventually led to a five-count federal indictment. A jury found Mr. Terry guilty of three charges. (*See* Complaint, ¶24-28, ECF No. 1 at PageID 6.) Disciplinary proceedings before the Supreme Court of Ohio followed, resulting in Mr. Terry's permanent disbarment ("Disbarment Order"). (*See* Complaint, ¶28, ECF

No. 1 at PageID 6.) One other judge, Bridget McCafferty (Caucasian), was also convicted in connection with the Cuyahoga County justice-for-sale scandal. The Ohio Supreme Court did not permanently disbar Ms. McCafferty. (*See* Complaint, ¶29, ECF No. 1 at PageID 7.)

Over the eight years since the Disbarment Order, Mr. Terry has worked tirelessly to rehabilitate himself, serve his community, and better his fitness and moral character. After serving his federal sentence, Mr. Terry has, *inter alia*, worked as a consultant providing affordable housing for impoverished and underprivileged citizens, he has devoted significant time to bettering the lives of the elderly population, he has held several leadership positions in his church, and he has actively volunteered in the City of Beachwood. (Complaint, ¶27, 29, Exhibit 1, ECF No. 1 at PageID 6, 7, 39-47.)

Following his rehabilitative efforts, Mr. Terry sought reinstatement without success. (Complaint, ¶38, ECF No. 1 at PageID 8-9.) Because the Clerk of Courts for the Ohio Supreme Court would not accept his petition for reinstatement, on January 19, 2024, Mr. Terry filed a Motion to Vacate Judgment, or Alternatively, Motion for Waiver of Gov. Bar. R. V(12)(B) ("Motion to Vacate"). (Complaint, ¶39, Exhibit 1, ECF No. 1 at PageID 9, 17-367.) On March 4, 2024, Chief Justice Sharon L. Kennedy denied the Motion to Vacate. No substantive opinion was provided. (Complaint, ¶40, Exhibit 2, ECF No. 1 at PageID 9, 371.) Thereafter, Mr. Terry commenced this action for prospective injunctive and declaratory relief to address the ongoing violations of federal law and rights arising from the Disbarment Rule and the other unconstitutional policies and practices of Defendants.

III.   **ARGUMENT**

A.   **Standard of Review**

Defendants' Motion to Dismiss effectively arises under Fed. R. Civ. P. 12(b)(6).[2] A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to evaluate the sufficiency of the complaint. It "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *A.W. v. Best W. Int'l, Inc.,* No. 2:21-CV-4934, 2024 WL 1340264, *1 (S.D. Ohio Mar. 29, 2024). To survive such motion, "the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (internal citations omitted). Accordingly, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Dadosky v. Mid-Am. Conversion Servs. LLC*, No. 2:22-CV-02503, 2024 WL 1347443, *2 (S.D. Ohio Mar. 29, 2024). The Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Akhter v. Blinken*, No. 2:23-CV-1374, 2024 WL 1173905, *3 (S.D. Ohio Mar. 19, 2024). Here, Defendants have not overcome this hurdle - there is more than enough factual matter to state a plausible claim for relief - and consequently, the Motion to Dismiss should be denied.

---

[2]Since judicial immunity is an affirmative defense and therefore not jurisdictional, *see Burnham v. Friedland*, No. 21-388, 2022 WL 3046966, *2 (6th Cir. Aug. 2, 2022) (Thapar, J., concurring), the Court should analyze Defendants' entire argument under Fed. R. Civ. P. 12(b)(6), not 12(b)(1). Regardless, as set forth herein, the Defendant Justices are not immune from Mr. Terry's claims.

### B.    The Complaint Is Timely.

Defendants are incorrect in their argument that Mr. Terry's claims accrued on the date of

his disbarment (February 25, 2016) and therefore are barred by the two-year statute of limitations

governing Section 1983 claims.

As a preliminary matter, the statute of limitations is an affirmative defense, *see* Fed. R.

Civ. P. 8(c), and a plaintiff generally need not plead the lack of affirmative defenses to state a valid

claim, *see* Fed. R. Civ. P. 8(a) (requiring "a short and plain statement *of the claim"*) (emphasis

added). For this reason, a motion under Fed. R. Civ. P. 12(b)(6), which considers only the

allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based

upon the statute of limitations. *Cataldo v. U.S. Steel Corp.,* 676 F.3d 542, 547 (6th Cir. 2012).

Substantively, Mr. Terry's claims are timely. This case is not seeking to undo or modify

the Disbarment **Order**. This case is about the Disbarment **Rule** that denies Disbarred Persons,

including Mr. Terry, any opportunity to seek reinstatement to the bar, even upon rehabilitation.

The Disbarment Rule is in effect today. As the rule prohibits all Disbarred Persons, Mr. Terry

included, from seeking reinstatement to the bar *each and every day,* the Complaint is timely.

Indeed, to base the date of accrual on the date of a disciplinary decision effectively removes the

idea of rehabilitation from the equation as it is unlikely a Disbarred Person will have achieved

rehabilitation within two years of disbarment. For instance, in Mr. Terry's case, part of his

rehabilitation involved serving his criminal sentence, which involved sixty-three months

incarceration, two years of supervised release and 250 hours of community service, and then,

countless hours of therapy, individual soul searching, and community service. (Complaint, ¶27,

31, ECF No. 1 at PageID 6, 7.)   As Defendants would have it, Mr. Terry would never be able to

present a timely claim.

5

Mr. Terry's efforts to seek reinstatement further validate the timeliness of his claim. Because the Clerk of Courts for the Supreme Court of Ohio will not accept for filing a petition for reinstatement filed by a Disbarred Person, *see* Complaint, ¶37, ECF No. 1 at PageID 8, on January 19, 2024, Mr. Terry filed a Motion to Vacate Judgment, which Defendants denied on March 4, 2024, *see id.* at PageID 9, 17-371.  Construed in the light most favorable to Mr. Terry, the Complaint provides facts to establish a timely filed cause of action, and accordingly, the Motion to Dismiss should be denied.

### C.      Defendants Are Not Immune.

#### 1.      Mr. Terry Is Not Challenging a Judicial Decision.

Defendants' judicial immunity argument, too, is based on an incorrect understanding of Mr. Terry's claims.  Mr. Terry is not challenging the Disbarment ***Order*** or any acts taken by any justice with respect to his or her participation in those disciplinary proceedings.  This case challenges the Disbarment ***Rule***, which prohibits Mr. Terry and all Disbarred Persons from being able to even so much as apply for reinstatement to the bar.  The nature of the allegations is no different than those raised in *Raymond v. O'Connor*, 526 Fed. Appx. 526 (6th Cir. 2013), where the court proceeded to analyze the constitutionality of the challenged rules and practices of the Supreme Court of Ohio.  Such a suit is not judicial in nature, and as a result, immunity does not apply.

The cases Defendants cited do not state otherwise. *Burnham v. Friedland*, No. 21-3888, 2022 WL 3046966 (6th Cir. 2022), involved accusations that a trial judge committed an unconstitutional taking by issuing a summary judgment order. *Purola v. Hall*, No. 22-cv-3885, 2023 WL 2184603 (S.D. Ohio Feb. 23, 2023), ruled that Justice Maureen O'Connor was immune from claims involving her role as presiding justice in a disciplinary matter.  And *Padgett v.*

*Kentucky*, No. 1:21-cv-12, 2021 WL 215647 (S.D. Ohio Jan. 21, 2021), held that a judge was immune from a suit for rulings made in an underlying criminal action. In contrast here, there is no underlying action in which a judge took judicial action. Just as in *Raymond*, this case challenges the constitutionality of the Disbarment Rule, is not judicial in nature, immunity does not apply, and the Defendant Justices can be sued in their official and individual capacities.

### 2. Mr. Terry does not seek monetary damages.

Even if the Court determines the challenged activity is "judicial in nature," immunity still does not apply. Under *Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, judges are not immune from Section 1983 ***injunctive*** suits: "[W]e have never held that judicial immunity absolutely insulates judges from declaratory or injunctive relief with respect to their judicial acts." 446 U.S. 719, 735, 100 S. Ct. 1967 (1980). Thus, in *Supreme Court of Virginia,* the United States Supreme Court held that "the [Supreme] Virginia Court and its chief justice properly were held liable in their enforcement capacities." *Id.[3]; see also Davidson v. Eblen*, 142 F.3d 432, *2 (6th Cir. 1998) (finding a claim for injunctive relief against a state judge and state prosecutor not barred by immunity); *Simpson v. Deters*, No. 1:22-CV-251, 2024 WL 1615152, *4 (S.D. Ohio Apr. 15, 2024) (prosecutorial immunity did not extend to claims for injunctive relief). The logic behind this is sound: If justices and other state officials cannot be proceeded against for declaratory relief, there would be very limited, if any, avenue available for a putative plaintiff to assert a federal constitutional claim. *Supreme Court of Virginia*, 446 U.S. at 737, 100 S. Ct. at 1977.

Mr. Terry does not seek monetary damages. This action is for declaratory and prospective injunctive relief. Upon construing the factual allegations in the light most favorable to Mr. Terry, judicial immunity does not bar Mr. Terry's claims.

---

[3] That the United States Supreme Court held the Supreme Virgina Court liable is at odds with Defendant The Supreme Court of Ohio's *sui juris* argument.

### 3.    Eleventh Amendment (Sovereign) Immunity Does Not Apply.

Sovereign immunity protects states and state officials sued in their official capacity for money damages from suit in federal court. *Boler v. Earley*, 865 F.3d 391, 409–10 (6th Cir. 2017). An exception to this rule arises from the United States Supreme Court's decision in *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908). "The exception set forth in *Ex parte Young* allows plaintiffs to bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations …." *Boler,* 865 F. 3d at 412. "An allegation of an on-going violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction." *Telespectrum, Inc. v. Pub. Serv. Comm'n of Ky.*, 227 F.3d 414, 419 (6th Cir. 2000).

Recent jurisprudence from the Sixth Circuit Court of Appeals explains the exception. In *Ashford v. Univ. of Michigan*, 89 F.4th 960 (6th Cir. 2024), the plaintiff sued the vice-chancellor of the University of Michigan in his official and individual capacity for an injunction against future retaliation and an expungement of disciplinary records from his personnel file.  The district court denied summary judgment based on sovereign immunity, and the Sixth Circuit agreed.  "Sovereign immunity precludes suits against states and their entities or officers for monetary damages or retrospective relief but permits claims for prospective relief when brought against state officers in their official capacities." *Id.* at 969; *see also T.M., Next Friend of H.C. v. DeWine,* 49 F.4th 1082, 1087-88 (6th Cir. 2022) (*Ex parte Young* exception to Eleventh Amendment immunity allowed federal court to enjoin Ohio officials from allegedly ongoing violation of federal law regarding foster care payments).

Here, Mr. Terry has alleged an ongoing constitutional violation and pursues prospective relief, *inter alia*, a declaration that the Disbarment Rule is unconstitutional and that persons

8

disbarred by order of the Supreme Court of Ohio may petition for reinstatement, along with an injunction that would prevent Defendants from refusing to allow Mr. Terry and all other Disbarred Persons from applying for reinstatement.[4] (Complaint, ¶20, Prayer for Relief, ECF No. 1 at PageID 5, 13-14.) This is precisely the type of claim *Ex parte Young* excepts. Accordingly, sovereign immunity does not bar Mr. Terry's claims.

### D. Mr. Terry Has Stated a Claim for Relief.

The remainder of Defendants' arguments contend that Mr. Terry has not stated a claim for relief. Contrary to these arguments, however, upon construing the Complaint in the light most favorable to Mr. Terry, accepting its allegations as true, and drawing all reasonable inferences in favor of Mr. Terry, there is more than enough factual matter to state a plausible claim for relief.

### 1. Mr. Terry has stated a valid due process claim.

A claim for substantive due process requires a violation of a constitutionally protected interest deprived by arbitrary state action. The "arbitrary" component is readily satisfied for purposes of a motion to dismiss as Mr. Terry has alleged that there is no rational justification for an outright ban on the consideration of Disbarred Persons for reinstatement, and that the ban is arbitrary and unconstitutional. (Complaint, ¶54, 58, 66, ECF No. 1 at PageID 10-12.) The Complaint alleged that a prior arrest record or bad acts are not a litmus test to ascertain present moral character, it explained the irrationality between indefinite suspensions versus permanent disbarments, and that considerations of rehabilitation and present fitness and moral character are

---

[4] Mr. Terry does not fall into any of the traditional exceptions to *Ex parte Young*. He does not ask for monetary damages under the guise of restitution, nor does he seek "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law." *Ernst v. Rising*, 427 F. 3d 351, 367 (6th Cir. 2005) (en banc). Instead, Mr. Terry's' claims fit within the *Ex parte Young* exception as the claims relate to the ongoing enforcement of the Disbarment Rule, and seek prospective relief aimed at stopping the alleged constitutional violations. *Stevens v. Michigan State Court Admin. Off.*, No. 21-1727, 2022 WL 3500193, *3-4 (6th Cir. Aug. 18, 2022).

ignored.  (Complaint, ¶¶33, 51, 55, ECF No. 1 at PageID 8, 10.)  Indeed, the entire gist of the allegations is that the "death sentence" nature of the Disbarment Rule is irrational.  For no rational reason, it sets a hard and fast rule of no reinstatement without any consideration of rehabilitation or any other change in circumstances.

Having adequately pleaded the arbitrariness of the rule, the remaining consideration is whether a violation of a constitutional right has been alleged. It has.

### a. *Pursuing one's chosen profession.*

Defendants conceded there is a constitutionally protected liberty interest in pursuing one's chosen profession, calling, or occupation. *See* Motion to Dismiss, ECF No. 4 at PageID 752; *see also Dent v. State of W. Va.,* 129 U.S. 114, 121, 9 S. Ct. 231 (1889) ("It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex, and condition."). "A State court cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." *Schware v. Board of Bar Exam. of State of N.M.,* 353 U.S. 232, 239, 77 S. Ct. 752 (1957) (past affiliation to Communist party insufficient to raise doubts about present moral character). **"The practice of law is not a matter of the State's grace."** *Id.* at 239, 77 S. Ct. at 756, n.5.

Defendants nonetheless attempted to limit this right by arguing that there is no protected interest in pursuing the practice of law *post-disbarment*.  Defendants offered no legal authority for this position.  Rather, Defendants simply argued that because states have an interest in regulating lawyers to protect the public, and because the primary purpose of judicial discipline is to protect

the public,[5] Defendants can impose a "death sentence" and deny disbarred attorneys from ever practicing law again.

This argument exposes the unconstitutionality inherent in the Disbarment Rule. The Disbarment Rule creates an irrefutable presumption of ongoing unfitness to practice law, where no rational basis exists for such presumption, which denies due process by depriving Disbarred Persons any right to rehabilitation and the ability to pursue their chosen profession. There is no rational connection between an outright ban on reinstatement in all cases of permanent disbarment and the stated purpose of protecting the public and the integrity of the judicial system. There is no connection between allowing rehabilitated persons to apply to the bar and denying rehabilitated Disbarred Persons the ability to seek reinstatement.[6] Rehabilitation is a pillar of this nation. The Disbarment Rule irrationally stands against this core interest. A violation of a protected liberty interest has been sufficiently pleaded.

b.    *Protected property interest.*

An attorney has a protected property interest in his law license and the right to practice law. *Danner v. Comm'n on Continuing Legal Educ.,* No. 3:06-0687, 2008 WL 1859964, *6 (M.D. Tenn. Apr. 22, 2008), *aff'd sub nom. Danner v. Comm'n on Continuing Legal Educ. & Specialization of Tennessee Supreme Ct.,* 332 Fed. Appx. 228 (6th Cir. 2009). Indeed, the right to practice law has been recognized as property that can be taxed. *Cox v. Huddleston,* 914 S.W.2d 501 (Tenn. App. 1995). Thus, the suspension (and by extension the disbarment) of an attorney's

---

[5] This goal has been fully and appropriately met. Mr. Terry has not practiced law for more than seven years. He served a 63-month federal prison sentence, completed 250 hours of community service, and has made monetary restitution. Mr. Terry has committed no further misconduct. To the contrary, he has been a beacon of good citizenry. He is today a better person, one who has learned from his mistakes and who hopes to make a better future for others, especially the elderly, the impoverished, and those in the criminal justice system. Mr. Terry is confident that, if given the chance, he can demonstrate that he currently possesses the requisite character and fitness for reinstatement to the practice of law.

[6] Mr. Terry is not suggesting that all Disbarred Persons have a right to reinstatement. Mr. Terry only maintains that it is unconstitutional to deny Disbarred Persons the right to apply for reinstatement.

license to practice law has due process implications. *Danner*, 2008 WL 1859964, at *6; *see also In re Ming*, 469 F.2d 1352, 1355 (7th Cir. 1972). While it is appropriate for states to regulate the practice and impose standards of conduct, such regulations and standards must be rational and not arbitrary. For the reasons set forth above, the Disciplinary Rule is not.

### 2. Mr. Terry has stated a valid equal protection claim.

The Equal Protection Clause prohibits states from making "distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Distinctions burdening a fundamental right or targeting a suspect class are subject to heightened scrutiny, whereas equal protection claims that implicate neither require a rational basis review. *Ondo v. City of Cleveland*, 795 F.3d 597, 608 (6th Cir. 2015).

Defendants' arguments as to Mr. Terry's equal protection claim miss the mark for purposes of a Fed. R. Civ. P. 12(b)(6) motion. Again, Mr. Terry need only allege facts to state a claim for relief. This he has done. Defendants' argument that "the State's regulation of attorney licensing meets the rational basis test as a tool to protect the public" is meaningless for Fed. R. Civ. P. 12(b)(6) purposes in the face of Mr. Terry's allegations that the Disbarment Rule is irrational and arbitrary. Construing the facts in the light most favorable to Mr. Terry, there is no rational basis between precluding a Disbarred Person from petitioning for reinstatement regardless of rehabilitation, circumstance, or present moral character. First time applicants to the bar with criminal records and persons who have been indefinitely suspended can demonstrate rehabilitation and present fitness and moral character, but not Disbarred Persons. This is a distinction without any rational basis. Thus, it is no wonder the overwhelming majority of states and the District of

Columbia do not subscribe to such a practice, and instead allow disbarred persons to reapply for reinstatement to the bar. "Human beings are capable of change and affording a second chance to lawyers who have acknowledged their fault and redeemed themselves by their post-disbarment conduct is consonant with contemporary notions of redemption, reconciliation, and restorative justice." *Report of the Supreme Court Special Committee on the Duration of Disbarment for Knowing Misappropriation,* May 19, 2023, at p. 46 (attached as Appendix A).

*Whittle v. United States*, 7 F.3d 1259 (6th Cir. 2003) and *ARJN #3 v. Cooper*, 517 F. Supp. 3d 732 (M.D. 2021), do not aid Defendants' argument, but rather "mix up" competing standards. Defendants cited these cases for the proposition that pursuing one's chosen profession does not implicate a fundamental right for purposes of the equal protection clause to warrant *strict scrutiny*, but then Defendants relied upon these cases to conclude that "the State's regulation of attorney licensing meets the *rational basis test*." (Motion to Dismiss, ECF No. 4 at PageID 757.) One has nothing to do with the other. Even if a fundamental right has not been implicated (and Mr. Terry maintains he has a fundamental right to pursue his chosen profession), the rational basis test still applies to the Disbarment Rule, and as set forth above, Mr. Terry has put forth facts to lead to the plausible conclusion that the Disbarment Rule is irrational.

The irrationality inherent in the disciplinary process, and the Disbarment Rule in particular, is further exposed by the unequal application of the disciplinary rules. Mr. Terry was disbarred and now denied the opportunity to apply for reinstatement. Others, including Bridget McCafferty, who was also convicted of a felony in connection with the same justice-for-hire scandal, was not. As Justice O'Neill recognized in his dissent to Mr. Terry's disbarment, while there was no meaningful difference between the conduct of Mr. Terry and Ms. McCafferty, the difference between the disciplinary sanction issued was stark and irrational: Mr. Terry (an African American

13

male) was disbarred, while Ms. McCafferty (a Caucasian female) only was indefinitely suspended. *Disciplinary Counsel v. Terry,* 147 Ohio St. 3d 169, 2016-Ohio-563, 63 N.E.3d 88, ¶20-23 (2016). These facts are more than adequate to survive a challenge under Fed. R. Civ. P. 12(b)(6).[7]

### 3.    Mr. Terry has stated a valid Eighth Amendment violation.

The Eighth Amendment's prohibition on "excessive fines" extends to "payments in cash or in kind," which includes forfeitures characterized at least in part as punitive. *von Hofe v. U.S.,* 492 F.3d 175, 182 (2d Cir. 2007) (noting that a "payment in kind" is a forfeiture); *see also Phi Kappa Tau Chapter House Assn. of Miami University v. Miami University*, No. 1:12–cv–657, 2013 WL 427416, \*9 (S.D. Ohio Feb. 4, 2013) (recognizing the clause applies to monetary fines or forfeitures).    A punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense. *Stevens v. City of Columbus,* No. 2:20-cv-01230, 2021 WL 3562918, \*3 (S.D. Ohio Aug. 12, 2021).

The revocation or suspension of a professional license is a penalty and is therefore a forfeiture subject to constitutional protection. *In re Ruffalo*, 390 U.S. 544, 550, 88 S. Ct. 1222 (1968); *Johnson v. S.E.C.,* 87 F.3d 484, 489 (D.C. Cir. 1996). Mr. Terry lost his license to practice law, and under the Disbarment Rule, he has no opportunity to even so much as petition for reinstatement. This forfeiture is grossly disproportional to the gravity of the underlying offense particularly when viewed in the context that the punishment is "forever" and without consideration of any prospective rehabilitative conduct or redemption. Indeed, Defendants have not argued otherwise. Accordingly, the claimed Eighth Amendment violation survives challenge under Fed. R. Civ. P. 12(b)(6).

---

[7] The cases Defendants cited, *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357 (6th Cir. 2018), *Marshall v. Wayne County,* No. 22-1499, 2023 WL 2707222 (6th Cir. March 30, 2023), and *Lindsay v. Yates,* 578 F.3d 407 (6th Cir. 2009), were decided on summary judgment, not a motion to dismiss.

        **4.**    **Mr. Terry has stated a valid First Amendment claim.**

The First and Fourteenth Amendments protect the rights of individuals to seek access to courts. Because Defendants have instructed and continue to instruct the Clerk of Courts for the Supreme Court of Ohio to refuse to accept petitions for reinstatement filed by Disbarred Persons, Defendants have denied Disbarred Persons, including Mr. Terry, access to the courts.

Defendants have argued there is no constitutional violation because Disbarred Persons have no right to seek reinstatement, and therefore Disbarred Persons are not harmed and do not have a "non-frivolous" claim to pursue. But that is precisely the problem. The Disbarment Rule, and the instruction Defendants have given to the Clerk of Courts for the Supreme Court of Ohio, deny Disbarred Persons access to the courts. Disbarred Persons have no avenue to be heard, even after they have undergone rehabilitation, like Mr. Terry. Defendants have crafted an irrational rule that forecloses any opportunity to present a request for reinstatement or to present the Court with new argument addressing the Disbarment Rule itself. This entire framework is arbitrary and runs afoul of the rehabilitation philosophy that is woven into the fabric of our society and denies Disbarred Persons the constitutional right to present their claims and be heard.

**IV.**    **CONCLUSION**

Defendants are not prescient; they do not have crystal balls that foretell the future. While Defendants disbarred Mr. Terry eight years ago in the interests of protecting the public, the facts on which they reached that conclusion eight years ago are not the same facts today. Mr. Terry is a different man, and it is antithetical to this nation's founding principles to deny Mr. Terry the chance to even so much as request reinstatement to the bar based on his changed circumstances. This, Mr. Terry submits, is unconstitutional.

WHEREFORE, Plaintiff Steve Terry respectfully submits that Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

/s/

EDWARD L. GILBERT (0014544)
EDWARD L. GILBERT CO., L.P.A.
3070 West Market Street, Suite 100
Akron, OH 44333
(330) 376-8855
(330) 376-8857 (facsimile)
egilbert@edwardlgilbert.com

*Counsel for Plaintiff Steven Terry*

## CERTIFICATE OF SERVICE

I certify that the foregoing *Plaintiff Steven Terry's Opposition to Defendants' Motion to Dismiss* was electronically filed with the U.S. District Court for the Southern District of Ohio on this 12th day of July, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/

EDWARD L. GILBERT (0014544)
EDWARD L. GILBERT CO., L.P.A.
*Counsel for Plaintiff Steven Terry*