# APPENDIX A

## Supreme Court Special Committee on the Duration of Disbarment for Knowing Misappropriation

Chair:  Justice Virginia A. Long (retired)

Vice-Chair:  Dr. Lovell Pugh-Bassett, President, Camden County College

Aymen A. Aboushi, Esq., New Jersey Muslim Lawyers Association

Ronald Allen, Pastor, Pilgrim Baptist Church

Heather Joy Baker, Esq., Clerk, Supreme Court of New Jersey

Jesse Burns, Executive Director, League of Women Voters of New Jersey

Joel Clymer, Esq., Garden State Bar Association

Corinne Burzichelli DeBerry, Esq., Fox Rothschild

April DiPietro, LSW, Camden County Care Management Organization

Tim Ellis, Esq., Acting Chief Counsel, Disciplinary Review Board

Hon. Maurice J. Gallipoli, A.J.S.C. (Ret.), Hudson Vicinage

Johanna Barba Jones, Esq., Director, Office of Attorney Ethics

Karen Kessler, President & CEO,  Kessler PR Group

David Kott, Esq., McCarter & English

Ralph Lamparello, Esq., Chasan Lamparello Mallon & Cappuzzo, PC

Jeannine LaRue, Founder, The LaRuelist Report

Jeralyn Lawrence, Esq., President, New Jersey State Bar Association

Jeanne LoCicero, Esq., Legal Director, American Civil Liberties Union – New Jersey

Jeffrey S. Mandel, Esq., Law Offices of Jeffrey S. Mandel LLC

Dawn K. Miller, Esq., President & Executive Director, Legal Service of New Jersey

Hon. Bonnie J. Mizdol, A.J.S.C., Bergen Vicinage

Robert Ramsey, Esq., Law Office of Robert Ramsey

Kim Ringler, Esq., The Ringler Law Firm

Andrew Rothman, Esq., Professor, Rutgers University School of Law & Managing Attorney, Rutgers Law Associates

Marjorie Stevens, Principal (retired), Manchester Township Public Schools

John R. Taylor, Pastor, Friendship Baptist Church

William R. Trimmer, Trustee/Treasurer of the New Jersey Lawyers' Fund for Client Protection

Albertina Webb, Esq., Hispanic Bar Association


Staff:  Heather Lynn Baker, Esq.

# APPENDIX B

*In re Wilson*

Supreme Court of New Jersey

September 11, 1979, Argued ; December 19, 1979, Decided

D-5

**Reporter**

81 N.J. 451 *; 409 A.2d 1153 **; 1979 N.J. LEXIS 1281 ***

IN THE MATTER OF WENDELL R. WILSON, AN ATTORNEY AT LAW

**Prior History:** [***1] On an order to show cause why respondent should not be disbarred or otherwise disciplined.

**Counsel:** *Ms. Colette A. Coolbaugh*, Secretary, argued the cause for the Disciplinary Review Board.

No appearance was made on behalf of respondent.

**Judges:** *For disbarment* -- Chief Justice Wilentz and Justices Sullivan, Pashman, Clifford, Schreiber, Handler and Pollock. *Opposed* -- None. The opinion of the court was delivered by Wilentz, C.J.

**Opinion by:** WILENTZ

# Opinion

[*453] [**1154] In this case, respondent knowingly used his clients' money as if it were his own. We hold that disbarment is the only appropriate discipline. We also use this occasion to state that generally all such cases shall result in disbarment. We foresee no significant exceptions to this rule and expect the result to be almost invariable.

Of the eight complaints filed against respondent with District Ethics Committee VIII (Middlesex County), two involved misappropriation. In one, respondent failed for almost two years to turn over $ 23,000 -- the proceeds from the sale of a house -- to the client. After the ethics complaint was filed, respondent paid the client but never accounted for the location or use [***2] of the funds in the interim. In the other, respondent obtained money for a client in the form of a $ 4,300 check to the client's order. Respondent then forged the client's endorsement, deposited the proceeds in his own trust account, and has yet to turn the funds over to the client.

[*454] Respondent's professional misconduct extends beyond these instances of misappropriation. In the other complaints, the Disciplinary Review Board found that respondent lied to clients, wantonly disregarded their interests, and advised them to commit fraud. Moreover, he was inexcusably uncooperative in the ethics proceedings. The Disciplinary Review Board recommended disbarment.

It is clear from all of this that respondent is unfit to be a lawyer. We do not, however, discuss any charges other than misappropriation since disbarment is mandated by that alone.

I.

MISAPPROPRIATION

Misappropriation of clients' funds is both a crime ( N.J.S.A. 2C:21-15 (superseding N.J.S.A. 2A:102-5, which was repealed by *L.* 1978, *c.* 95, 2C:98-2)) and a direct violation of Disciplinary Rule 9-102 of the Code of Professional Responsibility. Included in the specific commands of this rule [***3] is the requirement that "a lawyer shall * * * [p]romptly pay or deliver to the client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive." DR 9-102(B)(4). Our former Canon of Professional Ethics told the lawyer not only what he must do, but what he must *not* do:

81 N.J. 451, *454; 409 A.2d 1153, **1154; 1979 N.J. LEXIS 1281, ***3

> Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him. [Canon 11].

Like many rules governing the behavior of lawyers, this one has its roots in the confidence and trust which clients place in their attorneys. Having sought legal advice and relying on his expertise, the client entrusts the lawyer with the transaction -- including the handling of the client's funds. Whether it be a real estate closing, the establishment of a trust, the purchase of [*455] a business, the investment of funds, the receipt of proceeds of litigation, or any one of a multitude of other situations, it is commonplace that the work of lawyers involves possession of their clients' [***4] funds. That possession is sometimes expedient, occasionally simply customary, but usually essential. Whatever the need may be for the lawyer's handling of clients' money, the client permits it because he trusts the lawyer.

It is a trust built on centuries of honesty and faithfulness. Sometimes it is reinforced by personal knowledge of a particular lawyer's integrity or a firm's reputation. The underlying faith, however, is in the legal profession, the bar as an institution. No other explanation can account for clients' customary willingness to entrust [**1155] their funds to relative strangers simply because they are lawyers.

Abuse of this trust has always been recognized as particularly reprehensible:

> [T]here are few more egregious acts of professional misconduct of which an attorney can be guilty than misappropriation of a client's funds held in trust. [In re Beckman 79 N.J. 402, 404-05 1979].

See also In re Miller 65 N.J. 560, 561 1974; In re Sherman 60 N.J. 455, 464 1972; In re Mayendia 45 N.J. 560 561 1965; In re Gavel 22 N.J. 248, 264 1956. Recognition of the nature and gravity of the [***5] offense suggests only one result -- disbarment. "Such conduct is of so reprehensible a nature as to permit of only one form of discipline." In re Ryan 60 N.J. 376, 379 1972.

Despite this strong condemnation, results in misappropriation [1] cases have varied because of circumstances which the [*456] Court has regarded as mitigating: the economic and emotional pressures on the attorney which caused and explained his misdeed; his subsequent compliance with client trust account requirements; his candor and cooperation with the ethics committee; his contrition; and, most of all, restitution. The presence of a combination of these has occasionally resulted in suspension, ranging from six months to three years, rather than disbarment.

[***6] It is therefore important that we reemphasize that the principal reason for discipline is to preserve the confidence of the public in the integrity and trustworthiness of lawyers in general. This reason for discipline is mentioned in some misappropriation cases and not in others. While it may only rarely have been stressed in the past, we are now inclined to view it as controlling in these cases.

We have no doubt that the bar is as anxious as we are to preserve that trust. Its preservation is essential to public acceptance of reforms that may be proposed by the bench and bar together. Mistrust may provoke destructive change. Public confidence is the only foundation that will support constructive reform in the public interest while preserving the finest traditions of the profession.

From that point of view, anything less than strict discipline in cases like this would be a disservice to the bar, the judiciary and the public.

---

[1] Unless the context indicates otherwise, "misappropriation" as used in this opinion means any unauthorized use by the lawyer of clients' funds entrusted to him, including not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom.

81 N.J. 451, *456; 409 A.2d 1153, **1155; 1979 N.J. LEXIS 1281, ***6

What are the merits in these cases? The attorney has stolen his clients' money. No clearer wrong suffered by a client at the hands of one he had every reason to trust can be imagined. The public is entitled, not as a matter of satisfying unjustifiable [***7] expectations, but as a simple matter of maintaining confidence, to know that never again will that person be a lawyer. That the moral quality of other forms of misbehavior by lawyers may be no less reprehensible than misappropriation is beside the point. Those often occur in a complex factual setting where the applicability or meaning of ethical standards is uncertain to the [*457] bench and bar, and especially to the public, which may not even recognize the wrong. There is nothing clearer to the public, however, than stealing a client's money and nothing worse. Nor is there anything that affects public confidence more -- much more than the offense itself -- than this Court's treatment of such offenses. Arguments for lenient discipline overlook this effect as well as the overriding importance of maintaining that confidence.

II.

MITIGATING CIRCUMSTANCES

No one need argue whether the moral reprehensibility of this kind of behavior justifies disbarment: all admit it. The only question is whether mitigating circumstances [**1156] might call for lesser discipline in particular cases. We discuss restitution first since it is relied upon most often.

In the context [***8] of professional discipline, restitution suggests an "honesty of compulsion," proving mostly that the lawyer is anxious to become a lawyer again and that he is able somehow to raise the money. Practically every lawyer facing such charges *wants* to remain a lawyer, but not every lawyer is able to raise the money. As early as 1915, the Supreme Court sitting *en banc* noted the irrelevance of this factor:

> "We do not attach very much importance, as a rule, to the matter of restitution, because that may depend more upon financial ability or other favoring circumstances than repentance or reformation. A thoroughly bad man may make restitution, if he is able, in order to rehabilitate himself and regain his position in the community; and a thoroughly good man may be unable to make any restitution at all." [In re Hawkins, 87 A. 243, 247 (D.C. Super. Ct. 1913)]. Without underestimating the importance of restitution, a moment's reflection must convince one that of all the factors that enter into the question of moral fitness, the mere circumstance of restitution is the one most likely to be fortuitous and to depend upon conditions and circumstances that afford no reliable [***9] test of moral qualities. The money may have come from wealthy relatives, or from a lucky speculation, or from engaging in some alien business venture, or it may have been borrowed, in which case the old liability is apparently extinguished by [*458] the creation of a new one. Taken in connection with other circumstances, restitution may be of the utmost significance, but this, oftener than not, is due to such other circumstances rather than to the mere fact of non-restitution; as, for instance, if the former attorney became possessed of sufficient money with which to make restitution but refused so to apply it. [In re Harris, 88 N.J.L. 18, 20-21 (Sup. Ct. 1915) (*en banc*)].

Restitution may compensate an individual complainant for the financial loss suffered; conceivably, it may partially restore the shattered faith of a particular client. It does not, however, significantly retard the subtle but progressive erosion of public confidence in the integrity of the bench and bar.

When restitution is used to support the contention that the lawyer intended to "borrow" rather than steal, it simply cloaks the mistaken premise that the unauthorized use of clients' [***10] funds is excusable when accompanied by an intent to return them. The act is no less a crime. *W. LaFave & A. Scott, Criminal Law,* § 89 at 653-54 (1972); *see also United States v. Titus, 64 F. Supp. 55, 56 (D.N.J. 1946)*. [2] Lawyers who "borrow" may, it is true, be less

_____

[2] Criminality is not determinative here, however, although it strongly supports our conclusion; nor is our conclusion affected by the consideration accorded restitution in sentencing. Policies underlying criminal law may not necessarily coincide with those

81 N.J. 451, *458; 409 A.2d 1153, **1156; 1979 N.J. LEXIS 1281, ***10

culpable than those who had no intent to repay, but the difference is negligible in this connection. Banks do not rehire tellers who "borrow" depositors' funds. Our professional standards, if anything, should be higher. Lawyers are more than fiduciaries: they are representatives of a profession and officers of this Court.

[***11] The overwhelming majority of misappropriation cases involves lawyers who undoubtedly intended to return the funds. They misappropriate initially with precisely such intent. Anticipated [*459] money for repayment fails to materialize. Other clients' trust funds are then used for "restitution," and the initial embezzlement spawns many more. Wholesale exemption from strict discipline for misappropriation would result if such "borrowing" were excused.

Judicial consideration of restitution as a mitigating factor in disciplinary proceedings creates the impression that sanctions are proportioned in accordance with [**1157] ability to pay, rather than gauged against the seriousness of the misconduct. Furthermore, according significance to restitution leads to an obvious and substantial possibility of unjust discrimination.

At worst, refusal to consider restitution in this class of cases removes an incentive for compensation of injured parties. Encouraging restitution in individual cases is a worthy purpose, but the lenient discipline needed to achieve it conflicts with the paramount goal of preserving public confidence in the entire bar. From this point of view, compensation [***12] of injured parties should not be deemed an appropriate function of our disciplinary process. [3]

We find it similarly unpersuasive that the attorney in such a case has finally put together reliable records and brought his trust account into balance. It is the least that one would expect. Its only significance is that it would be doubly unthinkable to permit resumption of practice by an offending attorney who remained unwilling or unable to set up proper books and records.

The inexperience or, conversely, the prior outstanding career, of the lawyer, often considered a mitigating factor in [*460] disciplinary matters, seems less important to us where misappropriation is involved. This offense against common honesty should be clear even to the youngest; [***13] and to distinguished practitioners, its grievousness should be even clearer. [4]

The considerations that must deeply trouble any court which decrees disbarment are the pressures on the attorney that forced him to steal, and the very real possibility of reformation, which would result in the creation of a new person of true integrity, an outstanding member of the bar. *See, e.g.,* in re mann, supra at 24-26. There can be no satisfactory answer to this problem. An attorney, beset by financial problems, may steal to save his family, [***14] his children, his wife or his home. After the fact, he may conduct so exemplary a life as to prove beyond doubt that he is as well equipped to serve the public as any judge sitting in any court. To disbar despite the circumstances that led to the misappropriation, and despite the possibility that such reformation may occur [5] is so terribly harsh as to require the most compelling reasons to justify it. As far as we are concerned, the only reason

_____

governing disciplinary matters. The policy described in this opinion, leading to disbarment in these cases, would be ill served if "borrowing" regularly resulted in lesser discipline.

[3] If the argument ever had any weight, the existence and effectiveness of the Clients' Security Fund has greatly weakened it. In this case, for instance, claims for the misappropriations have been filed with the Fund and payment will presumably follow.

[4] We deem the unlikelihood of subsequent misappropriation irrelevant in these cases. In practically all of them, even where there are no mitigating factors, recurrence of the misbehavior is highly unlikely. No one suggests that, alone, it is sufficient to warrant lesser discipline. To state that we might nevertheless consider it "but only in conjunction with other factors" falsely attributes importance to a factor almost universally present in these matters.

[5] Almost without practical remedy, for our research reveals only three orders of reinstatement following disbarment over the past hundred years. *In re Mink*, **60 N.J. 609 (1973)**; in re hartman 75 N.J. 556 (1977); in re margie 3 N.J. West 223 Sup Ct 1923; *see* in re greenburg 21 N.J. 213 203 1956; *see generally* in re kaufman 21 N.J. 445 175 Sup Ct 1928; in re merrill supra 55 N.J. 215.

81 N.J. 451, *460; 409 A.2d 1153, **1157; 1979 N.J. LEXIS 1281, ***14

that disbarment might be necessary is that any other result risks something even more important, the continued confidence of the public in the integrity of the bar and the judiciary. [6]

[***15] [*461]  In summary: maintenance of public confidence in this Court and in the bar as a whole requires the strictest discipline in [**1158] misappropriation cases.  That confidence is so important that mitigating factors will rarely override the requirement of disbarment. If public confidence is destroyed, the bench and bar will be crippled institutions.  Functioning properly, however, in the best traditions of each and with full public confidence, they are the very institutions most likely to develop required reform in the public interest.

For the reasons stated, we conclude that disbarment is mandated.  Respondent's name will be stricken from the rolls.

ORDER

It is ORDERED that WENDELL R. WILSON of Carteret be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that WENDELL R. WILSON be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that respondent comply with all the regulations of the Disciplinary Review Board governing suspended, disbarred or resigned attorneys.

---

End of Document

---

[6] The potential misery that might be inflicted on the client seems to receive little consideration in the cases perhaps because those which impose discipline less than disbarment seem invariably to involve complete restitution. Obviously the weakened deterrent effect caused by this lesser discipline may result in inflicting that misery on other clients for whom there will be no restitution. Looked at differently, the sympathy engendered by the impossible plight of the attorney which caused him to steal is offset by the fact that he did so, most often, without regard for the possibility that he might be inflicting the same misery, or worse, on his innocent client. *See, e.g.,* in re McDermit 63 N.J. 675 -62-63 Sup Ct 1981.

# APPENDIX C

*Matter of Wade*

Supreme Court of New Jersey

September 27, 2021, Argued; June 7, 2022, Decided

D-132 September Term 2020, 085931

**Reporter**

250 N.J. 581 *; 275 A.3d 426 **; 2022 N.J. LEXIS 507 ***; 2022 WL 2036105

IN THE MATTER OF DIONNE LARREL WADE, AN ATTORNEY AT LAW.

**Prior History:** [***1] On an Order to Show Cause why respondent should not be disbarred or otherwise disciplined.

# Syllabus

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**In the Matter of Dionne Larrel Wade (D-132-20) (085931) Argued September 27, 2021 -- Decided June 7, 2022**

**RABNER, C.J., writing for a unanimous Court.**

In this disciplinary matter, the Court is asked to revisit the rule imposed in *In re Wilson*, which calls for automatic disbarment of attorneys who knowingly misappropriate client funds. 81 N.J. 451, 455, 461, 409 A.2d 1153, 1976.

Respondent Dionne Larrel Wade has been a solo practitioner since she was admitted to the New Jersey bar in 2002. Her remarkable personal and professional accomplishments are clear from the record. She overcame obstacles early in life and persevered with her studies. Throughout her legal career, she volunteered her time and skill and provided pro bono legal services to underserved clients. She also conducted free legal clinics at her church. She has no prior disciplinary history.

In June 2017, the Office of Attorney Ethics (OAE) conducted [***2] a random audit of her financial records. The audit identified multiple problems, including commingling and extensive shortages in client trust funds. Ultimately, the allegations against Respondent involved three clients. She conceded she used client funds without permission to pay various expenses but claimed she did not know it was wrong to borrow the money until the OAE investigator told her so.

In one matter, Respondent repeatedly transferred client funds from her attorney trust account to her business account, which created a shortfall of more than $11,000. Respondent later deposited $12,000 borrowed from a friend to cover the shortfall. In the second matter, Respondent admitted borrowing $5,000 without permission but stated that she withdrew $3,000 to hire a detective for the case and returned that money when she decided not to proceed, while $2,000 was for her fee. In the third matter, Respondent made a number of withdrawals from $4,000 she held in escrow for a client, and the balance dropped to $3,750 at one point. Respondent asserted the shortfalls resulted from failure to pay attention to the books. She replenished the money in time for the closing. In the end, none of Respondent's [***3] clients lost money.

Respondent explained that she was aware of the danger in borrowing from clients, noting she had not touched another $123,000 in client funds because she knew she could not "pay that back." Respondent drew the line at $12,000 -- a self-imposed limit. Respondent admitted that she considered client funds as a "line of credit" she could use, without permission, as long as she made the client whole. She further admitted to using funds from one client

250 N.J. 581, *581; 275 A.3d 426, **426; 2022 N.J. LEXIS 507, ***3

to pay for another client's needs but claimed she did not know that was improper. At various times, Respondent explained that she never intended to steal from clients and intended to pay the money back at all times.

The OAE charged Respondent with multiple instances of knowingly misappropriating client and escrow funds, with violating several Rules of Professional Conduct (RPCs), and with various recordkeeping violations. After a hearing, a Special Ethics Master found that "sloppy bookkeeping did not cause [Respondent] to unknowingly borrow client funds. She knowingly did so, and she paid back what she borrowed." Because he found clear and convincing evidence that Respondent knowingly misappropriated funds entrusted to her, [***4] the Special Master recommended that Respondent be disbarred under *Wilson* and RPC 1.15. After a de novo review of the record, the Disciplinary Review Board (DRB) unanimously upheld the Special Master's findings and recommendation in a comprehensive decision. The Court entered an order to show cause.

**HELD:** *In the four decades since *Wilson*, the Court has consistently disbarred attorneys who knowingly misappropriated client funds regardless of their motives or other mitigating factors. The rule has remained inviolate because of the critical aims it seeks to serve: to protect the public and maintain confidence in the legal profession and the Judiciary. 81 N.J. at 457, 409 A.2d 1153. If a lawyer knowingly misappropriates client funds, both the attorney and the public should know that the person will be disbarred.

*Because the record in this case -- including Respondent's admissions -- clearly and convincingly demonstrates that she knowingly misappropriated client and escrow funds, the Court will enter an order of disbarment. Under New Jersey's longstanding disciplinary rules, disbarment is permanent and marks the end of a person's ability to practice law. In that respect, New Jersey's approach differs from most jurisdictions. [***5]

*Although it declines to revisit the *Wilson* rule, the Court finds it is time to reevaluate the current approach to *permanent* disbarment. The question -- and the challenge -- is whether and how to create a rigorous system that can determine if a lawyer disbarred for those reasons deserves a second chance years later. The Court will establish a broad-based committee to analyze whether disbarment for knowing misappropriation should continue to be permanent, or whether New Jersey should join the majority of jurisdictions that allow for reinstatement. If the Court revises the current approach to permanent disbarment, Respondent and others would be able to reapply for admission in accordance with a new court rule.

1. Prior to 1979, the Court condemned the taking of client funds but did not disbar lawyers in all cases. The Court's pronouncement in *Wilson* in 1979 outlined a clearer path: "that disbarment is the only appropriate discipline" when an attorney "knowingly use[s] his clients' money as if it were his own." 81 N.J. at 453, 409 A.2d 1153. As the Court explained, most "misappropriation cases involve[] lawyers who undoubtedly intended to return the funds." *Id.* at 455, 409 A.2d 1153. The Court nonetheless observed that "[t]he policy described [***6] in this opinion, leading to disbarment in these cases, would be ill served if 'borrowing' regularly resulted in lesser discipline." *Id.* at 455, 409 A.2d 1153 n.2. In essence, although the Court sharply criticized "stealing a client's money," *id.* at 455, 409 A.2d 1153, it did not require proof that an attorney intended to steal or defraud a client to establish knowing misappropriation. The Court went on to consider -- and reject -- mitigating circumstances that had previously led to discipline short of disbarment, including restitution and recordkeeping. *Id.* at 457-59, 409 A.2d 1153. The Court noted that "the pressures on the attorney that forced him to steal, and the very real possibility of reformation" are deeply troubling in ordering disbarment, but it found those factors to be outweighed by the "most compelling reasons" -- "the continued confidence of the public in the integrity of the bar and the judiciary." *Id.* at 460, 409 A.2d 1153. As a result, the Court announced a bright-line rule that "all . . . cases" of knowing misappropriation of client funds "generally . . . shall result in disbarment. We foresee no exceptions to this rule and expect the result to be almost invariable." *Id.* at 453, 409 A.2d 1153. "[M]itigating factors will rarely override the requirement of disbarment." *Id.* at 461, 409 A.2d 1153. That rule has been described [***7] in even stronger language in decisions since *Wilson*. (pp. 17-22)

2. After *Wilson*, the Court extended the disbarment rule to lawyers who knowingly misuse escrow funds. *In re Hollendonner*, 102 N.J. 21, 28, 504 A.2d 1174, 1985. Knowing misappropriation of law firm funds can lead to disbarment, but disbarment has not been an absolute requirement in those instances. *In re Sigman*, 220 N.J. 141,

*158, 104 A.3d 230 (2014)*. In all of those areas, the Court imposes disbarment only if the OAE can satisfy a high standard and demonstrate clear and convincing proof of *knowing* misappropriation. Attorneys who *negligently* misappropriate client funds are not subject to *Wilson*'s automatic disbarment rule. *In re Noonan, 102 N.J. 157, 160-61, 506 A.2d 722 (1986)*. Here, cases involving negligent misappropriation are not relevant because Respondent, by her own admissions, deliberately used client and escrow funds without permission. (pp. 22-23)

3. In the decades since *Wilson*, despite occasional criticism, the Court has declined to relax or modify the bright-line rule that knowing misappropriation will result in disbarment. Case law also reveals that the Court has continued to reject various defenses to the *Wilson* rule. On multiple occasions, for example, the Court has stated that intent to steal funds from a client is not an element of knowing misappropriation. Instead, [***8] the Court has held that knowing misappropriation consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking. An attorney's motive for taking client funds -- good or bad -- is not relevant. Just the same, an intent to return a client's money is irrelevant. Nor is willful blindness a defense to a charge of knowing misappropriation. Ignoring mail that contains financial records cannot provide attorneys a safe haven, and it is no defense for lawyers to design an accounting system that prevents them from knowing whether they are using clients' trust funds. Lawyers have a duty to assure that their accounting practices are sufficient to prevent misappropriation of trust funds. Similarly, ignorance of ethics rules and case law does not excuse ethical misconduct. Personal and financial hardship also cannot excuse a lawyer who takes a client's funds. (pp. 23-26)

4. Respondent advanced a number of such defenses, but none of them can overcome *Wilson*'s bright-line rule. The Court makes clear once again that knowing misappropriation will lead to disbarment. When clients place money in an attorney's [***9] hands, they have the right to expect the funds will not be used intentionally for an unauthorized purpose. If they are, clients can confidently expect that disbarment will follow. Because there is clear and convincing evidence in the record, including Respondent's own admissions, that she knowingly took client and escrow funds without permission on multiple occasions, an order of disbarment will be entered. (pp. 26-27)

5. At the hearing before the Special Master, Respondent presented multiple character witnesses who offered compelling evidence of her personal and professional achievements. Based on that testimony, the Special Master found that "[h]er service to the community and good reputation are particularly exemplary." The DRB similarly observed that "Respondent is a remarkable person who has overcome tremendous personal obstacles . . . to become a pillar of her church and local community and what appeared to be an excellent member of the New Jersey bar." The Court agrees with those conclusions and recounts some of the testimony underlying them, including by one of the clients whose funds were invaded. As the Special Master and the DRB recognized, Respondent has no prior disciplinary [***10] history. None of her clients lost money, and she promptly took remedial measures after the random audit. She cooperated with the OAE, readily admitted she borrowed clients' money without permission, and was contrite about her failure to maintain financial records properly. Although Respondent's personal and professional history does not provide a defense to a *Wilson* violation, her accomplishments raise important questions about New Jersey's longstanding system of attorney discipline. In particular, should disbarment be *permanent* in all *Wilson* cases? Or should the disciplinary system offer disbarred attorneys like Respondent an opportunity for a second chance at a later point in time? (pp. 27-31)

6. All 50 states and the District of Columbia disbar attorneys who commit serious ethical violations. In a large majority of jurisdictions, however, disbarment is not permanent. Altogether, 41 states plus the District of Columbia allow attorneys to apply to be reinstated after they have been disbarred, and 31 of those jurisdictions permit attorneys to apply for readmission 5 years after disbarment. The majority rule is consistent with a recommendation by the American Bar Association, which also [***11] proposes criteria for reinstatement, including compliance with all prior disciplinary orders; rehabilitative treatment for physical or mental infirmity, including alcohol or drug abuse; recognition of the wrongfulness and seriousness of the prior misconduct; proof of the requisite honesty and integrity to practice law; competency to practice; and passage of the bar examination and character and fitness examination. Many states outline similar factors to assess whether a disbarred attorney should be reinstated. Sixteen states require petitioners to complete examination requirements as part of the reinstatement process, and several reserve the option to do so on a case-by-case basis. (pp. 31-37)

7. To assess those and other factors, the Court will convene a committee comprised of attorneys as well as members of the public who are not lawyers. The committee will study whether disbarment should continue to be permanent in all *Wilson* cases and will recommend standards that might apply if New Jersey were to adopt the majority approach. Among other issues to consider are the following: After what period of time might attorneys be readmitted? What factors and standard of proof should apply [***12] to that judgment? Should disbarred attorneys be required to retake the bar examination or other courses on ethics, recordkeeping, and related subjects? What process might be adopted for readmission? And what rule changes might be warranted? The Court provides guidance as to the scope of the committee's work and notes that the committee's report will be made available to the public for comment before the Court determines how to proceed. The Court welcomes input from attorneys and the public to promote the key interests at the heart of the *Wilson* rule: how best to protect the public and maintain confidence in the legal profession. (pp. 37-38)

**An order of disbarment is entered**.

**Counsel:** HoeChin Kim, Deputy Ethics Counsel, argued the cause on behalf of the Office of Attorney Ethics (Ryan J. Moriarty, Deputy Ethics Counsel, on the brief).

Donald M. Lomurro argued the cause for respondent (Lomurro, Munson, Comer, Brown & Schottland, attorneys; Donald M. Lomurro and Christina Vassiliou Harvey, of counsel and on the brief).

Robert B. Hille argued the cause for amicus curiae New Jersey State Bar Association (New Jersey State Bar Association, attorneys; Domenick Carmagnola, President, of counsel, and Robert B. Hille and Abdus-Sami M. Jameel, on the brief).

**Judges:** CHIEF JUSTICE RABNER delivered the opinion of the Court. JUSTICES ALBIN, PATTERSON, [***13] SOLOMON, and PIERRE-LOUIS join in CHIEF JUSTICE RABNER's opinion. JUDGE FUENTES (temporarily assigned) did not participate.

**Opinion by:** RABNER

# Opinion

[*584] [**428] CHIEF JUSTICE RABNER delivered the opinion of the Court.

This attorney disciplinary matter involves a clear case of knowing misappropriation of client and escrow funds. From 2002 to 2017, Respondent Dionne Larrel Wade knowingly and repeatedly borrowed money from clients, without their knowledge or approval, to cover the needs of other clients and for her personal use. During a random audit conducted by the Office of Attorney Ethics (OAE), Respondent admitted she transferred funds from her trust account because she needed the money to cover personal and business expenses. She represented that she never intended to steal the funds and had returned all the money. No clients were harmed.

Ms. Wade's remarkable personal and professional accomplishments are also clear from the record. She overcame obstacles early in life and persevered with her studies. Throughout her legal career, she volunteered her time and skill and provided pro bono [*585] legal services to underserved clients. She also conducted free legal clinics at her church. She has no prior disciplinary history. [***14]

Respondent and the State Bar Association ask the Court to revisit the rule imposed in *In re Wilson*, which calls for automatic disbarment of attorneys who knowingly misappropriate client funds. Respondent suggests that mitigating factors be considered when no client is harmed. The State Bar submits that proof of intent to steal or defraud should be required to establish that an attorney knowingly misappropriated client or escrow funds.

250 N.J. 581, *585; 275 A.3d 426, **428; 2022 N.J. LEXIS 507, ***14

This Court has long recognized that "[t]here are few more egregious acts of professional misconduct of which an attorney can be guilty than misappropriation of [**429] a client's funds held in trust." Id. at 455, 409 A.2d 1153 (quoting In re Beckmann, 79 N.J. 402, 404-05, 400 A.2d 792 (1979)). In the four decades since *Wilson*, the Court has consistently disbarred attorneys who knowingly misappropriated client funds regardless of their motives or other mitigating factors. The rule has remained inviolate because of the critical aims it seeks to serve: to protect the public and maintain confidence in the legal profession and the Judiciary. *See* id. at 461, 409 A.2d 1153. If a lawyer knowingly misappropriates client funds, both the attorney and the public should know that the person will be disbarred.

Because the record in this case -- including Respondent's admissions [***15] -- clearly and convincingly demonstrates that she knowingly misappropriated client and escrow funds, the Court will enter an order of disbarment.

Under New Jersey's longstanding disciplinary rules, disbarment is permanent and marks the end of a person's ability to practice law. In that respect, our approach differs from most jurisdictions. Forty-one states and the District of Columbia allow disbarred attorneys to apply to be reinstated to the bar -- most of them after 5 years.

 [*586] Although we decline to revisit the *Wilson* rule, we believe it is time to reevaluate the current approach to *permanent* disbarment. To be clear, lawyers will still be disbarred in all matters in which they knowingly misappropriate client or escrow funds, consistent with decades of precedent. The question -- and the challenge -- is whether and how to create a rigorous system that can determine if a lawyer disbarred for those reasons deserves a second chance years later.

Many considerations would likely factor into that type of decision, including the nature and seriousness of the misconduct, whether the person honestly accepts that their prior behavior was wrong, the extent of any rehabilitation, how much time has [***16] passed, whether the individual possesses the necessary integrity to practice law, and whether readmission would compromise public confidence in the bar, among other criteria.

Under any such system, it is unlikely that attorneys who stole from clients and caused substantial harm could ever be trusted to practice law again. On the other end of the spectrum, lawyers who knowingly misappropriated client funds while suffering from addiction, mental health issues, or great personal challenges; who did not cause harm; and who have been rehabilitated, might prove worthy of having their license restored at a later date. In between those examples lie many other scenarios, to be sure.

The Court will establish a broad-based committee to analyze whether disbarment for knowing misappropriation should continue to be permanent, or whether New Jersey should join the majority of jurisdictions that allow for reinstatement. We will ask lawyers and members of the public who are not attorneys to serve on the committee and present recommendations on an expedited basis. The committee's report will be made available for public comment before the Court decides whether and how to act.

Foremost in our mind is the [***17] need to protect the public, to retain its confidence in the legal profession, and to promote the integrity of the bar. If the Court revises the current approach to permanent [*587] disbarment, Ms. Wade and others would be able to reapply for admission in accordance with a new court rule.

I.

To summarize the facts, we draw from the record before the Special Ethics Master, [**430] his detailed report, and the comprehensive decision of the Disciplinary Review Board (DRB).

A.

Respondent has been a solo practitioner since she was admitted to the New Jersey bar in 2002. On June 15, 2017, the OAE conducted a random audit of her financial records. The day before, Respondent deposited $12,000 she borrowed from a friend into her attorney trust account.

250 N.J. 581, *587; 275 A.3d 426, **430; 2022 N.J. LEXIS 507, ***17

The audit covered two years, from mid-2015 to mid-2017, and it identified multiple problems. They included commingling and extensive shortages in client trust funds totaling more than $11,000. In response to the audit, Respondent admitted that she borrowed client and escrow funds in two matters, without permission from her clients, because she needed money and had no one else to turn to for a loan. She explained what happened in a letter she wrote and sent the OAE [***18] dated August 14, 2017:

> Regarding my trust account being out-of-trust please be advised of the following:
>
> Without the knowledge or permission of two (2) of my clients, Rev. Milena Eason and the Estate of Felix Anderson, I borrowed money, resulting in the two (2) accounts being out of trust for a time.
>
> As your office is aware, Rev. Milena Eason entrusted twenty-one thousand dollars [$21,000] in my care. Upon doing so, I placed the funds in my trust account. Though I did not immediately begin to borrow the funds, as money became low in my business, I transferred funds from my trust account to my attorney general/business account. At no time did I ever intend to keep or steal Rev. Eason's money. Not only did I intend to return the funds; but, the funds were actually returned to the account. I had no idea that my actions would spark disciplinary proceedings.
>
> In addition, I borrowed money from my client, the Estate of Felix Anderson. In August 2016, I borrowed approximately five thousand dollars [$5,000] from the Estate account . . . .
>
> [*588] As stated previously, I had no idea my actions were wrong or that they would spark disciplinary proceedings. I never intended to steal or keep these funds. Not [***19] only did I intend to return the funds; but, here too the funds were actually returned to the account
>
> . . . .
>
> I work earnestly to run what I believe is a law firm of integrity based on my Christian values. I strive to give my clients good value for their dollar and the best service. This comes at a cost because my clients are sometimes slow to pay. Unfortunately, there was no-one I could turn to for a loan . . . . My point is . . . there was no one else to turn to, so I borrowed the funds. I had no idea that I could be disciplined for my actions or that what I was doing was wrong.
>
> Once the auditor told me the effect of my actions, I had to deal with the guilt, embarrassment and shame. I spent many sleepless nights crying and praying. I told my family, friends, colleagues and my pastor. . . .
>
> I also had to bear the embarrassment and shame of telling my clients . . . about my actions. They were understanding, compassionate and unexpectedly supportive. One colleague requested I have her represent me. . . .
>
> I am now aware that I broke faith with my clients, family, the bar and most importantly with God. My prayer is that at some point, I can work to restore that faith. There is no excuse for [***20] my actions. I was placed in a position of trust and I violated said trust I have learned [**431] from my mistakes. Chiefly, I am not alone and I don't have to borrow from client funds. . . . In the end, I am held accountable and required to answer for my mistakes. . . .
>
> I request this Office take the aforementioned into consideration in taking any possible disciplinary action at the completion of this random audit.

The OAE continued with the audit and later extended the scope of its review to seven years.

B.

The allegations against Respondent involved three clients: Reverend Eason and the Grace of God Church in Paterson; the estate of Felix Anderson; and Vivian Clayton. To provide relevant background, we briefly summarize the allegations contained in the OAE's complaint, along with defenses Respondent later asserted.

In December 2016, Reverend Eason gave Respondent a $21,000 personal check payable to her trust account. The funds were to be held in escrow to pay down the church's property tax liability. A receipt Respondent gave Eason stated, "[m]oney held in escrow for the City of Paterson . . . sum held: $21,000."

In the following months, Respondent repeatedly transferred funds from her [***21] attorney trust account to her business account, [*589] which created a shortfall of $11,636.53. Respondent later claimed she negligently used

250 N.J. 581, *589; 275 A.3d 426, **431; 2022 N.J. LEXIS 507, ***21

the funds, without a basic understanding of accounting principles, and thought they were earned fees. As noted earlier, she deposited $12,000 the day before the random audit began to cover the shortfall.

In the Anderson matter, Respondent held money in escrow for an estate. She admitted borrowing a total of $5,000 without permission. About two years later, she returned $3,100. On a ledger card Respondent prepared after the random audit, she noted she borrowed the $5,000. She later stated that the notation was inaccurate; that she withdrew $3,000 to hire a detective to locate a lost heir and returned $3,100 when she decided not to do so; and that she took $2,000 for her fee. Respondent also claimed she overpaid two beneficiaries about $1,000 each.

In the third matter, Respondent represented Vivian Clayton, the seller, in a real estate transaction. Respondent accepted $4,000 from the buyers in June 2014 and was obligated to hold the funds in escrow until the closing the next month. Without permission, she made a number of withdrawals, transfers, and [***22] deposits in the intervening time, and the escrow balance dropped to $3,750 at one point. Respondent later asserted that the shortfalls resulted from her failure to pay attention to the books. She replenished the money -- to exactly $4,000 -- in time for the closing.

C.

During the course of the continuing audit, Respondent made additional admissions to the OAE.

At an interview on September 17, 2017, when asked whether she had ever borrowed escrow funds from a client, she responded, "Yes. That's why we're here, aren't we?" In connection with the Anderson estate, she again admitted that she borrowed escrow funds to pay bills because she was "broke." She conceded she used client funds without permission to pay various expenses but [*590] claimed she did not know it was wrong to borrow the money until the OAE investigator told her so.

At the same interview, Respondent also admitted she took more than $11,000 from her trust account in connection with the Eason matter. At first, she claimed she [**432] replenished the funds with $12,000 from a fee she had earned. She then acknowledged, to "be open and honest," that she made up the shortfall with funds she borrowed from a friend.

Respondent added that she was [***23] aware of the danger in borrowing from clients. She noted, for example, that she had not touched another $123,000 in client funds because she knew she could not "pay that back." Respondent drew the line at $12,000 -- a self-imposed limit.

In an interview on April 11, 2018, with counsel present, Respondent admitted that she considered client funds as a "line of credit" she could use, without permission, as long as she made the client whole. Based on what she knew at the time of the interview, she conceded that her use of client funds was "absolutely" wrong but stemmed from "ignorance."

During a follow-up interview on May 16, 2018, with counsel present, Respondent admitted using funds from one client to pay for another client's needs -- known as "lapping," see _In re Brown, 102 N.J. 512, 514-15, 509 A.2d 176 1986_ -- but claimed she did not know that was improper.

At various times, Respondent explained that she never intended to steal from clients and intended to pay the money back at all times.

D.

The OAE filed a two-count complaint on December 18, 2018. Count One charged Respondent with multiple instances of knowingly misappropriating client and escrow funds in violation of _Wilson, 81 N.J. 451, 409 A.2d 1153_, _In re Hollendonner, 102 N.J. 21, 504 A.2d 1174 1985_, and _RPC 1.15_. The instances are [*591] outlined above. The first count also asserted [***24] that Respondent violated other rules of professional conduct. Count Two charged Respondent with various recordkeeping violations, contrary to _RPC 1.15_.

250 N.J. 581, *591; 275 A.3d 426, **432; 2022 N.J. LEXIS 507, ***24

In Respondent's answer to the complaint, she moved away from some of her earlier admissions. She admitted that she "did not maintain the appropriate recordkeeping procedures" but denied having "commit[ted] a knowing misappropriation." Respondent stated that she "did not intentionally take client funds." Although she conceded she had made certain admissions, she "denied that what was stated is actually what occurred." She also asserted that her prior statements to the OAE "were made due to [her] embarrassment over not having maintained proper records in [her] practice." Respondent's answer also summarized her personal history, pro bono work, and other involvement in the community.

A Special Ethics Master conducted a hearing on October 29 and 30, and November 6, 2019. The OAE auditor and Respondent testified and presented information that is summarized above. An expert witness and multiple character witnesses also testified on Respondent's behalf. The witnesses presented compelling evidence of Respondent's personal character, which we recount later. [***25] One witness also described the "disarray" in Respondent's law office; she saw "a hundred plus unopened envelopes" that contained financial records and tried to help Respondent organize them. Respondent herself admitted that she let bank statements pile up without opening them.

In a post-hearing submission, Respondent again distanced herself from her earlier admissions. She claimed that any misappropriations were negligent, not knowing; that her bookkeeping practices were deficient and accounted for various errors and shortfalls; that she believed she transferred earned legal fees and not Reverend Eason's money; that the notation [**433] she had "borrowed" funds in the Anderson matter was inaccurate; and that she was ignorant of "checking accounting principles" and recordkeeping [*592] rules. The OAE countered Respondent's arguments and recommended that she be disbarred for knowing misappropriation of trust and escrow funds.

The Special Master issued a thorough report in February 2020 that recommended disbarment. He observed that Respondent lacked "any experience in basic financial management" and "was unaware of her professional obligations with regard to financial record keeping." He found that Respondent [***26] "regularly and intentionally commingled her personal and trust funds," kept fees in her attorney trust account, and "withdrew them to meet personal and business expenses."

The Special Master noted that Respondent's "improper practice caused [her] to be repeatedly out of trust which she thought [was] excusable so long as she made up the shortage when needed." Moreover, her conduct made "it clear that she knew she made use of client funds, as opposed to her own money." The Special Master found Respondent "repeatedly paid back what she 'borrowed'" and appeared to limit her misappropriations to not more than $12,000 at any one time.

He discounted expert testimony that Respondent's poor recordkeeping and commingling of funds meant "she could not have known she was using client funds." To the contrary, the Special Master found that her "repeated and consistent repayment of all amounts borrowed" belied the testimony. The Special Master made note of Respondent's "conscious return of borrowed funds in time to cover any shortfalls." In his words, "sloppy bookkeeping did not cause [Respondent] to unknowingly borrow client funds. She knowingly did so, and she paid back what she borrowed."

The Special [***27] Master made specific findings of knowing misappropriation in the Eason, Anderson, and Clayton matters. He also canvassed relevant case law related to the *Wilson* rule and made findings on the remaining RPC violations. Because he found clear and convincing evidence that Respondent knowingly misappropriated client and escrow funds entrusted to her in all three client [*593] matters, he recommended that Respondent be disbarred under *Wilson* and RPC 1.15.

E.

In June 2021, after a de novo review of the record, the DRB unanimously upheld the Special Master's findings and recommendation in a comprehensive, sixty-one-page decision.

250 N.J. 581, *593; 275 A.3d 426, **433; 2022 N.J. LEXIS 507, ***27

Like the Special Master, the DRB acknowledged Respondent was "a remarkable person who ha[d] overcome tremendous personal obstacles, through diligence and perseverance, to become a pillar of her church and local community." The Board also reviewed the testimony of Respondent's character witnesses in detail.

Despite evidence of her "stellar personal reputation," however, the DRB found the record was "replete with overwhelming evidence that she repeatedly and knowingly misappropriated client and escrow funds, from 2002 through 2017." The DRB also pointed to Respondent's multiple admissions [***28] that she "borrowed client and escrow funds, for the entirety of her career, and specifically in the *Eason* and *Anderson Estate* matters, 'without the knowledge or permission' of her clients." According to the DRB, "Respondent's behavior constituted textbook 'lapping,'" -- "'robbing Peter to pay Paul,' but always making certain that 'Peter's funds' were replenished when it was time to repay" him.

[**434] The DRB recited Respondent's admissions in detail, noted her attempt "to distance herself from" them, and "view[ed] that sea change with skepticism." The Board also addressed and rejected defenses that she raised. It found that neither an intent to replace client funds nor ignorance of the ethics rules was a defense to a *Wilson* violation. The Board equated Respondent's lack of an accounting system for fifteen years with willful blindness. In the end, the DRB concluded that "disbarment is the only appropriate sanction, pursuant to the principles of *Wilson* and _____." The Board therefore did not address the appropriate discipline for other ethical violations it found.

[*594] F.

We entered an order to show cause. The OAE, Respondent, and the New Jersey State Bar Association, as amicus curiae, appeared at oral [***29] argument.

II.

Respondent and the OAE renew arguments they presented to the Special Master and the DRB. Respondent contends she did not intentionally misappropriate client funds, that the record reflects instances of negligent misappropriation, and that, even if knowing misappropriation is found, she should not be disbarred. She argues the *Wilson* rule should be reevaluated when "no client is harmed and the mitigating factors clearly outweigh imposition of disbarment." The OAE counters that Respondent knowingly misappropriated client and escrow funds and offered no persuasive defenses, and that neither her conduct nor her background justify revising the *Wilson* rule.

The State Bar Association asks the Court to clarify the *Wilson* rule and find that the knowledge element of misappropriation "is tantamount to an intent to steal or defraud the person from whom . . . funds are taken." In other words, the Bar submits that under *Wilson* and its progeny, knowing misappropriation of client or escrow funds should require proof that an attorney intended to steal or defraud.

III.

We begin our analysis with an overview of the Court's seminal ruling in *In re Wilson* as well as relevant caselaw before and [***30] after the decision.

A.

Prior to 1979, the Court condemned the taking of client funds but did not disbar lawyers in all cases. *Bachmann, 71 N.J. at 405, 400 A.2d 755.* Most attorneys either were disbarred or resigned [*595] with prejudice. David E. Johnson, *Lawyer, Thou Shall Not Steal*, 36 *Rutgers L. Rev.* 454, 460-74 (1984). But the Court's consideration of mitigating factors -- restitution, economic and emotional pressures, candor and cooperation, remorse, later compliance with trust account requirements, and other circumstances -- led to varied outcomes. *See Wilson, 81 N.J. at 455-56, 409 A.2d 1153;* James R. Zazzali, *The Whys and Hows of Permanent Disbarment: New Jersey's Wilson Rule, 51 Geo. J. Legal Ethics 111, 313 (2008); see also Annotated Standards for Imposing Lawyer Sanctions*, Standard 9.32 (Ellyn R. Rosen ed., ABA 2d ed. 2019) (compiling mitigating factors).

250 N.J. 581, *595; 275 A.3d 426, **434; 2022 N.J. LEXIS 507, ***30

In the years leading up to the *Wilson* decision, discipline for knowing misappropriation ranged from a suspension to disbarment. *See, e.g.,* _____ (six-month suspension); _____ (two-year suspension); _____ (three-year suspension); [**435] _____ (indefinite suspension); _____ (disbarment); _____ (disbarment); *see also* _____ (discussing cases). In short, New Jersey's prior approach to disciplining attorneys who misappropriated client funds was "unpredictable" and "uneven." _____.

The Court's pronouncement in *Wilson* in [***31] 1979 outlined a clearer path: "that disbarment is the only appropriate discipline" when an attorney "knowingly use[s] his clients' money as if it were his own." _____.

Wendell Wilson was the subject of eight disciplinary complaints; two involved misappropriation. In one matter, Wilson failed to turn over to a client, for nearly two years, more than $23,000 from the sale of a house. *Ibid.* In the second, Wilson forged his client's endorsement on a $4,300 check payable to the client and deposited [*596] the check in his trust account. *Ibid.* Wilson did not turn over the funds.

The Court noted that misappropriation of client funds is a crime as well as a violation of the ethics rules. _____. Yet the principle announced in *Wilson* plainly extended beyond theft and criminality. The Court defined "misappropriation" as "any unauthorized use by the lawyer of clients' funds entrusted to him, including not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." _____. The Court also expressly stated that "[c]riminality is not determinative." _____.

As the Court explained, most "misappropriation cases involve[] lawyers who undoubtedly [***32] intended to return the funds." _____. The Court nonetheless observed that "[t]he policy described in this opinion, leading to disbarment in these cases, would be ill served if 'borrowing' regularly resulted in lesser discipline." _____. In essence, although the Court sharply criticized "stealing a client's money," _____, it did not require proof that an attorney intended to steal or defraud a client to establish knowing misappropriation.

The Court went on to consider -- and reject -- mitigating circumstances that had previously led to discipline short of disbarment. Restitution, the defense raised most frequently, often depended on a person's ability to pay and not "moral fitness." _____ (quoting _____ (en banc)). As the Court noted, "[a] thoroughly bad man may make restitution, if he is able, . . . and a thoroughly good man may be unable to make any restitution at all." _____ (quoting _____).

The Court found that improved recordkeeping was a "similarly unpersuasive" factor because lawyers are expected "to set up proper books and records" and keep their trust accounts in balance. _____. "[I]nexperience" or an "outstanding [*597] career" also "seem[] less important" when "misappropriation is involved." _____. The Court explained that the [***33] "offense against common honesty should be clear even to the youngest; and to distinguished practitioners, its grievousness should be even clearer." _____.

The Court recognized that two factors "must deeply trouble any court" that orders [**436] disbarment: "the pressures on the attorney that forced him to steal, and the very real possibility of reformation." *Ibid.* Disbarment under those circumstances, the Court noted, "is so terribly harsh as to require the most compelling reasons to justify it." *Ibid.*

250 N.J. 581, *597; 275 A.3d 426, **436; 2022 N.J. LEXIS 507, ***33

The Court articulated the compelling reasons in plain terms: "the continued confidence of the public in the integrity of the bar and the judiciary." *Ibid.* If that "confidence is destroyed," the Court stated, "the bench and the bar will be crippled institutions." *Id. at 461, 405 A.2d 1153.*

As a result, the Court announced a bright-line rule that "all . . . cases" of knowing misappropriation of client funds "generally . . . shall result in disbarment. We foresee no exceptions to this rule and expect the result to be almost invariable." *Id. at 453, 405 A.2d 1153.* "[M]itigating factors will rarely override the requirement of disbarment." *Id. at 461, 405 A.2d 1153.*

More recently, the Court has used even stronger language to describe the rule. *See, e.g., In re Greenan, 104 N.J. 144, 150, 514 A.2d 1296 (1986)* ("Disbarment is mandated [***34] for the knowing misappropriation of clients' funds . . . ."); *In re Konopka, 126 N.J. 225, 226, 596 A.2d 733 (1991)* ("[W]e have not retreated one bit from the principle that knowing misappropriation, when shown by clear and convincing evidence, will warrant the *Wilson* sanction of disbarment."); *In re Greenberg, 155 N.J. 138, 145, 714 A.2d 243 (1998)* ("[S]ince *Wilson*, the Court has consistently and unwaveringly disbarred attorneys who knowingly took their clients' funds."); *In re Cipriano, 225 N.J. 16, 25, 137 A.3d 412 (2016)* ("[A]n attorney who knowingly misappropriates funds from a [*598] client is subject to disbarment without any practical prospect of consideration of mitigating factors . . . ." (citations omitted)).

After *Wilson*, the Court extended the disbarment rule to lawyers who knowingly misuse escrow funds. *Hollendonner, 102 N.J. at 26, 504 A.2d 1174.* Knowing misappropriation of law firm funds can lead to disbarment under *In re Siegel, 133 N.J. 162, 170, 627 A.2d 156 (1993)*, and *Greenberg, 155 N.J. at 141, 714 A.2d 243*, but disbarment has not been an absolute requirement in those instances. *In re Sigman, 220 N.J. 141, 158, 104 A.3d 230 (2014).*

In all of those areas, we impose disbarment only if the OAE can satisfy a high standard and demonstrate clear and convincing proof of knowing misappropriation. *Id. at 159, 104 A.3d 230; see also In re Barlow, 140 N.J. 191, 195, 657 A.2d 1197 (1995)* ("Proof of misappropriation, by itself, is insufficient to trigger the harsh penalty of disbarment. Rather, the evidence must clearly and convincingly prove that respondent misappropriated client funds knowingly."). [***35]

That standard cannot be met if an attorney presents "competent medical proofs that [the person] suffered a loss of competency, comprehension, or will of a magnitude that could excuse egregious misconduct that was clearly knowing, volitional, and purposeful." *In re Jacob, 95 N.J. 132, 137, 469 A.2d 498 (1984).* To avoid disbarment in such a case, a respondent must establish a "causal connection" between the alleged medical condition and the act of misappropriation. *Ibid.; see also Cipriano, 225 N.J. at 29-33, 137 A.3d 412* (discussing case law and noting "the importance of establishing . . . an excusing causal connection").[1]

[*599] [**437] The *Wilson* rule, of course, applies to cases of knowing, not negligent, misappropriation. Attorneys who negligently misappropriate client funds are not subject to *Wilson*'s automatic disbarment rule. *In re Noonan, 102 N.J. 157, 160-61, 506 A.2d 722 (1986).* We do not review cases of negligent misappropriation here because they are not relevant. Respondent, by her own admissions, deliberately used client and escrow funds without permission.

B.

In the decades since *Wilson*, despite occasional criticism, the Court has declined to relax or modify the bright-line rule that knowing misappropriation will result in disbarment. *See, e.g., Konopka, 126 N.J. at 241, 596 A.2d 733*

---

[1] Respondents have the burden of proving medical defenses by clear and convincing evidence. *R. 1:20-6(c)(2); cf. R. 1:20-4(e)(2)* (noting respondents have "[t]he burden of going forward regarding [other] defenses or demonstrating mitigating factors"). General proof of addiction to alcohol, drugs, or gambling, or of mental illness, which falls short of the *Jacob* standard, is insufficient to avoid disbarment for knowing misappropriation. *See, e.g., In re Hein, 104 N.J. 297, 300, 516 A.2d 1105 (1986)* (alcoholism); *In re Romano, 104 N.J. 306, 309-11, 516 A.2d 1109 (1986)* (drug dependency); *In re Spina, 121 N.J. 378, 173, 586 A.2d 824 (1990)* (compulsive gambling); *In re Nitti, 110 N.J. 321, 173, 586 A.2d 824 (1988)* (mental illness); *In re Tsoncas, 162 N.J. 304, 305, 744 A.2d 160 (2000)* (mental illness).

250 N.J. 581, *599; 275 A.3d 426, **437; 2022 N.J. LEXIS 507, ***35

(Stein, J., concurring, joined by O'Hern and Garibaldi, JJ.) ("[A]lthough [***36] the *Wilson* rule is the right rule for the vast majority of knowing-misappropriation cases, the inflexibility with which it can be applied runs the risk of creating within our attorney-discipline system an almost reflexive approach to such cases, obscuring and ignoring the individual circumstances to an intolerable degree."); Greenberg, 155 N.J. at 164, 714 A.2d 243 (Stein, J., dissenting, joined by O'Hern, J.) ("The Court should exercise caution and restraint in considering the extent to which it should apply rigid, bright-line rules in attorney disciplinary proceedings. Disbarment is the most unforgiving discipline, and it condemns every lawyer on whom it is imposed to a life sentence of professional disgrace."); *see also* Kestin, 51 Seton Hall Legis. J. at 305-31, 305-19 (reviewing criticism of the *Wilson* rule and recommending the use of indeterminate suspension in exceptional cases).

The Court has also continued to reject various defenses to the *Wilson* rule. On multiple occasions, for example, the Court has stated that "[i]ntent to steal funds from a client is not an element of knowing misappropriation." In re Wilmingham, 160 N.J. at 172, 733 A.2d 1174 (1999); *accord* Barlow, 140 N.J. at 195, 657 A.2d 1197. In Noonan, the Court set forth the requirements for knowing misappropriation as follows: it "consists simply of a lawyer taking a client's money entrusted to him, [***37] knowing that it is the client's money and knowing that the client has not authorized the taking." 102 N.J. at 160, 506 A.2d 722. An attorney's motive for taking client funds -- good or bad -- is not relevant. *Ibid*. Just the same, an intent to return a client's money is irrelevant. *Ibid.*; In re Frommelt, 155 N.J. at 122, 194, 714 A.2d 1099 (1998).

Nor is willful blindness a defense to a charge of knowing misappropriation. As the Court observed in *In re Johnson*, "[t]he intentional and purposeful avoidance of knowing what is going on in one's trust account will not be deemed a shield against proof of what would otherwise be a 'knowing misappropriation.'" 105 N.J. 249, 260, 520 A.2d 3 (1987); *see also* In re Skevin, 104 N.J. 476, 485, 517 A.2d 852 (1986) (defining willful blindness). Ignoring mail that contains financial records cannot provide attorneys a safe haven.

[**438] Attorneys have also asserted poor accounting or shoddy bookkeeping as a defense. But "[i]t is no defense for lawyers to design an accounting system that prevents them from knowing whether they are using clients' trust funds. Lawyers have a duty to assure that their accounting practices are sufficient to prevent misappropriation of trust funds." In re Fleischer, 102 N.J. 440, 447, 508 A.2d 1115 (1986).

Although shoddy bookkeeping alone does not establish knowing misappropriation, it is not a defense to a *Wilson* violation when the record otherwise demonstrates [***38] knowing misappropriation. In re Fleischer, 102 N.J. at 446, 508 A.2d 1115 (1986); *see also* Skevin, 104 N.J. at 486, 517 A.2d 852 (disbarring attorney who commingled personal and client funds in his trust account and did not maintain adequate records but knew, based on "unavoidable inference," that his withdrawals "endanger[ed] other clients' funds").

[*601] Similarly, ignorance of ethics rules and case law does not excuse ethical misconduct. In re Barlow, 134 N.J. at 152, 147, 641 A.2d 268 (1994); In re Eisenberg, 75 N.J. 454, 456 n.1, 383 A.2d 426 (1978).

Personal and financial hardship also cannot excuse a lawyer who takes a client's funds. The Court succinctly explained why in *In re Hughes*: "We do not condemn the individual who faces exigent circumstances. We do protect the public." 90 N.J. 32, 36, 446 A.2d 1208 (1982); *see also* In re Roth, 140 N.J. 430, 444, 658 A.2d 1264 (1995) (noting the Court has "repeatedly rejected opportunities 'to create exceptions to the *Wilson* rule, even where the misappropriation was the product of severe personal and financial hardship'" (quoting In re Warhaftig, 106 N.J. 529, 535, 524 A.2d 398 (1987))).

C.

Respondent advanced a number of the defenses discussed above, but none of them can overcome *Wilson*'s bright-line rule. Today, we make clear once again that knowing misappropriation will lead to disbarment. An attorney who knowingly takes a client's funds without permission will be disbarred.

That approach is not meant to punish lawyers. Like the overall system of attorney discipline, it is designed [***39] to protect the public and maintain confidence in the bar and the Judiciary. *Wilson*, 81 N.J. at 480-81, 409 A.2d 1153.

When clients place money in an attorney's hands, they have the right to expect the funds will not be used intentionally for an unauthorized purpose. If they are, clients can confidently expect that disbarment will follow.

Because there is clear and convincing evidence in the record, including Respondent's own admissions, that she knowingly took client and escrow funds without permission on multiple occasions, an order of disbarment will be entered. We therefore do not discuss other ethical violations Respondent committed.

[*602] IV.

A.

At the hearing before the Special Master, Respondent presented multiple character witnesses who offered compelling evidence of her personal and professional achievements. Based on that testimony, the Special Master found that "[h]er service to the community and good reputation are particularly exemplary." As noted earlier, the DRB similarly observed that "Respondent is a remarkable person who has overcome tremendous personal obstacles . . . to become a pillar of her church and local community and what appeared to be [**439] an excellent member of the New Jersey bar." We agree with those conclusions [***40] and recount some of the testimony underlying them.

Several relatives testified about Respondent's upbringing and devotion to family. Respondent was born to a sixteen-year-old mother who struggled with substance abuse. Her father was not part of her life from the time she was three years old. Respondent's mother testified that by the time Respondent graduated from high school, the family had moved more than eleven times between Passaic and Newark. While her mother was in rehabilitation, Respondent lived with a cousin.

Respondent's brother testified about how she was a stable figure in his life. He admired her work ethic and focus while in school. Later in life, she helped take care of his children when he was imprisoned for drug distribution. Respondent represented him in the criminal case. Today, her brother owns a trucking company, and the two remain close. He confirmed that neither of them had any understanding of financial matters from their upbringing.

Respondent's uncle added that he helped raise her as a child when her mother fell on hard times. Years later, when he became very ill, Respondent offered to donate a kidney for a transplant.

Other witnesses testified about Respondent's [***41] extensive involvement with her church. A fellow congregant and real estate broker testified that Respondent conducted free legal seminars at the [*603] church. He also referred real estate matters to her and noted that she willingly and professionally helped clients even if the fee was not lucrative. A former instructor at a community college echoed that she was heavily involved with her church, family, and the community. He described her as a student leader who had the respect of her peers and was active in student government. A cousin who described Respondent as a mentor testified about other activities, including Respondent's volunteer work at an aviation school to teach inner-city youth about aviation.

Yet other witnesses spoke of her work as a lawyer. A trustee of Northeast New Jersey Legal Services testified Respondent was an active participant who provided pro bono services to clients and offered workshops and seminars on bankruptcy and real estate. In 2017, Legal Services bestowed an award on Respondent for her pro bono contributions. Respondent's uncle similarly recounted that he had referred many people who needed legal assistance but could not afford to pay Respondent, and she never [***42] refused to help them.

A law school classmate and practicing attorney described Respondent as very kind, giving, always willing to help others, honest, diligent, devout, and dedicated to the law and the community. Another fellow solo practitioner and friend, who worked with Respondent on a number of legal projects over the years, praised Respondent as a hard-working, diligent, good-natured professional, with a really good heart and a strong commitment to her faith.

Vivian Clayton, a client whose funds were invaded, also testified as a character witness. She met Respondent at St. Luke Baptist Church in Paterson in around 2001. Ms. Clayton relayed that Respondent gave free legal clinics at the

250 N.J. 581, *603; 275 A.3d 426, **439; 2022 N.J. LEXIS 507, ***42

church and assisted with a transitional home for women, a summer camp program, and a school program. Notwithstanding the allegations in this disciplinary matter, Ms. Clayton described Respondent as kind, intelligent, truthful, and a hard worker with a "servant's heart."

Respondent testified as well. She explained that, while growing up in the midst [**440] of chaos, she grounded herself in two ways: [*604] through religion and in pursuit of her goal to become an attorney. After law school, she worked for the juvenile [***43] section of the Passaic County Probation Department. When she passed the bar, she opened a solo practice and focused on representing the underserved population of Paterson. She also immediately got involved with Northeast New Jersey Legal Services to do pro bono work. Legal Services honored her several times and gave her the Empowerment Award at its 50th anniversary banquet.

Respondent also described her volunteer efforts at the church where she co-founded the St. Luke's Legal Assistance Ministry; conducts various free legal seminars on domestic violence, bankruptcy, real estate, and wills and trusts; and serves as vice president of the community development board. In that position, she helps organize food drives for the needy and educational programs for children, among other community work.

B.

As the Special Master and the DRB recognized, Respondent has no prior disciplinary history. None of her clients lost money, and she promptly took remedial measures after the random audit. She cooperated with the OAE, readily admitted she borrowed clients' money without permission, and was contrite about her failure to maintain financial records properly.

C.

For the reasons discussed earlier, Respondent's [***44] personal and professional history does not provide a defense to a *Wilson* violation. But her accomplishments raise important questions about New Jersey's longstanding system of attorney discipline. In particular, should disbarment be *permanent* in all *Wilson* cases? Or should the disciplinary system offer disbarred attorneys like Respondent an opportunity for a second chance at a later point in time?

[*605] Many considerations bear on those questions, and we briefly examine a few of them.

V.

A.

All 50 states and the District of Columbia disbar attorneys who commit serious ethical violations. In a large majority of jurisdictions, however, disbarment is not permanent. Altogether, 41 states plus the District of Columbia allow attorneys to apply to be reinstated after they have been disbarred.

Most jurisdictions permit attorneys to apply for readmission 5 years after disbarment. *See* Ala. R. Disciplinary P. 25(a); Alaska Bar R. 26(k)(4); Ariz. R. Sup. Ct. 64(c); *Ark. R. Pro. Conduct* 24(B)(1); *Cal. State Bar R.* 5.442(B); Del. Lawy. R. Disciplinary P. 22(c); *Ga. R. Gov'g Admission Prac. L. pt.* A, §10(a); Haw. Bar Commn. R. 408.a; Il. Sup. Ct. R. 767.a; Iowa Ct. R. 34.25(7); *Me. Bar R.* 29(a); *Mich. Ct. R.* 9.123(B)(2); *Mo. Sup. Ct. R.* 5.28(f)(2); *Mont. R. Law. Disciplinary Enf't* 29(C)(3); *Neb. Ct. R.* 3-310(T); *N.C. R. State Bar ch.* 1, subch. B, § .0129(a)(2); N.D. R. Lawyer Discipline 4.5(D); *Okla. R. Gov'g Disciplinary Proc.* 11.1(e); Pa. R. Disciplinary Enf't 218(b); R. Gov. Bar of Ohio V, 25(A); *S.C. App. Ct. R.* 413, R. Laws.' Disciplinary Enf't 33; S.D. Codified Laws 16-19-84; Tex. R. Disciplinary P. 11.01; *Utah Code Jud. Admin. R.* 14-707(c); Vt. Admin. Ord. 9, R. 26(A); *Va. R. Sup. Ct.* pt. VI, § IV, ¶ 13-25(F)(1); Wash. Admission Prac. R. 25.1(a); *W. Va. R. Law. Disciplinary P.* 3.33(b); Wis. Sup. Ct. R. 22.29(4)(d); Wyo. R. Disciplinary P. 22.24(a).

[**441] In addition to those 31 jurisdictions, 4 others impose variations on a 5 - year time limit. *See Conn. R. Super. Ct.* §§ 2-53(b), 2-47A (5 years generally; 12 years for knowing misappropriation); *R. Regulating Fla. Bar* 3-7.10(n)(1) (5 years unless the order states disbarment is for a longer period or is [***45] permanent); Md. R. 19-752(b);

_____ , § __ (5 years unless the court determines more time is needed); _ Discipline Miss. State Bar 12 a. , __ ___ (5 years [*606] except disbarment is permanent for attorneys convicted of certain felony criminal offenses).

Disbarred attorneys can apply for readmission or reinstatement after 1 year in Hawaii, _____ Discipline Rb 30 a. ; after 7 years in New Hampshire, N.H. Sup. Ct. R. 37.16(b)(1)(A), and New York, N.Y. Ct. R. 1240.16(c)(1); and after 8 years in Colorado, Colo. R. Civ. P. 242.39 a(1), and Massachusetts, Mass. R. Sup. Jud. Ct. 4.01, § 18(2)(a).

Maryland specifies the time to apply for reinstatement in each order of disbarment. Md. R. 19.752(a)(3). Minnesota's court rule does not set a minimum waiting period to apply for readmission after disbarment, see Minn. R. Laws Pro. Resp. 18, but length of time since disbarment is a factor to be considered for reinstatement, ____ __ Anderson, 696 N.W.2d 380, 385 Minn. 2005.

Disbarment is permanent in only 8 states including New Jersey. ___ R. Admission Bar & Discipline 4.3(a) 2016 Rev.; Ky. Sup. Ct. R. 3.380; Nev. Sup. Ct. R. 102(1); N.J. Ct. R. 1:20-15A a(1), (a)(2); N.M. State Ct. R. 17-214(A); Ohio Sup. Ct. R. Gov't Bar V, §12(B); Or. State Bar R. P. 6.1(c); Tenn. Sup. Ct. R. 9, 12.01 (making disbarment permanent on or after July 1, 2020).

In one state, Louisiana, the Supreme Court retains discretion to permanently disbar a lawyer and prohibit the person from being readmitted. __ Sup. Ct. R. Law Disciplinary Enf't 19, § 10.A.(1).

The majority rule is consistent with a recommendation of the American Bar Association. ABA Model *Rule* 25A states that "[n]o lawyer may petition for readmission until five years after the effective date of disbarment." *ABA Model R. Law. Disciplinary Enf't* 25(A) (Am. Bar Ass'n 2002). The model rule also lists criteria for reinstatement [***46] and readmission. They include compliance with all prior disciplinary orders; rehabilitative treatment for physical or mental infirmity, including alcohol or drug abuse; recognition of the wrongfulness and seriousness of the prior misconduct; proof of "the requisite honesty and integrity to practice law"; competency [*607] to practice; and passage of the bar examination and character and fitness examination. *Id.* R. 25E.

Many states outline similar factors to assess whether a disbarred attorney should be reinstated. The Supreme Court of South Dakota, for example, considers the following ten factors:
1. present moral fitness;
2. acceptance of wrongdoing with sincerity and honesty;
3. extent of rehabilitation;
4. nature and seriousness of the original misconduct and the disrepute it brought on the legal profession;
5. conduct following the discipline, including whether there has been any unauthorized practice of law;
6. time elapsed since the original discipline;
7. character, maturity and experience at the time of discipline and now;
8. current competency and qualifications to practice law;
9. restitution; and

[**442] 10. proof that resumption of the practice of law within the state will not be detrimental to [***47] the integrity and standing of the bar or the administration of justice, or subversive of the public interest.

[In re Pier, 1997 SD 23, 561 N.W.2d 297, 301, S.D. 1997.]

Sixteen states require petitioners to complete examination requirements as part of the reinstatement process. Arizona, California, Colorado, Florida, Georgia, Minnesota, Mississippi, Missouri, New Hampshire, Oklahoma, and South Carolina require disbarred lawyers to retake the bar examination. Ariz. R. Sup. Ct. 64(h); *Cal. State Bar R.* 5.441(B)(4)(a); *Ga. R. Gov'g Admission Prac. L.* pt. A, § 10(f); *Okla. R. Gov'g Disciplinary Proc.* 11.5(c); *Colo. R. Civ. P.* 242.39(a)(1) (also requires the Multistate Professional Responsibility Examination (MPRE)); *R. Regulating Fla. Bar 3-7.10(f)(4)(B)* (same); R. Discipline Miss. State Bar 12.5 (same); *Mo. Sup. Ct. R.* 5.28(b)(4), (d) (same); N.H. Sup. Ct. R. 37.16(b)(4), (7) (same); *S.C. App. Ct. R.* 413, *R. Laws.' Disciplinary Enf't* 33(f)(8) (same); Minn. R. Laws Pro. Resp. 18(e) (requires completion of all written exams required for initial admission).

250 N.J. 581, *607; 275 A.3d 426, **442; 2022 N.J. LEXIS 507, ***47

Connecticut, Rhode Island, and Virginia require passage of the MPRE. *Conn. R. Super. Ct.* § 2-53(d)(3); ⬚⬚⬚⬚ ⬚⬚⬚⬚ ⬚⬚ ⬚⬚⬚⬚⬚; *Va. R. Sup. Ct.* pt. 6, § IV, ¶ 13-25(F)(4). New York requires [*608] passage of the MPRE and may require applicants to retake the bar examination. *N.Y. Ct. R.* 1240.16(b). North Carolina requires passage of the bar examination and the MPRE when a petition is filed 7 or more years after disbarment. *N.C. R. State Bar* ch. 1, subch. B, § .0129(a)(5).

Several jurisdictions decide whether to require passage of the bar examination or the professional responsibility exam on a case-by-case basis. *See* ⬚⬚ ⬚ ⬚⬚⬚⬚⬚⬚ ⬚ ⬚⬚⬚⬚ ⬚; ⬚⬚⬚ ⬚⬚ ⬚ ⬚⬚ ⬚⬚⬚; ⬚⬚ ⬚ ⬚⬚⬚⬚⬚ .

B.

Those and other considerations are relevant to any thoughtful evaluation of whether disbarment for knowing misappropriation should [***48] be permanent. To assess those and other factors, the Court will convene a committee comprised of attorneys as well as members of the public who are not lawyers.

We will ask the committee to study whether disbarment should continue to be permanent in all *Wilson* cases and to recommend standards that might apply if New Jersey were to adopt the majority approach. Among other issues to consider are the following: After what period of time might attorneys be readmitted? What factors and standard of proof should apply to that judgment? Should disbarred attorneys be required to retake the bar examination or other courses on ethics, recordkeeping, and related subjects? What process might be adopted for readmission? And what rule changes might be warranted?

To be clear, we ask the committee to recommend whether to modify the rule of permanent disbarment for matters in which disbarment has been mandatory -- that is, for knowing misappropriation of client funds under *Wilson* and of escrow funds under ⬚⬚⬚⬚⬚⬚⬚⬚. The Court made clear in *Sigman* that disbarment was not required for knowing misappropriation of law firm funds. *220 N.J. at 158, 104 A.3d 230*. We ask the committee to consider whether any rule change should apply to orders of disbarment [***49] entered before *Sigman*.

There are yet other serious matters in [*609] which the Court exercised its discretion and permanently disbarred an attorney. We invite the committee's comments on that issue as well. [**443] The committee's report will be made available to the public for comment before the Court determines how to proceed. *See N.J. Const.* art. VI, § 2, ¶ 3 ("The Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted."). We welcome input from attorneys and the public to promote the key interests at the heart of the *Wilson* rule: how best to protect the public and maintain confidence in the legal profession.

VI.

For those reasons, we enter an order of disbarment for Respondent and ask the Director of the Administrative Office of the Courts to help assemble a committee to study whether disbarment should continue to be permanent in all cases of knowing misappropriation.

JUSTICES ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in CHIEF JUSTICE RABNER's opinion. JUDGE FUENTES (temporarily assigned) did not participate.

# APPENDIX D

*N.J. Court Rules, R. 1:20-20*

Current with all changes received through September 23, 2022

**NJ - New Jersey State & Federal Court Rules > Rules Governing the Courts of the State of New Jersey > PART I. Rules of General Application > CHAPTER II. Conduct of Lawyers, Judges and Court Personnel**

## Rule 1:20-20. Future Activities of Attorney Who Has Been Disciplined or Transferred to Disability-Inactive Status.

**(a)** Prohibited Association. No attorney or other entity authorized to practice law in the State of New Jersey shall, in connection with the practice of law, employ, permit or authorize to perform services for the attorney or other entity, or share or use office space with, another who has been disbarred, resigned with prejudice, transferred to disability- inactive status, or is under suspension from the practice of law in this or any other jurisdiction.

**(b)** Notice to Clients, Adverse Parties and Others. An attorney who is suspended, transferred to disability-inactive status, disbarred, or disbarred by consent or equivalent sanction:

**(1)** shall not practice law in any form either as principal, agent, servant, clerk or employee of another, and shall not appear as an attorney before any court, justice, judge, board, commission, division or other public authority or agency;

**(2)** shall not occupy, share or use office space in which an attorney practices law;

**(3)** shall not furnish legal services, give an opinion concerning the law or its application or any advice with relation thereto, or suggest in any way to the public an entitlement to practice law, or draw any legal instrument;

**(4)** shall not use any stationery, sign or advertisement suggesting that the attorney, either alone or with any other person, has, owns, conducts, or maintains a law office or office of any kind for the practice of law, or that the attorney is entitled to practice law;

**(5)** shall, except for the purposes of disbursing trust monies for the 30-day period stated in this subparagraph, cease to use any bank accounts or checks on which the attorney's name appears as a lawyer or attorney-at-law or in connection with the words "law office". If the suspension is for a period greater than six months, or involves a temporary suspension that lasts for more than six months, or involves transfer to disability-inactive status, disbarment, disbarment by consent or their equivalent sanction, the attorney shall, within the 30 day period prescribed in subparagraph (15), disburse all attorney trust account monies that are appropriate to be disbursed and shall arrange to transfer the balance of any trust monies to an attorney admitted to practice law in this state and in good standing for appropriate disbursement, on notice to all interested parties, or dispose of the balance of funds in accordance with *R. 1:21-6(j)*, "Unidentifiable and Unclaimed Trust Fund Accumulations and Trust Funds Held for Missing Owners"; however, it shall not be a violation of this subparagraph for an attorney to take appropriate action to comply after the stated 30-day period;

**(6)** shall, from the date of the order imposing discipline (regardless of the effective date thereof), not solicit or procure any legal business or retainers for the disciplined attorney or for any other attorney;

**(7)** shall promptly request the telephone company to remove any listing in the telephone directory indicating that the attorney is a lawyer, or holds a similar title;

**(8)** shall promptly request the publishers of Martindale-Hubbell Law Directory, the New Jersey Lawyers Diary and Manual, and any other law list in which the attorney's name appears, including all websites on which the attorney's name appears, to remove any listing indicating that that attorney is a member of the New Jersey Bar in good standing;

**(9)** shall notify the admitting authority in any jurisdiction to whose bar the attorney has been admitted of the disciplinary action taken in the State of New Jersey;

**(10)** shall, except as otherwise provided by paragraph (d) of this rule, promptly notify all clients in pending matters, other than litigation or administrative proceedings, of the attorney's suspension, transfer to disability-inactive status, disbarment, or disbarment by consent, and of the attorney's consequent inability to act as an attorney due to disbarment, suspension, or disability-inactive status, and shall advise said clients to seek legal advice elsewhere and to obtain another attorney to complete their pending matters. Even if requested by a client, the attorney may not recommend another attorney to complete a matter. When a new attorney is selected by a client, the disciplined or former attorney shall promptly deliver the file and any other paper or property of the client to the new attorney or to the client if no new attorney is selected, without waiving any right to compensation earned as provided in paragraph (13) below;

**(11)** shall, except as otherwise provided by paragraph (d) of this rule, as to litigated or administrative proceedings pending in any court or administrative agency, promptly give notice of the suspension, transfer to disability-inactive status, disbarment, or disbarment by consent and of the consequent inability to act as an attorney due to disbarment, suspension, or disability-inactive status, to: (1) each client; (2) the attorney for each adverse party in any matter involving any clients; and (3) the Assignment Judge with respect to any action pending in any court in that vicinage, or the clerk of the appropriate appellate court or administrative agency in which a matter is pending. The notice to clients shall advise them to obtain another attorney and promptly to substitute that attorney for the disciplined or former attorney. Even if requested by a client, the disciplined or former attorney may not recommend an attorney to continue the action. The notices to opposing attorneys and the Assignment Judge or Court Clerk shall clearly indicate the caption and docket number of the case or cases and name and place of residence of each client involved. In the event a client involved in litigation or a pending proceeding does not obtain a substitute attorney within 20 days of the mailing of said notice, the disciplined or former attorney shall move pro se in the court or administrative tribunal in which the action or proceeding is pending for leave to withdraw therefrom. When a client selects a new attorney, the disciplined or former attorney shall promptly deliver the file and any other paper or property of the client to the new attorney or to the client if no attorney is selected, without waiving any right to compensation earned, as provided in paragraph (13), below;

**(12)** shall, in all cases in which the attorney is then acting, or who thereafter attempts to obtain letters of appointment from a Surrogate to act, in any specified fiduciary capacity, including, but not limited to, executor, administrator, guardian, receiver or conservator, promptly notify in writing all (1) co-fiduciaries, (2) beneficiaries, (3) Assignment Judges and Surrogates of any vicinage and county out of which the matter arose, of the attorney's suspension, transfer to disability-inactive status, disbarment, or disbarment by consent. Such notice shall clearly state the name of the matter, any caption and docket number, and, if applicable, the name and date of death or current residence of the decedent, settlor, individual or entity with respect to whose assets the attorney is acting as a fiduciary;

**(13)** shall not share in any fee for legal services performed by any other attorney following the disciplined or former attorney's prohibition from practice, but may be compensated for the reasonable value of services rendered and disbursements incurred prior to the effective date of the prohibition, provided the attorney has fully complied with the provisions of this rule and has filed the required affidavit of compliance under subparagraph (b)(15). The reasonable value of services for the disciplined or former attorney and the substituted attorney shall not exceed the amount the client would have had to pay had no substitution been required. If an attorney-trustee has been appointed under ~~R. 1:20-19~~, all fees for legal services and other compensation due the attorney shall be paid solely to the attorney-trustee for disbursement as directed by the court in accordance with the provisions of that rule.

N.J. Court Rules, R. 1:20-20

Compensation shall include any monies or other thing of value paid for legal services due or that is related to any agreement, sale, assignment or transfer of any aspect of the attorney's share of a law firm;

**(14)** shall maintain:

**(A)** files, documents, and other records relating to any matter that was the subject of a disciplinary investigation or proceeding;

**(B)** files, documents, and other records relating to all terminated matters in which the disciplined or former attorney represented a client prior to the imposition of discipline;

**(C)** files, documents, and other records of pending matters in which the disciplined or former attorney had responsibility on the date of, or represented a client during the year prior to, the imposition of discipline or resignation;

**(D)** all financial records related to the disciplined or former attorney's practice of law during the seven years preceding the imposition of discipline, including but not limited to bank statements, time and billing records, checks, check stubs, journals, ledgers, audits, financial statements, tax returns, and tax reports; and

**(E)** all records relating to compliance with this rule.

**(15)** shall within 30 days after the date of the order of suspension (regardless of the effective date thereof) file with the Director the original of a detailed affidavit specifying by correlatively numbered paragraphs how the disciplined attorney has complied with each of the provisions of this rule and the Supreme Court's order. Signed copies of that affidavit shall be provided at the same time to the Clerk of the Supreme Court and to the Disciplinary Review Board. The affidavit shall be accompanied by a copy of all correspondence sent pursuant to this rule and shall also set forth the current residence or other address and telephone number of the disciplined or former attorney to which communications may be directed. The disciplined or former attorney shall thereafter inform the Director of any change in such residence, address, or telephone number. The affidavit shall also set forth whether the attorney maintained malpractice insurance coverage for the past five years and, for each policy maintained, the name of the carrier, the carrier's address, the policy number, and the dates of coverage. The affidavit shall also attach an alphabetical list of the names, addresses, telephone numbers, and file numbers of all clients whom the attorney represented on the date of discipline or transfer to disability-inactive status.

**(c)** Failure to Comply. Failure to comply fully and timely with the obligations of this rule and file the affidavit of compliance required by paragraph (b)(15) within the 30-day period, unless extended by the Director for good cause, shall, in the case of a suspension, preclude the Board from considering any petition for reinstatement until the expiration of six months from the date of filing proof of compliance in accordance with R. 1:20-21(A). Such failure shall also constitute a violation of RPC 8.1(b) (failure to cooperate with ethics authorities) and RPC 8.4(d) (conduct prejudicial to the administration of justice). The Director also may file and prosecute an action for contempt pursuant to R. 1:10-3.

**(d)** Definite Suspension of Six Months or Less. A lawyer who has been suspended for a definite period of six months or less is exempt from the requirements of paragraph (b)(7) and (b)(8).

**(e)** Responsibility of Partners and Shareholders. An attorney who is affiliated with the disciplined or former attorney as a partner, shareholder, or member shall take reasonable actions to ensure that the attorney complies with this rule. In lieu of compliance by the attorney with the requirement of paragraph (b)(10) and (b)(11), the firm, corporation, or limited liability entity may promptly notify all clients represented by the disciplined or former attorney of the attorney's inability to act due to disbarment, suspension, or disability-inactive status and that the firm will continue to represent the client unless the client requests in writing that the firm withdraw from the matter and substitute a new attorney.

If the disciplined or former attorney fails to comply with this rule within 30 days of the date of suspension, transfer, or disbarment, the law firm shall do so. Proof of compliance shall be by verified

N.J. Court Rules, R. 1:20-20

affidavit of a member of the firm, shareholder, or member filed with the Director within 30 days of the date of suspension, transfer, or disbarment. The affidavit shall be accompanied by a copy of all notices sent to clients pursuant to this paragraph.

# History

Adopted February 23, 1978, to be effective April 1, 1978; amended January 31, 1984 to be effective February 15, 1984; amended July 13, 1994 to be effective September 1, 1994; paragraph (a) was former      , new paragraphs (b), (c) and (d) adopted January 31, 1995 to be effective March 1, 1995; paragraph (d); amended July 10, 1998 to be effective September 1, 1998; paragraphs (a), (b)(10), (b)(11) and (d); amended, paragraphs (b)(12), (b)(13), and (b)(14); amended and redesignated as paragraphs (b)(13), (b) (14), and (b)(15), and new paragraph (b)(12) adopted July 5, 2000 to be effective September 5, 2000; caption of rule; amended, paragraphs (a) and (b); amended, former paragraph (c) redesignated as (d), former paragraph (d) redesignated as (e) and; amended, and new paragraph (c) adopted July 28, 2004 to be effective September 1, 2004; subparagraphs (b)(5), (b)(7), and (b)(8); amended July 9, 2008 to be effective September 1, 2008.

New Jersey State & Federal Court Rules
Copyright © 2022 NEW JERSEY COURT RULES ANNOTATED All rights reserved.

End of Document

Supreme Court of Ohio Clerk of Court - Filed January 19, 2024 - Case No. 2014-2157

# APPENDIX E

*N.J. Court Rules, R. 1:20-21*

Current with all changes received through September 23, 2022

**NJ - New Jersey State & Federal Court Rules > Rules Governing the Courts of the State of New Jersey > PART I. Rules of General Application > CHAPTER II. Conduct of Lawyers, Judges and Court Personnel**

# Rule 1:20-21. Reinstatement after final discipline.

**(a)** Definite Suspension of More Than Six Months and Indefinite Suspensions. After the expiration of a definite suspension of more than six months or at any time after an indefinite suspension has been ordered, an attorney may file a verified petition for reinstatement with the Disciplinary Review Board pursuant to this rule.

**(b)** Definite Suspension of Six Months or Less. A lawyer who has been suspended for a definite period of six months or less may file a petition for reinstatement and publish notice of reinstatement forty days prior to the expiration of the period of suspension. All other procedures specified by this rule shall apply, except that the petition need not contain responses to paragraphs (f)(6), and (f)(8) to (f)(10), inclusive.

**(c)** Filing and Service of Petition. The petitioner shall file an original and 12 copies of the verified petition with the Board and shall serve two copies on the Director.

**(d)** Costs. Petitions for reinstatement shall be accompanied by a non-refundable check payable to the Disciplinary Oversight Committee in the amount of $750 to cover the reasonable administrative costs of processing the petition. Either the Board or the Court may also direct the petitioner to pay such additional sum during the processing of a petition as it deems appropriate to meet the cost of actual out-of-pocket expenses, including, but not limited to, medical or psychiatric examinations, transcripts and other investigatory and review expenses deemed necessary to a proper evaluation of the reinstatement petition.

**(e)** Publication of Notice. Contemporaneously with the filing of the petition for reinstatement, or within twenty-one days prior thereto, the petitioner shall publish a notice of application for reinstatement in bold-faced type in all official newspapers designated by the Supreme Court and in a newspaper of general circulation in each county in which the respondent last maintained a law office and in the county in which respondent resided at the time of the imposition of discipline. Publication of a notice shall be sufficient if in the following language: NOTICE TO THE PUBLIC. John Doe, who was admitted to the bar of the State of New Jersey on ..................... , 20.... and who was thereafter suspended from the practice of law by the Supreme Court, is applying to be reinstated to the practice. Objections or relevant information concerning this application for reinstatement should be forwarded immediately to Chief Counsel, Disciplinary Review Board, P.O. Box 962, Trenton, New Jersey 08625-0962.

**(f)** Contents of Petition. The petitioner shall provide a certified petition for reinstatement setting forth all material facts on which the petitioner relies to establish fitness to resume the practice of law. The petition shall in the discretion of the Board considering the nature of the disciplinary offense contain, in correlatively numbered paragraphs, the following information:

**(1)** the name of the petitioner and a copy of a current photograph of petitioner, not smaller than three inches by three inches showing front and side views;

**(2)** the date on which the suspension was imposed and the citation of the reported opinion, if any;

**(3)** the age, current residence address and telephone number of the petitioner, the address of all residences maintained during the suspension period and the date of each residence;

N.J. Court Rules, R. 1:20-21

**(4)** the nature of petitioner's occupation during the suspension, including the name and address of each employer, the dates of each employment, the positions occupied and titles held, the name, address and telephone of the immediate supervisor, and the reason for leaving the employment;

**(5)** the case caption, general nature, dates and disposition of every civil, criminal, administrative or disciplinary action which was pending during the period of suspension to which petitioner was either a party or claimed an interest;

**(6)** petitioner's written consent to the Board and to the Director to examine and secure copies of any records relating to any criminal investigation of or action against petitioner;

**(7)** a statement of the monthly earnings and other income of the petitioner and the sources from which all earnings and income were derived during the period of suspension;

**(8)** a statement of assets and financial obligations of the petitioner as of the date of the original suspension and at the time of the reinstatement application, the dates when acquired or incurred, and the names and addresses of all creditors;

**(9)** the names and addresses of all financial institutions at which petitioner had, or was signatory to, accounts, safety deposit boxes, deposits or loans during the period of suspension, the number of each account, box, deposit or loan; the date each account, box, deposit or loan was opened, approved or made; and the date each account, box, deposit or loan was closed, discharged or paid;

**(10)** copies of petitioner's federal and state income tax returns and any business tax returns for each of the three years immediately preceding the date the petition is filed and for each year, or part of a year, during the period of suspension and, in an appropriate form, petitioner's written consent to the Board and the Director to secure copies of the original returns;

**(11)** a statement of restitution made for any and all obligations to all former clients and the Lawyers' Fund for Client Protection and the source and amount of funds used for this purpose;

**(12)** whether the petitioner, during the period of suspension, sought or obtained assistance, consultation or treatment, whether as an in- or out-patient, for a mental or emotional disorder or for addiction to drugs or alcohol, if such services relate to the disciplinary offenses or the Board determines that such information is relevant to the petitioner's present ability to practice law. The name, address and telephone of each provider of these services, the services rendered, their duration and purpose and a copy of all medical records shall be provided to the Board;

**(13)** whether the petitioner, during the period of suspension, applied for admission or reinstatement to practice as an attorney in this state or any other state and the caption and details of the application;

**(14)** whether the petitioner has ever applied for or been granted a license or certificate relating to any business or occupation and whether that license or certificate has ever been the subject of any disciplinary action and the details thereof;

**(15)** a statement as to whether or not any applications were made during the period of suspension for a license requiring proof of good character, the dates, name, address and telephone of the authority to whom such applications were addressed and the disposition thereof;

**(16)** whether petitioner, during the period of suspension, engaged in the practice of law in any jurisdiction and all material facts relating thereto;

**(17)** a statement of any procedure or inquiry during the period of suspension, relating to petitioner's standing as a member of any other profession or organization, or holder of any license or office, which involved the censure, removal, suspension, revocation of license, or discipline of petitioner, and, as to each, the dates, facts, and the disposition thereof and the name, address and telephone of the authority in possession of the record thereof;

**(18)** a written representation of petitioner's intentions concerning the practice of law, if reinstated;

**(19)** a newly completed Annual Attorney Registration Statement;

N.J. Court Rules, R. 1:20-21

**(20)** a copy of the detailed affidavit required to be filed in accordance with ⬚⬚⬚⬚;

**(21)** such other information as the Director, the Board or the Supreme Court may from time to time require.

**(g)** Objections by Director; Recommendation by the Board. Within 21 days following receipt of the petition or 14 days if the period of suspension was six months or less, the Director shall file an original and 12 copies of a response with the Board either objecting or not objecting to the petition. The Director shall serve the respondent with a copy of the response. If the Director consents or fails to file objections, the Board may submit its findings and recommendations to the Supreme Court. If the Director files objections, the Board may set the matter down for oral argument on notice to the parties or may, after considering the objections, submit its findings and recommendations as to the attorney's fitness to practice law to the Supreme Court without argument. The Board may recommend and the Court may impose conditions on the attorney's reinstatement deemed necessary to protect the lawyer, clients or the public.

**(h)** Referral to Trier of Fact. In an appropriate case, the Board may refer specific issues regarding reinstatement to a trier of fact, which shall then hold a hearing and furnish the Board with a report of findings and recommendations.

**(i)** Consideration of Petition for Reinstatement. No petition for reinstatement shall be considered by the Board unless:

**(A)** the respondent first affirmatively demonstrates full and timely compliance with ⬚⬚⬚⬚. If compliance has not occurred, and if the required affidavit of compliance has not been timely filed, the Board shall not consider the petition until the expiration of six months from the date of filing of that proof of compliance.

**(B)** all disciplinary costs assessed have been paid, unless an extraordinary financial hardship claim has been timely requested and granted and unless respondent is current in the schedule of payments thereunder;

**(C)** all orders for restitution have been paid;

**(D)** the respondent has reimbursed or has reached agreement in writing with the Lawyers' Fund for Client Protection to reimburse it in full for all sums paid or authorized to be paid as a result of the respondent's conduct;

**(E)** all annual registration fees and charges for ethics and the Lawyers' Fund for Client Protection have been paid.

**(j)** Successive Petitions. Except as otherwise ordered by the Supreme Court, a petitioner may not file a subsequent petition for reinstatement until six months after the Supreme Court has adversely decided the prior petition.

**(k)** Public Proceedings and Records. All reinstatement records and proceedings shall be considered public in accordance with *R. 1:20-9*.

**(l)** Standard of Proof. The standard of proof in reinstatement proceedings shall be by clear and convincing evidence.

**(m)** Burden of Proof; Burden of Going Forward. The burden of proof in proceedings seeking reinstatement shall be on the petitioner.

# History

Adopted January 31, 1995 to be effective March 1, 1995; paragraph (e); amended July 12, 2002 to be effective September 3, 2002; paragraphs (c), (d), (e), (f), (g), (h), and (i); amended and new paragraphs (l) and (m) adopted July 28, 2004 to be effective September 1, 2004.

N.J. Court Rules, R. 1:20-21

New Jersey State & Federal Court Rules
Copyright © 2022 NEW JERSEY COURT RULES ANNOTATED All rights reserved.

End of Document

# APPENDIX F

**LexisNexis New Jersey Court Rules Annotated > PART I RULES OF GENERAL APPLICATION > CHAPTER II CONDUCT OF LAWYERS, JUDGES AND COURT PERSONNEL > RULE 1:20 DISCIPLINE OF MEMBERS OF THE BAR > 1:20-18 Supervision of disciplined attorney**

## 1:20-18

(a) **Generally.** An order of discipline or reinstatement entered by the Supreme Court may require the respondent to practice law under supervision by a practicing attorney. Such order shall include the general conditions prescribed by this rule and such specific additional conditions as the Director may require with the approval of the Supreme Court.

(b) **Violation of Supervision or RPC's.** The supervisor and the respondent shall report promptly to the Director any facts that appear to constitute a violation by the respondent of the Rules of Professional Conduct or the conditions of supervision.

(c) **Mental or Physical Disability.** The supervisor and the respondent shall report promptly to the Director any facts that appear to demonstrate alcohol or substance abuse by the respondent, or that indicate that the respondent may be incapacitated from practicing law by reason of mental or physical infirmity or illness.

(d) **Weekly Conferences.** The supervisor shall confer in person with the respondent at least weekly to review the status of all matters being handled.

(e) **Time Records.** The respondent shall maintain contemporaneous time records on all legal matters, which shall be retained for a minimum of one year after termination of the supervisory period.

(f) **New Cases.** The respondent shall not accept any cases without the prior approval of the supervisor.

(g) **Respondent's Monthly Reports.** The respondent shall provide monthly Case Listing Reports to the supervisor by the fifth business day of each month, listing for each case assigned to the respondent: (1) the case caption, (2) the full name and address of the client(s), (3) a brief description of the nature of the case, (4) a brief narrative of its current status, (5) the name of all opposing attorneys, and (6) in all litigated matters, the name of the court and docket number, as well as the names of all judges before whom the attorney appeared during that month. The respondent shall certify all monthly reports in accordance with *Rule 1:4-4(b)*. Reports shall be submitted in a form acceptable to the Director.

(h) **Supervisor's Quarterly Reports.** The supervisor shall provide to the Director the supervisor's Quarterly Reports in a form acceptable to the Director beginning on the tenth business day of the third month following respondent's order of discipline or of reinstatement by the Supreme Court of New Jersey imposing Conditions of Supervision. Reports shall be made quarterly thereafter on the tenth business day of the month. The quarterly report shall be certified in accordance with *Rule 1:4-4(b)* and shall have appended to it a copy of each monthly Case Listing Report submitted by the respondent during the quarter. The quarterly report shall set forth the supervisor's overall analysis of the handling of all legal matters entrusted to the respondent and shall indicate specifically whether, in the supervisor's judgment, the respondent's handling of any matter is unsatisfactory. The supervisor shall support his or her conclusions by a brief statement of facts and reasons.

**(i) Financial Record Keeping Instructions.**During the term of this supervision, the supervisor shall instruct the respondent as to the proper maintenance of trust and business accounts and records in accordance with *RPC 1:15* and *Rule 1:21-6.*

**(j) Selection of Supervisor.** The respondent shall submit the name of a proposed supervisor to the Director for approval.

**(k) Termination of Supervision.**After the expiration of time set forth in the order of discipline or reinstatement imposing the Conditions of Supervision, the respondent shall apply to the Supreme Court for termination of the conditions on notice to the Director, who shall file a report and recommendation with the Court.

**(l) Failure to Comply.** If during the term of the supervision, the Director becomes aware of facts that should be brought to the Court's attention, such as a respondent's failure to comply with the conditions of supervision or a supervisor's failure to comply therewith or a request to be relieved, the Director shall petition the Court for an appropriate order on notice to the supervisor and the respondent.

Adopted January 31, 1995 to be effective March 1, 1995; paragraphs (a), (b), (c), (f), (g), (h), (i), (j), (k), and (l) amended July 28, 2004 to be effective September 1, 2004.

LexisNexis NJ Court Rules Anno.
Copyright 2016, Matthew Bender & Company, Inc., a member of the LexisNexis Group.

End of Document

# APPENDIX G

**LexisNexis New Jersey Court Rules Annotated > PART I RULES OF GENERAL APPLICATION > CHAPTER II CONDUCT OF LAWYERS, JUDGES AND COURT PERSONNEL > RULE 1:20 DISCIPLINE OF MEMBERS OF THE BAR > 1:20-15A Final disciplinary determinations; sanctions**

# 1:20-15A

(a) Categories of Discipline. The imposition of final discipline may include any of the following sanctions, all of which shall be public:

(1) Disbarment. An attorney who is disbarred shall have his or her name permanently stricken from the roll of attorneys.

(2) Indeterminate Suspension. Unless the Court's Order provides otherwise, an indeterminate suspension shall prohibit the attorney from seeking reinstatement for a minimum of five years.

(3) Term of Suspension. Absent special circumstances, a suspension for a term shall be for a period that is no less than three months and no more than three years.

(4) Censure.

(5) Reprimand.

(6) Admonition.

(b) Conditions. The Supreme Court's Order may provide for one or more of the following, either as a part of a sanction imposed pursuant to paragraph (a) or as a condition to reinstatement:

(1) Financial controls including, but not limited to, a designated co-signatory for all attorney trust and business account checks;

(2) Restrictions on the ability to practice including, but not limited to, the use of a supervising attorney approved by the Office of Attorney Ethics as a prerequisite to engaging in the private practice of law;

(3) Substance abuse control including, but not limited to, requiring abstinence, testing, and an identifiable commitment to appropriate support groups;

(4) Mental health treatment and counseling, together with a finding of fitness to practice by a mental health professional approved by the Office of Attorney Ethics;

(5) Taking and passing the New Jersey bar examination, as well as meeting all other qualifications for admission including, but not limited to, a certification of the attorney's good character by the Supreme Court after review by the Committee on Character; and

(6) Such other conditions as may be deemed appropriate in the light of the circumstances presented including, but not limited to, probation or a suspended suspension.

Adopted July 30, 2002, to be effective September 3, 2002.

LexisNexis NJ Court Rules Anno.
Copyright 2016, Matthew Bender & Company, Inc., a member of the LexisNexis Group.

# APPENDIX H

COMMITTEE ON CHARACTER
*Appointed by the Supreme Court of New Jersey*



# REGULATIONS GOVERNING THE COMMITTEE ON CHARACTER

**(Approved, as amended, by the Supreme Court, effective May 1, 2022)**

## PART I - GENERAL REGULATIONS

### REGULATION 101. Applicability and Citation of Regulations

**101:1 Adoption and Approval.** These regulations have been adopted by the Committee on Character and approved by the Supreme Court pursuant to Rule 1:25.

**101:2 Citation.** These regulations shall be referred to as "Regulations Governing the Committee on Character" of the New Jersey Supreme Court and may be cited as, for example, "RG. 102".

### REGULATION 102. Membership and Structure

**102:1 Appointments.** The Supreme Court shall appoint the Committee on Character (hereinafter known as "the Committee"), which shall consist of such members of the bar as the Court may determine. Members shall serve for terms of three (3) years and may be reappointed at the discretion of the Supreme Court. A vacancy shall be filled by the Court for the unexpired portion of the member's term. A member participating in a matter when his or her term expires may continue to participate until certification is granted or withheld.

**102:2 Statewide Chair**. The Court shall annually designate a member of the Committee to serve as Statewide Chair. The Statewide Chair shall be the administrative head of the Committee and the Statewide Panel and shall perform such other duties as are set forth in these Regulations. In the absence of the Statewide Chair or the Statewide Chair's inability to serve, the functions of that position shall be performed by the Part Chair who is senior in service and able to serve.

**102:3 Parts and Membership.**  The Committee shall be divided into such number of Parts as the Supreme Court may determine with one member of each Part designated as its Chair.  Each Part shall be assigned a specified area. The Statewide Chair may assign members of one Part temporarily to a different Part or assign files from one Part to another Part.

**102:4 Statewide Panel.** The Statewide Chair together with the individual Part Chairs shall comprise the Statewide Panel, which shall be the policy board of the Committee and shall perform such other duties as are set forth in these Regulations.

a.  Quorum. Four (4) members of the Statewide Panel shall constitute a quorum and all administrative determinations shall be made by a majority of the quorum.
b. Operations. The Statewide Panel shall, consistent with these Regulations, establish procedures, publish forms, and maintain records as required for the conduct of the Committee's operations.

**102:5 Secretary.** The Secretary of the Board of Bar Examiners shall serve as the Secretary to the Committee. The Secretary shall maintain the files of the Committee and shall be authorized to receive the Certified Statement, alternatively known as the Character and Fitness Questionnaire, of each candidate for admission to the bar, together with any other materials the Committee shall deem relevant. The Secretary shall be responsible for the transmission of the record to a Committee member for every candidate for admission to the bar in this State.


**REGULATION 103. Committee Purpose and Authority**

**103:1 Purpose.** It shall be the purpose and duty of the Committee on Character to determine the fitness to practice law of each candidate for admission to the Bar of the State of New

Jersey and thereby to promote the public interest and to protect the integrity of the legal profession. The Committee shall review the record established pursuant to these Regulations and shall certify each candidate's fitness to the Supreme Court or shall recommend the withholding of such certification or admission subject to conditions.

**103:2 Authorization.** One member may exercise the full jurisdiction and authority of the Committee as to certification pursuant to RG. 302. The withholding of certification and admission with conditions shall be in accordance with RG. 303 and RG. 304. Review of the decisions by RG. 303 hearing panels shall be in accordance with RG. 303 and 304.

**103:3 Discretion of Committee.** Except as provided by these Regulations, the Committee shall have complete discretion over its procedures.

## PART II - REQUIREMENTS OF CANDIDATES

### REGULATION 201. Submissions

**201:1 Statement of Candidate.** Each candidate shall file a Certified Statement with the Secretary to the Committee on or before a date set by the Committee. The Certified Statement shall be in the form prescribed by the Committee.

**201:2 References.** The Secretary or any member of the Committee before whom an application is pending may request that the references listed by the candidate in the Certified Statement supply information on forms prescribed by the Committee. The responses of any named references are confidential and will not be released to the candidate, except when they are to be used as evidence pursuant to RG. 303 or RG. 304 of these Regulations.

**201:3 Additional Investigation.** The Secretary or any member of the Committee may request information or documentation from candidates and appropriate sources including, but not limited to, named references, current or former employers, Federal and State regulators or agencies, other bar jurisdictions or licensing and regulating agencies, law enforcement agencies, educational institutions, financial institutions, or medical personnel.

**201:4 Waivers.** Candidates shall submit such written waivers, releases, or consents as the

Committee may require to enable it to have access to all records involving conduct, past and present. The candidate's file will be deemed abandoned if the candidate withdraws or modifies his or her written waivers, releases, or consents.

**201:5 Certification by Candidate.** The candidate's signature on any document, letter or other communication to the Committee shall constitute a certification that the candidate has read the documents and has certified to the truthfulness of the contents. The signature is equivalent to and has the same meaning and effect as the certification language contained in RG. 202:4. If the candidate is submitting documents as part of an electronic or on-line bar application and Certified Statement, typing the candidate's name and/or initials will have the same force and effect as a signature.

**REGULATION 202. Duties of Candidates**

**202:1 General Duty of Candidate.** It shall be the duty of each candidate for admission to the Bar of the State of New Jersey to disclose all available information requested by the Committee. Candidates shall be required to demonstrate their fitness to practice law in this State and their possession of the requisite traits of honesty, integrity, financial responsibility, and trustworthiness.

**202:2 Time Limitation on Candidate Response to the Committee.** Each candidate must diligently pursue his or her certification by the Committee. Candidates must respond in writing to inquiries and forward requested documentation to the reviewing member or appropriate staff for the Committee or upload the information to their on-line bar account within thirty (30) days of the inquiry, unless an extension of time for good cause is requested in writing prior to the expiration of the thirty (30) days. A grant of an extension shall be for a date certain.

**202:3 Failure to Respond in a Timely Manner.** In the absence of good cause shown to the contrary, failure to respond to inquiries by the Committee or to make a timely request for an extension of time to respond shall result in a declaration that the application for admission of the candidate has been abandoned. The Secretary of the Board of Bar Examiners shall notify the candidate in writing at the candidate's last known address. In no event shall the candidate's eligibility terminate sooner than ninety (90) days after the release of the examination results.

**202:4 Continuing duty to disclose.** A candidate shall have a continuing duty to disclose changes that occur with respect to any information given in response to questions in the Certified Statement until the attorney oath has been administered and admission confirmed by the Board of Bar Examiners or Committee. All additional information shall be promptly communicated by the candidate to the Secretary in an amendment to the Certified Statement. The candidate must provide the following certification language with each update, "I certify that the foregoing statements by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment." (R. 1:4-4(b).)

**202:5 Failure to cooperate.** A candidate's failure or refusal to supply information deemed relevant by the Committee or otherwise to cooperate with the Committee may be grounds for the withholding of certification. A candidate's file will be deemed abandoned if the candidate withdraws or modifies his or her written waivers, releases, or consents.

**202:6 Child support obligations.** Each candidate must certify as part of the Certified Statement that he or she is not the obligor of a child support order, or that the candidate is the obligor of a child support order but does not owe past-due support and has complied with all health insurance provisions related to the child, and that the candidate is not the subject of a child-support related warrant. If the candidate cannot or does not so certify, the candidate shall be ineligible for consideration for admission to the bar unless the candidate can provide satisfactory proof of an inability to pay and proof of a history of good faith efforts to pay the support and arrears when the candidate is able to do so. Upon receiving notification that the candidate cannot be certified for this reason, the candidate may not seek to reinstate his or her application for one (1) year from the date of the notification of ineligibility. If the reinstatement request is filed more than three (3) years after the candidate sat for the bar examination, retaking, and passing the bar examination shall be a prerequisite for consideration of the application. The Supreme Court may, for good cause shown, waive the retaking of the examination pursuant to RG. 402:3.

**202:7 Student loan obligations.** As a part of the Certified Statement, each candidate must certify the loan number, lender, and the amount of each student loan and that he or she is not in default of any state, federal, or governmentally guaranteed student loan. If a candidate does not so certify, or if the candidate does not provide satisfactory proof of inability to pay and that the

candidate has made good faith efforts to cure the default after having been requested to do so by the Committee, the candidate shall receive notification that the candidate is ineligible for consideration for admission. Upon receiving notification that the candidate cannot be certified for this reason, the candidate may not seek to reinstate his or her application for one (1) year from the date of the notification of ineligibility. If the reinstatement request is filed more than three (3) years after the candidate sat for the bar examination, retaking and passing the bar examination shall be a prerequisite for consideration of the application. The Supreme Court may, for good cause shown, waive the retaking of the examination pursuant to RG. 402:3.

**202:8 Ineligibility due to criminal conduct.** A candidate who has yet to complete a custodial sentence in connection with a criminal offense shall be deemed ineligible for consideration by the Committee. If the relevant conduct occurred in New Jersey, the Committee shall apply the laws of New Jersey to determine if it constitutes a criminal offense for the purposes of this regulation. If the relevant conduct occurred in another state, the Committee may apply either the laws of that jurisdiction or the laws of New jersey to determine if it constitutes a criminal offense for the purposes of this regulation.

**202:9 Severe misconduct during another state's bar examination.** A candidate who is alleged to have engaged in severe misconduct on a bar examination in another state shall not be eligible for consideration in this state until the state in which the severe misconduct occurred has completed its investigation.

**202:10 Petition based on exceptional circumstances.** A candidate who is ineligible for consideration for certification due to child support obligations (RG. 202:6), student loan obligations (RG. 202:7), criminal conduct (RG. 202:8), or severe misconduct during another state's bar examination (RG. 202:9), shall have the right to petition the Statewide Panel for a waiver of the ineligibility provision based on the demonstration of exceptional circumstances. If the Statewide Panel grants the petition, the Committee shall conduct a hearing before a RG. 303 Panel to consider the candidate's current character and fitness to be admitted to practice.

# PART III CERTIFICATION PROCEDURES

## REGULATION 301. Investigations

**301:1 Investigation assistance.** A member of the Committee may request a detailed investigation of facts and circumstances bearing on a candidate's fitness to practice law. Staff of the Committee shall, to the extent practicable, provide investigative assistance as needed. The Secretary may arrange for additional investigation or other assistance from the Administrative Office of the Courts, or such other agency as may be appropriate.

**301:2 Special Master.** When, in the discretion of the Statewide Panel, the issues involving the fitness of a candidate for admission to the bar require extensive interviews or additional resources, the Panel may apply to the Supreme Court for the appointment of a Special Master to make findings of fact and recommended conclusions. The report will be submitted to the Statewide Panel for decision before being forwarded to the Supreme Court. A Special Master shall conduct the hearings in accordance with the provisions of RG. 303:5. Retired judges may serve pro bono or, if they are on recall, may be paid at the rate in effect for judges on recall service. A Special Master may serve pro bono or may be paid the per diem rate in effect for single arbitrators under Rule 4:21A-5.

**302:1 Conduct Requiring Investigation.** The appropriate Part of the Committee, or such member or members thereof so assigned, or the staff of the Committee shall review the candidate's Certified Statement-and related documents. If, on such review, further information is deemed desirable, a request therefore may be made of the candidate or any other appropriate source. The request may be made in person or by telephone, e-mail, mail, or through the online system. Conduct requiring additional action may include, but is not limited, to the following:

a. Nondisclosure of information;

b. Academic dishonesty or misconduct;

c. Unlawful conduct, including arrests, whether resulting in conviction, dismissal, or expungement;

d. Failure to file required federal, state, or local tax returns or to pay tax obligations;

e. Financial misrepresentation, mismanagement, irresponsibility, or neglect;

f. Default or arrearages in the payment of student loans;

g. Allegations of fraud, perjury, or false swearing;

h. Misconduct in employment;

i. Evidence of moral turpitude;

j. Having been disciplined as a member of a profession, trade or occupation, including but not limited to the practice of law;

k. Failure to comply with Court orders, such as support and alimony orders;

l. Domestic violence;

m. Abuse of legal process or history of vexatious law suits;

n. Current substance abuse; or

o. Evidence of psychiatric disorders that may affect the candidate's ability to practice law in a competent, ethical, or professional manner;

p. Misconduct during a bar examination;

q. Investigation or determination of unauthorized practice of law;

r. The making of false statements or omitting material information in connection with an application to sit for a bar examination;

s. Denial of admission to the bar in another jurisdiction;

t. Acts which demonstrate disregard for the rights or welfare of others; and

u. Any other conduct or condition which reflects adversely on moral character or fitness of the candidate to practice law.

**302:2 Interview Procedures.**

a. A candidate and any other persons with knowledge relevant to the candidate's character and fitness to practice law may be asked to appear for an informal interview before the member or members. The interview shall be conducted in private unless the candidate requests otherwise. The candidate has the right to be represented by counsel. Testimony may be given under oath, and a verbatim record may be taken at the request of either the Committee or the candidate. Any member of the Committee is authorized to administer the oath to the candidate and such witnesses as may appear before the Committee. The Committee shall not be bound by the strict rules of evidence. Whenever a transcript of the record is ordered, a copy shall be furnished to the candidate.

b. Subsequent to the interview, the interviewing Committee member or members, with the approval of their Part Chair or of the Statewide Chair, may offer the candidate the opportunity to consent to admission subject to specific conditions. In such cases, the candidate shall be provided with a stipulation of conditions by consent. All stipulations of conditions by consent shall include the following: a recommendation that the candidate consider the matter carefully and that he or she consult with an attorney; and the candidate's assertion that consent is freely and voluntarily given, that he or she has not been subjected to coercion or duress, and that he or she is not under any impairment that would prevent his or her knowing and voluntary consent. The candidate shall be given thirty (30) days to sign the stipulation. All stipulations of conditions by consent must be reviewed by the Statewide Panel in accordance with RG. 304:1.

**302:3 Determination of Certification**. If the Committee determines that a candidate is fit to practice law, the member or members of the Committee shall so certify the candidate to the Supreme Court.

**302:4 Consequences of failure to certify.** If a candidate has not been certified by the Committee at the time the Board of Bar Examiners reports the results of the bar examination, such results shall not be withheld pending final Committee action. The attorney oath, however, shall not be administered to any candidate nor shall admission to the bar be given effect prior to a certification of fitness by the Committee. If a candidate attempts to be sworn in prior to Committee certification for fitness but completes an oath card and is registered, the matter may be referred to the Office of Attorney Ethics for review, if appropriate.

**302:5 Revocation of Certification.** Certification of a candidate may be revoked by the Committee at any time prior to the administration of the oath and/or entry of the information into the Roll of Attorneys on the receipt of information warranting further review. The Committee may take further action as it deems appropriate.

## REGULATION 303. Part Hearing

**303:1 When Held.** If a single member of the Committee determines not to certify a candidate as fit to practice law or desires to have a determination made by a Panel, a hearing shall be

conducted by three (3) members of the Committee. In the discretion of the assigned member, the candidate may waive entitlement to a three-member Panel and proceed with a hearing before the assigned member of the Committee.

**303:2 Reasons for a hearing**. Reasons for a hearing may include, but are not limited to, evidence of the conduct specified in RG. 302:1.

If a factual question arises in respect of the candidate's certification pursuant to RG. 202:6 or RG. 202:7, a hearing shall be held. The Panel shall make findings of fact on whether the candidate is in violation of one or more of the conditions contained in the Regulations. If the Panel determines that the candidate has failed to meet or comply with one or more of the conditions of the Regulations, the Panel shall report same for final decision on the candidate's eligibility for admission pursuant to RG. RG. 304:1.

A determination that the candidate is not currently in violation of the requirements of RG. 202:6 in respect of child support obligations shall not prohibit the Committee from inquiring into the impact of past violations of child support orders on the current fitness and character of the candidate.

**303:3 Presumption from Nondisclosure.** There shall be a rebuttable presumption that nondisclosure of a material fact in the Certified Statement is prima facie evidence of the lack of good character.

a. The presumption shall be the same whether the nondisclosure is discovered prior or subsequent to the applicant's admission to the bar.
b. The presumption may be rebutted by clear and convincing evidence of mistake or of rehabilitation and current good character.

**303:4 Notice.** The hearing shall be conducted on at least seven days' written notice to the candidate. The notice shall state the reasons for the hearing. Once notice has been given of hearing, the candidate and/or candidate's counsel shall communicate only through designated Committee staff and not directly with the hearing panel or the Statewide Panel.

**303:5 Procedures.** A candidate has the right to be represented by counsel, to present witnesses, and to cross-examine witnesses. The hearing shall be conducted in private. The Panel shall have the sole discretion to determine who may be present in the hearing room and whether to sequester witnesses. All testimony shall be given under oath. Any member of the Committee is authorized to administer oaths to the candidate and such witnesses as may appear before the Committee. Testimony and written documentation need not be presented in strict accordance with the rules of evidence. A verbatim record may be made at the request of either the candidate or the Committee. Whenever a transcript of the record is ordered by the Committee, a copy shall be furnished to the candidate. The Committee may issue subpoenas in the same manner as provided by Rule 1:20-7(i).

**303:6 Burden of Proof**. The candidate shall have the burden to establish by clear and convincing evidence his or her good character and current fitness to be admitted to the practice of law in this State. Among the factors the Committee shall take into consideration are the:

a. Severity of the conduct;

b. Cumulative nature of the conduct;

c. Candidate's candor and honesty before the Panel;

d. Age of the candidate at the time of the alleged misconduct; and

e. Any rehabilitation evidence presented by the candidate.

**303:7 Rehabilitation Evidence**. The candidate may present rehabilitation evidence including, but not limited to:

a. Positive social conduct and community service;

b. Absence of recent misconduct;

c. Reputation testimony;

d. Demonstration of the candidate's understanding of responsibility to the administration of justice and the practice of law.

Substance abuse or mental illness may not be considered a defense or justification for misconduct, but evidence of treatment and recovery may be offered to support a claim of rehabilitation.

**303:8 Determination; Report and Recommendations.**

On the conclusion of the hearing, if the evidence adduced clearly and convincingly demonstrates that the matter could have been resolved appropriately through the informal interview process set forth in RG. 302, the Panel may certify the candidate pursuant to RG. 302:3. The vote of each member shall be expressly noted. Any Panel member who does not join in the report may prepare a separate report.

     a. If the Panel determines that the candidate can be admitted subject to specific conditions, the panel may offer the candidate the opportunity to consent to admission subject to those conditions. In such cases, the Panel shall not issue a report. The candidate shall be provided with a stipulation of conditions by consent. All stipulations of conditions by consent shall include the following: a recommendation that the candidate consider the matter carefully and that he or she consult with an attorney; and the candidate's assertion that his or her consent is freely and voluntarily given, that he or she has not been subjected to coercion or duress, and that he or she is not under any impairment that would prevent his or her knowing and voluntary consent. The candidate shall be given thirty (30) days to sign the stipulation. All stipulations of conditions by consent must be reviewed by the Statewide Panel in accordance with RG. 304:1.

     b. If the Panel determines to certify the candidate, it shall file a report with the Secretary and the Statewide Panel. A copy shall be sent forthwith to the candidate.

     c. If the Panel determines to recommend that certification be withheld, it shall file a report with the Secretary and the Statewide Panel. A copy shall be sent forthwith to the candidate. Reasons for withholding certifications may include, but need not be limited to, the criteria listed in RG. 302:1.

     d. In cases in which the Panel determines that inappropriate conduct has resulted from substance abuse, mental illness, psychological disorder, or such other grounds as the Committee, with good cause, may determine, or when the candidate has been treated for substance abuse or bipolar disorder, schizophrenia, paranoia, or other psychotic disease substance abuse, bipolar disorder, schizophrenia, paranoia, or other psychotic disease within the twelve months preceding

the submission of the Statement, the Panel may recommend certification subject to conditions. If the Panel determines to certify with conditions, it shall file a report with the Secretary and the Statewide Panel. A copy shall be sent forthwith to the candidate.

## REGULATION 304. Review of RG 303 Hearing Reports and Recommendations and Stipulations of Conditions by Consent.

### 304:1 Review by Statewide Panel.

The Statewide Panel shall review every report and recommendation made by a Hearing Panel pursuant to RG. 303. The Statewide Panel also shall review all stipulations of conditions by consent. The Statewide Panel shall have plenary powers to:

a. Approve the recommendations of the RG. 303 Hearing Panel;

b. Modify the recommendation, including recommending, rejecting, or modifying proposed conditions;

c. Recommend the withholding of certification;

d. Approve a stipulation of conditions by consent, after which the candidate may be certified for admission with conditions without further review by the Supreme Court;

e. Reject a stipulation of conditions by consent, after which the matter will be referred for further proceedings in accordance with the directions of the Chair of the Statewide Panel;

f. Modify the conditions in any stipulation of conditions by consent and offer the candidate the opportunity to consent to the conditions as modified. The candidate shall be given thirty (30) days to sign the stipulation. If the candidate does not consent to the conditions as modified, the matter will be referred for further proceedings in accordance with the directions of the Chair of the Statewide Panel; or

g. Remand the matter to the Hearing Panel for further proceedings.

The Statewide Panel shall take final action on a stipulation of conditions by consent in accordance with d., e. or f. above within thirty (30) days of the date the candidate signs the stipulation. With the exception of actions taken regarding stipulations of conditions by consent, the Statewide Panel shall file its report and recommendation with the Secretary who shall refer the report to the Supreme Court for final approval pursuant to RG. 304:2. A copy shall be sent

forthwith to the candidate. If the Statewide Panel's recommendation is to withhold certification, or to certify with conditions, the candidate shall have fifteen (15) days from the filing date of the report within which to submit an original plus eight (8) copies of written exceptions to the Supreme Court on the papers submitted unless the Court directs additional filings or oral argument. The decision of the Supreme Court shall be transmitted by the Clerk of the Supreme Court to the candidate and to the Committee.

**304:2 Determination by Supreme Court**. The Supreme Court shall make the final determination on the papers submitted unless the Court directs additional filings or oral argument.

**304:3 Request to Reopen.** Following a final decision to withhold certification, which is a denial of admission, a candidate may reapply for admission when the candidate can demonstrate clear and convincing evidence of rehabilitation and current fitness to practice law, but no earlier than one (1) year from the date of the final decision or as otherwise provided in the order of the Supreme Court. The Supreme Court may require a candidate seeking to reopen his or her application to retake the bar examination if the examination on which admission would otherwise be based occurred more than three (3) years prior to the date the candidate is eligible to reapply for admission.

a. The candidate shall submit an original verified petition and eight (8) copies with appropriate supporting documentation attesting to the candidate's rehabilitation and current fitness to practice law as the request to reopen. If the petition is granted, the candidate must submit another four (4) copies of the petition with appropriate supporting documentation for use by the hearing panel convened for this purpose.

b. The State Chair or, in the event of the Chair's unavailability, the most senior Part Chair shall appoint a panel of three (3) members to review the petition and make a recommendation on the petition to the Supreme Court.

1. The panel may appoint a member of the Committee to investigate and report on the candidate's petition.

2. The record before the panel shall consist of the candidate's existing file, the verified

petition and supporting documentation together with such additional evidence as may be considered by the panel in its discretion.

3. The panel may, in its discretion, take testimony or hear oral argument on the petition.

4. The panel shall prepare and forward a report and recommendation to the Supreme Court for appropriate action.

A candidate who has been deemed ineligible for consideration for admission because of his or her failure to meet the conditions set forth in RG. 202:6 (Child Support Obligations) may apply to reopen in accordance with these Regulations and on the submission of satisfactory proof of his or her compliance with all child support orders.

A candidate who has been deemed ineligible for consideration for admission because of his or her failure to meet the conditions set forth in RG. 202:7 (Student Loan Obligations) may apply to reopen in accordance these Regulations and on submission of satisfactory proof that the candidate has made satisfactory arrangements for the repayment of each defaulted loan.

**304:4 Withdrawal of Application; Reinstatement**.

a. A candidate may withdraw his or her application at any time prior to the submission to the Statewide Panel of the RG 303 report and recommendation or an executed Stipulation of Conditions by Consent. Failure to give the Committee written notice of the withdrawal in a timely manner will result in the matter proceeding to disposition before the Supreme Court pursuant to RG. 304:2.

b. A candidate who withdraws may not seek to reinstate his or her application for one (1) year from the date of withdrawal. If the reinstatement request is filed more than three (3) years after the candidate sat for the bar examination, retaking and passing the examination shall be a prerequisite for consideration of the application. The Supreme Court may, for good cause shown, waive the retaking of the examination.

c. A candidate who successfully reinstates his or her application must submit a current Certified Statement and updated attachments and be fingerprinted again. The record before the reviewing RG. 303 Panel will consist of the original file, including but not limited to all transcripts,

exhibits, briefs, and reports, supplemented as may be appropriate by testimony and exhibits presented to the Panel. To the extent feasible, the Statewide Chair will appoint the original Panel members to consider the renewed application.

**304:5 Petitions for Termination from Conditions**.

a. If the Court grants conditional admission to a candidate, the conditionally admitted attorney must comply with the terms of the Order and file quarterly certifications as directed by the Committee.

**b.** A list of conditionally admitted lawyers shall be transmitted each month to the Office of Attorney Ethics. In the event a complaint of unethical conduct is filed against the conditionally admitted lawyer or there is a violation of the Order of conditional admission, the Committee's file may be transmitted to the Office of Attorney Ethics upon the request of that Office.

c. The terms of the conditional admission shall remain in place until subsequent Order of the Court modifying or terminating the conditional admission.

d. Any candidate seeking to terminate the conditions of his or her conditional admission at the end of the period set forth in the Order shall cause to be filed an original and eight (8) copies of a petition that shall be reviewed by the Statewide Panel.

1. After review of the petition, the Statewide Panel shall recommend action to terminate, modify, or extend conditions of admission and the Court shall review same and issue an Order:

2. If the Statewide Panel deems it necessary to take testimony from the conditionally admitted attorney, the Chair of the Statewide Panel may appoint a panel consisting of three (3) members of the Statewide Panel to conduct such hearing and issue a report that shall be reviewed by the Court.

3. The Statewide Panel or any subpanel may require the conditionally admitted attorney to obtain an evaluation or provide further information before making its determination. Failure to

comply with the requests of the Committee may cause the file to be transmitted to the Office of Attorney Ethics for review.

## REGULATION 305. Revocation of Certification

**305:1 Revocation of prior certification.** When the Committee receives information that is unfavorable or otherwise requires the attention of the Committee in respect of a previously certified candidate whose name has not been entered on the Roll of Attorneys, the original certification shall be revoked and, whenever possible, the candidate's file shall be forwarded for review to the member who previously granted certification. If the member is no longer on the Committee, the Part Chair or his or her designee will review the matter. This section shall apply whether the information is obtained from the candidate as required by RG. 202 or from a third party. If the information is received after the attorney's name has been entered on the Roll of Attorneys and the Committee deems the information significant, the matter will be referred to the Office of Attorney Ethics for review.

## PART IV - COMMITTEE RECORDS

## REGULATION 401. Confidentiality; Retention

**401:1 Confidentiality.** All Certified Statements, reference letters, records, files, proceedings and reports of the Committee shall be confidential and shall not be disclosed or attended by anyone except as authorized by these rules or as provided by the Supreme Court and as follows:

a. At the request of or with the consent of the candidate in which event the Certified Statement may be released; or
b. At the request of the New Jersey Office of Attorney Ethics, the Disciplinary Review Board, or the Committee on the Unauthorized Practice of Law in connection with the consideration and determination of the appropriate sanctions that should be imposed on an attorney who has engaged in unethical conduct; or
c. At the request of a jurisdiction to which the candidate has applied for admission to the bar; or
d. By order of the Supreme Court, on notice to the candidate unless the Court otherwise orders.

**401:2 Retention.** Certified Statements, letters from candidate's references, and other relevant documents shall be retained as established by the Records Retention Schedule of the Supreme Court Clerk's Office. All Committee records may be electronically stored after one (1) year and the originals thereupon destroyed.

**REGULATION 402. Miscellaneous Procedures**

**402:1 Committee on Character and Staff Immunity.** Members of the Committee and their staff, Committee staff, and lawfully appointed designees shall be absolutely immune from liability, whether legal or equitable in nature, for any action or omission in the performances of their official duties.

**402:2 Third-Party Immunity.** Persons disclosing information in good faith to the Committee and persons supplying information to the Committee pursuant to an authorization and release executed by the candidate shall be absolutely immune from liability, whether legal or equitable in nature.

**402:3 Validity of bar examination results.** The results of a New Jersey bar examination shall be valid for three (3) years from the date the exam was administered. Uniform Bar Examination results also are valid for three (3) years from the date the applicant sat for the examination for which the qualifying score was attained. The Supreme Court may, for good cause shown, waive the retaking of the examination after review of a petition filed by the candidate.

**REGULATION 501. Time Goals**

**501:1 Effect of Goals.** The time goals articulated in this rule shall guide the processing of matters pending with the Committee on Character. The time periods herein prescribed are not binding on the Committee, nor shall they serve as a bar or defense in any character proceeding.

**501:2 Initial Review.** The Committee on Character shall make the candidate's file available to the reviewing attorney expeditiously, and the reviewing attorney shall endeavor to complete the initial review of each assigned candidate file within thirty days of the date on which the file is

made available.

**501:3 Priority of Completed Applications; Communicating Deficiencies of Incomplete Applications.** The reviewing attorney shall endeavor to review all completed applications and certify all candidates with completed applications who demonstrate character and fitness in accordance with Rule 1:25 and Rule 1:27-1(a)(2) within sixty days of the date on which the Committee made the file available. Within sixty days of the date on which the Committee made the file available, the reviewing attorney shall endeavor to communicate to any candidate with an incomplete application the deficiencies of the application. Any communication noting an incomplete application shall provide a deadline (generally thirty days) by which the candidate must cure the deficiencies.

**501:4 Abandonment of File.** If the candidate does not timely respond to a reviewing attorney's request to cure deficiencies, and fails to respond to limited follow-up inquiries providing additional opportunities to cure, the Committee shall proceed to have the application deemed abandoned, consistent with RG 202:3. A candidate whose file has been abandoned for failure to respond to inquiries may not have the file reinstated or seek admission for one year from the date that the Committee declares the application abandoned. If a candidate is unable to timely cure deficiencies, the candidate may avoid abandonment by documenting the effort made to comply with the request and provide the status of the outstanding submissions.

**501:5 Timing of Evaluations.** If the Committee refers a candidate for a substance abuse/mental health evaluation, the candidate shall endeavor to schedule and participate in such an evaluation within forty-five days of being notified of the need for such an evaluation. The evaluator shall endeavor to furnish a completed evaluation to the reviewing attorney as expeditiously as possible.

**501:6 Hearings.** Whenever possible, the Committee shall endeavor to schedule a hearing pursuant to RG 303 within sixty days of the reviewing attorney's determination that a hearing is required and the file is sufficiently complete to proceed.

**501:7 Reports.** The RG 303 panel shall endeavor to complete the RG 303 report within ninety days following the RG 303 hearing, or, if additional documents are requested at the hearing or post-hearing, within ninety days of the panel's receipt of those documents from the candidate.

# APPENDIX I

# Character & Fitness Questionnaire

## SECTION 1 - IDENTIFICATION

### A - General Information

This Questionnaire must be submitted on-line, according to the fee schedule and deadlines. Do NOT send a paper copy to the Board of Bar Examiners.

All supporting documentation required by each section of the Character and Fitness Questionnaire must be uploaded to your User Home Page. **Note: Prior to uploading all supplemental document(s), YOU <u>must</u> redact your Social Security number from the document(s). It is YOUR responsibility to ensure this information is not included.** Pay attention to the time limits in each section, as the time periods may vary for certain kinds of records. Older documents may be required based on the nature and severity of the underlying matter in the discretion of the Committee. If no time limit is specified, all documents must be provided. The upload feature will become available AFTER this questionnaire is submitted and will be located on the lower right hand side of your User Home Page. Detailed upload instructions are listed below. If you are not in possession of any documentation required by the Character and Fitness Questionnaire, you must make a diligent effort to obtain these documents by submitting written requests to the relevant agencies, and uploading these requests through your User Home Page. If the required documents are unavailable, you must obtain and upload written correspondence from the agency, on agency letterhead, indicating that the records are unavailable or do not exist.

To avoid delays in the Character and Fitness Questionnaire review process, supplemental documents must be uploaded by January 15 for a February exam, June 15 for a July exam, or within 30 days for In-House Counsel applicants, or within 60 days for UBE or Motion applicants.

You should continue to upload documents as you receive them, and timely amend your Questionnaire as changes occur.

**Certification Requirements**

If additional space is required to answer any of the questions in the Questionnaire, upload a separate document clearly identifying the Section Number and the question for which additional information is being provided. One document may contain additional information for multiple sections/questions. Please make sure to date the document, and include certification language before your signature: "I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are false, I am subject to punishment [R. 1:4-4(b)]."

**To upload supplemental documentation or narratives**

1. YOU ARE NOT ABLE TO UPLOAD ANY ITEMS UNTIL YOU HAVE COMPLETED AND SUBMITTED THE CHARACTER AND FITNESS QUESTIONNAIRE (THIS DOCUMENT).
2. Once you have completed and submitted the Character and Fitness Questionnaire, an "upload" feature will activate on your User Home Page. **Note: Prior to uploading all supplemental document(s), YOU <u>must</u> redact your Social Security number from the document(s). It is YOUR responsibility to ensure this information is not included.**
3. Prepare any documentation that you plan to upload. Only PDF documents will be accepted for uploads, all other file types will be discarded. Be sure that the files have been scanned without any encryption or password protection.
4. To access the upload feature, log into your user account on our website, www.njbarexams.org.
5. Click the red "Upload New Document" button on the right side of your User Home Page, under the "Uploaded Documents" header.

6. Enter the Title and Description of your document.

7. Click "Choose File" and navigate to document and select "Open" and then "Upload Document".

8. You will receive an on screen confirmation that your document has successfully uploaded to the server.

9. After upload, all documents that you have submitted are viewable from your User Home Page. To access, click the red "user home" link. Scroll to the "Uploaded Documents" section. Click the file name that you entered while uploading the document. The date to the right of the file name is the date the document was uploaded.

10. Retain the original documents in your records. You must be able to supply them upon request.


**To amend/correct your Character and Fitness Questionnaire**

1. Visit your User Home Page by logging into your account on our website, www.njbarexams.org.

2. At the top of the Current Application column, click the red "amend application" button, then confirm that you wish to amend.

3. Scroll down to Forms and Progress, and click "Amend" next to Character and Fitness Questionnaire.

4. Navigate to the appropriate sections, and complete/correct your response.

5. Be sure to return to your User Home Page and click the green "submit amendments" button. Your amendment will **NOT** be viewable to office staff and is **NOT** considered submitted until you click this button to submit.

## – Personal Information

Please enter your personal information.

All processing will be done on the basis of your full legal name; therefore, all records will be maintained and certification(s) issued in your full legal name. Please include your middle name if you have one.

Full LEGAL name [First, Middle, Last, Suffix (Jr, III)]                                                    John Smith

By what name are you usually called?

Date of birth                                                                                                    January 10, 1961

Birth City

Birth State

Birth Country

Have you **EVER** been known by another name other than a nickname (e.g. maiden name)?

List each name used, or by which you have at any time been known, and the dates that name was used.

Note: If your name was changed by court order, give the name and location of the court issuing the order and the date of the order. You must upload a copy of the court order to your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Other Name Used

From Mo/Yr

To Mo/Yr

Reason name was used

Case 2:24-cv-01209-AMM-CMV Doc # 12-11 Filed 03/15/24 Page 66 of 241 PAGEID # 859

**- Citizenship**

Are you a citizen of the United States?

Please state the country of which you are a citizen

If you are not a citizen of the United States, have you applied for naturalization? Upload a copy of your US Citizenship and Immigration Services (USCIS) issued documents as well as your current passport through your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

When do you expect to become a naturalized citizen?

Describe your immigration status

Do you have an alien registration number?

Provide your alien registration number

Upload a copy of your resident alien card through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions to upload documents are available in Section 1A of this Questionnaire.

Upload a copy of your U.S. Citizenship and Immigration Services (USCIS) issued documents through your User Home Page, after you have submitted this Character and Fitness Questionnaire online. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

## SECTION 2 - ADDRESSES

**- Current Addresses**

| | |
|---|---|
| Address 1 | 3855 Lake Clearwater Place |
| Address 2 | Apt. 222 |
| City | California |
| State | Florida |
| Zip | 90210 |
| County | Marion |
| Province | |
| Country | United States of America |

NOTE: If you have a New Jersey State address and the County field is blank, click on Edit Personal Info in the upper right hand corner of your User Home Page. Be sure to hit the "Update" button on the bottom of the page when making any changes to your User Home Page.

**- Address History**

List each address at which you have resided in the past 10 years in chronological order, **beginning with your current address**. List all addresses, including college, law school, summer, and any other temporary residence. If you resided in school dormitory housing, you do not have to designate the specific dormitory, but need to provide the other required information.

Address 1

Address 2

City

State

Zip

Country

From

To

## SECTION 3 - EDUCATION

### A - High School / Secondary School

Include all education starting with high school, including study abroad and non-degree education, but not CLE.

School Name

City

State

Zip

From

To

### B - College or University

School Name

City

State

Zip

From

To

Degree (e.g.. BS, BA, etc.)

Date Awarded

School or Program of Study

## : - Law School

Did you (or do you expect to) receive a Juris Doctor from an ABA approved law school before the examination for which you are applying? This requirement must be met if you wish to sit for the New Jersey bar examination. If you do not meet this requirement and still apply for the examination, you will not receive a refund. Bar examination applicants are required to submit a Law School Certificate from EVERY law school ever attended.

Name of Law School

Non-ABA Law School

City

State

Zip

From

To

Attended

Degree

Date Awarded

Have you attended any other law schools from which you did not receive a Juris Doctor?

Name of Law School

City

State

Zip

From

To

Attended

Degree

Date Awarded

## ) - Probation, Discipline or Leaves of Absence (after high school graduation)

After high school graduation, have you been placed on academic probation, suspended, expelled, taken a leave of absence or had an interruption in your education for academic or personal reasons, been asked to leave school, or asked to resign or permitted to withdraw?

If you answered "yes" to this question, you are required to request that your school send your academic and disciplinary records and an official transcript DIRECTLY to the Board of Bar Examiners. You must ALSO upload any and all documentation regarding the incident. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire. If the school no longer has any documentation, obtain a letter from the school stating such.

Details of incident

Which school does this pertain to?

Name of School

Date of incident or leave

After high school graduation, have you been disciplined, reprimanded, suspended, placed on probation, expelled, asked to resign, or permitted to withdraw from any educational institution for other than academic reasons including but not limited to housing violations, warnings, any step in progressive discipline, student code of conduct or honor code violations?

If you answered "yes" to this question, you are required to request that your school send your academic and disciplinary records and an official transcript DIRECTLY to the Board of Bar Examiners. You must ALSO upload any and all documentation regarding the incident. Detailed instructions to upload documents are available in Section 1A of this Questionnaire. If the school no longer has any documentation, obtain a letter from the school stating such.

Provide details of each incident. If additional space is required, upload a certification to supplement your response. Detailed instructions are available in Section 1A of this Questionnaire.

Which school does this pertain to?

Name of School

Date of Incident

Since high school graduation, have you been the subject of a formal or informal disciplinary procedure, honor code charge, and/or student conduct code charge that was not disclosed above, regardless of the disposition of the charges? **NOTE:** The acceptance of a lower grade or F to resolve the matter, the imposition of community service or other requirements or sanctions **IS** considered **Informal Discipline**. Accepting resolution in lieu of a hearing **IS** considered **Informal Discipline**.

If you answered "yes" to this question, you are required to request that your school send your academic and disciplinary records and an official transcript DIRECTLY to the Board of Bar Examiners. You must ALSO upload any and all documentation regarding the incident. Detailed instructions to upload documents are available in Section 1A of this Questionnaire. If the school no longer has any documentation, obtain a letter from the school stating such.

Provide details of each incident. If additional space is required, upload a certification to supplement your response. Detailed instructions are available in Section 1A of this Questionnaire.

Which school does this pertain to?

Name of school

Date of incident

Since entering college, have you ever been approached or confronted, in person or in writing, including e-mail, by a professor, instructor, teacher, dean, or other member of the academic community concerning excessive absences, fluctuations in grades, or failure to complete assignments or any behavior or misconduct not disclosed above?

If you answered "yes" to this question, you are required to request that your school send your academic and disciplinary records and an official transcript DIRECTLY to the Board of Bar Examiners. You must ALSO upload any and all documentation regarding the incident. Detailed instructions to upload documents are available in Section 1A of this Questionnaire. If the school no longer has any documentation, obtain a letter from the school stating such.

Provide details of each incident. If additional space is required, upload a certification to supplement your response. Detailed instructions are available in Section 1A of this Questionnaire.

What school does this pertain to?

Name of School

Date of Incident

If you answered "yes" to any of the questions above, you are required to request that your school send your academic and disciplinary records and an official transcript DIRECTLY to the Board of Bar Examiners. You must ALSO upload any and all documentation through your User Home Page after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

## SECTION 4 - EMPLOYMENT AND BUSINESS VENTURES

### A - Employment History

Please list your employment status for the past ten years (or since your 18th birthday if you are under 28 years of age) in chronological order, beginning with your most recent employment or unemployment status. If you were unemployed, including during periods of schooling, enter "Unemployed" as the employer and enter the reason you were unemployed (for example - attending law school) under "Reason Employment Ended". **You must address all gaps in employment. You must timely update the questionnaire when current employment ends.**

**NOTE:** **YOU MUST INCLUDE ALL TEMPORARY AND/OR PART-TIME WORK, INCLUDING CLINICS, INTERNSHIPS or EXTERNSHIPS WHETHER PAID OR UNPAID.**

Indicate and describe any self-employment in detail.

If you are unable to recall or obtain a supervisor's name or a company address after having made reasonable effort to do so, write "Unable to recall." You may be contacted for additional information and to take further action.

**Please remember, it is your continuing duty to update this questionnaire as your employment status changes in any way after submission.**

Company or Firm

Address 1

Address 2

City

State

Zip

Phone Number

Position Held

Supervisor's Name

Supervisor's Prefix

Supervisor's Job Title

Supervisor/Employer E-mail (enter N/A if unavailable)

Full time, part time or N/A

Employment Start Date

Are you still employed with this employer?
(If **CURRENTLY** employed, please select Yes for this answer)

Employment End Date

Reason Employment Ended

## - Discharge / Charges

Have you **EVER** been discharged from any employment or requested or permitted to resign in lieu of disciplinary action or in lieu of criminal charges being filed against you?

For each instance, provide details and a full factual narrative describing the date and the entire circumstances in the space provided. If additional space is required, upload a certification to supplement your response. Detailed instructions are available in Section 1A of this Questionnaire. If the employer was not an individual, state the name and title of your supervisor. In addition, you are required to upload all documentation regarding the discharge.

Date of discharge or resignation

Provide an explanation of circumstances of discharge or resignation

Name of Employer

Name and Title of Supervisor

Supervisor/Employer E-mail

Address 1

Address 2

City

State

ZIP Code

In connection with your employment, have you **EVER** been subject to any formal or informal charges of improper behavior that had any part in your quitting, being permitted to resign, being discharged or resulting in a suspension, demotion or loss of pay?

For each instance, provide details and a full factual narrative describing the incident, including the date and circumstances, in the space provided. If additional space is required, upload a certification to supplement your response. Detailed instructions are available in Section 1A of this Questionnaire. In addition, you are also required to upload all documentation regarding the charges.

Date of charge

Circumstances of charge


Name of Employer

Name and Title of Supervisor

Supervisor/Employer E-mail

Address 1

Address 2

City

State

ZIP Code

Have you **EVER** been approached or confronted by an employer, supervisor, or colleague concerning excessive absences or lateness, lack of diligence, failure to maintain confidential material, or employment-related misconduct or deficiency?

For each instance, provide details and a full factual narrative describing the incident, including the date and circumstances, in the space provided. If additional space is required, upload a certification to supplement your response. Detailed instructions are available in Section 1A of this Questionnaire. In addition, you are required to upload all documentation regarding the issues.

Date of misconduct or deficiency

Circumstances of misconduct or deficiency


Name of Employer

Name and Title of Supervisor

Supervisor/Employer E-mail

Address 1

Address 2

City

State

ZIP Code

Have you **EVER** applied for a position that required proof of good character and had that application denied for reasons involving your background or character, or in which you withdrew that application after questions about your character arose?

For each instance, provide details and a full factual narrative describing the incident, including the date and circumstances, in the space provided. If additional space is required, upload a certification to supplement your response. Detailed instructions are available in Section 1A of this Questionnaire. You are also required to upload all documentation regarding the denial or withdrawal.

Date of denial or withdrawal

Circumstances of denial or withdrawal

Name of Employer

Employer Contact Person

Address 1

Address 2

City

State

ZIP Code

Have you **EVER** applied for a position that required a pre-employment drug test and had that application denied because you failed the test?

For each instance, provide details as well as a full factual narrative describing the incident, including the date and circumstances, in the space provided. You are also required to upload all documentation regarding the test.

Date of application denial

Circumstances of application denial

Name of Employer

Employer Contact Person

Supervisor/Employer E-mail

Address 1

Address 2

City

State

ZIP Code

## - BUSINESS VENTURES

Have you **EVER** been involved in a business venture, including but not limited to corporations, partnerships, limited liability companies, general associations or trusts, in which you have been an officer, director, manager, trustee, or had any financial interest in the business venture?

If you answered "yes" to the question name each business entity and your exact involvement with the entity and the current status of the business entity.

In the space provided, you are required to provide details, and a description of your interest in the business. In addition, you are required to upload documentation regarding the formation of this business venture and proof that the business is in good standing with its requirements. If the venture is no longer active, you are required to upload a copy of the dissolution paperwork. These documents must be uploaded through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Name of Business Venture

Business E-mail

Phone

Address 1

Address 2

City

State

ZIP Code

Country

Your position/involvement

Start date of your involvement

Are you still involved with the business venture?

Date involvement ended

Reason involvement ended

## ECTION 5 - ARMED FORCES SERVICES

### - Armed Forces

Have you **EVER** served in any of the armed forces of the United States?

If you answered "yes" to this question, you are required to state the branch of service, dates of each period of active service, rank, serial number and your last commanding officer.

Branch of Service

Start Date

End Date

Highest Rank Achieved

Serial Number or EDIPI (Electronic Data Interchange Personal Identifier)

Your Last Commanding Officer

Are separated from the Service?

If you answered "yes" to this question, you are required to upload a copy of discharge or separation papers (DD form 214) through your User Home Page after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Nature of Separation

Type of Discharge

Were any courts martial, Article 15 proceedings, or administrative discharge proceedings lodged against you during your period of service?

If you answered "yes" to this question, you are required to provide details of the charge, nature of proceedings and disposition. Upload all relevant documents, including the disposition, and any explanations that do not fit in the space provided, through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire. In addition, you must request that a copy of your entire military and disciplinary file be sent DIRECTLY to the New Jersey Board of Bar Examiners.

Charge

Nature of Proceedings

Disposition

## SECTION 6 - LICENSES

### A - Other Professional / Occupational Licenses

Have you **EVER** held, or do you currently hold, any professional, occupational, or business license in any jurisdiction, other than as an attorney at law? Sample licenses which require a "yes" answer to this question include, but are not limited to: Teaching, Nursing, Insurance and Banking and FINRA licenses, Notary Public, US Patent Agent, Realtor and EMS.

If you answered "yes" to this question, you are required to upload proof of the current status of your license, and if you still hold the license, provide a Certificate of Good Standing through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

If you have additional information to supply for this question, upload the explanation and/or documents through your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Date of Application

License Applied For:

Name of Authority

Authority Information

Address 1

Address 2

City

State

Zip

License Number

Did you take the exam?

Date of Examination, If Any

Exam Result

Have you ever voluntarily surrendered or been asked to surrender such a license?

Reason for surrender


Have you allowed the license to lapse?

Explain when and why


**i - Discipline**

Have you **EVER** been disciplined as a member of any licensed profession or occupation (except law), including, but not limited to, being suspended from practice, reprimanded, censured, disqualified, revoked, permitted to resign, admonished, sanctioned or removed, or have any complaints or charges, formal or informal, ever been made or filed or proceedings instituted against you in such capacity?

If you answered "yes" to this question, you are required to provide all details, including a factual narrative with a detailed explanation of the circumstances surrounding the discipline and request that a copy of your entire disciplinary file be sent DIRECTLY to the New Jersey Board of Bar Examiners. You must ALSO upload any and all documentation regarding the discipline. All documents must be uploaded through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

NOTE: This section does not pertain to conduct in the legal profession - see Section 15.

Date of incident

Explanation


Exact Charges


Disposition of the matter

Name and complete address of the authority in possession of the records thereof

Name of authority

Address 1

Address 2

City

State

Zip

Have you **EVER** held a professional or occupational license (except law), that was administratively suspended or revoked (e.g., for failure to pay required fees or failure to complete required courses)?

If you answered "yes" to this question, you are required to provide all details, including a factual narrative with a detailed explanation of the circumstances surrounding the suspension or revocation and upload documentation, including petitions for relief and reinstatement, if applicable. All documents must be uploaded through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

This section does not pertain to conduct in the legal profession - see Section 15.

Date of incident

Explanation

Disposition of the matter

Name and complete address of the authority in possession of the records thereof

Name of authority

Address 1

Address 2

City

State

Zip

Have you **EVER** filed an application for a professional, occupational, or business license or certificate that was denied, that was withdrawn by you after questions about your character or qualifications arose, or that otherwise was unfavorably acted on by the licensing authority?

If you answered "yes" to this question, you are required to provide all details, including a factual narrative with a detailed explanation of the circumstances and upload all documentation regarding this denial, withdrawal or otherwise unfavorable decision. Documents must be uploaded through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Nature of Application

Date denied, withdrawn, or otherwise unfavorably acted on

Name and complete address of the relevant authority

Name of authority

Address 1

Address 2

City

State

Zip

## SECTION 7 - OFFICIAL POSITIONS AND PUBLIC OFFICES

### A - Official Positions

Have you **EVER** been appointed or elected to a federal, state, county, or municipal office or position?

Law clerk positions should be listed under Section 4 - Employment and applicants holding a notary license should list this under Section 6 - Licenses.

State the following for each office or position held.

Position or office

Dates From

Date to

Name of authority

Address 1

Address 2

City

State

Zip

### - Discipline

Have you **EVER** been dismissed, discharged, reprimanded, censured, requested or permitted to resign in lieu of disciplinary action or potential disciplinary action, removed from office or otherwise disciplined as a holder of an official position or public office?

If you answered "yes" to this question, you're required to provide the details of the discipline, including the dates, the facts, the exact charges, the disposition of the matter and the name and address of the party in possession of the record and to upload any additional information or documentation through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Date of filing

Explanation


Charges

Disposition of the matter


Provide the name and address of the party in possession of the record.

Name

Address 1

Address 2

City

State

Zip

## ECTION 8 - LEGAL PROCEEDINGS

**nstructions**

You are required to disclose ALL proceedings in which you have **EVER** been a party and provide full details of the nature of the proceeding on a separate attachment, including narrative of facts, dates, charges, case numbers, name and location of court, if any, references to court records, facts and disposition.

For each civil or administrative proceeding resolved within the last ten (10) years, provide a copy of the complaint, petition, answer, and settlement document or final judgment, decision or Order.

For each criminal proceeding resolved within the last ten (10) years, provide narrative police reports, charging documents, judgment of conviction or certificate of disposition, and a pre-sentence report, if any.

It is YOUR responsibility to obtain and submit the appropriate records. If the appropriate records are not available or are no longer in existence (after having made a reasonable effort to obtain them), provide a letter on the agency's letterhead, stating that the records are not available or are no longer in existence.

**All documents must be provided for each incident/proceeding resolved within the last ten (10) years, even if the incident occurred/proceeding began more than 10 years ago. You must submit a full and detailed narrative in addition to the records provided. Submission of documents is <u>NOT</u> a substitute for providing a full, factual and chronological narrative explanation. Failure to provide a full narrative will be considered as failure to provide all required information.**

Note that you may be required to disclose something in this section, even though you will not be required to provide documentation with your submission, as many questions ask "have you ever..."

### - Civil, Administrative, Governmental, Arbitration or Disciplinary Proceedings

Have you **EVER** been a named party (e.g., plaintiff/defendant) in any civil proceeding, regardless of the age of the matter or whether the final disposition was a dismissal or a settlement? This includes, but is not limited to, malpractice, negligence actions, intentional torts, landlord/tenant matters, contract matters, or domestic relations matters, including divorce, custody, visitation, support, petitions for protection from abuse, restraining orders and/or peace orders and expungement proceedings. Have you ever been a party, complainant or participant in or to an administrative, governmental, investigative, judicial, arbitration or disciplinary proceeding, including but not limited to workers' compensation, unemployment, pension, disability, licensing boards, welfare, child protection, Title IX proceedings, conservatorship, fee arbitration or attorney disciplinary/grievance proceedings? NOTE: Simple receipt of benefits does NOT trigger an affirmative response if no proceedings were held.

If you were the child in question in a custody proceeding, you were not considered a named party.

**If you answered "yes" to this question, you are required to provide full details and a chronological explanation of the legal proceeding and provide information concerning the parties, when filed, where the proceeding was venued, docket or case number and status of the proceeding. For each proceeding resolved within the last ten (10) years, you must also provide the documents listed below.**

Date of incident

Provide a detailed description of the matter that includes the outcome. Explain if you had any monetary obligations pursuant to the final judgment or resolution and, if so, whether you have met or are meeting your obligations.

If the proceedings were resolved within the last ten (10) years, you must upload a copy of the complaint, petition, answer and settlement documentation or final judgment, decision or Order from your User Home Page after submitting the Character Questionnaire on-line. If the records are not available or are no longer in existence, you are required to provide a letter from the agency on their letterhead stating that the documents are not available and you must document your diligent efforts to obtain the documentation. All documents must be uploaded through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

## 3 - Violation of Law

Have you **EVER** been cited for, charged with, taken into custody for, arrested for, indicted, tried for, pled guilty to, or convicted of, the violation of any law (other than a minor traffic violation) or been the subject of a juvenile delinquent or youthful offender proceeding or received a conditional discharge, adjournment in contemplation of dismissal, or pretrial diversionary program? (NOTE: driving while intoxicated or impaired, driving without insurance, reckless driving, leaving the scene of an accident, and driving while suspended are not considered minor traffic offenses for the purposes of this section).

The entry of an expungement or sealing order does not relieve you of the duty to disclose the matter on this statement. You must upload a copy of the expungement petition and Order to your account AND disclose the proceeding in Section 8A. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

**You must submit a full and detailed narrative in addition to the records provided. The narrative must recount the facts of the actual event in addition to a procedural recitation. If the violation of the law also led to an Order of Protection or restraining order, please disclose as well.**



Date of incident

Location of incident (city/state)

Name, complete mailing address, and telephone number of law enforcement agency involved:

Law Enforcement Agency

Address

City

State/Province

Zip/Postal Code

Country

Telephone

Charge(s) at time of arrest / citation. Include the names(s) of the charges as well as the corresponding statute/regulation/code/violation. Example: Harassment, NJSA 2C:33-4.


Citation Number

Detailed description of incident

Upload additional information (documents, explanations that do not fit in the space provided, etc.) through your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

If the proceedings were resolved within the last ten (10) years, you are required to upload a copy of the arresting agency's file (including a copy of the complaint/summons/ticket/investigative report) and the Court disposition records obtained from the Court that decided the matter (in person or by mail). Do you have all of the records in your possession to upload, as required?

Explain your diligent efforts to obtain a copy of the police or arresting agency's report, including specifically to whom your requests have been directed and when made. Provide proof of these written requests as well as any responses you received from the police or arresting agency through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire. Please provide the names and addresses of any attorneys appearing on this matter for you. You must attempt to obtain records otherwise unattainable from your attorney and document your efforts and diligent inquiry to obtain documents.

Was this matter decided in court or through plea by mail or electronically? (Provide details)

Provide the mailing address, and telephone number of court involved:

Court

Address

City

State/Province

Zip/Postal Code

Country

Telephone

Caption of case (e.g., State v. Smith)

Case or court file number

All Charges prior to final disposition

Date of final disposition

Final disposition

## - Legal Charges

Have you **EVER** been charged with fraud, larceny, embezzlement, misappropriation of funds, misrepresentation, perjury, false swearing, conspiracy to conceal, or a similar offense in any legal proceeding, civil or criminal, or in bankruptcy, regardless of the age or the disposition of the charges?

**The entry of an expungement or sealing order does not relieve you of the duty to disclose the matter on this confidential statement. You may indicate the existence of such an order in your explanation. You must upload a copy of the expungement petition and Order, and disclose this proceeding in Section 8A as well.**

**You must submit a full and detailed narrative in addition to the records provided. The narrative must recount the facts of the actual event in addition to a procedural recitation.**

Date of incident

Location of incident (city/state)

Name, complete mailing address, and telephone number of law enforcement agency involved:

Law Enforcement Agency/Police Department

Address

City

State/Province

Zip/Postal Code

Country

Telephone

Charge(s) at time of arrest / citation. Include the names(s) of the charges as well as the corresponding statute/regulation/code/violation. Example: Harassment, NJSA 2C:33-4.

Citation Number

Detailed description of incident

Upload additional information (documents, explanations that do not fit in the space provided, etc.) from your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

If the proceedings were resolved within the last ten (10) years, you are required to upload a copy of the police or arresting agency's file (including a copy of the complaint/summons/ticket/ investigative report) and the Court disposition records obtained from the Court that decided the matter (in person or by mail). Do you have all of the records in your possession to upload as required?

Explain your diligent efforts to obtain a copy of the police or arresting agency's report, including specifically to whom your requests have been directed and when made. Provide proof of these written requests, as well as any responses you received from the police or arresting agency, through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire. Provide the names and addresses of any attorneys appearing on this matter for you. You must attempt to obtain the records otherwise unattainable from your attorney and document your efforts and diligent inquiry to obtain documents.

Did you, or an attorney on your behalf, appear in court in connection with this charge or arrest or was the ticket paid by mail or electronically?

Provide the mailing address, and telephone number of court involved:

Court

Address

City

State/Province

Zip/Postal Code

Country

Telephone

Caption of case

Case or court file number

Charges at time of final disposition. Include the names(s) of the charges as well as the corresponding statute/regulation/code/violation. Example: Harassment, NJSA 2C:33-4.

Date of final disposition

Final disposition

## ) - Deportation/Removal/Exclusion

Have you **EVER** been a party to Deportation, Removal or Exclusion Proceedings, or otherwise denied entry to or removed from any country?

**You must submit a full and detailed narrative of this incident and must supply the applicable records. The narrative must recount the facts of the actual event in addition to a procedural recitation.**

If yes, please supply a detailed explanation and upload all documentation related to the proceedings through your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

## - Restricted Access, Denied Access or Ban

Have you **EVER** been denied access, had your access restricted for any period of time or been banned from any of the following, whether or not criminal charges were ever filed:

(a) from this country or any other country;

Detailed explanation

(b) from any educational, religious or charitable institution or governmental or judicial facility;

Detailed explanation

(c) from a casino or gambling establishment;

Detailed explanation

(d) from a bar, restaurant or any public facility;

Detailed explanation

(e) from any form of transportation including, but not limited to, public transportation, including buses, trains, subways, airplanes, taxicabs, or private transportation including travel for fee (e.g. Uber or Lyft, etc.)?

Detailed explanation

**You must submit a full and detailed narrative in addition to the records provided. The narrative must recount the facts of the actual event in addition to a procedural recitation.**

If yes, please supply a detailed explanation and upload all documentation through your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

## - Immunity/Investigation

**Are you currently** under investigation or **have you EVER** been offered or granted immunity to testify in any grand jury proceeding, criminal action or criminal proceeding?

**You must submit a full and detailed narrative in addition to the records provided. The narrative must recount the facts of the actual event in addition to a procedural recitation.**

State the place, the date, the name of each defendant, the nature of the action or the proceeding, the Prosecutor's Office, the Court and the circumstances. If necessary, upload additional information (documents, explanations that do not fit in the space provided, etc.) after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Place

Date

Name of each defendant

Nature of the action or the proceeding

Name of court

Circumstances

Upload additional information (documents, explanations that do not fit in the space provided, etc.) from your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

## .1 - Business Practices

Has any business in which you had a financial interest, managed or in which you actively participated in the control or management of **EVER** been charged with fraud, larceny, embezzlement, misappropriation of funds, misrepresentation, conspiracy to conceal, or a similar offense in any legal proceeding, civil or criminal, or in bankruptcy?

**You must submit a full and detailed narrative of the incident in addition to the records provided. The narrative must recount the facts of the actual event in addition to a procedural recitation. Documents must be supplied no matter the age of the proceeding.** All documents must be uploaded through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Date of incident

Location of incident (city/state)

Name, complete mailing address, and telephone number of law enforcement agency involved:

Law Enforcement Agency

Address

City

State/Province

Zip/Postal Code

Country

Telephone

Charge(s) at time of arrest / citation. Include the names(s) of the charges as well as the corresponding statute/regulation/code/violation. Example: Harassment, NJSA 2C:33-4.

Citation Number

Detailed description of incident.


Upload additional information (documents, explanations that do not fit in the space provided, etc.) from your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

You are required to upload a copy of the police or arresting agency's file (including a copy of the complaint/summons/ticket/ investigative report) and the Court disposition records obtained from the Court that decided the matter (in person or by mail). Do you have all of the records in your possession to upload as required?

Explain your diligent efforts to obtain a copy of the police or arresting agency's report, including specifically to whom your requests have been directed and when made. Provide proof of these written requests as well as any responses you received from the police or arresting agency, through your User Home Page after you have submitted the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire. Please provide the names and addresses of any attorneys appearing on this matter for you. You must attempt to obtain records otherwise unattainable from your attorney and document your efforts and diligent inquiry to obtain documents.

Case 22-24-cv-01200-AM-CMW Doc#11 Filed 03/15/24 Page 187 of 241 PAGEID#2830

Did you, or an attorney on your behalf, appear in court in connection with this charge or arrest?

Provide the mailing address, and telephone number of court involved:

Court

Address

City

State/Province

Zip/Postal Code

Country

Telephone

Caption of case

Case or court file number

Charges at time of final disposition. Include the names(s) of the charges as well as the corresponding statute/regulation/code/violation. Example: Harassment, NJSA 2C:33-4.

Date of final disposition

Final disposition

## 5.2 - Business Practices

To your knowledge, have you or any business that you had a financial interest in, managed, or actively participated in the control of **EVER** been the subject of any investigation or inquiry by any Federal, State, Local, or administrative agency relating to the alleged violation of law, rule, regulation, or other legal standard?

**You must submit a full and detailed narrative in addition to the records provided. The narrative must recount the facts of the actual event in addition to a procedural recitation.**

Date of incident

Location of incident (city/state)

Name, complete mailing address, and telephone number of law enforcement agency involved:

Law Enforcement Agency

Address

City

State/Province

Zip/Postal Code

Country

Telephone

Charge(s) at time of arrest / citation. Include the names(s) of the charges as well as the corresponding statute/regulation/code/violation. Example: Harassment, NJSA 2C:33-4.

Citation Number

Detailed description of incident. If additional space is required, upload a certification supplementing your response. Additional instructions are provided in Section 1A of this Questionnaire.

Upload additional information (documents, explanations that do not fit in the space provided, etc.) through your User Home Page after you have submitted the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

You are required to upload a copy of the arresting agency's file (including a copy of the complaint/summons/ticket/ investigative report) and the Court disposition records obtained from the Court that decided the matter (in person or by mail). Do you have all of the records in your possession to upload as required?

Explain your diligent efforts to obtain a copy of the police or arresting agency's report, including specifically to whom your requests have been directed and when made. Provide proof of these written requests as well as any responses you received from the police/arresting agency, through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire. Please provide the names and addresses of any attorneys appearing on this matter for you. You must attempt to obtain records otherwise unattainable from your attorney and document your efforts and diligent inquiry to obtain documents.

Did you, or an attorney on your behalf, appear in court in connection with this charge or arrest?

Provide the mailing address, and telephone number of court involved:

Court

Address

City

State/Province

Zip/Postal Code

Country

Telephone

Caption of case

Case or court file number

Charges at time of final disposition. Include the names(s) of the charges as well as the corresponding statute/regulation/code/violation. Example: Harassment, NJSA 2C:33-4.

Date of final disposition

Final disposition

**I - Probation or parole**

Are you presently on probation or parole?

**You must submit a full and detailed narrative in addition to the records provided. The narrative must recount the facts of the actual event in addition to a procedural recitation. If you need additional space, you may upload a certification to supplement your answers. See Section 1A of this Questionnaire for additional instructions.**

Name of the court

Name of probation or parole offices

Address of probation or parole officer

Address 1

Address 2

City

State

Zip

Terms of sentence

## ;ECTION 9 - FINANCIAL

### ι - Debts Overdue

**In the past twelve (12) months,** have you had any debts more than ninety (90) days overdue?

Provide details of the debt, and an explanation for the debt. If additional space is required, upload a certification supplementing your response. Additional instructions are provided in Section 1A of this Questionnaire. Upload a statement from the holder of the debt showing the present balance and documentation concerning any payment plan entered into, with proof of payment attached. All documents must be uploaded through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Holders of the debt

Amounts overdue

Loan or Credit numbers

Provide an explanation for this debt and detail the action taken to remedy the situation. Upload proof of final payment or copy of payment plan and proof of compliance with the plan. If a payment plan is not approved in writing, upload proof of your last six (6) payments, as well as documentation evidencing the amount of the debt and outlining your obligation. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

### ι - Child Support or Alimony

Are you now, or have you **EVER** been, the subject of any court-ordered obligation to provide child support or alimony? Upload a copy of the court order through your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Are you in arrears in child support in an amount equal to or exceeding the amount of child support payable for six (6) months?

Have you failed to comply with the health insurance provisions relating to an order for child support?

Are you the subject of a child-support related warrant?

**NOTE:** If you are in violation of child-support obligations, as set forth in RG 202:6 of the Regulations of the Committee on Character, you are ineligible to receive a license to practice law in this State.

Court Order


Case number


Date of arrearages

Amount of arrearages

Current Status


Upload a certified narrative outlining the actions you have taken to remedy the arrearages. Upload proof of the present balance of child support from your User Home Page after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire. A child support probation account transcript is acceptable, if dated within the last month.

### : - Other Obligations

Are you now, or have you **EVER** been, in arrears on any court-ordered obligation including child-support or alimony not covered by Section B, supra? If you answer "yes," you are required to upload a copy of the court order through your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Court Order


Case number

Date of arrearages

Amount of arrearages

Current status

Upload a narrative outlining the actions you have taken to remedy the arrearages. Upload proof of the present balance through your User Home Page after you have submitted your Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

## ) - Judgment

Has a judgment **EVER** been entered against you?

Provide the names and addresses of the holders and the details of the judgment. Upload certified copies of such judgments through your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire. **Please make sure that you have disclosed the original lawsuit under Section 8A.**

Name of holder

Address 1

Address 2

City

State

Zip

Details of the judgment

Has this judgment been satisfied?

If you answered "yes" to this question, you are required to upload a copy of the warrant of satisfaction, and the pleadings in this matter. All documents must be uploaded through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Please explain the action taken to remedy the situation.

If a payment plan has been established, upload proof of **the amount of the obligation and** the terms of the plan, through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire. If the plan was not approved in writing, provide proof of your last six (6) payments and your explanation of the payment plan.

## - Lien

Have any liens **EVER** been placed against your property? Do not include real estate mortgage liens, but include any tax liens.

Provide a detailed explanation.

You are required to upload all documentation regarding the initial lien and a statement from the lien holder showing the current balance through your User Home Page after you have submitted the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Was this lien satisfied?

You are required to upload a copy of the lien satisfaction through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

You are required to upload all documentation regarding the initial lien and a statement from the lien holder showing the current balance through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

## : - Personal Bankruptcy

Have you **EVER** filed a petition in bankruptcy or for establishment of a wage earner plan, or has one been involuntarily filed against you?

For each filing, list the final dispositions of the matters, the court in which the dispositions were filed, the dates of the filings, and an explanation of the reasons for the bankruptcy. Upload a copy of the petition, all schedules, and the final order of the court or discharge or dismissal through your User Home Page after you have submitted your Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Final disposition


Name of court

Date of filing of initial petition

Date of final disposition, dismissal or discharge

Provide a detailed explanation of the reason(s) for the bankruptcy or circumstances leading to bankruptcy. If additional space is required, upload a certification supplementing your response. Additional instructions are provided in Section 1A of this Questionnaire.


## ; - Business Bankruptcy

Has any business in which you had a financial interest **EVER** filed for bankruptcy?

For each filing list the final disposition of the matter, the court in which such disposition was filed, the date(s) of filing(s) and an explanation of the reason(s) for the bankruptcy. Upload a copy of the petition, all schedules, and the final order of the court of discharge or dismissal through your User Home Page after you have submitted your Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Final disposition


Name of court

Date of filing of initial petition

Provide a detailed explanation of the reason(s) for the bankruptcy or the circumstances leading up to the bankruptcy. If additional space is required, upload a certification supplementing your response. Additional instructions are provided in Section 1A of this Questionnaire.

## 1 - Student Loans

Do you currently have any student loans?

Have you **EVER** been in arrears or defaulted on any student loan?

If you answered "yes," provide factual details and give name and address of creditor, the loan account number, the amount owed and what steps have been taken to bring the account up to date.

Details

Name of creditor

Address 1

Address 2

City

State

Zip

Loan account number

Amount owed

Is the account now current?

Provide proof that the account is now current.

If a payment plan has been established, upload proof of the terms of the plan, through your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire. If the plan was not approved in writing, provide proof of your last six (6) payments and your explanation of the payment plan. If the loan has now been placed in deferment, explain the terms of the deferment.

Provide a detailed explanation of any action taken to remedy the situation.


## - Custodians, Guardians, Conservators, Trustees, Receivers and Special Fiscal Agents

Subsequent to your 18th birthday, have you or your property **EVER** been placed under the control of a guardian, conservator, trustee, receiver, special fiscal agent or any other custodian?

Provide details and upload related documentation through your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.


## - Money Laundering Control

To your knowledge, has a Currency Transaction Report (CTR) or Suspicious Activity Report (SAR) **EVER** been filed for your activities?

Provide details and upload related documentation through your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

## SECTION 10 - TAX RETURN INFORMATION

### A - Personal Tax Return/Filing and Payment

**NOTE:** A filing pursuant to a proper extension is considered timely for this purpose. A payment plan is NOT considered timely payment.

Have you **EVER** failed to file a federal, state, or local income tax return when due and without a lawful extension or have you **EVER** failed to pay federal, state, or local income taxes when due?

If you answered "yes," you are required to provide a narrative explaining the reason for your failure to file or pay, when the matter occurred, and when you resolved the issue. Explain the steps that have been taken to remedy the defect. Upload proof that the tax return was subsequently filed, proof of payment, and current status of any owed taxes, fines or penalties and upload an account transcript (available from the IRS or other tax authority. IRS transcripts are free. Additional information can be found at http://www.irs.gov/Individuals/Get-Transcript). All documents must be uploaded through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

### B - Corporate Tax Return/Filing and Payment

Have you or any business, corporation or other entity in which you held an equity interest **EVER** failed to pay employer's withholding taxes or ever failed to remit sales, excise, or other taxes to the appropriate taxing authority?

If you answered "yes" to this question, you are required to provide a detailed narrative explaining the reason for your failure to file or pay, when the matter occurred, and when the issue was resolved. A payment plan for past due obligations must be detailed in your response. In addition, you are required to upload all documentation regarding such occurrences and provide proof that the situation(s) has been remedied. All documents must be uploaded through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

### C - Judgment Against You

Has the Internal Revenue Service or any other taxing authority ever obtained a judgment or made a levy against you for unpaid taxes, assessments or penalties?

Provide a narrative explanation of the circumstances surrounding the judgment or levy and provide information about your attempts to resolve the judgment or lien.

Has the judgment/levy been satisfied?

Upload a copy of the judgment/levy and a copy of the warrant of satisfaction through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Provide a narrative explanation of the action(s) taken to remedy this situation. If additional space is required, upload a certification supplementing your response. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

If a payment plan has been established, upload proof of the terms of the plan through your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire. If the plan was not approved in writing, provide proof of your last six (6) payments.

## SECTION 11 - DRIVER'S INFORMATION

### A - Driver's Licenses

List **each** state or foreign jurisdiction in which you have **EVER** been issued a driver's license, including operator permits. You must also provide an abstract for any license that has been active in the past seven (7) years*. **Review your driver's history to answer this section.**

**Three (3) year (abbreviated) abstracts are not accepted. Abstracts obtained on-line are permitted provided that they are obtained from the motor vehicle agency of the respective state or jurisdiction (no third party abstracts will be accepted).**

Have you applied for or been issued a driver's license or operator's permit in any state or jurisdiction (including foreign countries)?

Jurisdiction

Country

Month/Year Issued
(original date – do NOT include renewal dates)

License or permit number

Is this license currently active?

**You are required to upload a driver's abstract for this license through your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire. Please read instructions below regarding ordering driver's abstracts.**

Has this license been active during the last seven (7) years?

**You are required to upload a driver's abstract for this license through your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire. Please read instructions below regarding ordering driver's abstracts.**

An abstract is not required for this license.

Date license surrendered (month/year)

Reason license surrendered

**\*Driver's Abstract Instructions**

Driver's Abstracts must be obtained for each license or permit that has been active during the prior seven (7) years. Driver's abstracts are available from the Division of Motor Vehicles in the state or jurisdiction (including foreign jurisdictions) that issued the license or permit. No third party abstracts will be accepted. Three year (abbreviated) abstracts are **NOT** accepted. Once received from the appropriate Motor Vehicle agency, upload the abstract through your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire. Keep the original in your files. **Review your abstract before completing this section.** If you are not supplying your abstract at this time, you may need to update this section once you obtain the document.

**} - Suspended License**

Has your driver's license **EVER** been suspended or revoked in any state or jurisdiction, including foreign jurisdictions (including for excessive or unpaid parking tickets)?

Name of Agency

Address 1

Address 2

City

State

Other State or Jurisdiction

ZIP Code

Country

Date of Suspension

Length of Suspension

Reason for Suspension

Provide a detailed explanation.

**: - Denied License**

Have you **EVER** been refused a driver's license by any state or jurisdiction, including foreign jurisdictions?

State or jurisdiction

Date denied

Provide a detailed explanation. Upload documentation regarding this denied license through your User Home Page after you have submitted your Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

**ı - Late/failure to answer ticket, citation or summons**

Have you **EVER** been late to timely answer or failed to answer a ticket or summons for any legal proceeding (including parking tickets)?

If you answered "yes," you must provide a narrative detailing the facts of each failure to timely answer a ticket or summons. regardless of how long ago, to the best of your ability. Upload documentation regarding the initial ticket(s) or summons(es) and indicate if a warrant was issued at any time for these tickets/summonses through your User Home Page after you have submitted your Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Upload documentation regarding the initial ticket(s) or summons(es) through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line, and indicate if a warrant was issued at any time for these tickets/summonses. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Date

Nature of Violation


Court Designation

Address 1

Address 2

City

State

ZIP Code

Disposition


## : - DUI (Please be sure to include this incident under Section 8B Legal Proceedings as well)

Have you **EVER** been charged with driving under the influence of drugs or alcohol or refusing to provide a breath sample?

Date you were charged

The Blood Alcohol Content (B.A.C.) reading(s) (enter "Refused" if you refused the test):

Charging Agency (Police Department)

Address 1

Address 2

City

State

ZIP Code

Were you convicted of this offense?

If you answered "yes" to any part of this section, you are required to upload copies of all court documents and arresting agency/police documents through your User Home Page after you have submitted your Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Were you convicted of a lesser charge?

If you were charged with DUI but convicted of a lesser offense, state the offense for which you were convicted, the name and address of the convicting court and the sentence imposed.

Offense for which you were convicted

Date Convicted

Name of Court in which you were convicted

Address 1

Address 2

City

State

ZIP Code

What was the sentence imposed? (including conditions precedent to dismissal. e.g., community service, alcohol education, etc.)


Disposition


If your sentence provided for probation or suspension, indicate whether supervised or unsupervised.

Date Convicted

Name of Court in which you were convicted

Address 1

Address 2

City

State

ZIP Code

What sentence was imposed?


Disposition


If your sentence provided for probation or suspension, indicate whether supervised or unsupervised.

Upload documentation of your sentence (through your User Home Page after you have submitted your Character and Fitness Questionnaire on-line; instructions are provided in Section 1A of this Questionnaire) including the arresting officer's report, any citations **and** court documents for each charge. (These documents are obtained from two different places).

Provide a narrative describing the facts and circumstances surrounding each offense, including reason for refusing a breathalyzer test if applicable, including any requirements for drug or alcohol evaluations or community service.

Have you completed all the requirements of the sentence? If you have answered "yes," upload proof that you have completed the requirements. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

If you have not, explain what you have not completed and why.

Explain what you have not completed and why.

## SECTION 12 - HEALTH

### Preamble

Section 12 addresses recent mental health, chemical, alcohol, and/or psychological dependency matters. The Committee on Character ("Committee") asks these questions because of its responsibility to protect the public by determining the current fitness of an applicant to practice law, and the purpose of these questions is to determine the current fitness of an applicant to practice law. Each applicant is considered on an individual basis. The mere fact of treatment for mental health problems or chemical, alcohol, or psychological dependency is not, in and of itself, a basis on which an applicant is ordinarily denied admission to the New Jersey bar. The Committee regularly recommends licensing of individuals who have demonstrated personal responsibility and maturity in dealing with mental health and chemical, alcohol, or psychological dependency issues. The Committee encourages applicants who may benefit from treatment to seek it and the Committee views such treatment as a positive factor in evaluating an application. As indicated in the Regulations Governing the Committee, all information is treated confidentially by the Committee and the Committee's Offices and all proceedings are confidential.

On occasion, a license may be denied when an applicant's ability to function is impaired in a manner that indicates that the applicant is currently unfit to practice law at the time the licensing decision is made, or when an applicant demonstrates lack of candor and/or credibility by his or her responses. Each applicant is responsible for demonstrating that he or she possesses the qualifications necessary to practice law. Your responses may include information as to why, in your opinion or that of your treatment provider, your condition will not affect your ability to practice law in a competent and professional manner.

The Committee does not, by its questions, seek information that is characterized as situational counseling, such as stress counseling, domestic counseling, and grief counseling. Generally, the Committee does not view these types of counseling as germane to the issue of whether an applicant is qualified to practice law.

### - Addiction to Alcohol or Drugs

Have you, **within the last five (5) years**, exhibited any conduct or behavior that could call into question your ability to practice law in a competent, ethical and professional manner?

If you answered "yes" to this question, furnish a thorough explanation in the space provided, and upload related documentation through your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

## 3 - Other Disorders

Do you **CURRENTLY** have any condition or impairment (including but not limited to substance abuse, alcohol abuse, or a mental, emotional or nervous disorder or condition) that in any way affects your ability to practice law in a competent, ethical and professional manner and in compliance with the Rules of Professional Conduct, the Rules of Court, and applicable case law?

If yes, please describe any ongoing treatment programs you receive to reduce or ameliorate the condition or impairment.

## SECTION 13 - BAR APPLICATIONS

## A - Bar Examination or License to Practice Law

Other than the application you are currently completing for admission to the New Jersey Bar, have you **EVER** sat for a bar examination in any jurisdiction (excluding foreign jurisdictions) or are you **CURRENTLY** applying to sit for a bar examination in any jurisdiction (excluding foreign jurisdictions); have you **EVER** applied for bar admission or a law license in any jurisdiction (excluding foreign jurisdictions) or are you **CURRENTLY** applying for bar admission or a law license in any jurisdiction (excluding foreign jurisdictions). This includes but is not limited to:

- Applications for jurisdictions where you were granted or denied admission;
- Applications for previous administrations of the New Jersey Exam;
- Applications to another jurisdiction for this administration (even if you have not yet begun the application process) or previous administrations of an exam;
- Applications for admission to jurisdictions in which there was no exam involved (In-House Counsel/reciprocity/admission on motion, UBE Score Transfer, etc.);
- Exams that you applied for but did not sit or withdrew;
- Exams that you sat for but did not pass.

**NOTE: If you are CURRENTLY a UBE Score Transfer applicant, an Admission on Motion applicant or an In-house Counsel applicant in New Jersey, or if you have EVER passed, failed or withdrawn from a bar examination in ANY jurisdiction (including New Jersey), including any prior UBE attempts in any jurisdiction, you MUST answer "Yes" to this Section**

Date of Application

Jurisdiction

Name of Authority

Date of Examination or motion filed

Date of Admission (answer this only if <u>actually</u> admitted, not pending)

Status (Pass / Fail / Waiting for Results / Withdrew)

**You are required to update your bar status in each jurisdiction if changes occur after submitting the Character and Fitness Questionnaire (e.g., passing the bar exam, interview, hearing, decision, etc.).**

## B - Interview/Hearing

Did any other jurisdiction in which you **EVER** applied request an interview or hearing or conduct an investigation to evaluate your character or fitness or regarding improprieties on a bar examination? (This includes "routine" interviews for admission.)

Jurisdiction

Date of Interview/Hearing

You are required to upload a copy of the transcript of any character proceeding through your User Home Page after you have submitted your Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire. In addition, you must request that a copy of your entire file be sent directly to the New Jersey Board of Bar Examiners.

Provide details in the space provided. If additional space is required, upload a certification supplementing your response. Additional instructions are provided in Section 1A of this Questionnaire.

## **: - Denied Application**

Has your application to sit for a bar examination or to be admitted to practice by examination, UBE score transfer or motion **EVER** been denied or withheld? Upload a copy of the transcript of any proceeding through your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire. You must request that a copy of your entire file be sent **DIRECTLY** to the New Jersey Board of Bar Examiners.

Name of jurisdiction

Date of decision

Reason for denial or withholding certification

**You must request that a copy of your entire file be sent DIRECTLY to the New Jersey Board of Bar Examiners.**

## **) - Bar Exam Improprieties**

Have you ever been accused of OR ever been the subject of an inquiry for any alleged improprieties on the bar examination? Upload a copy of the transcript of any proceeding through your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire. You must request that a copy of your entire file be sent **DIRECTLY** to the New Jersey Board of Bar Examiners.

Name of jurisdiction

Date of Exam

Detailed Explanation

**You must request that a copy of your entire file be sent DIRECTLY to the New Jersey Board of Bar Examiners.**

## **- Evaluation**

Has any other jurisdiction in which you applied **EVER** requested that you submit to an alcohol, drug, mental health or other evaluation in connection with your application?

**You are required to upload a copy of the evaluation for each instance through your User Home Page, after you have submitted your Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.**

Name of jurisdiction

Explanation

**- Other Certifications**

In the **State of New Jersey**, have you **EVER** applied for any of the following certifications, limited licenses, registrations and/or admissions: In-House Counsel, or Foreign In-House Counsel, Foreign Legal Consultant, *Pro Hac Vice*, or Multi-Jurisdictional Practitioner?

Type of certification

Date of application

Provide the case name and briefly describe the nature of the case.

Was the application for certification denied or withheld?

You are required to provide a narrative giving the reason for denial or being withheld. In addition, you are required to upload all documentation regarding this denial or withholding through your User Home Page after you have submitted your Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Date certification was granted

**ECTION 14 - PROFESSIONAL QUALIFICATIONS**

**- Late Disclosures to Law Schools and Bar Jurisdictions, Alterations or Falsifications**

Have you **EVER** made a late disclosure, been accused of or been the subject of an inquiry for alteration, falsification, omission and/or misrepresentation of any document or copy thereof referring to your professional qualification to be a lawyer before or after law school, including but not limited to, online or late disclosures on your law school applications or applications to other bar jurisdictions, bar examination results letter, recommendation letter, report, etc. Have you ever been accused of OR been the subject of an inquiry for any alleged improprieties on a standardized test, including, but not limited to, SAT, LSAT, MPRE, MCAT, GRE, etc. Have you ever been accused of OR ever been the subject of an inquiry for any alleged improprieties on the bar examination? If yes, provide the following for EACH incident.

Date of late disclosure/accusation

Agency/Organization/School

Provide an explanation and disposition of the matter. If additional space is required, upload a certification supplementing your response. Additional instructions are provided in Section 1A of this Questionnaire.

If you answered "yes" to this question, you are required to upload all documentation from the agency/organization/school through your User Home Page, after you have submitted your Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire. In addition, you must request that your law school send your academic and disciplinary records and an official transcript DIRECTLY to the Board of Bar Examiners. If another bar jurisdiction is involved, you must sign a release for their entire file to be forwarded DIRECTLY to the New Jersey Board of Bar Examiners.

## } - Other Testing Improprieties

Have you ever been accused of OR been the subject of an inquiry for any alleged improprieties on a standardized test, including, but not limited to, SAT, LSAT, MPRE, MCAT, GRE, etc?
If yes, provide the following for EACH incident.

Date of accusation/inquiry

Agency/Organization/School

Provide an explanation and disposition of the matter. If additional space is required, upload a certification supplementing your response. Additional instructions are provided in Section 1A of this Questionnaire.

If you answered "yes" to this question, you are required to upload all documentation from the agency/organization/school through your User Home Page, after you have submitted your Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire. In addition, you must request that your law school send your academic and disciplinary records and an official transcript DIRECTLY to the Board of Bar Examiners.

## : - Unauthorized Practice of Law

Have you **EVER** been accused of engaging in the Unauthorized Practice of Law in any jurisdiction?

Date

Jurisdiction

Explanation

Upload all documentation through your User Home Page after you have submitted your Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

## ECTION 15 - BAR ADMISSIONS IN OTHER JURISDICTIONS

## , - Admission in Other Jurisdictions

Have you **EVER** been admitted to the practice of law in any United States jurisdiction or territory? (This includes any court including but not limited to state, federal, military, etc. Please note, the application for any admission listed in Section 15 should also appear in Section 13.)

You are required to upload the following for any jurisdiction in which you have **EVER** been admitted. If your license is no longer active in that jurisdiction, including retirement and resignation, you must provide a letter from the jurisdiction explaining your status.

1. Certificate of Good Standing; **and**
2. Certificate of Ethical Conduct (disciplinary history).

Please note that these may not be the same documents and typically come from different agencies. A list of disciplinary offices is available on our web site (www.njbarexams.org) under the "General Application Information" tab. Online printouts from the jurisdiction's website are not accepted.

**<u>NOTE:</u> These jurisdictions must also be listed in Section 13A, Bar Applications.**

Please disclose the following information for each jurisdiction to which you have ever been admitted.

Have you resigned or retired this license? If no, provide a Certificate of Good Standing and a Disciplinary History for each license. If yes, provide a verification of status and a Disciplinary History.

Date of resignation or retirement

Name of jurisdiction

Country Name

Court or agency

Date of admission

Have you **EVER** been disciplined as a member of the bar of this jurisdiction, including, but not limited to, being disbarred, suspended, disqualified, reprimanded, censured, permitted to resign, admonished, sanctioned or removed, or have any complaints, charges or grievances, formal or informal, ever been made or filed or proceedings instituted against you in such capacity?

Provide a detailed explanation of the circumstances of each event and upload all relevant documents. State the dates, facts, exact charges, disposition of the matter and the name and complete address of the authority in possession of the records thereof. All documents must be uploaded through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

Date

Facts and exact charges

Disposition of the matter. (You must request that a copy of your entire disciplinary file and your initial bar application be sent **DIRECTLY** to the New Jersey Board of Bar Examiners.)

Name of authority

Address 1

Address 2

City

State

Zip

Have you **EVER** held a law license in any jurisdiction that was administratively suspended or revoked (e.g., for failure to pay required fees or failure to complete required courses)?

You are required to upload a detailed narrative, which provides all details, and upload all relevant documents through your User Home Page after submitting the Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire. State the dates, facts, exact charges, disposition of the matter and the name and complete address of the authority in possession of the records thereof.

Date

Facts and exact charges

Disposition of the matter. You must request that a copy of your entire disciplinary file and your initial character application be sent DIRECTLY to the New Jersey Board of Bar Examiners.

Name of authority

Address 1

Address 2

City

State

Zip

Provide the names, addresses and phone numbers of **two (2)** attorneys from each jurisdiction who are familiar with your professional conduct. Do not list close relatives, anyone used as a personal reference in Section 16, or yourself.

Pursuant to RG 201:2, the responses of any named references are confidential and will not be released to you.

**Professional Reference 1**

Name

Email address

Phone number

Address 1

Address 2

City

State

Zip

**Professional Reference 2**

Name

Email address

Phone number

Address 1

Address 2

City

State

Zip

## SECTION 16 - REFERENCES

### A - Personal References

List the names, addresses and phone numbers of **five (5)** individuals who know you well enough to attest to your integrity and fitness to practice law. You may not use close relatives, law school classmates (if you are a recent graduate), significant others, or more than one member of the same law firm, business entity, or family unit. You may use employers. The Committee may, in its discretion, contact any or all of your named references.

Pursuant to RG 201:2, the responses of any named references are confidential and will not be released to you.

Name

Email address

Phone number

Address 1

Address 2

City

State

Zip

## SECTION 17 - MISCELLANEOUS

### Other Information

Is there any information (event, incident, occurrence, etc.) that was not specifically addressed and/or asked of you in this application and/or in the instructions that could be considered a character issue?

Provide a full and detailed explanation.

Within the past five years, have you engaged in any conduct that: (1) resulted in an arrest, discipline, sanction or warning not already disclosed in Sections 1 through 16; (2) resulted in termination or suspension from school or employment not already disclosed in Sections 1 through 16; (3) resulted in loss or suspension or other discipline for any license not already disclosed in Sections 1 through 16; (4) resulted in any inquiry, investigation, administrative or judicial proceeding by an educational institution, governmental agency, professional organization, or licensing authority, or in connection with an employment disciplinary or termination procedure not already disclosed in Sections 1 through 16; or (5) endangered the safety of others, breached fiduciary obligations or violated workplace or academic conduct rules not already disclosed in Sections 1 through 16? If so, explain below and include any asserted defense or claim in mitigation or as an explanation of your conduct and upload all related documentation.

If you answered "yes" to this question, you are required to provide a full and detailed explanation. In addition, you must upload all related documentation through your User Home Page, after you have submitted this Character and Fitness Questionnaire on-line. Detailed instructions for uploading documents are available in Section 1A of this Questionnaire.

CERTIFICATION

Attestation

I understand that the full and correct completion of this Certified Statement of Candidate is a prerequisite for the Committee on Character's consideration of me as an applicant for admission to the practice of law. Candor and truthfulness are significant elements of fitness. I must provide the Committee with all available information, however unfavorable, even if I doubt its relevance.

If I am unable to provide all of the required documentation at the time I submit this Certified Statement of Candidate, I will timely supplement my application. I understand that until all of the required documentation is provided, my file will be deemed incomplete for review by the Committee. **I must answer all questions and upload all documentation to my account within a timely period.**

I understand further that I have a **continuing duty to disclose** all required information to the Committee, and that this duty continues until the date of my admission to the Bar of New Jersey.

I understand that I have a **continuing duty to amend this Certified Statement of Candidate within thirty (30) days of any occurrence that would change or render incomplete any answer**.

I will submit all additional information requested by the Committee in the form of an affidavit or certification, together with such supplemental documentation as the Committee deems necessary for its review.

I understand that I must respond to requests by the Committee within the time prescribed by the Regulations Governing the Committee on Character or face the abandonment of my application.

I will retain a copy of the completed Certified Statement of Candidate, with attachments, to facilitate submission of supplemental information.

I hereby certify that I have read the Regulations Governing the Committee on Character and all of the questions and my answers in this Certified Statement of Candidate. I further certify that all my answers are true and complete. I am aware that if any answers are willfully omitted or false, I may prejudice my admission to the Bar of the State of New Jersey, my subsequent good standing as a member of the Bar, and that I may be subject to such penalties as are provided by law.

I further certify that I have read the foregoing Statement of Candidate and the facts stated therein are true and complete to the best of my knowledge and belief.

**You MUST submit your Character and Fitness Questionnaire on-line after you certify (by clicking on "agree") or your application packet will not be considered complete.**

I agree

Date

Full LEGAL name [First, Middle, Last, Suffix (Jr, III)]                                    John Smith

# APPENDIX J

July 16, 2020

# Rule 25

Share:



Model Rules for Lawyer Disciplinary Enforcement

A. *1* **Generally**. A lawyer suspended for more than six months or a disbarred lawyer shall be reinstated or readmitted only upon order of the court. No lawyer may petition for reinstatement until [six months before] the period of suspension has expired. No lawyer may petition for readmission until [five] years after the effective date of disbarment. A lawyer who has been placed on interim suspension and is then disbarred for the same misconduct that was the ground for the interim suspension may petition for readmission at the expiration of [five] years from the time of the effective date of the interim suspension.

B. *2* **Petition**. A petition for reinstatement or readmission must be under oath or affirmation under penalty of perjury and shall specify with particularity the manner in which the lawyer meets each of the criteria specified in paragraph E or, if not, why there is good and sufficient reason for reinstatement or readmission. [Unless abated under Rule 26] the petition must be accompanied by an advance cost deposit in the amount set from time to time by the board to cover anticipated costs of the proceeding.

C. *3* **Service of Petition**. The lawyer shall file a copy of the petition with disciplinary counsel and disciplinary counsel shall serve a copy of the petition upon each complainant in the disciplinary proceeding that led to the suspension or disbarment.

D. *4* **Publication of Notice of Petition**. At the same time that a lawyer files a petition for reinstatement or readmission, the lawyer shall also publish a notice of the petition in the journal of the state bar and in a newspaper of general circulation in each judicial district in which the lawyer maintained an office for the practice of law when the lawyer was suspended or disbarred. The notice shall inform members of the bar and the public about the application for reinstatement or readmission, and shall request that any individuals file notice of their

opposition or concurrence with the board within [sixty] days. In addition, the lawyer shall notify the complainant(s) in the disciplinary proceeding that led to the lawyer's suspension or disbarment that the lawyer is applying for reinstatement or readmission, and shall inform each complainant that he or she has [sixty] days to raise objections to or to support the lawyer's petition.

E. 5 **Criteria for Reinstatement and Readmission.** A lawyer may be reinstated or readmitted only if the lawyer meets each of the following criteria, or, if not, presents good and sufficient reason why the lawyer should nevertheless be reinstated or readmitted:

(1) The lawyer has fully complied with the terms and conditions of all prior disciplinary orders except to the extent that they are abated under Rule 26.

(2) The lawyer has not engaged nor attempted to engage in the unauthorized practice of law during the period of suspension or disbarment.

(3) If the lawyer was suffering under a physical or mental disability or infirmity at the time of suspension or disbarment, including alcohol or other drug abuse, the disability or infirmity has been removed. Where alcohol or other drug abuse was a causative factor in the lawyer's misconduct, the lawyer shall not be reinstated or readmitted unless:

(a) the lawyer has pursued appropriate rehabilitative treatment;

(b) the lawyer has abstained from the use of alcohol or other drugs for at least [one year]; and

(c) the lawyer is likely to continue to abstain from alcohol or other drugs.

(4) The lawyer recognizes the wrongfulness and seriousness of the misconduct for which the lawyer was suspended or disbarred.

(5) The lawyer has not engaged in any other professional misconduct since suspension or disbarment.

(6) Notwithstanding the conduct for which the lawyer was disciplined, the lawyer has the requisite honesty and integrity to practice law.

(7) The lawyer has kept informed about recent developments in the law and is competent to practice.

(8) In addition, a lawyer who has been disbarred must pass the bar examination and the character and fitness examination.

F. 6 **Review of Petition.** Within [ninety] days after receiving a lawyer's petition for reinstatement or readmission, disciplinary counsel shall either: (1) advise the lawyer and the [board] court that disciplinary counsel will stipulate to the lawyer's reinstatement or readmission, or (2) advise the lawyer and the [board] court that disciplinary counsel opposes reinstatement or readmission and request the [board] court to set a hearing.

G. 7 **Hearing; Report.** Upon receipt of disciplinary counsel's request for a hearing, the [board] court shall promptly refer the matter to a hearing committee. Within [ninety] days of the request, the hearing committee shall conduct a hearing at which the lawyer shall have the burden of demonstrating by clear and convincing evidence that he or she has met each of the criteria in paragraph E or, if not, that there is good and sufficient reason why the lawyer should nevertheless be reinstated or readmitted. The hearing committee shall file a report with the [board] court containing its findings and recommendations. [The board shall promptly review the report of the hearing committee and the record and shall file its own findings and recommendations with the court.]

H. 8 **Decision as to Reinstatement or Readmission.** The court shall review the report filed by the [hearing committee] [board] or any stipulation agreed to by the lawyer and disciplinary counsel. If the court finds that the lawyer has complied with each of the criteria of paragraph E, or has presented good and sufficient reason for failure to comply, the court shall reinstate or readmit the lawyer. If the court reinstates or readmits the lawyer, the court shall issue a written opinion setting forth the grounds for its decision; if the court denies reinstatement or readmission, the court shall issue a written opinion setting forth the ground for its decision and shall identify the period after which the lawyer may reapply. Generally, no lawyer should be permitted to reapply for reinstatement or readmission within one year following an adverse judgment upon a petition for reinstatement or readmission.

I. 9   Conditions of Reinstatement or Readmission. The court may impose conditions on a
lawyer's reinstatement or readmission. The conditions shall be imposed in cases where the
lawyer has met the burden of proof justifying reinstatement or readmission, but the court
reasonably believes that further precautions should be taken to protect the public.

J. 10   The court may impose any conditions that are reasonably related to the grounds for the
lawyer's original suspension or disbarment, or to evidence presented at the hearing regarding
the lawyer's failure to meet the criteria for reinstatement or readmission. Passing the bar
examination and the character and fitness examination shall be conditions to readmission
following disbarment. The conditions may also include any of the following: limitation upon
practice (to one area of law or through association with an experienced supervising lawyer);
participation in continuing legal education courses; monitoring of the lawyer's practice (for
compliance with trust account rules, accounting procedures, or office management
procedures); abstention from the use of drugs or alcohol; active participation in Alcoholics
Anonymous or other alcohol or drug rehabilitation program; monitoring of the lawyer's
compliance with any other orders (such as abstinence from alcohol or drugs, or participation
in alcohol or drug rehabilitation programs). If the monitoring lawyer determines that the
reinstated or readmitted lawyer's compliance with any condition of reinstatement or
readmission is unsatisfactory and that there exists a potential for harm to the public, the
monitoring lawyer shall notify the court and, where necessary to protect the public, the
lawyer may be suspended from practice under Rule 20(B).

K. 11   Reciprocal Reinstatement or Readmission. Where the court has imposed a suspension or
disbarment solely on the basis of imposition of discipline in another jurisdiction, and where
the lawyer gives notice to the court that he or she has been reinstated or readmitted in the
other jurisdiction, the court shall determine whether the lawyer should be reinstated or
readmitted. Unless disciplinary counsel presents evidence demonstrating procedural
irregularities in the other jurisdiction's proceeding or presents other compelling reasons, the
court shall reinstate or readmit a lawyer who has been reinstated or readmitted in the
jurisdiction where the misconduct occurred.

Commentary

Readmission occurs when a disbarred lawyer is returned to practice. Since the purpose of lawyer
discipline is not to punish, readmission may be appropriate; the presumption, though, should be

against readmission. In no event should a lawyer be considered for readmission until at least five years after the effective date of disbarment.

Reinstatement occurs when a suspended lawyer is returned to practice. Reinstatement is appropriate when a lawyer shows rehabilitation. Application for reinstatement should be permitted at the expiration of the ordered period of suspension. While reinstatement should not be ordered prior to the expiration of the ordered period of suspension, application for reinstatement may be allowed up to six months preceding the expiration so that the time required for a decision on the application does not unfairly prolong the suspension.

As a condition of readmission or reinstatement, a disbarred or suspended lawyer is usually required to establish rehabilitation, fitness to practice and competence, and may be required to pay the costs of the disciplinary proceedings, to make restitution, to disgorge all or part of the lawyer's or law firm's fee, to pass an examination in professional responsibility, and to comply with court orders.

There is a compelling reason not to grant reciprocal reinstatement under paragraph J if the forum jurisdiction imposed a longer suspension than the original jurisdiction or if there was a delay between the imposition of the original discipline and the imposition of the reciprocal discipline.

Next - RULE 26. ABATEMENT OR MODIFICATION OF CONDITIONS OF DISCIPLINE, REINSTATEMENT, OR READMISSION

Table of Contents

Center for Professional Responsibility



ABA  American Bar Association

/content/aba-cms-
dotorg/en/groups/professional_responsibility/resources/lawyer_ethics_regulation/model_rules_for_lawyer_disciplinary_enforcement/rule_25

# APPENDIX K

# ABA Survey on Attorney Disciplinary Systems

## Reinstatement/Readmission Data

## 1998-2019

1998

CHART III

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 1998
ABA Center for Professional Responsibility

| STATE* | Are Reinstatement/ Readmission Proceedings Public? | If So, When Are Proceedings Public? | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Pending from Prior Years | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|---|---|---|
| Alabama | Yes | Upon filing. | 14 | 9 | 13 | 4 | 10 | 1 |
| Alaska | Yes | Upon filing. | 0 | 2 | 1 | 0 | 1 | 0 |
| Arizona | Yes[1] | Upon filing. | 3 | 4 | 3 | 0 | 2 | 1 |
| California | Yes | Upon filing. | 11 | 21 | 14 | N/A | N/A | N/A |
| Colorado | Yes | Upon filing. | N/A | N/A | N/A | N/A | N/A | N/A |
| Connecticut | Yes | After investigation by Standing Committee on recommendations for bar admissions. | N/A | N/A | N/A | N/A | N/A | N/A |
| Delaware | Yes | Upon filing. | 2 | 0 | 2 | 0 | 2 | 0 |
| District of Columbia | Yes | Once submitted to Hearing Committee of the Professional Responsibility Board. | 11 | N/A | 2 | 1 | 1 | 1 |
| Florida | Yes | Upon filing. | 28 | 1 | 15 | 1 | 18 | 5 |
| Georgia | Yes | Upon filing. | 1 | 6 | 3 | 3 | 0 | 1 |
| Hawaii | Yes | Upon filing. | 1 | 1 | 1 | 0 | 1 | 1 |
| Idaho | Yes | Upon filing. | 0 | 0 | 0 | 0 | 0 | 0 |
| Illinois | Yes | Upon filing. | 3 | 5 | 4 | 1 | 3 | 1 |
| Indiana | Yes | Upon filing. | 5 | 21 | 7 | 0 | 7 | 7 |
| Iowa | Yes | Upon filing. | 5 | 1 | 6 | 0 | 6 | 0 |
| Kansas | Yes | Every stage is public. | 1 | 1 | 0 | 0 | 0 | 1 |
| Kentucky | No | N/A | 10 | 8 | N/A | N/A | N/A | |
| Louisiana | N/A | N/A | N/A | 9 | 4 | 2 | 2 | 6 |

[1] Arizona - Unless reinstatement follows disability inactive status.

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 1998
ABA Center for Professional Responsibility

| STATE* | Are Reinstatement/ Readmission Proceedings Public? | If So, When Are Proceedings Public? | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Pending from Prior Years | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|---|---|---|
| Maine | Yes | Upon filing. | 1 | 0 | 1 | 1 | 5 | 1 |
| Maryland | Yes | After background investigation as Court directed. When Bar Counsel's recom-mendation is filed.[1] | 2 | 3 | 0 | 0 | 0 | 9 |
| Massachusetts | Yes | Upon filing. | 13 | 18 | 8[2] | 3 | 5 | 5 |
| Michigan | Yes | Upon filing. | 16 | N/A | 18 | 2 | 16 | 4 |
| Minnesota | Yes | Upon filing. | 8 | 4 | 4 | 0 | 4 | 3 |
| Mississippi | Yes | Upon filing. | 4 | 4 | 1 | 0 | 1 | 1 |
| Missouri | N/A | N/A | 7 | 8 | 6 | 2 | 4 | 3 |
| Nebraska | Yes | Upon filing. | 0 | 0 | 0 | 0 | 0 | 0 |
| Nevada | Yes | Upon filing. | N/A | N/A | N/A | N/A | N/A | N/A |
| New Hampshire | Yes | Upon filing. | 0 | 0 | 0 | 0 | 0 | 0 |
| New Jersey | Yes | Attorney required to publish Notice of Application for Reinstatement. | N/A | N/A | 18 | 0 | 18 | N/A |
| New Mexico | Yes | Upon filing. | 5 | N/A | 4 | 0 | 4 | 1 |
| New York 1st Jud. Dept. | No | N/A | 18 | 3 | 15 | 4 | 4[3] | 3 |
| New York 2nd Jud. Dept. 2nd & 11th Jud. Dist. | No | N/A | 11 | N/A | 1 | N/A | N/A | 10 |
| New York 2nd Jud. Dept. 9th Jud. Dist. | No | N/A | 8 | N/A | 3 | 0 | 3 | 5 |
| New York 2nd Jud. Dept. 10th Jud. Dist. | No | N/A | 7 | N/A | 2 | N/A | N/A | 5 |
| New York 3rd Jud. Dept. | No | N/A | 10 | 3 | 3 | 0 | 3 | 3 |

[2]Massachusetts - 1 petition, motion, or request for reinstatement/ readmission was granted after imposition of disability inactive status.
[3]NY 1st Jud. Dept. - This number does not include lawyers suspended for non-payment of fees.

10

CHART III

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 1998
ABA Center for Professional Responsibility

| STATE* | Are Reinstatement/ Readmission Proceedings Public? | If So, When Are Proceedings Public? | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Pending from Prior Years | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|---|---|---|
| New York 4th Jud. Dept. | No | N/A | 7 | 0 | 5 | 0 | 5 | 2 |
| North Carolina | Yes | Upon filing. | 6 | N/A | 4 | 0 | 3 | 2 |
| North Dakota | Yes | Upon filing. | 0 | 1 | 0 | N/A | N/A | 0 |
| Ohio | Yes | Upon filing. | 6 | 4 | 9 | 0 | 7 | 2 |
| Oklahoma | Yes | Upon filing. | 7 | 7 | 4 | 11 | 8 | 5 |
| Oregon | Yes[1] | Upon filing. | N/A | N/A | N/A | 0 | N/A | N/A |
| Pennsylvania | No | | 45 | 19 | 21 | 1 | 2 | 2 |
| Rhode Island | Yes | Upon filing. | 2 | N/A | 1 | 1 | 0 | 1 |
| South Carolina | Yes | Upon publication in newspaper. | N/A | N/A | 7 | 0 | 7 | N/A |
| Tennessee | Yes | Upon filing. | 5 | 11 | 4 | N/A | N/A | 0 |
| Texas | Yes | Upon filing. | N/A | N/A | N/A | N/A | N/A | N/A |
| Utah | | | | | | | | |
| Vermont | Yes | Upon filing. | N/A | N/A | N/A | N/A | N/A | N/A |
| Virginia | Yes | Upon posting on the VSB docket. | 2 | 2 | 0 | 0 | 0 | 0 |
| Washington | Yes | Public hearing on Petition. | 0 | 0 | 0 | 0 | N/A | 0 |
| West Virginia | | | | | | | | |
| Wisconsin | Yes | Upon filing. | 6 | 4 | 1 | 0 | 0 | 4 |
| Wyoming | No | N/A | 0 | 0 | 0 | N/A | N/A | 0 |

[1]Oregon - There are a number of categories of reinstatement, not all related to prior discipline. In addition, short-term disciplinary suspensions require a form of reinstatement application.

1999

CHART III

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 1999
ABA Center for Professional Responsibility

| STATE[*] | Are Reinstatement/ Readmission Proceedings Public? | If So, When Are Proceedings Public? | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Pending from Prior Years | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|---|---|---|
| Alabama | Yes | Upon filing. | 5 | 8 | 8 | 3 | 5 | 0 |
| Alaska | Yes | Upon filing. | 2 | 1 | 0 | 0 | 0 | 0 |
| Arizona | Yes[1] | Upon filing. | 0 | 3 | 2 | 1 | 1 | 1 |
| California | Yes | Upon filing. | 12 | N/A | N/A | N/A | N/A | N/A |
| Colorado | Yes | Upon filing. | 7 | 0 | 7 | 3 | 4 | 2 |
| Connecticut | Yes | After investigation by Standing Committee on recommendation for bar admissions. | N/A | N/A | N/A | N/A | N/A | N/A |
| Delaware | Yes | Upon filing. | 2 | 0 | 2 | 0 | 2 | 0 |
| District of Columbia | Yes | Once submitted to Hearing Committee of Professional Responsibility Board. | 6 | N/A | 4 | 3 | 1 | 2 |
| Florida | Yes | Upon filing. | 25 | 4 | 21 | 1 | 16 | 4 |
| Georgia | Yes | Upon filing | 0 | 4 | 1 | 0 | 1 | 0 |
| Hawaii | Yes | Upon filing. | 1 | 1 | 3 | 0 | 3 | 0 |
| Idaho | Yes | Upon filing. | 0 | 0 | 0 | 0 | 0 | 0 |
| Illinois | Yes | Upon filing. | 4 | 4 | 3 | 1 | 2 | 2 |
| Indiana | Yes | Upon filing. | 1 | 12 | 2 | 0 | 2 | 4 |
| Iowa | Yes | Upon filing. | 22 | N/A | 22 | 0 | 22 | 0 |
| Kansas | Yes | Every stage is public. | 0 | 0 | 1 | 0 | 1 | 0 |
| Kentucky | No | | 9 | 10 | N/A | N/A | N/A | N/A |

[1]Arizona - Unless reinstatement follows disability inactive status.

CHART III

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 1999
ABA Center for Professional Responsibility

| STATE* | Are Reinstatement/ Readmission Proceedings Public? | If So, When Are Proceedings Public? | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Pending from Prior Years | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|---|---|---|
| Louisiana | Yes | Upon filing. | 6 | 1 | 2 | 0 | 2 | 2 |
| Maine | Yes | Upon filing. | 0 | 0 | 0 | 4 | 2 | 1 |
| Maryland | Yes | After background investigation as Court directed. When Bar Counsel's recommendation is filed.[2] | 5 | 8 | 1 | 1 | 0 | 1 |
| Massachusetts | Yes | Upon filing. | 18 | 18 | 9 | 7 | 2 | 5 |
| Michigan | Yes | Upon filing. | 6 | N/A | 9 | 1 | 8 | 0 |
| Minnesota | Yes | Upon filing. | 5 | 5 | 8 | 0 | 8 | 1 |
| Mississippi | Yes | Upon filing. | 4 | 4 | 1 | 0 | 1 | 1 |
| Missouri | N/A | N/A | 9 | 6 | 3 | 1 | 2 | 2 |
| Nebraska | Yes | Upon filing. | 3 | 0 | 1 | 0 | 1 | 2 |
| Nevada | Yes | Upon filing. | N/A | N/A | N/A | N/A | N/A | N/A |
| New Hampshire | Yes | Upon filing. | 2 | 0 | 2 | 1 | 1 | 1 |
| New Jersey | Yes | Attorney required to publish Notice of Application for Reinstatement. | N/A | N/A[3] | 22 | 0 | 22 | N/A |
| New Mexico | Yes | Upon filing. | N/A | N/A | 1 | N/A | N/A | 0 |
| New York 1st Jud. Dept. | No | N/A | 18 | 3 | 15 | 4 | 4[4] | 3 |

[1]Maryland - While petition is public, the investigation and hearings are private until Hearing Committee & Review Board Reports filed with the Court of Appeals.
[2]New Jersey - Reinstatements are handled by Disciplinary Review Board
[4]NY 1st. Jud. Dept.- This number does not include lawyers suspended for non-payment of fees.

## CHART III

### REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 1999
ABA Center for Professional Responsibility

| STATE* | Are Reinstatement/ Readmission Proceedings Public? | If So, When Are Proceedings Public? | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Pending from Prior Years | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|---|---|---|
| New York 2nd Jud. Dept. 2nd & 11th Jud. Dist. | No | N/A | 20 | N/A | 4 | N/A | N/A | 16 |
| New York 2nd Jud. Dept. 9th Jud. Dist. | No | N/A | 6 | N/A | 2 | 0 | 2 | 4 |
| New York 2nd Jud. Dept. 10th Jud. Dist. | No | N/A | 11 | N/A | 3 | N/A | N/A | 8 |
| New York 3rd Jud. Dept. | No | N/A | 10 | 3 | 3 | 0 | 3 | 3 |
| New York 4th Jud. Dept. | No | N/A | 6 | 0 | 6 | 0 | 6 | 0 |
| Nevada | Yes | Upon filing. | N/A | N/A | N/A | N/A | N/A | N/A |
| North Carolina | Yes | Upon filing. | 4 | N/A | 1 | 0 | 1 | 3 |
| North Dakota | Yes | Upon filing. | 0 | 1 | 0 | N/A | N/A | 0 |
| Ohio | Yes | Upon filing. | 2 | N/A | 5 | 0 | 5 | 0 |
| Oklahoma | Yes | Upon filing. | 8 | 6 | 5 | 11 | 8 | 5 |
| Oregon | Yes | Upon filing. | N/A[1] | N/A | N/A | 0 | N/A | N/A |
| Pennsylvania | No | | 56 | 24 | 40 | 2 | 15 | 8 |
| Rhode Island | Yes | Upon filing. | 2 | N/A | 1 | 1 | 0 | 1 |
| South Carolina | Yes | Upon filing. | N/A | N/A | 10 | 2 | 8 | N/A |
| Tennessee | Yes | Upon filing. | 3 | 11 | 4 | N/A | N/A | 1 |
| Texas | Yes | Upon filing. | N/A | N/A | N/A | N/A | N/A | N/A |
| Vermont | Yes | Upon filing. | 1 | 0 | 1 | 0 | 1 | 0 |

[1]Oregon - There are a number of reinstatement categories not all related to prior discipline. In addition, short-term disciplinary suspensions require a reinstatement application.

CHART III

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 1999
ABA Center for Professional Responsibility

| STATE* | Are Reinstatement/ Readmission Proceedings Public? | If So, When Are Proceedings Public? | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Pending from Prior Years | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|---|---|---|
| Virginia | Yes | Upon posting on the VSB docket. | 1 | 2 | 0 | 0 | 0 | 2 |
| Washington | Yes | Public hearing on Petition. | 1 | 6 | 0 | 0 | N/A | 1 |
| Wisconsin | Yes | Upon filing. | 4 | 4 | 3 | N/A | N/A | 1 |
| Wyoming | No | N/A | 0 | 0 | 0 | N/A | N/A | 0 |

2000

CHART III

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 2000
ABA Center for Professional Responsibility

| STATE* | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | Total No. of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|
| Alabama | 11 | 8 | 2 | 6 | 0 |
| Alaska | 1 | 2 | 0 | 2 | 0 |
| Arizona | 7 | 1 | 0 | 1 | 0 |
| Arkansas | 4 | 4 | 0 | 4 | 0 |
| California | 17 | N/A | N/A | N/A | 4 |
| Colorado | 12 | 3 | 0 | 3 | 4 |
| Delaware | 3 | 0 | 0 | 0 | N/A |
| District of Columbia | 4 | 1 | 0 | 0 | 0 |
| Florida | N/A | 18 | N/A | 18 | N/A |
| Georgia | 2 | 2 | 2 | 0 | 0 |
| Hawaii | 4 | 3 | 0 | 3 | 0 |
| Illinois | 1 | 0 | 0 | 0 | 2 |
| Indiana | 4 | 3 | 0 | 3 | 2 |
| Iowa | 14 | 12 | 0 | 12 | 2 |
| Kentucky | N/A | 5 | 0 | 5 | N/A |
| Louisiana | 4 | 4 | 1 | 3 | 0 |
| Maine | 2 | 2 | 0 | 2 | 0 |
| Maryland | 5 | 3 | 3 | 0 | 2 |

CHART III

REINSTATEMENT  AND  READMISSION

SOURCE:  Survey on Lawyer Discipline Systems, 2000
ABA Center for Professional Responsibility

| STATE* | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | Total No. of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|
| Massachusetts | N/A | 7 | 2 | 5 | 3 |
| Michigan | 11 | 7 | 1 | 6 | 3 |
| Minnesota | 2 | 2 | 0 | 2 | 0 |
| Mississippi | 4 | 2 | 1 | 1 | 2 |
| Missouri | 26 | 2 | 0 | 2 | 14 |
| Nevada | 8 | 8 | 0 | 8 | 0 |
| New Hampshire | 1 | 1 | 0 | 1 | 0 |
| New Jersey | N/A | 17 | 0 | 17 | N/A |
| New Mexico | 3 | 3 | 1 | 2 | 0 |
| New York 1st Jud. Dept. | 10 | 10 | 4 | 6 | 10 |
| New York 2nd Jud. Dept. 2nd & 11th Jud. Dist. | 28 | N/A | N/A | N/A | N/A |
| New York 9th Jud. Dist. | 8 | 2 | 1 | 1 | 3 |
| New York 2nd Jud. Dept. 10th Jud. Dist. | 9 | N/A | N/A | N/A | 7 |
| New York 3rd Jud. Dept. | 7 | 4 | 0 | 4 | 1 |

Case: 2:24-cv-01200-ALM-CMV Doc #: 1 Filed: 03/15/24 Page: 256 of 372  PAGEID #: 256

CHART III

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 2000
ABA Center for Professional Responsibility

| STATE* | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | Total No. of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|
| New York 4th Jud. Dept. | 3 | 2 | 0 | 2 | 1 |
| North Carolina | 6 | 5 | 0 | 5 | 1 |
| North Dakota | 1 | 0 | 0 | 0 | 1 |
| Ohio | 10 | 10 | 0 | 10 | 2 |
| Oklahoma | 10 | 3 | N/A | 2 | 1 |
| Oregon | 171 | 0 | 0 | N/A | N/A |
| Pennsylvania | 62 | 6 | 0 | 6 | 9 |
| Rhode Island | 4 | N/A | N/A | NA | 1 |
| South Dakota | 1 | 1 | 0 | 1 | 0 |
| Tennessee | 11 | N/A | N/A | N/A | 3 |
| Utah | 5 | 5 | 1 | 4 | 0 |
| Vermont | 1 | 1 | 0 | 1 | 0 |
| Virginia | 5 | 0 | 0 | N/A | 2 |
| West Virginia | 2 | N/A | N/A | N/A | 1 |
| Wisconsin | 15 | 2 | 2 | 0 | 7 |
| Wyoming | 1 | 1 | 1 | 0 | N/A |

2001

CHART III

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 2001
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | Total No.of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|
| Alabama | 11 | 11 | 4 | 7 | 1 |
| Alaska | 1 | 0 | 0 | 0 | 1 |
| Arizona | 3 | 1 | 0 | 1 | 0 |
| Arkansas | 4 | 4 | 0 | 4 | 1 |
| California | 12 | 6 | 6 | N/A | 5 |
| Colorado | 9 | 4 | 0 | 4 | 3 |
| Delaware | 2 | 2 | 0 | 2 | 0 |
| District of Columbia | 3 | 2 | 0 | 2 | 1 |
| Florida | N/A | 18 | N/A | 18 | N/A |
| Georgia | 1 | 1 | 1 | 0 | 0 |
| Hawaii | 2 | 2 | 0 | 2 | 0 |
| Illinois | 4 | 3 | 0 | 3 | 1 |
| Indiana | 4 | 1 | 0 | 1 | 2 |
| Iowa | 8 | 8 | 0 | 8 | 0 |
| Kansas | 2 | 1 | 0 | 1 | 0 |
| Louisiana | 0 | 0 | N/A | N/A | 0 |
| Maine | 2 | 1 | 1 | N/A | 0 |
| Maryland | 5 | 3 | 1 | 2 | 2 |

9

## CHART III

### REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 2001
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | Total No. of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|
| Massachusetts | 11 | 4 | 0 | 4 | 6 |
| Michigan | 9 | 5 | 0 | 5 | 4 |
| Minnesota | 6 | 2 | 0 | 2 | 0 |
| Missouri | 20 | 8 | 1 | 7 | 6 |
| Montana | 1 | 1 | N/A | 1 | 0 |
| Nebraska | 6 | 6 | 0 | 6 | 0 |
| Nevada | 5 | 2 | 0 | 0 | 0 |
| New Hampshire | 2 | 2 | 0 | 2 | 0 |
| New Jersey | N/A | 13 | 0 | 13 | N/A |
| New Mexico | 2 | 2 | 1 | 1 | 0 |
| New York 1st Jud. Dept. | 13 | 11 | 0 | 11 | 2 |
| New York 2nd Jud. Dept. 2nd & 11th Jud. Dist. | 24 | N/A | N/A | N/A | 19 |
| New York 2nd Jud. Dept. 9th Jud. Dist. | 5 | 2 | 1 | 1 | 3 |
| New York 2nd Jud. Dept. 10th Jud. Dist. | 8 | 3 | 1 | 2 | 5 |
| New York 3rd Jud. Dept. | 12 | 5 | 0 | 5 | 2 |

CHART III

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 2001
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | Total No.of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|
| New York 4th Jud. Dept. | 23 | 5 | 1 | 4 | 2 |
| North Carolina | 0 | N/A | N/A | N/A | N/A |
| North Dakota | 1 | 1 | 0 | 1 | 0 |
| Ohio | 15[1] | 13 | 0 | 13 | 2 |
| Oklahoma | 19 | 9[2] | 2 | 0 | 5 |
| Oregon | 178[3] | 0 | 0 | N/A[3] | N/A[3] |
| Pennsylvania | 85 | 10 | 1 | 9 | 6 |
| Rhode Island | 3 | 2 | 2 | N/A | 0 |
| South Carolina | N/A | 9 | 1 | 8 | N/A |
| Tennessee | 5 | N/A | N/A | N/A | 0 |
| Utah | 7 | 3 | 2 | 1 | 3 |
| Vermont | 1 | 1 | 0 | 1 | 0 |
| Virginia | 3 | 0 | 0 | N/A | 1 |
| Washington | 0 | 0 | 0 | 0 | 0 |
| West Virginia | 1 | 1 | 0 | 1 | 3 |
| Wisconsin | 20 | 2 | 2 | 0 | 6 |
| Wyoming | 1 | 0 | 0 | N/A | 1 |

[1]Ohio: Statewide statistics regarding reinstatements.
[2]Oklahoma: Includes reinstatements after voluntary resignation and after having license stricken for non-payment of dues/MCLE.
[3]Oregon: Reinstatement is required for other categories not related to prior discipline.

2002

CHART III

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 2002
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | Total No. of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|
| Alabama | 11 | 11 | 5 | 6 | 2 |
| Alaska | 1 | 1 | N/A | 1 | 0 |
| Arkansas | 5 | 29 | 8 | 21 | 2 |
| California | 17 | N/A | N/A | N/A | 3 |
| Colorado | 13 | 7 | 1 | 6 | 4 |
| Delaware | 3 | 3 | 0 | 3 | 0 |
| District of Columbia | 7 | 0 | 0 | 0 | 7 |
| Florida | N/A | 18 | N/A | 18 | N/A |
| Georgia | 2 | N/A | N/A | N/A | 1 |
| Hawaii | 2 | 2 | 0 | 2 | 0 |
| Idaho | 1 | 1 | N/A | 1 | 0 |
| Illinois | 6 | N/A | N/A | N/A | 2 |
| Indiana | 4 | 4 | 0 | 4 | 3 |
| Iowa | 10 | 10 | 0 | 10 | 0 |
| Kansas | 1 | N/A | 0 | N/A | 0 |
| Kentucky | 10 | 6 | 0 | 6 | 3 |
| Louisiana | 9 | 2 | 0 | 2 | 1 |
| Maine | 2 | 2 | 1 | 1 | 2 |
| Maryland | 8 | 5 | 0 | 2 | 3 |

9

CHART III

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 2002
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | Total No. of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|
| Massachusetts | 8 | 2 | 0 | 2 | 3 |
| Michigan | 13 | 8 | 0 | 8 | 6 |
| Minnesota | 9 | 3 | 0 | 3 | 0 |
| Mississippi | 4 | 1 | 1 | 0 | 3 |
| Montana | 1 | 1 | 0 | 1 | 0 |
| Nebraska | 3 | 3 | 0 | 3 | 0 |
| Nevada | 3 | 3 | 0 | 3 | 0 |
| New Hampshire | 1 | N/A | N/A | N/A | N/A |
| New Jersey | N/A | 23 | 0 | 23 | N/A |
| New Mexico | 2 | 1 | 0 | 1 | 1 |
| New York 1st Jud. Dept. | 34 | 11 | 0 | 11 | 6 |
| New York 2nd Jud. Dept. 2nd & 11th Jud. Dist. | 4 | 2 | 0 | 2 | 4 |
| New York 2nd Jud. Dept. 9th Jud. Dist. | 5 | 3 | 0 | 3 | 2 |
| New York 2nd Jud. Dept. 10th Jud. Dist. | 5 | 2 | 0 | 2 | 3 |
| New York 3rd Jud. Dept. | 15 | 12 | 0 | 12 | 4 |

10

CHART III

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 2002
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | Total No.of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|
| New York 4th Jud. Dept. | 5 | 1 | 0 | 1 | 4 |
| North Carolina | 4 | 4 | 1 | 3 | 1 |
| North Dakota | 1 | 1 | 0 | 1 | 0 |
| Ohio | 12 | 1 | 0 | 1 | 0 |
| Oklahoma | 16 | 11 | 1 | 2 | 5 |
| Oregon | 115 | 0 | 0 | N/A | N/A |
| Pennsylvania | 68 | 10 | 5 | 5 | 7 |
| Rhode Island | 3 | 3 | 0 | 3 | 1 |
| South Carolina | 6 | N/A | N/A | N/A | N/A |
| Tennessee | 8 | N/A | N/A | N/A | 2 |
| Utah | 3 | 3 | 0 | 3 | 0 |
| Vermont | 1 | 1 | 0 | 1 | 0 |
| Virginia | 0 | 0 | 0 | N/A | 3 |
| Washington | 0 | 0 | 0 | 0 | 0 |
| West Virginia | 2 | 2 | 0 | 2 | 1 |
| Wisconsin | 20 | 19 | 1 | 18 | 4 |
| Wyoming | 1 | 0 | 0 | 0 | 1 |

11

2003

CHART 16

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 2003
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | Total No. of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|
| Alabama | 10 | 4 | 1 | 3 | 3 |
| Alaska | 0 | 0 | 0 | 0 | 0 |
| Arizona | 10 | 10 | 1 | 9 | 0 |
| Arkansas | 8 | 7 | 0 | 7 | 1 |
| California | 21 | 21 | 21 | 0 | 3 |
| Colorado | 12 | 8 | 2 | 6 | 4 |
| Connecticut | N/A | N/A | N/A | N/A | N/A |
| Delaware | 2 | 2 | 0 | 2 | 0 |
| District of Columbia | 4 | 0 | 0 | 0 | 1 |
| Florida | N/A | 12 | N/A | 12 | N/A |
| Georgia | 2 | 2 | 0 | 2 | 0 |
| Hawaii | 4 | 2 | 0 | 2 | 2 |
| Idaho | 1 | 1 | 0 | 1 | 0 |
| Illinois | 3 | 1 | 1 | 0 | 3 |
| Indiana | 3 | 4 | 0 | 4 | 3 |
| Iowa | 6 | 6 | 0 | 6 | 0 |
| Kansas | 1 | 0 | 0 | 0 | 0 |
| Kentucky | 6 | 2 | 0 | 2 | 1 |
| Louisiana | 8 | 7 | 0 | 7 | 1 |
| Maine | 3 | 3 | 0 | 3 | 0 |

9

Case: 2:24-cv-01200-ALM-CMV Doc #: 1  Filed: 03/15/24 Page: 267 of 372  PAGEID #: 267

CHART III

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 2003
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | Total No. of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|
| Maryland | 9 | 5 | 0 | 5 | 4 |
| Massachusetts | 9 | 11 | 0 | 11 | 5 |
| Michigan | 6 | 6 | 0 | 6 | 2 |
| Minnesota | 13 | 13 | 0 | 13 | 1 |
| Mississippi | 5 | 1 | 0 | 1 | 1 |
| Missouri | 25 | 20 | 2 | 18 | 7 |
| Montana | 0 | N/A | N/A | N/A | 0 |
| Nebraska | 2 | 2 | 0 | 2 | 0 |
| Nevada | 6 | 4[1] | 1 | 1 | 2 |
| New Hampshire | 0 | N/A | N/A | N/A | 1 |
| New Jersey | N/A | 15 | 0 | 15 | N/A |
| New Mexico | 1 | 1 | 0 | 1 | 0 |
| New York 1st Jud. Dept. | 27 | 14 | 4 | 10 | 7 |
| New York 2nd Jud. Dept. 2nd & 11th Jud. Dist. | 13 | 4 | 1 | 3 | 9 |
| New York 2nd Jud. Dept. 9th Jud. Dist. | 1 | 0 | 0 | 0 | 1 |
| New York 2nd Jud. Dept. 10th Jud. Dist. | 10 | 4 | 1 | 3 | 6 |
| New York 3rd Jud. Dept. | 16 | 9 | 0 | 9 | 7 |

[1]Nevada: Includes 2 Reinstatements granted from Disability Inactive Status.

10

CHART III

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 2003
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | Total No. of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|
| New York 4th Jud. Dept. | 10 | 5 | 0 | 5 | 3 |
| North Carolina | 4 | 4 | 4 | 0 | 2 |
| North Dakota | 0 | N/A | N/A | N/A | 0 |
| Ohio | 2 | N/A | 0[2] | N/A | N/A |
| Oklahoma | 17 | 0 | 0 | 0 | 17 |
| Oregon | 207[3] | 25 | 0[2] | 25 | N/A |
| Pennsylvania | 81 | 18 | 3 | 15 | 11 |
| Rhode Island | 3 | 3 | 2 | 1 | 0 |
| South Dakota | 1 | 0 | 0 | 0 | 1 |
| Tennessee | 5 | N/A | N/A | N/A | 1 |
| Texas | N/A | N/A | N/A | N/A | N/A |
| Utah | 5 | 2 | 0 | 2 | 0 |
| Vermont | 0 | N/A | N/A | N/A | 0 |
| Virginia | 1 | 0 | 0 | N/A | 0 |
| Washington | 3 | 1 | 1 | N/A | 1 |
| West Virginia | 0 | N/A | N/A | N/A | 1 |
| Wisconsin | 24 | 24 | 7 | 17 | 10 |
| Wyoming | 2 | 2 | 1 | 1 | 0 |

[2]Ohio and Oregon: All Disbarments are permanent.
[3]Oregon: There are many types of Reinstatement, not all related to prior discipline, such as inactive members and members suspended for non-payment of dues. There is not a precise breakdown of these categories by number.

2004

CHART III

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems 2004
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | Total No. of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|
| Alabama | 5 | 5 | 1 | 4 | 0 |
| Alaska | 2 | 2 | 0 | 2 | 1 |
| Arizona | 5 | 0 | 0 | 0 | 2 |
| Arkansas | 10 | 9 | 0 | 9 | 1 |
| California | 18 | 18 | 18 | 0[1] | 14 |
| Colorado | 6 | 7 | 2 | 5 | 1 |
| Connecticut | 1 | 1 | 1 | N/A | 0 |
| Delaware | 2 | 2 | 0 | 2 | 0 |
| District of Columbia | 3 | 1 | 0 | 1 | 4 |
| Florida | 18 | 18 | N/A | N/A | N/A |
| Georgia | 2[2] | 2 | 0 | 2 | N/A |
| Hawaii | 5 | 3 | 0 | 3 | 3 |
| Idaho | 1 | 1 | 0 | 1 | 0 |
| Illinois | 3 | 0 | 0 | 0 | 1 |
| Indiana | 4 | 0 | 0 | 0 | 2 |
| Iowa | 3 | 3 | 0 | 3 | 0 |
| Kansas | 3 | 0 | 0 | 0 | 3 |
| Kentucky | 10 | 6 | 0 | 6 | 1 |
| Louisiana | 1 | 1 | 1 | 0 | 0 |
| Maine | 2 | 1 | 0 | 1 | 0 |

[1]California: All Reinstatement proceedings follow Disbarments or Resignations with Disciplinary Charges.
[2]Georgia: Most Reinstatements/Readmissions handled by Office of Bar Admissions.

CHART III

REINSTATEMENT AND READMISSION

SOURCE:  Survey on Lawyer Discipline Systems, 2004
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | Total No. of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|
| Maryland | 5 | 3 | 0 | 3 | 2 |
| Massachusetts | 13 | 11 | 1 | 10 | 2 |
| Michigan | 12 | 1 | 0 | 1 | 4 |
| Minnesota | 7 | 4 | 0 | 4 | 1 |
| Mississippi | 2 | 1 | 1 | 0 | 1 |
| Missouri | 31 | 5 | 1 | 4 | 6 |
| Montana | 1 | 1 | 0 | 1 | 0 |
| Nebraska | 5 | 4 | 0 | 4 | 1 |
| Nevada | 5 | 5[3] | 0 | 4 | 0 |
| New Hampshire | 2 | 1 | 0 | 1 | 0 |
| New Jersey | N/A | 15 | 0[4] | 15 | N/A |
| New Mexico | 2 | 2 | 2 | 0 | 0 |
| New York 1st Jud. Dept. | 21 | 21 | 10 | 11 | 7 |
| New York 2nd Jud. Dept. 2nd & 11th Jud. Dist. | 9 | 5 | 1 | 4 | 4 |
| New York 2nd Jud. Dept. 9th Jud. Dist. | 1 | 0 | 0 | 0 | 1 |
| New York 2nd Jud. Dept. 10th Jud. Dist. | 8 | 6 | 3 | 3 | 2 |

[3]Nevada:  1 granted from disability inactive status.
[4]New Jersey, Ohio, Oregon:  Disbarment is permanent.

CHART III

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 2004
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | Total No. of Petitions, Motions or Requests for Reinstatement/ Readmission Granted | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|---|
| New York 3rd Jud. Dept. | 15 | 10 | 1 | 9 | 2 |
| New York 4th Jud. Dept. | 8 | 7 | 0 | 7 | 1 |
| North Carolina | 3 | 0 | 0 | 0 | 0 |
| North Dakota | 1 | N/A | N/A | N/A | 0 |
| Ohio | 3 | 2 | 0[6] | 2 | 1 |
| Oklahoma | 10 | 2 | 1 | 1 | 5 |
| Oregon | 200[5] | 20 | 0[6] | 20 | N/A |
| Pennsylvania | 75 | 11 | 3 | 8 | 12 |
| Rhode Island | 1 | 4 | 1 | 3 | 1 |
| South Carolina | N/A | 6 | 0 | 6 | N/A |
| South Dakota | 1 | 1 | 0 | 1 | 0 |
| Tennessee | 11 | N/A | N/A | N/A | 1 |
| Utah | N/A | 2 | 0 | 2 | 1 |
| Vermont | 2 | 1 | 0 | 1 | 0 |
| Virginia | 0 | N/A | N/A | N/A | 0 |
| Washington | 0 | N/A | N/A | N/A | 0 |
| West Virginia | 2 | 1 | 1 | N/A | 0 |
| Wisconsin | 19 | 5 | 1 | 4 | 2 |
| Wyoming | 1 | 0 | 0 | 0 | 0 |

[5]Oregon: There are many types of reinstatement, not all related to discipline.

2005

CHART III

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 2005
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|
| Alabama | 5 | 1 | 4 | 0 |
| Alaska | 1 | 0 | NA | 1 |
| Arizona | 2 | 0 | 0 | 0 |
| Arkansas | 13 | 0 | 11 | 2 |
| California | 18 | 18 | 0 | 11 |
| Colorado | 5 | 1 | 2 | 1 |
| Connecticut | 1 | NA | NA | 0 |
| Delaware | 3 | 0 | 2 | 1 |
| District of Columbia | 7 | 0 | 1 | 2 |
| Florida | NA | NA[1] | NA | NA |
| Georgia | 1 | NA | 1 | 0 |
| Hawaii | 1 | 0 | 0 | 0 |
| Idaho | 0 | 0 | 0 | 0 |
| Illinois | 8 | 0 | 0 | 2 |
| Indiana | 4 | 0 | 4 | 2 |
| Iowa | 6 | 0 | 6 | 0 |
| Kansas | 4 | 0 | 2 | 1 |
| Kentucky | 7 | 0 | 0 | 2 |
| Louisiana | 9 | 4 | 5 | 2 |
| Maine | 0 | NA | NA | NA |

[1]Florida: 11 total granted, but not distinguishable based on granted after disbarment or suspension.
[2]Indiana: Reinstatements granted were all on matters filed in a prior year, not on cases filed in 2005.

CHART III

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 2005
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|
| Maryland | 10 | 0 | 10 | 1 |
| Massachusetts | 15[3] | 0 | 15 | 2 |
| Michigan | 11 | 0 | 11 | 3 |
| Minnesota | 10 | 1 | 5 | 1 |
| Mississippi | 3 | NA | 1 | 1 |
| Missouri | 39[4] | 3 | 5 | 3 |
| Montana | 1 | 0 | 0 | 0 |
| Nebraska | 5 | 0 | 3 | 1 |
| Nevada | 3 | 0 | 2 | 1 |
| New Hampshire | 0 | 0 | 0 | 1 |
| New Jersey | NA | 0 | 18 | NA |
| New Mexico | 3 | 1 | 2 | 0 |
| New York 1st Judicial Department | 13 | 5 | 4 | 1 |
| New York 2nd Judicial Department 2nd & 11th Judicial Districts | 9 | NA | NA | 1 |
| New York 2nd Judicial Department 9th Judicial District | 0 | 0 | 0 | 0 |
| New York 2nd Judicial Department 10th Judicial District | 8 | 2 | 1 | 5 |
| New York 3rd Judicial Department | 6 | 1 | 5 | NA |

[3]Massachusetts: 8 were automatic reinstatements after short suspensions.
[4]Missouri: Includes petitions related to discipline, fees and restoration from inactive status.
New York

CHART III

REINSTATEMENT AND READMISSION

SOURCE: Survey on Lawyer Discipline Systems, 2005
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|
| 4th Judicial Department | 9 | 0 | 5 | 4 |
| North Carolina | 2 | 0 | 0 | 2 |
| North Dakota | 1 | 0 | 1 | 0 |
| Ohio | 11 | 0 | 7[5] | NA |
| Oklahoma | 10 | 0 | 1 | 3 |
| Oregon | 175* | 0 | 25* | NA |
| Pennsylvania | 94 | 6 | 11 | 14 |
| Rhode Island | 2 | 0 | 2 | 1 |
| South Dakota | 1 | 0 | 1 | 0 |
| Tennessee | 10 | NA | NA | 3 |
| Texas | 6 | NA[6] | NA[6] | 1 |
| Utah | 0 | 0 | 0 | 0 |
| Vermont | 0 | 0 | 0 | 0 |
| Virginia | 0 | NA | NA | NA |
| Washington | 0 | NA | NA | 0 |
| West Virginia[7] | NA | NA | NA | NA |
| Wisconsin | 26 | 0 | 3 | 2 |
| Wyoming | 1 | 1 | 0 | 0 |

* = Estimated.

[5]Ohio: "suspensions for term".
[6]Texas: Total of 5 reinstatements granted, but statistic does not distinguish betweenthose granted after suspension or after disbarment.
[7]West Virginia did not provide data.

2006

CHART III

REINSTATEMENT AND READMISSION

Survey on Lawyer Discipline Systems, 2006
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|
| Alabama | 9 | 0 | 5 | 0 |
| Alaska | 2 | 0 | 1 | 0 |
| Arizona | 15 | 0 | 10 | 0 |
| Arkansas | 12 | 0 | 11 | 1 |
| California | 10 | 1 | N/A[1] | 12 |
| Colorado | 12 | 0 | 4 | 3 |
| Connecticut | 3 | 0 | 3 | 0 |
| Delaware | 2 | 0 | 1 | 1 |
| District of Columbia | 1 | 2 | 0 | 0 |
| Florida | N/A | 3 | 10 | N/A |
| Georgia | 3 | N/A[2] | 3 | 0 |
| Hawaii | 1 | 0 | 2 | 3 |
| Idaho | 3 | 0 | 2 | 0 |
| Illinois | 5 | 0 | 1 | 4 |
| Indiana | 8 | 0 | 0 | 3 |
| Iowa | 14 | 0 | 14 | 0 |
| Kansas | 0 | N/A | 1 | 1 |
| Kentucky | 6 | 0 | 5 | 1 |
| Louisiana | 12 | 0 | 3 | 7 |
| Maine | 1 | 0 | 0 | 0 |

[1] California. Reinstatement proceedings are not conducted on suspended attorneys.
[2] Georgia. Disbarred lawyers must apply to Bar Admissions not General Counsel for reinstatement.

CHART III

REINSTATEMENT AND READMISSION

Survey on Lawyer Discipline Systems, 2006
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|
| Maryland | 5 | 1 | N/A | 4 |
| Massachusetts | 20[3] | 0 | 18 | 2 |
| Michigan | 7 | 0 | 6 | 2 |
| Minnesota | 12 | 0 | 9 | 1 |
| Mississippi | 4 | N/A | 1 | 0 |
| Missouri | 36[4] | 3 | 13 | 6 |
| Montana | 0 | 0 | 0 | 0 |
| Nebraska | 3 | 0 | 2 | 1 |
| Nevada | 2 | 0 | 0 | 2 |
| New Jersey | N/A | 0[5] | 15 | N/A |
| New Mexico | 0 | 0 | 0 | 0 |
| New York 1st Judicial Department | 26 | 1 | 6 | 11 |
| New York 2nd Judicial Department 2nd & 11th Judicial Districts | 8 | 3 | 5 | 0 |
| New York 2nd Judicial Department 9th Judicial District | 2 | 0 | 1 | 1 |
| New York 2nd Judicial Department 10th Judicial District | 7 | 1 | 4 | 2 |

[3]Massachusetts: 11 were automatic reinstatements after short suspensions.
[4]Missouri: Includes petitions related to discipline, fees and restorations from inactive status.
[5]New Jersey: Disbarment is permanent.

CHART III

REINSTATEMENT  AND  READMISSION

Survey on Lawyer Discipline Systems, 2006
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|
| New York 3rd Judicial Department | 10 | 0 | 9 | 1 |
| New York 4th Judicial Department 5th, 7th & 8th Judicial District | 6 | 0 | 4 | 3 |
| North Carolina | 6 | 0 | 4 | 2 |
| North Dakota | 2 | 0 | 2 | 0 |
| Ohio | 18 | N/A[5] | 16[6] | 2 |
| Oklahoma | 8 | 1 | 0 | 4 |
| Oregon | 180[7] | 0 | 25 | N/A |
| Pennsylvania | 91 | 6 | 10 | 13 |
| Rhode Island | 1 | 1 | 0 | 0 |
| South Dakota | 1 | 0 | 1 | 0 |
| Tennessee | 8 | N/A[8] | N/A[8] | 2 |
| Texas | 8 | N/A[9] | N/A[9] | N/A |
| Utah | 0 | 0 | 0 | 0 |
| Vermont | 0 | 0 | 0 | 0 |
| Virginia | 3 | 1 | N/A | 1 |
| Washington | 13 | 0 | 13 | 0 |
| West Virginia | 4 | 1 | 0 | 3 |
| Wisconsin | 34 | 9[10] | 28[11] | 2 |
| Wyoming | 0 | 0 | 0 | 0 |

* = Estimated.

[5]Ohio: Disbarment is permanent.
[6]Ohio: Includes "term" and "indefinite" suspensions.
[7]Oregon: Not all reinstatements are related to discipline.
[8]Tennessee: Total of 3 lawyers reinstated in 2006.
[9]Texas: Total of 8 reinstatements granted, but statistic does not distinguish between those granted after suspension or after disbarment.
[10]Wisconsin: 6 disciplinary and 3 with conditions.
[11]Wisconsin: After administrative suspensions.

2007

CHART III

## REINSTATEMENT AND READMISSION

Survey on Lawyer Discipline Systems, 2007
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|
| Alabama | 8 | 0 | 6 | 2 |
| Alaska | 1 | 0 | 1 | 0 |
| Arizona | 25 | 0 | 14 | 3 |
| Arkansas | 6 | 0 | 6 | 0 |
| California | 11 | 2 | N/A[1] | 3 |
| Colorado | 12 | 1 | 6 | 3 |
| Connecticut | 7 | 0 | 2 | 1 |
| Delaware | 1 | 0 | 1 | 1 |
| District of Columbia | 1 | 2 | 0 | 0 |
| Florida | 10 | 3 | 10 | N/A |
| Georgia | N/A | N/A[2] | N/A | 0 |
| Hawaii | 6 | 0 | 1 | 0 |
| Idaho | 1 | 0 | 1 | 0 |
| Illinois | 11 | 0 | 0 | 5 |
| Indiana | 11 | 0 | 1 | 7 |
| Iowa | 11 | 0 | 11 | 0 |
| Kansas | 3 | 0 | 2 | 0 |
| Kentucky | 7 | 0 | 5 | 0 |
| Louisiana | 6 | 0 | 2 | 4 |
| Maine | 1 | 0 | 0 | 1 |

[1]California: Reinstatement proceedings are not conducted on suspended attorneys.
[2]Georgia: Disbarred lawyers must apply to Bar Admissions not General Counsel for reinstatement.

CHART III

REINSTATEMENT AND READMISSION

Survey on Lawyer Discipline Systems, 2007
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|
| Maryland | 8 | 0 | 3 | 5 |
| Massachusetts | 16[3] | 0 | 17 | 2 |
| Michigan | 12 | 0 | 5 | 3 |
| Minnesota | 14 | 0 | 7 | 2 |
| Mississippi | 3 | 0 | 2 | 1 |
| Missouri | 35[4] | 0 | 16 | 8 |
| Montana | 2 | 0 | 0 | 1 |
| Nebraska | 2 | 1 | 0 | 0 |
| Nevada | 3 | 0 | 0 | 0 |
| New Hampshire | 2 | 0 | 1 | 0 |
| New Jersey | N/A | 0[5] | 12 | N/A |
| New Mexico | 1 | 0 | 1 | 0 |
| New York 1st Judicial Department | 20 | 2 | 4 | 4 |
| New York 2nd Judicial Department 2nd & 11th Judicial Districts | 9 | 2 | 1 | 6 |
| New York 2nd Judicial Department 9th Judicial District | 4 | 0 | 2 | 2 |
| New York 2nd Judicial Department 10th Judicial District | 8 | 4 | 3 | 1 |

[3]Massachusetts: Including automatic reinstatements after short suspensions.
[4]Missouri: Includes petitions related to discipline, fees and restorations from inactive status.
[5]New Jersey, Ohio, Oregon: Disbarment is permanent.

CHART III

REINSTATEMENT AND READMISSION

Survey on Lawyer Discipline Systems, 2007
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|
| New York 3rd Judicial Department | 8 | 0 | 8 | 0 |
| New York 4th Judicial Department 5th, 7th & 8th Judicial District | 8 | 0 | 6 | 2 |
| North Carolina | 4 | 0 | 3 | 1 |
| North Dakota | 1 | 0 | 1 | 0 |
| Ohio | 2 | N/A[5] | 13[6] | N/A |
| Oklahoma | 12 | 0 | 8 | 1 |
| Oregon | 176[7] | 0[5] | 20 | 4 |
| Pennsylvania | 92 | 4 | 13 | 16 |
| Rhode Island | 0 | 0 | 0 | 0 |
| South Carolina | 0 | 11 | 0 | 0 |
| South Dakota | 1 | 0 | 1 | 0 |
| Tennessee | 4 | N/A[8] | N/A[8] | 3 |
| Texas | 6 | 2[9] | 0 | 1 |
| Utah | 5 | 0 | 3 | 0 |
| Vermont | 0 | 0 | 0 | 0 |
| Virginia | 2 | 2 | N/A | 1 |
| Washington | 13 | 0 | 12 | 0 |
| West Viginia | 4 | 0 | 2 | 1 |
| Wisconsin | 17 | 1 | 4 | 3 |
| Wyoming | 1 | 1 | 0 | 0 |

[5]Ohio, Oregon, New Jersey: Disbarment is permanent.
[6]Ohio: Automatic reinstatements from "term suspensions" and "indefinite suspensions".
[7]Oregon: Not all reinstatements are related to discipline.
[8]Tennessee: Total of 3 lawyers reinstated in 2007.
[9]Texas:Total of 2 reinstatements granted, but statistic does not distinguish between those granted after suspension or after disbarment.



CHART III

REINSTATEMENT AND READMISSION

Survey on Lawyer Discipline Systems, 2008
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|
| Alabama | 4 | 1 | 2 | 1 |
| Alaska | 2 | 0 | 1 | 1 |
| Arizona | 16 | 0 | 22 | 1 |
| Arkansas | 2 | 0 | 1 | 1 |
| California | 8 | 4 | N/A[1] | 4 |
| Colorado | 10 | 1 | 7 | 0 |
| Connecticut | 3 | 1 | 4 | 1 |
| Delaware | 1 | 0 | 2 | 1 |
| District of Columbia | 2 | 0 | 0 | 2 |
| Florida | 27 | 1 | 7 | 4 |
| Georgia | 1 | N/A[2] | 1 | 0 |
| Hawaii | 3 | 0 | 1 | 2 |
| Idaho | 3 | 0 | 6 | 0 |
| Illinois | 5 | 1 | 0 | 4 |
| Indiana | 5 | 0 | 9 | 3 |
| Iowa | 12 | 0 | 12 | 0 |
| Kansas | 1 | 0 | 0 | 0 |
| Kentucky | 16 | 0 | 10 | 1 |
| Louisiana | 7 | 0 | 3 | 5 |
| Maine | 0 | 2 | 3 | 0 |

[1]California: Reinstatement proceedings are not conducted on suspended lawyers.
[2]Georgia: Disbarred lawyers must reapply to Bar Admissions not General Counsel for reinstatement.

CHART III

REINSTATEMENT AND READMISSION

Survey on Lawyer Discipline Systems, 2008
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|
| Maryland | 16 | 5 | 4 | 7 |
| Massachusetts | 26 | 0 | 22 | 2 |
| Michigan | 16 | 1 | 5 | 2 |
| Minnesota | 12 | 0 | 3 | 2 |
| Mississippi | 4 | 1 | 0 | 3 |
| Missouri | 42[3] | 0 | 4 | 2 |
| Montana | 2 | 0 | 1 | 1 |
| Nebraska | 6 | 1 | 4 | 1 |
| Nevada | 1 | 0 | 1 | 2 |
| New Hampshire | 1 | 0 | 0 | 1 |
| New Jersey | N/A | 0[4] | 12 | N/A |
| New Mexico | 1 | 1 | 0 | 0 |
| New York 1st Judicial Department | 25 | 2 | 5 | 8 |
| New York 2nd Judicial Department 9th Judicial District | 5 | 2 | 1 | 2 |
| New York 2nd Judicial Department 10th Judicial District | 9 | 5 | 4 | 2 |
| New York 2nd Judicial Department 2nd & 11th Judicial Districts | 9 | 4 | 5 | 1 |

[3]Missouri: Includes petitions related to discipline, fees and restorations from inactive status.
[4]New Jersey, Ohio, Oregon: Disbarment is permanent.

CHART III

REINSTATEMENT AND READMISSION

Survey on Lawyer Discipline Systems, 2008
ABA Center for Professional Responsibility

| STATE | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Filed | No. Granted After Disbarment | No. Granted After Suspension | No. of Petitions, Motions or Requests for Reinstatement/ Readmission Denied/Dismissed |
|---|---|---|---|---|
| New York 3rd Judicial Department | 19 | 0 | 15 | 4 |
| New York 4th Judicial Department 5th, 7th & 8th Judicial District | 4 | 0 | 4 | 0 |
| North Carolina | 1 | 0 | 4 | 1 |
| North Dakota | 1 | 0 | 1 | 0 |
| Ohio | 4 | N/A[4] | 3[5] | N/A |
| Oklahoma | 11 | 1 | 6 | 3 |
| Oregon | 187[6] | 0[4] | 15 | 6[6] |
| Pennsylvania | 88 | 1 | 13 | 8 |
| Rhode Island | 1 | 1 | N/A | 0 |
| South Carolina | N/A | N/A | N/A | N/A |
| South Dakota | 0 | 0 | 0 | 0 |
| Tennessee | 6 | N/A | 7 | 1 |
| Texas | 10 | 3 | N/A | 4 |
| Utah | 5 | 0 | 3 | 2 |
| Vermont | 0 | 0 | 0 | 0 |
| Virginia | 1 | 0 | N/A | 1 |
| Washington | 20 | 0 | 16 | 0 |
| West Virginia | 2 | 0 | 1 | 1 |
| Wisconsin | 22 | 1 | 21 | 5 |
| Wyoming | 2 | 0 | 1 | 1 |

[4]Ohio, Oregon, New Jersey: Disbarment is permanent.
[5]Ohio: Automatic reinstatements from "term suspensions" and "indefinite suspensions".
[6]Oregon: Not all reinstatements are related to discipline.

2009

November 2010
© 2010 American Bar Association

CHART III

REINSTATEMENT /
READMISSION 2009

Survey on Lawyer Discipline Systems 2009
ABA Center for Professional Responsibility

| STATE | Number of Petitions, Motions or Requests for Reinstatement/Readmission Filed | Number Granted After Disbarment | Number Granted After Suspension | Number of Petitions, Motions or Requests for Reinstatement/Readmission Denied/Dismissed |
|---|---|---|---|---|
| Alabama | 8 | 0 | 3 | 1 |
| Alaska | 2 | 0 | 0 | 0 |
| Arizona | 8 | 0 | 19 | 0 |
| Arkansas | 6 | 0 | 6 | 1 |
| California | 22 | 4 | N/A [1] | 7 |
| Colorado | 6 | 1 | 1 | 5 |
| Connecticut | 3 | 0 | 2 | 2 |
| Delaware | 2 | 0 | 2 | 0 |
| District of Columbia | 6 | 1 | 1 | 1 |
| Florida | 32 | 0 | 19 | 16 |
| Georgia | 0 | N/A [2] | 0 | 1 |
| Hawaii | 1 | 0 | 0 | 0 |
| Idaho | 0 | 0 | 0 | 0 |
| Illinois | 7 | 1 | 2 | 4 |
| Indiana | 4 | 0 | 3 | 2 |
| Iowa | 8 | 0 | 8 | 0 |
| Kansas | 2 | 0 | 2 | 0 |
| Kentucky | 17 | 1 | 17 | 1 |
| Louisiana | 7 | 0 | 2 | 2 |
| Maine | 3 | 0 | 0 | 1 |
| Maryland | 14 | 1 | 6 | 7 |
| Massachusetts | 15 | 0 | 13 | 6 |
| Michigan | 7 | 0 | 8 | 9 |
| Minnesota | 17 | 1 | 13 | 2 |
| Mississippi | 3 | 1 | 0 | 2 |
| Missouri | 84 [3] | 1 | 42 [3] | 3 [3] |
| Montana | 0 | 0 | 1 | 0 |
| Nebraska | 9 | 0 | 8 | 1 |
| Nevada | 4 | 0 | 2 | 0 |

[1] California: Reinstatement proceedings are not conducted for suspended lawyers.
[2] Georgia: Disbarred lawyers must reapply to Bar Admissions not General Counsel for reinstatement.
[3] Missouri: Includes petitions related to discipline, fees, and restorations from inactive status.

1

CHART III

REINSTATEMENT /
READMISSION 2009

| STATE | Number of Petitions, Motions or Requests for Reinstatement/Readmission Filed | Number Granted After Disbarment | Number Granted After Suspension | Number of Petitions, Motions or Requests for Reinstatement/Readmission Denied/Dismissed |
|---|---|---|---|---|
| New Hampshire | 2 | 0 | 2 | 1 |
| New Jersey | N/A | N/A [4] | 16 | N/A |
| New Mexico | 2 | 1 | 1 | 1 |
| New York: 1st Judicial Department | 21 | 0 | 3 | 9 |
| New York: 2nd Judicial Department/9th District | 7 | 2 | 2 | 3 |
| New York: 2nd Judicial Department/10th District | 16 | 4 | 8 [5] | 5 |
| New York: 2nd Judicial Department/2nd, 11th & 13th Districts | 15 | 1 | 8 | 6 |
| New York: 3rd Judicial Department | 10 | 0 | 5 | 5 |
| New York: 4th Judicial Department/5th, 7th & 8th Districts | 9 | 0 | 6 | 3 |
| North Carolina | 8 | 0 | 3 | 2 |
| North Dakota | 0 | 0 | 0 | 0 |
| Ohio | 5 | N/A [4] | 2 [6] | 2 |
| Oklahoma | 14 | 0 | 6 | 5 |
| Oregon | 178 [7] | 0 [4] | 12 | 2 [7] |
| Pennsylvania | 54 | 3 | 11 | 6 |
| Rhode Island | 1 | 0 | 1 | 0 |
| South Carolina | 12 | 0 | 11 | 1 |
| South Dakota | 0 | 0 | 0 | 0 |
| Tennessee | 3 | 0 | 5 | 4 |
| Texas | 7 | 4 | N/A | 2 |
| Utah | 3 | 0 | 2 | 1 |
| Vermont | 0 | 0 | 0 | 0 |
| Virginia | 0 | 0 | N/A | 0 |
| Washington | 16 | 0 | 9 | 1 |
| West Virginia | 1 | 0 | 0 | 1 |
| Wisconsin | 21 | 5 | 16 | 3 |
| Wyoming | 2 | 0 | 0 | 0 |

[4]New Jersey, Ohio, Oregon: Disbarment is permanent.

[5]New York: 2nd Judicial Department/10th District: 1 attorney reinstated after prior voluntary non-disciplinary resignation.

[6]Ohio: Automatic reinstatments from "term suspensions" and "indefinite suspensions."

[7]Oregon: Not all reinstatments are related to discipline.

2010

**CHART III: REINSTATEMENT / READMISSION STATISTICS 2010**

| Jurisdiction | 11. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed | 12a. # Granted After Disbarrment | 12b. # Granted After Suspension | 13. # of Petitions, Motions or Requests for Reinstatement / Readmission Denied / Dismissed |
|---|---|---|---|---|
| Alabama | 9 | 2 | 5 | 2 |
| Alaska | 1 | 0 | 2 | 1 |
| Arizona | 13 | 0 | 8 | 0 |
| Arkansas | 16 | 0 | 2 | 1 |
| California | 9 | 1 | N/A | 4 |
| Colorado | 12 | 0 | 5 | 3 |
| Connecticut | N/A | N/A | N/A | N/A |
| Delaware | 6 | 0 | 1 | 1 |
| District of Columbia | 1 | 0 | 0 | 3 |
| Florida | 34 | 2 | 16 | 12 |
| Georgia | 2 | N/A | 1 | 1 |
| Hawaii | 1 | 2 | N/A | 0 |
| Idaho | 1 | 0 | 0 | 0 |
| Illinois | 10 | 0 | 3 | 6 |
| Indiana | 6 | 0 | 3 | 1 |
| Iowa | 7 | 0 | 7 | 0 |
| Kentucky | 9 | 0 | 6 | 1 |
| Louisiana | 4 | 0 | 4 | 3 |
| Maine | 2 | 1 | 7 | 2 |
| Maryland | 7 | 0 | 0 | 7 |
| Massachusetts | 35 | 1 | 22 | 2 |
| Michigan | 8 | 2 | 4 | 5 |
| Minnesota | 8 | 0 | 6 | 2 |
| Mississippi | 3 | 1 | 0 | 1 |
| Missouri | 41 | 0 | 19 | 4 |
| Montana | 1 | 0 | 1 | 0 |
| Nebraska | 6 | 0 | 6 | 0 |
| New Hampshire | 2 | 0 | 2 | 0 |
| New Jersey | N/A | 0 | 12 | N/A |
| New Mexico | 1 | 0 | 0 | 1 |

© American Bar Association
March 2012

**CHART III: REINSTATEMENT / READMISSION STATISTICS 2010**

| Jurisdiction | 11. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed | 12a. # Granted After Disbarrment | 12b. # Granted After Suspension | 13. # of Petitions, Motions or Requests for Reinstatement / Readmission Denied / Dismissed |
|---|---|---|---|---|
| New York: 2nd Department/9th District | 6 | 3 | 1 | 2 |
| New York: 2nd Department/10th District | 10 | 1 | 3 | 5 |
| New York: 2nd Department/11th &13th Districts | 10 | 2 | 3 | 3 |
| New York:4th Judicial Departments/5th, 7th & 8th Districts | 6 | 0 | 5 | 1 |
| North Carolina | 3 | 0 | 0 | 3 |
| North Dakota | 0 | 0 | 0 | 0 |
| Ohio | N/A | 0 | 4 | 0 |
| Oklahoma | 23 | 0 | 10 | 3 |
| Oregon | 170 | 0 | 20 | 5 |
| Pennsylvania | 131 | 1 | 8 | 11 |
| Rhode Island | 1 | 1 | 1 | 0 |
| South Carolina | N/A | N/A | N/A | N/A |
| South Dakota | 0 | 0 | 0 | 0 |
| Tennessee | 4 | 1 | 3 | 2 |
| Texas | 5 | 1 | N/A | 3 |
| Utah | 3 | 0 | 1 | 0 |
| Vermont | 1 | 0 | 1 | 0 |
| Virginia | 0 | 0 | N/A | 0 |
| Washington | 14 | 1 | 11 | 2 |
| West Virginia | 2 | 1 | 1 | 0 |
| Wisconsin | 19 | 4 | 15 | 3 |
| Wyoming | 0 | 0 | 0 | 0 |
| **TOTAL** | **663** | **28** | **229** | **106** |
| **AVERAGE** | **14** | **1** | **5** | **2** |
| **MEDIAN** | **6** | **0** | **3** | **1** |

© American Bar Association
March 2012

12

**CHART III: REINSTATEMENT / READMISSION STATISTICS 2010**

| CHART III NOTES | |
|---|---|
| California | Q12b: Reinstatement proceedings are not conducted for suspended lawyers. |
| Georgia | Q12a: Disbarred lawyers must reapply to Bar Admissions not General Counsel for reinstatement. |
| Missouri | Q12a: Includes petitions related to discipline, fees, and restorations from inactive status. |
| New Jersey, Ohio, and Oregon | Q12a: Disbarment is permanent. |
| Ohio | Q12b: Automatic reinstatements from "term suspensions" and "indefinite suspensions." |
| Oregon | Q11 & Q13: Not all reinstatements are related to discipline. Q12b & Q13: Estimates. |

© American Bar Association
March 2012

13

2011

## CHART III: REINSTATEMENT / READMISSION STATISTICS 2011

| Jurisdiction | 11. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed | 12a. # Granted After Disbarrment | 12b. # Granted After Suspension | 13. # of Petitions, Motions or Requests for Reinstatement / Readmission Denied / Dismissed |
|---|---|---|---|---|
| Alabama | 11 | 2 | 6 | 3 |
| Alaska | 0 | 1 | 0 | 0 |
| Arizona | 8 | 0 | 17 | 5 |
| Arkansas | 5 | 0 | 2 | 0 |
| California | 5 | 1 | 0 | 1 |
| Colorado | 3 | 1 | 6 | 1 |
| Delaware | 1 | 0 | 0 | 1 |
| District of Columbia | 8 | 1 | 0 | 3 |
| Florida | 29 | 2 | 13 | 16 |
| Georgia | N/A | N/A | 1 | 1 |
| Idaho | 2 | 0 | 1 | 0 |
| Illinois | 6 | 1 | 1 | 5 |
| Indiana | 6 | 0 | 6 | 1 |
| Iowa | 11 | 0 | 11 | 0 |
| Kansas | 3 | 9 | 8 | 0 |
| Kentucky | 11 | 0 | 8 | 1 |
| Louisiana | 10 | 0 | 1 | 1 |
| Maine | 3 | 2 | 5 | 2 |
| Maryland | 12 | 0 | 0 | 7 |
| Massachusetts | 16 | 2 | 16 | 4 |
| Michigan* | 15 | 0 | 8 | 4 |
| Minnesota | 13 | 20 | 20 | 2 |
| Mississippi | 2 | 0 | 0 | 1 |
| Missouri | 119 | 3 | 48 | 9 |
| Montana | 0 | 0 | 0 | 0 |
| Nebraska | 3 | 3 | 3 | 0 |
| Nevada | 6 | 0 | 4 | 1 |
| New Hampshire | 0 | 2 | 0 | 1 |
| New Jersey | 7 | 0 | 8 | 1 |

© American Bar Association
May 2013

**CHART III: REINSTATEMENT / READMISSION STATISTICS 2011**

| Jurisdiction | 11. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed | 12a. # Granted After Disbarrment | 12b. # Granted After Suspension | 13. # of Petitions, Motions or Requests for Reinstatement / Readmission Denied / Dismissed |
|---|---|---|---|---|
| New Mexico | 2 | 0 | 1 | 1 |
| New York: 2nd Department/9th Judicial District | 5 | 3 | 3 | 2 |
| New York: 2nd Department/10th Judicial District | 4 | 3 | 1 | N/A |
| New York: 2nd Department/2nd, 11th & 13th Judicial Districts | 10 | 3 | 2 | 5 |
| New York:4th Department/5th, 7th & 8th Judicial Districts | 9 | 0 | 6 | 3 |
| North Carolina | 11 | 0 | 7 | 2 |
| North Dakota | 1 | 0 | 1 | 0 |
| Ohio | 12 | N/A | 8 | 1 |
| Oregon | 134 | N/A | 11 | 4 |
| Pennsylvania | 84 | 2 | 11 | 18 |
| Rhode Island | 2 | 1 | 0 | 1 |
| South Carolina | 0 | 0 | 0 | 0 |
| South Dakota | 0 | 0 | 1 | 0 |
| Tennessee | 5 | 0 | 4 | 0 |
| Texas | 9 | 3 | 3 | 3 |
| Utah | 5 | 1 | 3 | 1 |
| Vermont | 0 | 0 | 0 | 0 |
| Virginia | 2 | 0 | N/A | 0 |
| Washington | 6 | 0 | 4 | 2 |
| West Virginia | 6 | 0 | 2 | 3 |
| Wisconsin | 51 | 0 | 6 | 24 |
| Wyoming | 1 | 1 | 0 | 0 |
| **TOTAL*** | **674** | **67** | **267** | **141** |
| **AVERAGE*** | **13** | **1** | **5** | **3** |
| **MEDIAN*** | **6** | **0** | **3** | **1** |

© American Bar Association
May 2013

**CHART III: REINSTATEMENT / READMISSION STATISTICS 2011**

| CHART III NOTES | *Please note that data was not received from the following jurisdictions by the publication date: Connecticut, Hawai'i, Michigan (AGS), New York: 1st Dept., New York: 3rd Dept., and Oklahoma. |
|---|---|
| California | Q12b: Reinstatement proceedings are not conducted for suspended lawyers. |
| Georgia | Q12a: Disbarred lawyers must reapply to Bar Admissions not General Counsel for reinstatement. |
| Minnesota | Q12b: 3 from resignation. |
| Mississippi | Q11: 1 still pending. |
| Missouri | Q12a: Includes petitions related to discipline, fees, and restorations from inactive status. |
| New Jersey, Ohio, and Oregon | Q12a: Disbarment is permanent. |
| North Carolina | Q11: 3 from disability. |
| North Carolina | Q13: 1 from disability. |
| Ohio | Q12b: Automatic reinstatements from "term suspensions" and "indefinite suspensions." |
| Oregon | Q11: Includes lawyers seeking reinstatement for any reason - after disciplinary and administrative suspension, inactive status and voluntary resignation. |
| Oregon | Q12b: Includes only lawyers reinstated after disciplinary suspensions. |

© American Bar Association
May 2013

2012

CENTER FOR PROFESSIONAL RESPONSIBLITY
SURVEY ON LAWYER DISCIPLINE SYSTEMS (S.O.L.D.)

CHART III: REINSTATEMENT / READMISSION STATISTICS 2012

| Jurisdiction | 11. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed | 12a. # Granted After Disbarrment | 12b. # Granted After Suspension | 13. # of Petitions, Motions or Requests for Reinstatement / Readmission Denied / Dismissed |
|---|---|---|---|---|
| Alabama | 10 | 1 | 6 | 3 |
| Alaska | 1 | 0 | 1 | 0 |
| Arizona | 19 | 0 | 2 | 7 |
| Arkansas | 14 | 0 | 13 | 1 |
| California$_N$ | | | | |
| Colorado | 8 | 0 | 4 | 1 |
| Delaware | 3 | 0 | 0 | 2 |
| District of Columbia | 6 | 5 | 1 | 1 |
| Florida | 29 | 2 | 113 | 16 |
| Georgia | 5 | 1 | 0 | 0 |
| Hawai'i | 2 | 0 | 0 | 1 |
| Idaho | 2 | 0 | 2 | 1 |
| Illinois | 4 | 0 | 1 | 3 |
| Indiana | 9 | 2 | 0 | 3 |
| Iowa | 21 | 0 | 21 | 0 |
| Kansas | 1 | 0 | 1 | 0 |
| Kentucky | 10 | 0 | 11 | 1 |
| Louisiana | 10 | 1 | 7 | 6 |
| Maine | 6 | 0 | 0 | 0 |
| Maryland | 7 | 1 | 0 | 6 |
| Massachusetts | 27 | 0 | 24 | 3 |
| Michigan$_N$ | 10 | 0 | 4 | 5 |
| Minnesota | 17 | 0 | 7 | 4 |
| Mississippi | 2 | 1$_N$ | 0 | 0 |
| Montana | 2 | 0 | 0 | 0 |
| Nebraska | 1 | 0 | 1 | 0 |
| Nevada | 3 | 0 | 2 | 1 |
| New Jersey | 12 | N/A$_N$ | 12 | 0 |
| | N = See Chart Notes | | | |

© American Bar Association
October 2014

**CENTER FOR PROFESSIONAL RESPONSIBILITY**
**SURVEY ON LAWYER DISCIPLINE SYSTEMS (S.O.L.D.)**

### CHART III: REINSTATEMENT / READMISSION STATISTICS 2012

| Jurisdiction | 11. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed | 12a. # Granted After Disbarrment | 12b. # Granted After Suspension | 13. # of Petitions, Motions or Requests for Reinstatement / Readmission Denied / Dismissed |
|---|---|---|---|---|
| New Mexico | 4 | 1 | 2 | 1 |
| New York: 1st Department | 103 | N/A | N/A | 2 |
| New York: 2nd Department/ 9th District | 5 | 2 | 2 | 1 |
| New York: 2nd Department/ 10th District | 11 | 3 | 5 | 2 |
| New York: 2nd Department/ 2nd, 11th & 13th Districts | 11 | 4 | 3 | 4 |
| New York:4th Department/ 5th, 7th & 8th Districts | 5 | 0 | 4 | 1 |
| North Carolina | 8 | 0 | 5 | 1 |
| North Dakota | 0 | 0 | 0 | 0 |
| Ohio | 5 | N/A$_N$ | 5 | 0 |
| Oklahoma | 8 | 3 | 1 | 4 |
| Oregon | 116$_N$ | N/A$_N$ | 10 | 1 |
| Pennsylvania | 88 | 0 | 12 | 2 |
| Rhode Island | 0 | 0 | 0 | 0 |
| South Dakota | 0 | 0 | 0 | 0 |
| Tennessee | 13 | 0 | 5 | 2 |
| Texas | 8 | 0 | N/A | 2 |
| Utah | 5 | 1 | 3 | 1 |
| Vermont | 0 | 0 | 0 | 0 |
| Virginia | 2 | 0 | N/A | 0 |
| Washington | 6 | 0 | 4 | 2 |
| Wisconsin | 20 | N/A | 2 | 1 |
| Wyoming | 1 | 0 | 0 | 1 |
| | N = See Chart Notes | | | |
| **TOTAL*** | 544 | 27 | 296 | 93 |
| **AVERAGE*** | 11 | 1 | 6 | 2 |
| **MEDIAN*** | 6 | 0 | 2 | 1 |

© American Bar Association
October 2014

**CENTER FOR PROFESSIONAL RESPONSIBLITY**
**SURVEY ON LAWYER DISCIPLINE SYSTEMS (S.O.L.D.)**

**CHART III: REINSTATEMENT / READMISSION STATISTICS 2012**

| CHART III NOTES | The following jurisdictions did not provide any data by the publication date: Connecticut, Michigan: Attorney Griveance Commission, Missouri, New Hampshire, New York: 3rd Department, South Carolina and West Virginia. |
|---|---|
| California | Relevant data can be viewed at: http://www.calbar.ca.gov/LinkClick.aspx?fileticket=XDTLFwaTAAM%3d&tabid=224&mid=1534 |
| Michigan | Data provided by the Michigan Attorney Discipline Board. |
| Mississippi | Q12a: 1 pending. |
| New Jersey, Ohio, and Oregon | Q12a: Disbarment is permanent. |
| Oregon | Q11: Includes lawyers seeking reinstatement for any reason - after disciplinary and administrative suspension, inactive status and voluntary resignation. |

© American Bar Association
October 2014

2013

**CENTER FOR PROFESSIONAL RESPONSIBLITY**
**SURVEY ON LAWYER DISCIPLINE SYSTEMS (S.O.L.D.)**

**CHART III: REINSTATEMENT / READMISSION STATISTICS 2013**

| Jurisdiction | 11. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed | 12a. # Granted After Disbarment | 12b. # Granted After Suspension | 13. # of Petitions, Motions or Requests for Reinstatement / Readmission Denied / Dismissed |
|---|---|---|---|---|
| Alabama | $12_N$ | 0 | 1 | 4 |
| Alaska | 2 | 1 | 1 | 2 |
| Arizona | 14 | 1 | 3 | 6 |
| Arkansas | 9 | 0 | 9 | 0 |
| California$_N$ | | | | |
| Colorado | 6 | 1 | 1 | 2 |
| Delaware | 5 | 0 | 0 | 0 |
| District of Columbia | 5 | 1 | 4 | 1 |
| Florida | 20 | 1 | 8 | 8 |
| Georgia | 17 | 2 | 2 | 1 |
| Hawai'i | 1 | 0 | 2 | 1 |
| Idaho | 1 | 0 | 0 | 1 |
| Illinois | 9 | 0 | 6 | 3 |
| Indiana | 4 | 1 | 0 | 4 |
| Iowa | 21 | 0 | 20 | 1 |
| Kansas | 6 | 0 | 6 | 0 |
| Kentucky | 12 | 0 | 1 | 3 |
| Louisiana | 11 | 1 | 15 | 3 |
| Maine | 2 | 0 | 0 | 0 |
| Maryland | 15 | 4 | 5 | 6 |
| Massachusetts | 28 | 3 | 21 | 4 |
| Michigan$_N$ | 11 | 0 | 5 | 3 |
| Minnesota | 23 | 1 | 13 | 3 |
| Mississippi | 2 | 0 | 1 | 0 |
| Montana | 1 | 1 | 0 | 0 |
| Nebraska | 2 | 0 | 1 | 0 |
| Nevada | $5_N$ | 0 | 1 | 2 |
| New Jersey | 12 | $N/A_N$ | 12 | 0 |
| | **N = See Chart Notes** | | | |

© American Bar Association
October 2014

**CENTER FOR PROFESSIONAL RESPONSIBLITY**
**SURVEY ON LAWYER DISCIPLINE SYSTEMS (S.O.L.D.)**

### CHART III: REINSTATEMENT / READMISSION STATISTICS 2013

| Jurisdiction | 11. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed | 12a. # Granted After Disbarment | 12b. # Granted After Suspension | 13. # of Petitions, Motions or Requests for Reinstatement / Readmission Denied / Dismissed |
|---|---|---|---|---|
| New Mexico | 2 | 0 | 1 | 1 |
| New York: 1st Department | 114 | N/A | N/A | 6 |
| New York: 2nd Department/ 9th District | 5 | 0 | 5 | 0 |
| New York: 2nd Department/ 10th District | 7 | 1 | 2 | 5 |
| New York: 2nd Department/ 2nd, 11th & 13th Districts | 15 | 2 | 6 | 7 |
| New York:4th Department/ 5th, 7th & 8th Districts | 6 | 0 | 6 | 0 |
| North Carolina | 8 | 1 | 7 | 3 |
| North Dakota | 2 | 0 | 1 | 1 |
| Ohio | 1 | $N/A_N$ | 1 | 1 |
| Oklahoma | 10 | 0 | 1 | 3 |
| Oregon | $120_N$ | $N/A_N$ | 9 | 1 |
| Pennsylvania | 80 | 3 | 8 | 2 |
| Rhode Island | 3 | 1 | 1 | 1 |
| South Dakota | 1 | 0 | 0 | 0 |
| Tennessee | 9 | 0 | 3 | 0 |
| Texas | 8 | 6 | N/A | 0 |
| Utah | 5 | 0 | 5 | 1 |
| Vermont | 3 | $1_N$ | 0 | 0 |
| Virginia | 1 | 1 | N/A | 0 |
| Washington | 11 | 0 | 8 | 3 |
| Wisconsin | 30 | 0 | 0 | 4 |
| Wyoming | 0 | 0 | 0 | 0 |
| | N = See Chart Notes | | | |
| **TOTAL\*** | **560** | **33** | **202** | **97** |
| **AVERAGE\*** | **12** | **1** | **4** | **2** |
| **MEDIAN\*** | **7** | **0** | **2** | **1** |

© American Bar Association
October 2014

**CENTER FOR PROFESSIONAL RESPONSIBLITY**
**SURVEY ON LAWYER DISCIPLINE SYSTEMS (S.O.L.D.)**

**CHART III: REINSTATEMENT / READMISSION STATISTICS 2013**

| CHART III NOTES | The following jurisdictions did not provide any data by the publication date: Connecticut, Michigan: Attorney Grievance Commission, Missouri, New Hampshire, New York: 3rd Department, South Carolina, and West Virginia. |
|---|---|
| Alabama | One attorney who had been on disability inactive status was reinstated. |
| California | Relevant data can be viewed at: http://www.calbar.ca.gov/LinkClick.aspx?fileticket=URO9RvplNv4%3d&tabid=224&mid=1534 |
| Michigan | Data provided by the Michigan Attorney Discipline Board. |
| Nevada | Q11: Includes two petitions for reinstatement after disability. |
| New Jersey, Ohio, and Oregon | Q12a: Disbarment is permanent. |
| Oregon | Q11: Includes lawyers seeking reinstatement for any reason-after disciplinary and administrative suspension, inactive status and voluntary resignation. |
| Vermont | Q12a: 2 pending at the start of FY 2014. |

© American Bar Association
October 2014

2014

CENTER FOR PROFESSIONAL RESPONSIBILITY
SURVEY ON LAWYER DISCIPLINE SYSTEMS (S.O.L.D.)

CHART IV: REINSTATEMENT / READMISSION 2014

| Jurisdiction | 12.  # of Petitions, Motions or Requests for Reinstatement / Readmission Filed | 13a.  # Granted After Disbarment | 13b.  # Granted After Suspension | 13c.  # Granted After Transfer to Disability Inactive Status | 14.  # Denied / Dismissed |
|---|---|---|---|---|---|
| Alabama | 12 | 2 | 18 | 3 | 11 |
| Alaska | 1 | 0 | 1 | 0 | 0 |
| Arizona | 10 | 0 | 7 | 0 | 6 |
| Arkansas | 7 | 0 | 1 | 0 | 0 |
| Colorado | 8 | 0 | 4 | 0 | 2 |
| Delaware | 8 | 0 | 3 | 0 | 4 |
| District of Columbia | 3 | 0 | 3 | 0 | 1 |
| Florida | 28 | 2 | 11 | 1 | 14 |
| Georgia | 2 | 0 | 3 | N/A | N/A |
| Hawai'i | 2 | 0 | 0 | 0 | 0 |
| Idaho | 2 | 0 | 0 | 0 | 1 |
| Illinois | 4 | 0 | 1 | 0 | 6 |
| Indiana | 8 | 0 | 0 | 0 | 5 |
| Iowa | 10 | 0 | 10 | 0 | 0 |
| Kentucky | 10 | 0 | 1 | 0 | 2 |
| Louisiana | 6 | 0 | 14 | 2 | 2 |
| Maine | 3 | 0 | 0 | 0 | 1 |
| Maryland | 22 | 2 | 9 | 0 | 13 |
| Massachusetts | 22 | 1 | 14 | 0 | 3 |
| Michigan | 8 | 1 | 3 | 1 | 4 |
| Minnesota | 9 | 0 | 9 | N/A | 5 |
| Mississippi | 0 | 0 | 0 | 0 | 0 |
| Missouri | 132 | N/A | 34 | 66 | 9 |
| Montana | 1 | 0 | 0 | 0 | 1 |
| Nebraska | 4 | 1 | 3 | 0 | 0 |
| New Hampshire | 1 | 0 | 0 | 0 | 1 |

© American Bar Association
Center for Professional Responsibility
January 2016

16

CENTER FOR PROFESSIONAL RESPONSIBILITY
SURVEY ON LAWYER DISCIPLINE SYSTEMS (S.O.L.D.)

CHART IV: REINSTATEMENT / READMISSION 2014

| Jurisdiction | 12. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed | 13a. # Granted After Disbarment | 13b. # Granted After Suspension | 13c. # Granted After Transfer to Disability Inactive Status | 14. # Denied / Dismissed |
|---|---|---|---|---|---|
| New Jersey | 12 | N/A | 12 | 0 | 0 |
| New Mexico | 3 | 0 | 3 | 0 | 0 |
| Nevada | 6 | 0 | 4 | 0 | 0 |
| New York: 2nd Department/ 9th District | 3 | 0 | 3 | 0 | 0 |
| New York: 2nd Department/ 10th District | 11 | 4 | 1 | N/A | 2 |
| New York: 2nd Department/ 2nd, 11th & 13th Districts | 4 | 0 | 0 | N/A | 4 |
| New York: 3rd Department | 56 | 1 | 53 | N/A | 3 |
| New York: 4th Department/ 5th, 7th & 8th Districts | 5 | 0 | 3 | 0 | 2 |
| North Carolina | 7 | 0 | 2 | 1 | 2 |
| Oklahoma | 6 | 0 | 2 | 0 | 1 |
| Oregon | 180 | N/A | 10 | 0 | 0 |
| Pennsylvania | 92 | 2 | 11 | 0 | 9 |
| Rhode Island | 3 | 1 | 1 | N/A | 1 |
| South Carolina | 8 | 0 | 7 | 1 | 1 |
| South Dakota | 0 | 0 | 0 | 1 | 0 |
| Tennessee | 2 | 0 | 2 | 0 | 2 |
| Texas | 1 | 5 | N/A | 0 | 0 |
| Utah | 7 | 0 | 3 | 0 | 4 |
| Vermont | 2 | 0 | 0 | 2 | 0 |
| Virginia | 1 | 2 | N/A | 1 | 1 |
| Washington | 12 | 0 | 7 | 0 | 5 |
| West Virginia | 2 | 0 | 1 | N/A | 1 |
| Wisconsin | 34 | 0 | 2 | 19 | 3 |
| Wyoming | 1 | 0 | 1 | 0 | 0 |
| | | | | | |
| TOTAL* | 781 | 24 | 277 | | 132 |
| AVERAGE* | 16 | 1 | 8 | | 3 |
| MEDIAN* | 6 | 0 | 3 | | 1 |

| | CHART IV NOTES |
|---|---|
| California | Relevant data can be viewed at: http://www.calbar.ca.gov/LinkClick.aspx?fileticket=zZMLDYTCrnJQ%3d&tabid=224&mid=1534. |
| Minnesota | Q14: 1 after resignation. |
| Missouri | Q13c: Reinstated after transfer to inactive status. NOT disability inactive status. |
| New Jersey and Oregon | Q13a: Disbarment is permanent. |
| Texas | Q13a: Petitions for reinstatement filed. |

© American Bar Association
Center for Professional Responsibility
January 2016

17

2015

| Jurisdiction | 12. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed: 2015 | 13a. # Granted After Disbarment | 13b. # Granted After Suspension | 13c. # Granted After Transfer to Disability Inactive Status | 14. # Denied / Dismissed |
|---|---|---|---|---|---|
| Alabama | 11 | 2 | 4 | 0 | 5 |
| Alaska | 1 | 0 | 1 | 0 | 0 |
| Arizona | 10 | 0 | 7 | 0 | 4 |
| Arkansas | 11 | 0 | 11 | 0 | 0 |
| Colorado | 9 | 1 | 2 | 0 | 4 |
| Delaware | 1 | N/A | N/A | N/A | N/A |
| District of Columbia | 4 | 2 | 2 | 0 | 1 |
| Florida | 17 | 1 | 16 | 0 | 5 |
| Georgia | 7 | 1 | 6 | N/A | 0 |
| Hawai'i | 1 | 0 | 0 | 0 | 0 |
| Idaho | 2 | 0 | 1 | 0 | 0 |
| Illinois | 8 | 0 | 2 | 0 | 6 |
| Indiana | 7 | 0 | N/A | N/A | 2 |
| Iowa[N] | 5 | 0 | 5 | 0 | 0 |
| Kansas | 3 | 1 | 2 | 0 | 0 |
| Kentucky | 1 | 0 | 1 | 0 | 1 |
| Louisiana | 7 | 1 | 10 | 1 | 4 |
| Maine | 3 | 0 | 0 | 0 | 1 |
| Maryland | 13 | 2 | 3 | 0 | 8 |
| Massachusetts | 21 | 1 | 16 | 1 | 3 |
| Michigan | 15 | 1 | 7 | 0 | 5 |

© American Bar Association
Center for Professional Responsibility
April 2017

1 | Page

| Jurisdiction | 12. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed: 2015 | 13a. # Granted After Disbarment | 13b. # Granted After Suspension | 13c. # Granted After Transfer to Disability Inactive Status | 14. # Denied / Dismissed |
|---|---|---|---|---|---|
| Minnesota[N] | 17 | 0 | 13 | 0 | 3 |
| Mississippi | 0 | 0 | 0 | 0 | 0 |
| Missouri[N] | 106 | 1 | 27 | 52 | 11 |
| Montana | 0 | N/A | N/A | N/A | N/A |
| Nebraska | 6 | 0 | 3 | 0 | 2 |
| New Hampshire | 1 | 0 | 1 | 0 | 1 |
| New Jersey[N] | 21 | N/A | 21 | 0 | 0 |
| New Mexico | 7 | 0 | 5 | 1 | 1 |
| New York: 1st Department | 20 | N/A | 16 | N/A | 1 |
| New York: 2nd Department/ 2nd, 11th & 13th Districts | 10 | 3 | 2 | 0 | 5 |
| New York: 2nd Department/ 9th District | 8 | 2 | 5 | 0 | 1 |
| New York: 2nd Department/ 10th District | 6 | 4 | 1 | 0 | 2 |
| New York: 3rd Department | 50 | 0 | 50 | N/A | 0 |
| New York: 4th Department/ 5th, 7th & 8th Districts | 11 | 0 | 8 | 0 | 3 |
| North Carolina | 15 | 1 | 12 | 0 | 5 |
| North Dakota | 0 | 8 | 7 | 0 | 0 |
| Ohio | 8 | N/A | 6 | N/A | 1 |

© American Bar Association
Center for Professional Responsibility
April 2017

| Jurisdiction | 12. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed: 2015 | 13a. # Granted After Disbarment | 13b. # Granted After Suspension | 13c. # Granted After Transfer to Disability Inactive Status | 14. # Denied / Dismissed |
|---|---|---|---|---|---|
| Oklahoma | 9 | 0 | 3 | 0 | 3 |
| Oregon[N] | 203 | 0 | 13 | 0 | 0 |
| Pennsylvania | 112 | 2 | 12 | 0 | 11 |
| Rhode Island | 0 | 0 | 0 | 0 | 0 |
| South Carolina | 5 | 0 | 4 | 0 | 0 |
| Tennessee | 18 | 0 | 19 | 1 | 1 |
| Texas | 0 | 0 | 0 | 0 | 0 |
| Utah | 4 | 0 | 4 | 1 | 2 |
| Vermont | 0 | 0 | 0 | 0 | 0 |
| Virginia | 0 | 0 | N/A | 0 | 0 |
| Washington | 12 | 0 | 10 | 0 | 0 |
| West Virginia | 1 | 0 | 1 | 0 | 0 |
| Wisconsin | 36 | N/A | 16 | N/A | 5 |
| Wyoming | 2 | 1 | 0 | 0 | 0 |
| **TOTAL*** | 845 | 35 | 355 | 57 | 107 |
| **AVERAGE*** | 16 | 1 | 7 | 1 | 2 |
| **MEDIAN*** | 7 | 0 | 5 | 0 | 1 |

*=estimated

© American Bar Association
Center for Professional Responsibility
April 2017

3 | Page

**CHART IV NOTES**

*N/A = Data not available or applicable*

**Connecticut, Nevada, and South Dakota had not provided data by the publication date.**

| | |
|---|---|
| California | Relevant data can be viewed at: http://www.calbar.ca.gov/LinkClick.aspx?fileticket=zZMLDYTCmJQ%3d&tabid=224&mid=1534. |
| Iowa | Q12 & Q13b: Estimated. |
| Minnesota | Q14: 1 reinstated after resignation. |
| Missouri | Q13c: Reinstated after transfer to inactive status, NOT disability inactive status. |
| New Jersey and Oregon | Q13a: Disbarment is permanent. |

© American Bar Association
Center for Professional Responsibility
April 2017

4 | P a g e

2016



| Jurisdiction | 12. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed[N] | 13a. # Granted After Disbarment | 13b. # Granted After Suspension | 13c. # Granted After Transfer to Disability Inactive Status | 14. # Denied / Dismissed |
|---|---|---|---|---|---|
| Alabama | 9 | 3 | 3 | 3 | 5 |
| Alaska | 0 | 0 | 0 | 0 | 0 |
| Arizona | 6 | 1 | 2 | 1 | 2 |
| Arkansas | 2 | 0 | 2 | 0 | 0 |
| Colorado | 9 | 0 | 3 | 0 | 7 |
| Delaware | 3 | 0 | 0 | 0 | 0 |
| District of Columbia | 3 | 2 | 1 | 0 | 2 |
| Florida | 14 | 0 | 13 | 1 | 9 |
| Georgia | 4 | 2 | 0 | 0 | 0 |
| Hawai'i | 0 | 0 | 0 | 0 | 1 |
| Idaho | 4 | 0 | 3 | 0 | 0 |
| Illinois | 3 | 0 | 1 | 0 | 2 |
| Indiana | 3 | 2 | N/A | N/A | 1 |
| Iowa | 5 | 1 | 4 | 0 | 0 |
| Kansas | 4 | 0 | 4 | 0 | 1 |
| Kentucky | 9 | 0 | 1 | 0 | 2 |
| Louisiana | 9 | 1 | 16 | 0 | 1 |
| Maine | 8 | 0 | 2 | 0 | 0 |
| Maryland | 13 | 3 | 4 | 0 | 6 |
| Michigan | 3 | 0 | 2 | 0 | 5 |
| Minnesota | 25 | 0 | 18 | 0 | 5[N] |

* = Estimated

© American Bar Association
Center for Professional Responsibility
January 2018

1 |



**STANDING COMMITTEE ON PROFESSIONAL DISCIPLINE
CENTER FOR PROFESSIONAL RESPONSIBILITY
2016 SURVEY ON LAWYER DISCIPLINE SYSTEMS (S.O.L.D.)
CHART IV – REINSTATEMENT/READMISSION**

| Jurisdiction | 12. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed[N] | 13a. # Granted After Disbarment | 13b. # Granted After Suspension | 13c. # Granted After Transfer to Disability Inactive Status | 14. # Denied / Dismissed |
|---|---|---|---|---|---|
| Mississippi | 3 | 0 | 0 | 1 | 2 |
| Missouri | 146 | 0 | 21 | 107[N] | 7 |
| Montana | 0 | 0 | 0 | 0 | 0 |
| Nebraska | 5 | 2 | 1 | 1 | 3 |
| New Hampshire | 1 | 0 | 0 | 0 | 0 |
| New Jersey | 12 | 1[N] | 11 | 0 | 0 |
| New Mexico | 1 | 0 | 1 | 0 | 0 |
| New York: 2nd Department 2nd, 11th & 13th Districts | 22 | 6 | 7 | 0 | 9 |
| New York: 2nd Department 9th District | 5 | 3 | 2 | 0 | 2 |
| New York: 2nd Department 10th District | 12 | 1 | 3 | 0 | 9 |
| New York: 3rd Department | 40 | 1 | 34 | N/A | 4 |
| New York: 4th Department 5th, 7th & 8th Districts | 9 | 0 | 8 | 0 | 1 |
| North Carolina | 9 | 1 | 7 | 0 | 1 |
| North Dakota | 0 | 0 | 0 | 0 | 0 |
| Ohio | 19 | 0 | 19 | N/A | 0 |
| Oklahoma | 11 | 0 | 6 | 0 | 1 |
| Oregon | 164 | 0[N] | 9 | 2 | 0 |

**\* = Estimated**

© American Bar Association
Center for Professional Responsibility
January 2018



**STANDING COMMITTEE ON PROFESSIONAL DISCIPLINE**
**CENTER FOR PROFESSIONAL RESPONSIBILITY**
**2016 SURVEY ON LAWYER DISCIPLINE SYSTEMS (S.O.L.D.)**
**CHART IV – REINSTATEMENT/READMISSION**

| Jurisdiction | 12. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed[N] | 13a. # Granted After Disbarment | 13b. # Granted After Suspension | 13c. # Granted After Transfer to Disability Inactive Status | 14. # Denied / Dismissed |
|---|---|---|---|---|---|
| Pennsylvania | 129 | 2 | 9 | 26 | 6 |
| Rhode Island | 2 | 1 | 0 | 0 | 1 |
| South Carolina | 5 | 0 | 5 | 0 | 1 |
| South Dakota | 2 | 0 | 0 | 1 | 1 |
| Tennessee | 11 | 0 | 10 | 1 | 0 |
| Texas | 0 | 0 | 0 | 0 | 0 |
| Utah | 3 | 0 | 0 | 0 | 2 |
| Vermont | 1 | 0 | 0 | 4 | 0 |
| Virginia | 3 | 0 | 0 | 0 | 0 |
| Washington | 24 | 0 | 13 | 0 | 2 |
| West Virginia | 2 | 1 | 1 | 0 | 1 |
| Wisconsin | 40 | 0 | 2 | 0 | 4 |
| Wyoming | 1 | 0 | 1 | 0 | 0 |
| **\* = Estimated** | | | | | |
| **TOTAL\*** | 818 | 33 | 249 | 148 | 106 |
| **AVERAGE\*** | 16 | 1 | 5 | 3 | 2 |
| **MEDIAN\*** | 5 | 0 | 2 | 0 | 1 |

© American Bar Association
Center for Professional Responsibility
January 2018

3 |



STANDING COMMITTEE ON PROFESSIONAL DISCIPLINE
CENTER FOR PROFESSIONAL RESPONSIBILITY
2016 SURVEY ON LAWYER DISCIPLINE SYSTEMS (S.O.L.D.)
CHART IV – REINSTATEMENT/READMISSION

## CHART IV NOTES

*N/A = Data not available or applicable*

**Connecticut, Nevada, and New York: 1st Department had not provided data by the publication date. Massachusetts was unable to provide data this year because of an IT system upgrade. Please derive California data from these** public sources.

General: Total Petitions/Motions/Requests granted or denied may exceed the number filed in 2016, as those may be Petitions/Motions/Requests filed prior to 2016 that were not resolved until that year.

| | |
|---|---|
| Minnesota | Q14: 2 reinstated after resignation. |
| Missouri | Q13c: Reinstated after transfer to inactive status, NOT disability inactive status. |
| New Jersey and Oregon | Q13a: Disbarment is permanent. |

© American Bar Association
Center for Professional Responsibility
January 2018

2017



STANDING COMMITTEE ON PROFESSIONAL REGULATION
CENTER FOR PROFESSIONAL RESPONSIBILITY
2017 SURVEY ON LAWYER DISCIPLINE SYSTEMS (S.O.L.D.)
CHART IV – REINSTATEMENT/READMISSION

| Jurisdiction | 12. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed[N] | 13a. # Granted After Disbarment | 13b. # Granted After Suspension | 13c. # Granted After Transfer to Disability Inactive Status | 14. # Denied / Dismissed |
|---|---|---|---|---|---|
| Alabama | 13 | 0 | 3 | 2 | 5 |
| Alaska | 2 | 0 | 1 | 1 | 1 |
| Arizona | 26 | 0 | 9 | 0 | 2 |
| Arkansas | 2 | 0 | 2 | 0 | 0 |
| Colorado | 3 | 0 | 1 | 6 | 1 |
| Delaware | 4 | 0 | 1 | 1 | 2 |
| District of Columbia | 7 | 1 | 3 | 5 | 2 |
| Florida | 16 | 2 | 14 | 0 | 5 |
| Georgia | 5 | 0 | 4 | N/A | 1 |
| Hawai'i | 1 | 0 | 1 | 0 | 0 |
| Idaho | 4 | 0 | 5 | 0 | 0 |
| Illinois | 3 | 1 | 1 | 0 | 1 |
| Indiana | 5 | 2 | N/A | N/A | 3 |
| Iowa | 2 | 0 | 1 | 0 | 1 |
| Kansas | 2 | 0 | 1 | 0 | 1 |
| Kentucky | 9 | 0 | 0 | 0 | 1 |
| Louisiana | 6 | 1 | 7 | 2 | 2 |
| Maine | 7 | 0 | 0 | 0 | 1 |
| Maryland | 16 | 2 | 5 | 1 | 8 |
| Minnesota | 11 | 1 | 6 | 1 | 2 |

© American Bar Association
Center for Professional Responsibility
July 2019



STANDING COMMITTEE ON PROFESSIONAL REGULATION
CENTER FOR PROFESSIONAL RESPONSIBILITY
2017 SURVEY ON LAWYER DISCIPLINE SYSTEMS (S.O.L.D.)
CHART IV – REINSTATEMENT/READMISSION

| Jurisdiction | 12. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed[N] | 13a. # Granted After Disbarment | 13b. # Granted After Suspension | 13c. # Granted After Transfer to Disability Inactive Status | 14. # Denied / Dismissed |
|---|---|---|---|---|---|
| Mississippi | 15 | 0 | 12 | 3 | 3 |
| Missouri | 4 | 4 | 7 | 0 | 2 |
| Nebraska | 140 | 1 | 43 | 78[N] | 4 |
| Nevada | 5 | 1 | 2 | 1 | 4 |
| New Hampshire | 4 | N/A | 4 | 1 | 4 |
| New Jersey | 1 | 0 | 0 | 0 | 1 |
| New Mexico | 19 | 0 | 19 | 0 | 0 |
| New York: 2nd Department 2nd, 11th & 13th Districts | 3 | 0 | 3 | 0 | 0 |
| New York: 2nd Department 9th District | 18 | 2 | 4 | 0 | 7 |
| New York: 2nd Department 10th District | 6 | 2 | 1 | 0 | 3 |
| New York: 4th Department 5th, 7th & 8th Districts | 8 | 0 | 3 | N/A | 5 |

© American Bar Association
Center for Professional Responsibility
July 2019



| Jurisdiction | 12. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed[N] | 13a. # Granted After Disbarment | 13b. # Granted After Suspension | 13c. # Granted After Transfer to Disability Inactive Status | 14. # Denied / Dismissed |
|---|---|---|---|---|---|
| North Carolina | 4 | 0 | 3 | 0 | 1 |
| North Dakota | 14 | 1 | 8 | 0 | 2 |
| Ohio | 0 | 4 | 3 | N/A | N/A |
| Oklahoma | 14 | N/A | 14 | 0 | 0 |
| Oregon | 10 | 0 | 0 | 0 | 2 |
| Pennsylvania | 205 | 0[N] | 89 | 0 | 0 |
| Rhode Island | 120 | 6 | 11 | 3 | 11 |
| Tennessee | 2 | 0 | 1 | 0 | 1 |
| Texas | 5 | 0 | 5 | 0 | 0 |
| Utah | 0 | 0 | 0 | 0 | 0 |
| Vermont | 3 | 0 | 1 | 1 | 3 |
| Virginia | 1 | 0 | 0 | 1 | 0 |
| Washington | 1 | 0 | N/A | 2 | 0 |

© American Bar Association
Center for Professional Responsibility
July 2019



| Jurisdiction | 12. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed[N] | 13a. # Granted After Disbarment | 13b. # Granted After Suspension | 13c. # Granted After Transfer to Disability Inactive Status | 14. # Denied / Dismissed |
|---|---|---|---|---|---|
| West Virginia | 15 | 0 | 13 | 0 | 0 |
| Wisconsin | 3 | 0 | 3 | 0 | 1 |
| Wyoming | 36 | 0 | 2 | 0 | 9 |
| * = Estimated | 5 | 0 | 4 | 0 | 0 |
| TOTAL* | 805 | 31 | 320 | 31 | 102 |
| AVERAGE* | 32.857 | 1.347 | 13.617 | 1.409 | 4.25 |
| MEDIAN | 6 | 0 | 3 | 0 | 4 |

© American Bar Association
Center for Professional Responsibility
July 2019



## CHART IV NOTES

N/A = Data not available or applicable

**Please derive California data from these** public sources.

General: Total Petitions/Motions/Requests granted or denied may exceed the number filed in 2017, as those may be Petitions/Motions/Requests filed prior to 2017 that were not resolved until that year.

| | |
|---|---|
| Missouri | Q13c: Reinstated after transfer to inactive status, NOT disability inactive status. |
| New Jersey and Oregon | Q13a: Disbarment is permanent. |

© American Bar Association
Center for Professional Responsibility
July 2019

2018



| Jurisdiction | 12. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed | 13a. # Granted After Disbarment | 13b. # Granted After Suspension | 13c. # Granted After Transfer to Disability Inactive Status | 14. # Denied / Dismissed |
|---|---|---|---|---|---|
| Alabama | 8 | 0 | 2 | 3 | 3 |
| Alaska | 3 | 0 | 1 | 0 | 0 |
| Arizona | 12 | 0 | 8 | 1 | 4 |
| Arkansas | 2 | 0 | 2 | 0 | 0 |
| Colorado | 2 | 0 | 2 | 0 | 0 |
| Delaware | 3 | 0 | 0 | 2 | 1 |
| District of Columbia | 5 | 3 | 2 | 0 | 1 |
| Florida | 9 | 1 | 7 | 1 | 10 |
| Georgia | 13 | 12 | 4 | N/A | 1 |
| Hawai'i | 2 | 0 | 1 | 0 | 0 |
| Idaho | 2 | 0 | 2 | 0 | 0 |
| Illinois | 3 | 2 | 1 | 0 | 2 |
| Indiana | 3 | 2 | N/A | N/A | 0 |
| Iowa | 2 | 0 | 2 | 0 | 0 |
| Kansas | 1 | 0 | 1 | 0 | 0 |
| Kentucky | 14 | 0 | 7 | 0 | 0 |
| Louisiana | 8 | 3 | 14 | 4 | 1 |
| Maine | 4 | 0 | 3 | 0 | 1 |
| Maryland | 15 | 0 | 5 | 0 | 9 |
| Massachusetts | 11 | 1 | 4 | 2 | 4 |
| Michigan | 12 | 0 | 9 | 0 | 1 |

* = Estimated

© American Bar Association
Center for Professional Responsibility
July 2020



**STANDING COMMITTEE ON PROFESSIONAL REGULATION
CENTER FOR PROFESSIONAL RESPONSIBILITY
2018 SURVEY ON LAWYER DISCIPLINE SYSTEMS (S.O.L.D.)
CHART IV – REINSTATEMENT/READMISSION**

| Jurisdiction | 12. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed | 13a. # Granted After Disbarment | 13b. # Granted After Suspension | 13c. # Granted After Transfer to Disability Inactive Status | 14. # Denied / Dismissed |
|---|---|---|---|---|---|
| Minnesota | 13 | 0 | 6 | 0 | 5 |
| Missouri | 145[N] | 1 | 27 | N/A | 11 |
| Montana | 1 | 0 | 1 | 0 | 0 |
| Nebraska | 2 | 0 | 1 | 0 | 1 |
| Nevada | 5 | 0 | 3 | 3 | 2 |
| New Hampshire | 2 | 0 | 1 | 0 | 0 |
| New Jersey | 12 | 0 | 12 | 0 | N/A[N] |
| New Mexico | 1 | 0 | 1 | 0 | 0 |
| New York: 2nd Department 2nd, 11th & 13th Districts | 14 | 2 | 4 | 0 | 5 |
| New York: 2nd Department 9th District | 1 | 0 | 0 | 0 | 1 |
| New York: 2nd Department 10th District | 12 | 1 | 4 | 0 | 3 |
| New York: 4th Department 5th, 7th & 8th Districts | 4 | 0 | 3 | 0 | 1 |
| North Carolina | 8 | 0 | 6 | 2 | 0 |
| North Dakota | 1 | 0 | 1 | 0 | 0 |
| Ohio | 0 | N/A | N/A | N/A | 0 |
| Oklahoma | 8 | 0 | 2 | 5 | 5 |
| Oregon | 236 | 0 | 100 | 0 | 0 |

* = Estimated

© American Bar Association
Center for Professional Responsibility
July 2020



**STANDING COMMITTEE ON PROFESSIONAL REGULATION**
**CENTER FOR PROFESSIONAL RESPONSIBILITY**
**2018 SURVEY ON LAWYER DISCIPLINE SYSTEMS (S.O.L.D.)**
**CHART IV – REINSTATEMENT/READMISSION**

| Jurisdiction | 12.  # of Petitions, Motions or Requests for Reinstatement / Readmission Filed | 13a.  # Granted After Disbarment | 13b.  # Granted After Suspension | 13c.  # Granted After Transfer to Disability Inactive Status | 14.  # Denied / Dismissed |
|---|---|---|---|---|---|
| Pennsylvania | 163 | 1 | 4 | 0 | 6 |
| Rhode Island | 2 | 1 | 1 | N/A | 0 |
| South Carolina | 7 | 1 | 5 | 0 | 2 |
| Tennessee | 7 | 0 | 7 | 0 | 1 |
| Texas | 8 | 2 | 66 | 0 | 3 |
| Utah | 8 | 0 | 5 | 1 | 1 |
| Vermont | 0 | N/A | N/A | N/A | N/A |
| Virginia | 1 | 0 | N/A | 1 | 1 |
| Washington | 17 | 0 | 13 | 0 | 0 |
| Wisconsin | 40 | 0 | 2 | 0 | 8 |
| Wyoming | 2 | 0 | 1 | 0 | 1 |
| **\* = Estimated** | | | | | |
| **TOTAL\*** | 854 | 33 | 353 | 25 | 95 |
| **AVERAGE\*** | 17 | 1 | 8 | 1 | 2 |
| **MEDIAN\*** | 5 | 0 | 3 | 0 | 1 |

© American Bar Association
Center for Professional Responsibility
July 2020

28 |



**STANDING COMMITTEE ON PROFESSIONAL REGULATION
CENTER FOR PROFESSIONAL RESPONSIBILITY
2018 SURVEY ON LAWYER DISCIPLINE SYSTEMS (S.O.L.D.)
CHART IV – REINSTATEMENT/READMISSION**

| CHART IV NOTES | |
|---|---|
| *N/A = Data not available or applicable* <br><br> ***Connecticut, Mississippi, New York: 3rd Department, South Dakota, and West Virginia had not provided data by the publication date. Please derive California data from these*** public sources. | |
| Missouri | Q12: 94 of the 145 reinstatements were Return to Active Reinstatements.  Those individuals apply for reinstatement under Missouri Supreme Court Rule 6.06 but have not been suspended or disbarred.  In 2018, 83 of the 94 applicants returned to active status.  The remaining 11 were pending at the end of 2018. |
| New Jersey | Q14: The Disciplinary Review Board handles this category. |

© American Bar Association
Center for Professional Responsibility
July 2020

2019



STANDING COMMITTEE ON PROFESSIONAL REGULATION
CENTER FOR PROFESSIONAL RESPONSIBILITY
2019 SURVEY ON LAWYER DISCIPLINE SYSTEMS (S.O.L.D.)
CHART IV- REINSTATEMENT/READMISSION

| Jurisdiction | 12. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed | 13a. # Granted After Disbarment | 13b. # Granted After Suspension | 13c. # Granted After Transfer to Disability Inactive Status | 14. # Denied / Dismissed |
|---|---|---|---|---|---|
| Alabama | 6 | 1 | 5 | 0 | 1 |
| Alaska | 3 | 0 | 1 | 0 | 0 |
| Arizona | 4 | 0 | 4 | 0 | 4 |
| Arkansas | 7 | 0 | 0 | 0 | 0 |
| California[N] | N/A | N/A | N/A | N/A | N/A |
| Colorado | 5 | 0 | 2 | 0 | 2 |
| Connecticut | 2 | 1 | 1 | 0 | N/A |
| Delaware | 2 | 0 | 1 | 0 | 1 |
| District of Columbia | 12 | 5 | 7 | 0 | 6 |
| Florida | 23 | 0 | 11 | 0 | 12 |
| Georgia | 4 | N/A | 4 | N/A | N/A |
| Hawai'i | 1 | 0 | 1 | 0 | 0 |
| Idaho | 3 | 0 | 3 | 0 | 0 |
| Illinois | 6 | 0 | 1 | 0 | 5 |
| Indiana | 5 | 0 | N/A | N/A | 3 |
| Iowa | 4 | 0 | 4 | 0 | 0 |
| Kansas | 3 | 3 | 3 | 1 | 0 |
| Kentucky | 11 | 0 | 2 | 0 | 1 |

* = Estimated

© American Bar Association
Center for Professional Responsibility
November 2021



STANDING COMMITTEE ON PROFESSIONAL REGULATION
CENTER FOR PROFESSIONAL RESPONSIBILITY
2019 SURVEY ON LAWYER DISCIPLINE SYSTEMS (S.O.L.D.)
CHART IV - REINSTATEMENT/READMISSION

| Jurisdiction | 12. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed | 13a. # Granted After Disbarment | 13b. # Granted After Suspension | 13c. # Granted After Transfer to Disability Inactive Status | 14. # Denied / Dismissed |
|---|---|---|---|---|---|
| Louisiana | 8 | 9 | 26 | 3 | 0 |
| Maine | 4[N] | 0 | 0 | 0 | 0 |
| Maryland | 18 | 0 | 8 | 0 | 10 |
| Michigan | 11 | 2 | 6 | 0 | 1 |
| Minnesota | 13 | 0 | 9 | 0 | 1 |
| Mississippi | 4 | 0 | 0 | 0 | 0 |
| Missouri | 142[N] | N/A | 110 | N/A | 14 |
| Montana | 1 | 0 | 1 | 0 | 0 |
| Nebraska | 1 | 1 | 0 | 8 | 0 |
| Nevada | 4 | 0 | 4 | 2 | 0 |
| New Hampshire | 1 | 0 | 1 | 0 | 1 |
| New Mexico | 3 | 0 | 3 | 0 | 0 |
| New York: 2nd Department 2nd, 11th & 13th Districts | 13 | 3 | 4 | N/A | 6 |
| New York: 2nd Department 9th District | 3 | 1 | 0 | 0 | 2 |
| New York: 2nd Department 10th District | 19 | 6 | 11 | 0 | 6 |

* = Estimated

© American Bar Association
Center for Professional Responsibility
November 2021

2 |



**STANDING COMMITTEE ON PROFESSIONAL REGULATION**
**CENTER FOR PROFESSIONAL RESPONSIBILITY**
**2019 SURVEY ON LAWYER DISCIPLINE SYSTEMS (S.O.L.D.)**
**CHART IV- REINSTATEMENT/READMISSION**

| Jurisdiction | 12. # of Petitions, Motions or Requests for Reinstatement / Readmission Filed | 13a. # Granted After Disbarment | 13b. # Granted After Suspension | 13c. # Granted After Transfer to Disability Inactive Status | 14. # Denied / Dismissed |
|---|---|---|---|---|---|
| New York: 4th Department 5th, 7th & 8th Districts | 4 | 2 | 2 | N/A | 0 |
| North Carolina | 9 | 0 | 1 | 2 | 6 |
| North Dakota | 0 | 0 | 0 | 0 | 0 |
| Ohio | 9 | N/A | 12 | N/A | 0 |
| Oklahoma | 3 | 0 | 0 | 2 | 3 |
| Oregon | 327 | N/A$^N$ | 11 | 1 | 1 |
| Pennsylvania | 15 | 2 | 10 | 0 | 2 |
| Rhode Island | 24 | 0 | 3 | N/A | 0 |
| Tennessee | 10 | 0 | 8 | 1 | 1 |
| Texas | 10 | 3 | 31 | 0 | 1 |
| Utah | 7 | N/A | 1 | N/A | 2 |
| Virginia | 1 | 0 | N/A | 5 | 1 |
| Washington | 19 | 0 | 15 | 0 | 1 |
| Wisconsin | 39 | 1 | 1 | 0 | 7 |
| Wyoming | 0 | 0 | 0 | 1 | 0 |
| * = Estimated | | | | | |
| TOTAL* | 823 | 40 | 328 | 26 | 101 |
| AVERAGE* | 18 | 1 | 7 | 1 | 2 |
| MEDIAN* | 5 | 0 | 3 | 0 | 1 |

© American Bar Association
Center for Professional Responsibility
November 2021

3 |



**CHART IV NOTES**

*N/A = Data not available or applicable*

***Massachusetts, New Jersey, New York: 1st Department, New York: 3rd Department, South Carolina, South Dakota, Vermont, and West Virginia had not provided data by the publication date. Please derive California data from these*** public sources.

| | |
|---|---|
| Maine | Q12: All administratively reinstated. |
| Missouri | Q12: 99 of the 142 reinstatements were Return to Active Status Reinstatements. Those individuals apply for reinstatement under Missouri Supreme Court Rule 6.06 but have not been suspended or disbarred. In 2019, 87 of the 99 applicants returned to active status. 9 applications were dismissed and 1 was still pending at the end of 2019. |
| Oregon | 13a: Disbarment is permanent. |

© American Bar Association
Center for Professional Responsibility
November 2021

# APPENDIX L

## REINSTATEMENT CRITERIA (BY JURISDICTION) – 7/20/2022

| State/Territory | Permanent Disbarment? | Criteria |
|---|---|---|
| Alabama | No<br><br>Can seek reinstatement after 5 years | Alabama Rule of Disciplinary Procedure, accessed here, Rule 28 addressing Reinstatement, accessed here and its Appendix A, accessed here.<br><br>The petitioner shall have the burden of demonstrating by clear and convincing evidence that he or she has the moral qualifications to practice law in this state and that his or her resumption of the practice of law within the state will not be detrimental to the integrity and standing of the Bar or the administration of justice, and will not be subversive to the public interest.<br><br>Potential Requirements:<br>(1) Restitution;<br>(2) Payment of the costs of reinstatement proceedings;<br>(3) Probation or limitation upon practice;<br>(4) Appointment of a probation supervisor, monitor, or trustee or receiver;<br>(5) Proof of passage of the bar examination, the professional responsibility examination, or both, or any other proof of competency deemed appropriate by the Disciplinary Board;<br>(6) Attendance at continuing legal education courses in addition to the annual mandatory continuing legal education requirement; and<br>(7) Any other requirement that the Disciplinary Board deems appropriate. |
| Alaska | No<br><br>Can seek reinstatement after 5 years | Alaska Bar Rule 29, accessed here<br><br>Petitioner will have the burden of demonstrating by clear and convincing evidence that (s)he has the moral qualifications, competency, and knowledge of law required for admission to the practice of law in this State and that his or her resumption of the practice of law in the State will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive of the public interest.<br><br>The retaking and passing of Alaska's general applicant bar examination will be conclusive evidence that the Petitioner possesses the knowledge of law necessary for reinstatement to the practice of law in Alaska. |

| Arizona | No<br><br>Can seek reinstatement after 5 years | **Arizona Rules of the Supreme Court 64**<br><br>In order to be reinstated to the active practice of law, a disbarred lawyer must pass the bar exam and show by clear and convincing evidence that the lawyer has been rehabilitated and possesses the moral qualifications and knowledge of the law required for admission to practice law in this state in the first instance.<br><br>A lawyer convicted of a serious crime is presumed to be disqualified for reinstatement, but this is rebuttable by clear and convincing evidence.<br><br>**Arizona Rules of the Supreme Court 65**<br><br>The lawyer requesting reinstatement shall have the burden of demonstrating by clear and convincing evidence the lawyer's rehabilitation, compliance with all applicable discipline orders and rules, fitness to practice, and competence. |
|---|---|---|
| Arkansas | No, unless disbarment was a result of a serious crime or conduct reflecting adversely on individual's honesty or trustworthiness<br><br>Can seek reinstatement after 5 years | **Procedures of the Arkansas Supreme Court Regulating Professional Conduct**<br><br>No attorney who has been disbarred shall be readmitted except upon application made to the State Board of Law Examiners in accordance with the Rules Governing Admission To The Bar, or any successor rules, and the approval of the Arkansas Supreme Court. |
| California | No<br><br>Can seek reinstatement after 5 years | **California Rules of Procedure** (Ch. 3, Rule 5.440)<br><br>Petitioners for reinstatement must:<br>- Pay all discipline costs and monetary sanctions<br>- Reimburse any Client Security Fund payments<br>- Pass the Attorneys' Examination within three years prior to the filing of the petition for reinstatement.<br>- pass a professional responsibility examination within one year prior to filing the petition;<br>- establish their rehabilitation; and<br>- establish present moral qualifications for reinstatement. |

| Colorado | No | Colorado Rules of Professional Conduct Rule 242.39 |
|---|---|---|
| | Can seek reinstatement after 8 years | To petition for readmission, the lawyer must have satisfied the supreme court's bar examination and MPRE requirements within the preceding eighteen months.

The petitioner must prove by clear and convincing evidence that the petitioner:
(A) Has been rehabilitated, as measured by considerations including the circumstances and seriousness of the original misconduct, conduct since being disbarred or suspended, remorse and acceptance of responsibility, how much time has elapsed, restitution for any financial injury, and evidence that the petitioner has changed in ways that reduce the likelihood of future misconduct;
(B) Has complied with all applicable disciplinary orders and with all provisions of Chapter 20, including the Colorado Rules of Professional Conduct; and
(C) Is fit to practice law, as measured by the petitioner's satisfaction of the following eligibility requirements for the practice of law, as applicable:
(i) Honesty and candor with clients, lawyers, courts, regulatory authorities, and others;
(ii) The ability to reason logically, recall complex factual information, and accurately analyze legal problems;
(iii) The ability to use a high degree of organization and clarity in communicating with clients, lawyers, judicial officers, and others;
(iv) The ability to use good judgment on behalf of clients and in conducting professional business;
(v) The ability to act with respect for and in accordance with the law;
(vi) The ability to exhibit regard for the rights and welfare of others;
(vii) The ability to comply with the Colorado Rules of Professional Conduct; state, local, and federal laws; regulations, statutes, and rules; and orders of tribunals;
(viii) The ability to act diligently and reliably in fulfilling obligations to clients, lawyers, courts, and others;
(ix) The ability to be honest and use good judgment in personal financial dealings and on behalf of clients and others; and
(x) The ability to comply with deadlines and time constraints. |

| Connecticut | No<br><br>Can seek reinstatement after 5 years, but 12 years for misappropriation | Connecticut Rule of Superior Court 2-53<br>Connecticut Practice Book, Sec. 2-53<br><br>In the case of misappropriation, full restitution must be made before reinstatement can be considered. Petitioner must pass the MPRE, have completed any criminal sentence, and any other disciplinary conditions imposed. |
|---|---|---|
| Delaware | No<br><br>Can seek reinstatement after 5 years | Delaware Lawyers' Rules of Disciplinary Procedure, Rule 22<br><br>The petitioner shall have the burden of demonstrating, by clear and convincing evidence:<br>(1) the petitioner's professional rehabilitation, including substantial rehabilitation from any drug or alcohol problem from which the petitioner had suffered;<br>(2) the petitioner's compliance with all applicable disciplinary orders and other rules, including conditions of restitution;<br>(3) the petitioner's fitness to practice;<br>(4) the petitioner's overall competence and current awareness of recent developments in the law;<br>(5) that the petitioner has not engaged in any other professional misconduct in any jurisdiction since suspension or disbarment;<br>(6) that the petitioner sincerely recognizes the wrongfulness and seriousness of any misconduct upon which the suspension or disbarment was predicated;<br>(7) that the petitioner has the requisite honesty and professional integrity to resume the practice of law; and<br>(8) that the petitioner's resumption of the practice of law will not be detrimental to the administration of justice.<br><br>The Court may attach any conditions it deems appropriate to a reinstatement order, including but not limited to, restitution to former clients or third parties, the successful completion of the bar examination administered by the Board of Bar Examiners, or a period of probation with such terms and conditions as the Court deems appropriate. |
| District of Columbia | No<br><br>Can seek reinstatement after 5 years | Rules Governing DC Bar/Rule XI Disciplinary Proceedings, Section 16<br><br>An attorney seeking reinstatement shall have the burden of proof to establish by clear and convincing evidence: |

4

|  |  | (a)That the attorney has the moral qualifications, competency, and learning in law required for readmission; and<br>(b) That the resumption of the practice of law by the attorney will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest.<br><br>If the attorney is found fit to resume the practice of law, the Court may condition reinstatement on the making of partial or complete restitution to persons harmed by the misconduct which led to the suspension or disbarment, or upon the payment of all or part of the costs of the reinstatement proceedings, or both. The reinstatement may also be conditioned upon the furnishing of evidence, in a form determined by the Court, of the attorney's successful completion of an examination for reinstatement subsequent to the date of suspension or disbarment. The Court may impose such other conditions on reinstatement as it deems appropriate. |
|---|---|---|
| Florida | No<br><br>Can seek reinstatement after 5 years, or longer if designated in disbarment order | <u>Florida Bar Rules of Discipline</u><br>Rule 3-7.10(n)<br><br>A former member who has been disbarred may be admitted again only upon full compliance with the rules and regulations governing admission to the bar, and payment of all restitution and disciplinary costs. |
| Georgia | No<br><br>Can seek reinstatement after 5 years | <u>Georgia Bar Rules Governing Admission</u>, Part A, Section 10<br><br>An applicant who is seeking reinstatement to the State Bar of Georgia pursuant to Bar Rule 1-501(b) shall file a fitness application after completing the requirements contained in that Bar Rule and shall not be required to take the bar examination. An applicant who has been terminated by the State Bar pursuant to Bar Rule 1-501(c) is required to comply with the provisions of that Bar Rule and is required to take and pass the bar examination before being readmitted. |

| Hawaii | No<br><br>Can seek reinstatement after 5 years (as of 6/14/2022) | Hawaii Rules of the Supreme Court 2.17<br>Hawaii Disciplinary Rule 30<br><br>To be reinstated, a disbarred attorney must show proof of the following by clear and convincing evidence: rehabilitation, fitness to practice law, competence and compliance with all applicable disciplinary or disability orders and rules, and compliance with any other requirements imposed by the supreme court, which may include the successful completion of requirements for passing the bar examination.<br><br>No suspended or disbarred attorney shall be eligible for reinstatement except upon a showing that he or she has reimbursed both the Board for all costs ordered including those incurred under RSCH 2.20, if any, and the Lawyers' Fund for Client Protection for monies paid out on account of the attorney's conduct, together with interest at the Hawai'i statutory judgment rate. |
| --- | --- | --- |
| Idaho | No<br><br>Can seek reinstatement after 5 years | Idaho Bar Commission Rule 506<br><br>A disbarred lawyer seeking reinstatement shall have the burden of overcoming the rebuttable presumption of "unfitness to practice law." |
| Illinois | No<br><br>Can seek reinstatement after 5 years | Illinois Supreme Court Rule 767<br><br>A hearing panel considering reinstatement of a disbarred attorney shall consider the following factors, and such other factors as the panel deems appropriate, in determining the petitioner's rehabilitation, present good character and current knowledge of the law:<br>(1) the nature of the misconduct for which the petitioner was disciplined;<br>(2) the maturity and experience of the petitioner at the time discipline was imposed;<br>(3) whether the petitioner recognizes the nature and seriousness of the misconduct;<br>(4) when applicable, whether petitioner has made restitution;<br>(5) the petitioner's conduct since discipline was imposed; and<br>(6) the petitioner's candor and forthrightness in presenting evidence in support of the petition. |

| Indiana | Yes | **Indiana Admission Bar & Discipline Rules** (Section 23, Par. 3(a))<br><br>One of the following types of discipline may be imposed upon any attorney found to have committed professional misconduct: (1) **permanent disbarment from the practice of law;** (2) suspension from the practice of law without automatic reinstatement; (3) suspension from the practice of law for a fixed period of time, not to exceed 180 days, with provision for automatic reinstatement after the expiration of the fixed period, upon any conditions as the Supreme Court may specify in the order of suspension; (4) a public reprimand; (5) a private reprimand; or (6) a private administrative admonition. |
| Iowa | No<br><br>Can seek reinstatement after 5 years | Iowa Rule 34.25 Procedure on application for reinstatement<br><br>To be reinstated, a revoked attorney must:<br>a. File the attorney's character and fitness application with the National Conference of Bar Examiners (NCBE) and pay the NCBE's application fee.<br>b. Pay an administrative fee of $525 to the Iowa Board of Law Examiners.<br>c. Include satisfactory proof that the applicant is of good moral character and is in all respects worthy of readmission to the bar. The applicant must provide a detailed affidavit describing the applicant's personal, educational, and work history since the date of revocation. The application must be accompanied by the recommendation of at least three reputable attorneys currently practicing law in the judicial district in which the applicant then lives and has lived at least one year prior to filing the application. If the applicant does not reside in the district in which the applicant lived at the time of the revocation, the applicant must also file a recommendation from three reputable attorneys currently practicing law in the district where the applicant resided at the time of revocation.<br>d. Include satisfactory proof that the applicant, at the time of the application, has paid all fees required by the provisions of chapters 39, 41, and 42 of the Iowa Court Rules.<br>e. Include satisfactory proof that the Client Security Trust Fund has been repaid in full, or that the Client Security Commission has approved a repayment plan, for all client security claim payments paid from the Client Security Trust Fund under Iowa Court Rule 39.9 based on the applicant's conduct. |

| | | f. Include satisfactory proof that the applicant, at the time of the application, has paid all costs assessed against the applicant under rule 36.24.<br><br>The supreme court in its discretion may place conditions on readmission, including, but not limited to, passing the Iowa bar examination. If the supreme court does not require the applicant to pass the bar examination, it will impose a requirement that the applicant must report up to 100 hours of continuing legal education. The applicant must post a scaled score of at least 80 on the Multistate Professional Responsibility Exam (MPRE) as a condition of readmission. The MPRE score must be from a test taken no longer than three years prior to the date of filing of the application for readmission. |
|---|---|---|
| Kansas | No<br><br>Can seek reinstatement after 5 years | <u>Kansas Rule Relating to the Discipline of Attorneys 322</u><br>The petitioner has the burden of proof to establish that the petitioner is fit to practice law and that the following factors weigh in favor of reinstatement.<br>(A) the petitioner's current moral fitness;<br>(B) the petitioner's consciousness of the wrongful nature of the petitioner's misconduct and the disrepute the misconduct brought the profession;<br>(C) the seriousness of the misconduct leading to disbarment or suspension does not preclude reinstatement;<br>(D) the petitioner's conduct since the Supreme Court imposed discipline;<br>(E) the petitioner's present ability to practice law;<br>(F) the petitioner's compliance with the Supreme Court's orders;<br>(G) the petitioner has not engaged in the unauthorized practice of law;<br>(H) the petitioner has received adequate treatment or rehabilitation for any substance abuse, infirmity, or problem; and<br>(I) the petitioner has resolved or attempted to resolve any other initial complaint, report, or docketed complaint against the petitioner.<br><br>If the Supreme Court grants a petition for reinstatement, it may order the attorney to comply with any condition or limitation on the attorney's practice. The court may also order that the attorney's practice be supervised for a period of time. |

| Kentucky | Yes | Kentucky Rules of the Supreme Court 3.380 <br> Upon findings of a violation of these rules, discipline may be administered by way of public reprimand, suspension from practice for a definite time, all of which may be with or without such conditions as the Court may impose, or permanent disbarment. |
|---|---|---|
| Louisiana | Yes (by discretion of the Court) | Louisiana Rules for Lawyer Disciplinary Enforcement 10.A.1 <br> Disbarment by the court. In any order or judgment of the court in which a lawyer is disbarred, the court retains the discretion to permanently disbar the lawyer and permanently prohibit any such lawyer from being readmitted to the practice of law. |
| Maine | No <br><br> Can seek reinstatement after 5 years, unless otherwise provided in disbarment Order | Maine Bar Rule 29 <br> Criteria for Reinstatement. A petitioner may be reinstated only if the petitioner meets each of the following criteria: <br> (1) the petitioner has fully complied with the terms and conditions of all prior disciplinary orders issued in Maine or in any other jurisdiction except to the extent they are abated under Rule 30, unless such suspension, disbarment, or discipline is solely the result of reciprocal action resulting from disciplinary action taken by Maine authorities; <br> (2) the petitioner has not engaged or attempted to engage in the unauthorized practice of law during the period of suspension or disbarment; <br> (3) if the petitioner was suffering under a physical or mental disability or infirmity at the time of suspension or disbarment, including alcohol or other drug abuse, the disability or infirmity has been removed. Where alcohol or other drug abuse was a causative factor in the petitioner's misconduct, the petitioner shall not be reinstated unless: <br>     (A) the petitioner has pursued appropriate rehabilitative treatment; <br>     (B) the petitioner has abstained from the use of alcohol or other drugs for at least one year; and <br>     (C) the petitioner is likely to continue to abstain from alcohol or other drugs; <br> (4) the petitioner recognizes the wrongfulness and seriousness of the misconduct for which the petitioner was suspended or disbarred; <br> (5) the petitioner has not engaged in any other professional misconduct since suspension or disbarment; <br> (6) notwithstanding the conduct for which the petitioner was disciplined, the petitioner has the requisite honesty and integrity to practice law; |

| | | (7) the petitioner has met the CLE requirements of Rule 5 for each year the attorney has been suspended or disbarred, but need not complete more than 24 hours of approved credit hours for that entire period of absence from practice, provided that (i) no more than one half of the credit hours are earned through self study; (ii) at least two credit hours are primarily concerned with the issues of ethics or professionalism; and (iii) at least two credit hours are primarily concerned with issues of recognition and avoidance of harassment and discriminatory communication or conduct related to the practice of law; and (8) In addition to all of the requirements in this provision, the attorney shall comply with Rule 4(a) and (b), and remit to the Board an arrearage registration payment equal to the total registration fee that the attorney would have been obligated to pay the Board under Rule 4(a) and (b) had the attorney remained actively registered to practice in Maine. <br><br> The Court may impose conditions on a petitioner's reinstatement that are reasonably related to the grounds for the petitioner's original suspension or disbarment, or to evidence presented at the hearing regarding the petitioner's failure to meet the criteria for reinstatement. Passing the bar examination and the character and fitness examination shall be conditions to reinstatement following disbarment. The conditions may include, but are not limited to any of the following: (1) limitation upon practice to one area of law or through association with an experienced supervising lawyer; (2) participation in continuing legal education courses; (3) monitoring of the petitioners practice for compliance with trust account rules, account procedures, or office management procedures; (4) abstention from the use of drugs or alcohol; (5) active participation in an alcohol or drug rehabilitation program; (6) active participation in mental health treatment; or (7) monitoring of the petitioners compliance with these conditions and any other orders. |
|---|---|---|
| Maryland | No <br><br> No minimum period – whatever timeframe is indicated in disbarment Order | Maryland Rule of Disciplinary Procedure 19-752 <br><br> In determining whether to grant a petition for reinstatement, the Court of Appeals shall consider the nature and circumstances of the attorney's conduct that led to the disciplinary or remedial order and the attorney's (A) subsequent conduct, (B) current character, and (C) current qualifications and competence to practice law. |

|  |  | The Court may order reinstatement if the attorney meets each of the following criteria or presents sufficient reasons why reinstatement should be ordered in the absence of satisfaction of one or more of those criteria:<br>(A) the attorney has complied in all respects with the provisions of Rule 19-741 or, if applicable, 19-743 and with the terms and conditions of prior disciplinary or remedial orders;<br>(B) the attorney has not engaged in or attempted or offered to engage in the unauthorized practice of law during the period of disbarment, suspension, or inactive status;<br>(C) if the attorney was transferred to disability inactive status, the incapacity or infirmity, including alcohol or drug abuse, no longer exists and is not likely to recur in the future;<br>(D) if the attorney was disbarred or suspended, the petitioner recognizes the wrongfulness and seriousness of the professional misconduct for which discipline was imposed;<br>(E) the attorney has not engaged in any professional misconduct or, other than minor traffic or municipal infractions, any unlawful activity since the imposition of discipline;<br>(F) the attorney currently has the requisite honesty and integrity to practice law;<br>(G) the attorney has kept informed about recent developments in the law and is competent to practice law; and<br>(H) the attorney has complied with all financial obligations required by these Rules or by court order, including (i) reimbursement of all amounts due to the attorney's former clients, (ii) payment of restitution which, by court order, is due to the attorney's former clients or any other person, (iii) reimbursement of the Client Protection Fund for all claims that arose out of the attorney's practice of law and satisfaction of all judgments arising out of such claims, and (iv) payment of all costs assessed by court order or otherwise required by law.<br><br>An order that reinstates an attorney may include, as a condition precedent to reinstatement or as a condition of probation after reinstatement that the attorney:<br><br>(1) take the oath of attorneys required by Code, Business Occupations and Professions Article, § 10-212;<br>(2) pass the Uniform Bar Examination; |
|---|---|---|

|  |  | (3) successfully complete the Maryland Law Component required for admission to the Maryland Bar; (4) take the Multistate Professional Responsibility Examination and earn a score that meets or exceeds the passing score in Maryland established by the Board of Law Examiners; (5) attend a bar review course approved by Bar Counsel and submit to Bar Counsel satisfactory evidence of attendance; (6) submit to Bar Counsel evidence of successful completion of a professional ethics course at an accredited law school; (7) engage an attorney satisfactory to Bar Counsel to monitor the attorney's legal practice for a period stated in the order of reinstatement; (8) limit the nature or extent of the attorney's future practice of law in the manner set forth in the order of reinstatement; (9) participate in a program tailored to individual circumstances that provides the attorney with law office management assistance, attorney assistance or counseling, treatment for substance or gambling abuse, or psychological counseling; (10) demonstrate, by a report of a health care professional or other evidence, that the attorney is mentally and physically competent to resume the practice of law; (11) issue an apology to one or more persons; or (12) take any other corrective action that the Court deems appropriate. |
|---|---|---|
| Massachusetts | No<br><br>Can seek reinstatement after 8 years, unless court orders otherwise | Supreme Judicial Court Rule 4:01<br><br>A petitioner for reinstatement shall have the burden of demonstrating that he or she has the moral qualifications, competency and learning in law required for admission to practice law in this Commonwealth, and that his or her resumption of the practice of law will not be detrimental to the integrity and standing of the bar, the administration of justice, or to the public interest. |
| Michigan | No<br><br>Can seek reinstatement after 5 years | MCR 9.119 described in this FAQ<br>Rule 9.123 / Rule 9.124<br><br>Lawyers who have been disbarred and are seeking reinstatement must establish by clear and convincing evidence that:<br>(1) they desire in good faith to be restored to the privilege of practicing law in Michigan; |

| | | |
|---|---|---|
| | | (2) the term of the suspension ordered has elapsed or 5 years have elapsed since their disbarment or resignation; (3) they have not practiced or attempted to practice law contrary to the requirement of their suspension or disbarment; (4) they have complied fully with the order of discipline; (5) their conduct since the order of discipline has been exemplary and above reproach; (6) they have a proper understanding of and attitude toward the standards that are imposed on members of the bar and will conduct themselves in conformity with those standards; (7) taking into account all of the past conduct, including the nature of the misconduct which led to the revocation or suspension, they nevertheless can safely be recommended to the public, the courts, and the legal profession as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and as an officer of the court; (8) they are in compliance with the requirements of subrule (C), if applicable; and (9) they have reimbursed the client security fund of the State Bar of Michigan or has agreed to an arrangement satisfactory to the fund to reimburse the fund for any money paid from the fund as a result of his or her conduct. Failure to fully reimburse as agreed is ground for vacating an order of reinstatement. An attorney who is disbarred must be recertified by the Board of Law Examiners before the attorney may be reinstated to the practice of law. A reinstatement order may grant reinstatement subject to conditions that are relevant to the established misconduct or otherwise necessary to insure the integrity of the profession, to protect the public, and to serve the interests of justice. |
| Minnesota | No No set timeframe for seeking reinstatement | Rule 18 Unless specifically waived by this Court, no lawyer shall be reinstated to the practice of law following the lawyer's disbarment until the lawyer shall have satisfied (1) the requirements imposed under the rules for Continuing Legal Education on members of the bar as a condition to a change from a restricted to an active status and (2) any subrogation claim against the lawyer by the Client Security Board. |

|  |  | Minnesota standards for reinstatement are laid out in the case of *In re Anderley* 696 N.W.2d 380 (2005). An applicant must have "undergone a moral change," plus these five criteria are considered: 1) recognition that the previous conduct was wrong, 2) the length of time since the misconduct and disbarment; 3) the seriousness of the original misconduct; 4) the attorney's physical or mental illness or pressures that are susceptible to correction, and 5) the attorney's intellectual competency to practice law. |
|---|---|---|
| Mississippi | No, but felony conviction may result in permanent disbarment<br><br>Can seek reinstatement after 5 years | Rules of Discipline (12(e))<br><br>A disbarred attorney seeing reinstatement shall be required to take and pass the complete Bar examination administered by the Mississippi Board of Bar Admissions and achieve the score required for admission of new attorneys to the Bar and the Multi-State Professional Responsibility Exam with the score required for admission of new attorneys to the Bar.<br><br>Petitioners must also show that they have made full amends and restitution in connection with their prior misconduct, give specific reasons justifying reinstatement, and discuss in detail their rehabilitation and attainment of the requisite moral character and legal learning to be reinstated to the Privilege of practicing law. |
| Missouri | No<br><br>Can seek reinstatement after 5 years | Rule 5.28<br><br>Petitioners for reinstatement are required to show that :<br>(1) The cause for suspension or disbarment has abated;<br>(2) All persons injured as a result of the conduct that resulted in the loss of the privilege to practice law have received restitution, their claims have been discharged by operation of law, or the injured persons have been notified at least 10 days but not more than 90 days in advance of the filing of the petition for reinstatement;<br>(3) All special conditions for reinstatement required by this Court at the time the privilege to practice law was lost have been accomplished; and<br>(4) The person has taken within the two years immediately preceding filing of the petition the multistate professional responsibility examination and scored a grade at least equal to that established by the board of law examiners as passing at the time the examination was taken.<br>(5) The person has taken the bar examination prescribed by Rule 8.08 and has attained a passing score within one year prior to the date of filing the petition. |

| | | The person must establish, by clear and convincing evidence, that the person is of good moral character, is fit to practice law, and the best interest of the public will be served by reinstatement of the person's license to practice law. Factors to consider in determining whether the person has met this burden include the following: <br> (1) The person's acceptance of responsibility for wrongdoing with sincerity and honesty and a lack of malice toward those who brought evidence against the person; <br> (2) The extent of the person's rehabilitation, as demonstrated by good current reputation for character and moral standing in the community; <br> (3) The nature and severity of the misconduct leading to discipline; <br> (4) The person's conduct since discipline, including strict compliance with the specific conditions of any disciplinary, judicial, administrative, or other order, where applicable; <br> (5) The time elapsed since discipline; <br> (6) Other instances of dishonesty, criminal behavior, professional discipline, unauthorized practice of law, academic and employment misconduct, financial irresponsibility, or involvement in or neglect of legal and professional matters; <br> (7) The cumulative effect of all misconduct; <br> (8) The person's current competency and qualifications to practice law; <br> (9) Restitution; <br> (10) Candor in the discipline and reinstatement processes; and <br> (11) Positive social contributions since the misconduct. |
|---|---|---|
| Montana | No <br><br> Can seek reinstatement after 5 years | <u>Rules for Lawyer Disciplinary Enforcement</u> (Rule 29) <br><br> The petitioner shall have the burden of demonstrating by clear and convincing evidence that they meet the following criteria or, if not, why they should nevertheless be reinstated: (1) The lawyer has fully complied with the terms of all prior disciplinary orders; (2) The lawyer has not engaged nor attempted to engage in the unauthorized practice of law; (3) If the lawyer was suffering under a physical or mental disability or infirmity at the time of suspension, including alcohol or other drug abuse, the disability or infirmity has been removed, and where alcohol or other drug abuse was a causative factor in the lawyer's misconduct, the lawyer: (a) has pursued appropriate rehabilitative treatment; and (b) has |

| | | |
|---|---|---|
| . | | abstained from the use of alcohol or other drugs for at least one year, and is likely to continue to abstain from alcohol or other drugs; (4) The lawyer recognizes the wrongfulness and seriousness of the misconduct; (5) The lawyer has not engaged in any other professional misconduct since suspension; (6) The lawyer has the requisite honesty and integrity to practice law; and (7) The lawyer has kept informed about recent developments in the law and is competent to practice. |
| Nebraska | No<br><br>Can seek reinstatement after 5 years | Rule 3-310<br>All applications for reinstatement from an order of disbarment shall include a character and fitness evaluation pursuant to Neb. Ct. R. § 3-803(F). Upon completion of the character and fitness evaluation, the Commission shall make a recommendation to the Supreme Court concerning the member's character and fitness to practice law. |
| Nevada | Yes | Rule 102<br>Misconduct is grounds for "irrevocable disbarment" by the supreme court. |
| New Hampshire | Yes<br><br>Can seek reinstatement after 7 years | N.H. R. Sup. Ct. 37<br><br>The petition shall be under oath and shall: (A) specify with particularity the manner in which the petitioner has fully complied with all of the terms and conditions set forth in all prior disciplinary orders; (B) certify, if the attorney was disbarred in New Hampshire as a result of having been disbarred in another jurisdiction, that they have been readmitted to practice law in the other jurisdiction prior to applying for readmission in New Hampshire; (C) certify that the petitioner has taken the New Hampshire Bar Examination within one year of the filing of the petition and has received a passing grade as established by the Board of Bar Examiners; and (D) certify that the petitioner has taken the Multistate Professional Responsibility Examination after entry of the order of disbarment, and has received a passing grade as established by the Board of Bar Exam.<br><br>The petitioner shall bear the burden of demonstrating by clear and convincing evidence that they have the competence and learning in the law required for admission to practice law in this State and that the resumption of the practice of law will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive to |

16

| | | the public interest. The petitioner shall also bear the burden of demonstrating by clear and convincing evidence that they have good moral character and fitness. |
|---|---|---|
| New Jersey | Yes | Rule 1:20 (15A(a)(1))<br>An attorney who is disbarred shall have his or her name permanently stricken from the roll of attorneys. |
| New Mexico | Yes | Rule 17-214<br>A person who has been disbarred may not apply for reinstatement. |
| New York | No<br><br>Can seek reinstatement after 7 years | Court Rules 1240.16&808.16<br>Lawyers seeking reinstatements must show by clear and convincing evidence, that: they have complied with the order of disbarment, suspension or the order removing the respondent from the roll of attorneys; they have has complied with the rules of the court; they have the requisite character and fitness to practice law; and it would be in the public interest to reinstate them to the practice of law. |
| North Carolina | No<br><br>Can seek reinstatement after 5 years | 27 NCAC Chapter 1B- Seciton.0100<br>.0129 reinstatement<br><br>The petitioner will have the burden of proving by clear, cogent, and convincing evidence that<br>- the petitioner has reformed and presently possesses the moral qualifications required for admission to practice law in this state taking into account the gravity of the misconduct which resulted in the order of disbarment;<br>- permitting the petitioner to resume the practice of law within the state will not be detrimental to the integrity and standing of the bar, to the administration of justice, or to the public interest, taking into account the gravity of the misconduct which resulted in the order of disbarment;<br>- the petitioner's citizenship has been restored if the petitioner has been convicted of or sentenced for the commission of a felony;<br>- the petitioner has complied with Rule .0128 of this subchapter;<br>- the petitioner has complied with all applicable orders of the commission and the council;<br>- the petitioner has complied with the orders and judgments of any court relating to the matters resulting in the disbarment; |

17

|  |  | - the petitioner has not engaged in the unauthorized practice of law during the period of disbarment;<br>- the petitioner has not engaged in any conduct during the period of disbarment constituting grounds for discipline under G.S. 84-28(b);<br>- the petitioner understands the current Rules of Professional Conduct. Participation in continuing legal education programs in ethics and professional responsibility for each of the three years preceding the petition date may be considered on the issue of the petitioner's understanding of the Rules of Professional Conduct;<br>- the petitioner has reimbursed the Client Security Fund of the North Carolina State Bar for all sums, including costs other than overhead expenses, disbursed by the Client Security Fund as a result of the petitioner's misconduct.<br>- the petitioner has reimbursed all sums which the Disciplinary Hearing Commission found in the order of disbarment were misappropriated by the petitioner and which have not been reimbursed by the Client Security Fund;<br>- the petitioner paid all dues, Client Security Fund assessments, and late fees owed to the North Carolina State Bar as well as all attendee fees and late penalties due and owing to the Board of Continuing Legal Education at the time of disbarment.<br>- if a trustee was appointed by the court to protect the interests of the petitioner's clients, the petitioner has reimbursed the State Bar all sums expended by the State Bar to compensate the trustee and to reimburse the trustee for any expenses of the trusteeship;<br>- the petitioner has properly reconciled all trust or fiduciary accounts, and all entrusted funds of which the petitioner took receipt have been disbursed to the beneficial owner(s) of the funds or the petitioner has taken all necessary steps to escheat the funds.<br><br>If less than seven years have elapsed between the effective date of the disbarment and the filing date of the petition for reinstatement, the petitioner will also have the burden of proving by clear, cogent, and convincing evidence that the petitioner has the competency and learning in the law required to practice law in this state. |

18

| | | |
|---|---|---|
| | | Factors which may be considered in deciding the issue of competency include<br>(i) experience in the practice of law;<br>(ii) areas of expertise;<br>(iii) certification of expertise;<br>(iv) participation in continuing legal education programs in each of the three years immediately preceding the petition date;<br>(v) certification by three lawyers who are familiar with the petitioner's present knowledge of the law that the petitioner is competent to engage in the practice of law.<br><br>Attainment of a passing score on a regularly scheduled written Uniform Bar Examination prepared by the National Conference of Bar Examiners and successful completion of the State-Specific Component prescribed by the North Carolina Board of Law Examiners, no more than nine months before filing the petition, and taken voluntarily by the petitioner, shall be conclusive evidence on the issue of the petitioner's competence to practice law.<br><br>If the petition is filed seven years or more after the effective date of disbarment, reinstatement will be conditioned upon:<br><br>(A) attainment of a passing score, within nine months following an order conditionally granting the petition, on a regularly-scheduled Uniform Bar Examination prepared by the National Conference of Bar Examiners;<br>(B) attainment of a passing score, within nine months following an order conditionally granting the petition, on a regularly-scheduled Multistate Professional Responsibility Examination administered by the National Conference of Bar Examiners; and<br>(C) successful completion, within nine months following an order conditionally granting the petition, of the State-Specific Component prescribed by the North Carolina Board of Law Examiners. |
| North Dakota | No<br><br>Can seek reinstatement after 5 years | <u>Court Rule 4.5</u><br><br>Reinstatement must be conditioned upon the certification by the bar examiners of the successful completion, after the order for reinstatement of an examination for admission to practice. |

| | | The petitioner has the burden of demonstrating the petitioner's qualifications for reinstatement or readmission. Factors that may be considered include evidence of the following: 1.The petitioner's fitness and competence to practice law; 2.The petitioner has fully complied with the terms and conditions of all applicable disciplinary orders and rules; 3.The petitioner has not engaged or attempted to engage in the unauthorized practice of law during the period of suspension or disbarment; 4.Where alcohol or drug abuse was a causative factor in the lawyer's misconduct, the petitioner must show that the petitioner has been successfully rehabilitated or is pursuing appropriate rehabilitative treatment; 5.The petitioner recognizes the wrongfulness and seriousness of the misconduct for which the petitioner was suspended or disbarred; 6.The petitioner has not engaged in any other professional misconduct since suspension or disbarment; or 7.Notwithstanding the conduct for which the petitioner was disciplined, the petitioner has the requisite honesty and integrity to practice law. |
|---|---|---|
| Ohio | Yes | Rule V.12(b) A person who is disbarred, who has resigned with discipline pending, or, who has retired from the practice of law on or after September 1, 2007 shall not be readmitted to the practice of law in Ohio. |
| Oklahoma | No Can seek reinstatement after 5 years | Oklahoma Rules Governing Disciplinary Procedure (Rule 11) An applicant for reinstatement must establish affirmatively that, if readmitted, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time and must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration. |

| | | Specific findings shall be made upon each of the following: (a) Whether or not the applicant possesses the good moral character which would entitle him to be admitted to the Oklahoma Bar Association; (b) Whether or not the applicant has engaged in any unauthorized practice of law during the period of suspension, disbarment or resignation; (c) Whether or not the applicant possesses the competency and learning in the law required for admission to practice law in the State of Oklahoma, except that any applicant who has been disbarred shall be required to take and successfully pass the regular examination given by the Board of Bar Examiners of the Oklahoma Bar Association. Provided, however, before the applicant shall be required to take and pass the bar examination, they shall have a reasonable opportunity to show by clear and convincing evidence that, notwithstanding their long absence from the practice of law, they have continued to study and kept themselves informed as to current developments in the law sufficient to maintain his competency. |
|---|---|---|
| Oregon | Yes<br><br>Can seek reinstatement after 5 years | Bar Rule 6.1(e)<br>An attorney disbarred as a result of a disciplinary proceeding commenced by formal complaint before January 1, 1996, may not apply for reinstatement until five years has elapsed from the effective date of his or her disbarment. An attorney disbarred as a result of a disciplinary proceeding commenced by a formal complaint after December 31, 1995, shall never be eligible to apply and shall not be considered for admission under ORS 9.220 or reinstatement under Title 8 of these rules. |
| Pennsylvania | No<br><br>Can seek reinstatement after 5 years | Pennsylvania Rules of Disciplinary Enforcement (218)<br>A disbarred attorney seeking reinstatement shall have the burden of demonstrating by clear and convincing evidence that such person has the moral qualifications, competency and learning in law required for admission to practice law in this Commonwealth and that the resumption of the practice of law within the Commonwealth by such person will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest. |
| Rhode Island | No | Reinstatement rule here.<br><br>An attorney seeking reinstatement shall have the burden of demonstrating by clear and convincing evidence that they |

| | Can seek reinstatement after 5 years | have the moral qualifications, competency and learning in law required for admission to practice law in this State and that their resumption of the practice of law within the State will be neither detrimental to the integrity and standing of the Bar or the administration of justice nor subversive of the public interest. |
|---|---|---|
| South Carolina | No

Can seek reinstatement after 5 years | As governed by Rule 33, found here.

A lawyer may be reinstated or readmitted only if the lawyer meets each of the following criteria:

(1) The lawyer has fully complied with the terms and conditions of all prior disciplinary orders.
(2) The lawyer has not engaged nor attempted to engage in the unauthorized practice of law during the period of suspension or disbarment.
(3) If the lawyer was suffering under a physical or mental infirmity at the time of suspension or disbarment, including alcohol or other drug abuse, the infirmity has been removed. Where alcohol or other drug abuse was a causative factor in the lawyer's misconduct, the lawyer shall not be reinstated unless:
(A) the lawyer has pursued appropriate rehabilitative treatment;
(B) the lawyer has abstained from the use of alcohol or other drugs for at least 1 year or the period of suspension, whichever is shorter; and
(C) the lawyer is likely to continue to abstain from alcohol or other drugs.
(4) The lawyer recognizes the wrongfulness and seriousness of the misconduct for which the lawyer was suspended or disbarred.
(5) The lawyer has not engaged in any other professional misconduct since suspension or disbarment.
(6) Notwithstanding the conduct for which the lawyer was disciplined, the lawyer has the requisite honesty and integrity to practice law.
(7) The lawyer has kept informed about recent developments in the law and is competent to practice.
(8) If disbarred, the lawyer has successfully completed the examinations and training required by Rule 402(c)(5), (6) and (8), SCACR.
(9) If suspended for a definite period of 9 months or more, the lawyer has, during the period of suspension, completed and reported continuing legal education and legal |

|  |  | ethics/professional responsibility credits equal to those required of regular members of the South Carolina Bar and is currently in good standing with the Commission on Continuing Legal Education and Specialization. The lawyer must also complete the Legal Ethics and Practice Program Ethics School within the year prior to filing the petition for reinstatement. The lawyer shall attach to the petition for reinstatement a statement from the Commission on Continuing Legal Education and Specialization confirming compliance with this requirement.<br>(10) If suspended or disbarred for conduct resulting in a criminal conviction and sentence, the lawyer has successfully completed all conditions of the sentence, including, but not limited to, any period of probation or parole.<br>(11) The lawyer has paid necessary expenses and compensation approved by the Supreme Court to the receiver or the attorney appointed to assist the receiver pursuant to Rule 31, RLDE, to protect the interests of the lawyer's clients for necessary expenses, or to the Lawyers' Fund for Client Protection if the Fund has paid the appointed attorney under Rule 31(g), RLDE.<br>(12) The lawyer has reimbursed the Lawyers' Fund for Client Protection for all claims paid on the lawyer's behalf or has entered into a payment plan with the Commission on Lawyer Conduct for reimbursement to the Lawyers' Fund for Client Protection for all claims paid on the lawyer's behalf.<br><br>The Supreme Court may impose any conditions that are reasonably related to the grounds for the lawyer's original suspension or disbarment, or to evidence presented at the hearing regarding the lawyer's failure to meet the criteria for reinstatement. The conditions may include, but are not limited to, any of the following: limitation upon practice (to one area of law or through association with an experienced supervising lawyer); participation in continuing legal education courses; monitoring of the lawyer's practice (for compliance with trust account rules, accounting procedures, or office management procedures); abstention from the use of drugs or alcohol; active participation in Alcoholics Anonymous or other alcohol or drug rehabilitation program; monitoring of the lawyer's compliance with any other orders (such as abstinence from alcohol or drugs, or participation in alcohol or drug rehabilitation programs). |
|---|---|---|
| South Dakota | No | Statute 16-19-83 |

| | | |
|---|---|---|
| | Can seek reinstatement after 5 years | Statute 16-19-84<br>Statute 16-19-86<br>Statute 16-19-87<br><br>The petitioner shall have the burden of demonstrating by clear and convincing evidence that the petitioner has the moral qualifications, competency, and learning in law required for admission to practice law in this state and that petitioner's resumption of the practice of law within the state will not be detrimental to the integrity and standing of the bar, the administration of justice, or subversive of the public interest.<br><br>If the Supreme Court finds the petitioner fit to resume the practice of law, the Supreme Court shall enter a judgment of reinstatement. The judgment may make reinstatement conditional upon:<br>(1)   The payment of all or part of the expenses of the reinstatement and all prior proceedings; and<br>(2)   The making of partial or complete restitution to parties harmed by the misconduct which led to petitioner's suspension or disbarment; and<br>(3)   The furnishing of proof of competency as may be required in the discretion of the Supreme Court, which proof may include certification by the bar examiners of petitioner's successful completion of examinations for admission to practice after the suspension or disbarment |
| Tennessee | Yes | Individuals disbarred on or after July 1, 2020, are not eligible for reinstatement.<br><br>On January 23, 2020, the Tennessee Supreme Court amended its rules on discipline of lawyers to state that attorneys who are "disbarred on or after July 1, 2020, are not eligible for reinstatement."<br><br>Release where information found is here.<br><br>Rule 9 (Disciplinary Enforcement) (Sec. 12.1) states:<br>Disbarment terminates the individual's status as an attorney. |
| Texas | No<br><br>Can seek reinstatement after 5 years | Discipline for professional conduct outlined here.<br>Rule 11.02, petition for reinstatement here.<br><br>The disbarred lawyer must prove that reinstatement is in the best interest of the public and the profession, as well as the |

| | | |
|---|---|---|
| | | ends of justice. The disbarred lawyer must still pass the Bar Exam administered by the Texas Board of Law Examiners.<br><br>In determining the petitioner's fitness for reinstatement, in addition to any other relevant matters, the trial court may consider:<br><br>A. Evidence concerning the nature and degree of Professional Misconduct for which the petitioner was disbarred or resigned and the circumstances attending the offenses.<br>B. The petitioner's understanding of the serious nature of the acts for which he or she was disbarred or resigned.<br>C. The petitioner's conduct during the Disciplinary Proceeding and Disciplinary Action.<br>D. The profit to the petitioner and the hardship to others.<br>E. The petitioner's attitude toward the administration of justice and the practice of law.<br>F. The petitioner's good works and other accomplishments.<br>G. Any other evidence relevant to the issues of the petitioner's fitness to practice law and the likelihood that the petitioner will not engage in further misconduct. |
| Utah | No<br><br>Can seek reinstatement after 5 years | Info from Bar Association here.<br>UCJA Rule 14-707<br><br>UCJA Rule 14-717<br><br>An Applicant for readmission to the Bar after disbarment or resignation with discipline pending shall satisfy all requirements of this article, including Rules 14-703 (,MPRE exam, record of ethical conduct) 14-707(c) (5-year wait for reinstatement), 14-708 (character & fitness) and 14-716 (license fees/oath), and shall satisfy all other requirements imposed by Rule 14-525, the OPC, and Utah courts.<br><br>A Disbarred Attorney Applicant has the burden of proving rehabilitation by clear and convincing evidence. To prove rehabilitation, the Applicant must demonstrate and provide evidence of the following:<br><br><br>- strict compliance with all disciplinary and judicial orders;<br>- full restitution of funds or property where applicable;<br>- a lack of malice toward those who instituted the original proceeding against the Applicant; |

| | | |
|---|---|---|
| | | - unimpeachable character and moral standing in the community;<br>- acceptance of responsibility for the conduct leading to the discipline;<br>- a desire and intent to conduct one's self in an exemplary fashion in the future;<br>- treatment for and current control of any substance abuse problem and/or psychological condition, if such were factors contributing to the disbarment or resignation; and<br>- positive action showing rehabilitation by such things as a person's occupation or community or civic service. |
| Vermont | No<br><br>Can seek reinstatement after 5 years | <u>Vermont Admin. Order 9</u>, (Sec. 26(A) and (D))<br>An attorney seeking reinstatement shall have the burden of demonstrating by clear and convincing evidence that they have the moral qualifications, competency, and learning required for admission to practice law in the state, and the resumption of the practice of law will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest and that the attorney has been rehabilitated. |
| Virginia | No<br><br>Can seek reinstatement after 5 years | <u>Virginia Supreme Court Rules, Part VI, Sec. IV, Par. 13</u> (13-25)<br><br>The Petitioner must show:<br>- Within five years prior to the filing of the petition, Petitioner has attended 60 hours of continuing legal education, of which at least ten hours shall be in the area of legal ethics or professionalism;<br>- The Petitioner has taken the Multistate Professional Responsibility Examination and received a scaled score of 85 or higher;<br>- The Petitioner has reimbursed all costs previously assessed and all sums paid by the Bar as a result of Petitioner's Misconduct.<br><br>Petitioner must further prove by clear and convincing evidence that Petitioner is a person of honest demeanor and good moral character and possesses the requisite fitness to practice law.<br><br>The following factors are taken into consideration:<br>i. The severity of the Petitioner's Misconduct, including, but not limited to, the nature and circumstances of the Misconduct; |

| | | |
|---|---|---|
| | | ii. The Petitioner's character, maturity and experience at the time of his or her Revocation;<br>iii. The time elapsed since the Petitioner's Revocation;<br>iv. Restitution to the clients and/or the Bar;<br>v. The Petitioner's activities since Revocation, including, but not limited to, his or her conduct and attitude during that period of time;<br>vi. The Petitioner's present reputation and standing in the community;<br>vii. The Petitioner's familiarity with the Virginia Rules of Professional Conduct and his or her current proficiency in the law;<br>viii. The sufficiency of the punishment undergone by the Petitioner;<br>ix. The Petitioner's sincerity, frankness and truthfulness in presenting and discussing factors relating to his or her Revocation and Reinstatement; and<br>x. The impact upon public confidence in the administration of<br>justice if the Petitioner's License is restored.<br><br>Upon approval of a petition by this Court, the Petitioner shall meet the following requirements prior to and as a condition of his or her Reinstatement:<br>a) Pay to the Bar any Costs assessed in connection with the Reinstatement Proceeding;<br>b) Take and pass the written portion of the Virginia State Bar examination;<br>c) If required by the Board, obtain and maintain a professional liability insurance policy issued by a company authorized to write such insurance in Virginia at the cost of the Petitioner in an amount and for such term as set by the Board; and<br>d) If required by the Board, obtain and maintain a blanket fidelity bond or dishonesty insurance policy issued by a company authorized to write such bonds or insurance in Virginia at the Petitioner's cost in an amount and for such term as set by the Board. |
| Washington | No<br><br>Can seek reinstatement after 5 years | **Washington State Court Rules APR 25.1. is here.**<br><br>All Petitions for Reinstatement after Disbarment shall be referred for hearing before the character and Fitness Board. The provisions of APR 20 through 24.3 shall apply to petitions for reinstatement unless otherwise provided for in APR 25 through 25.6. |

| West Virginia | No<br><br>Can seek reinstatement after 5 years | **WVA Disciplinary Conduct Rule** (3.33)<br>    A person seeking reinstatement must recite in a petition the cause of the disbarment and what the person has done to satisfy requirements as to rehabilitation, restitution, conditions or other acts incident thereto, by reason of which the person should be reinstated as a member of the state bar with their license to practice law restored. |
| --- | --- | --- |
| Wisconsin | No<br><br>Can seek reinstatement after 5 years | <u>Wisconsin Disciplinary Rule 22.2-.34</u><br><br>A petition for reinstatement shall show all of the following:<br>(a) The petitioner desires to have the petitioner's license reinstated.<br>(b) The petitioner has not practiced law during the period of suspension or revocation.<br>(c) The petitioner has complied fully with the terms of the order of suspension or revocation and will continue to comply with them until the petitioner's license is reinstated.<br>(d) The petitioner has maintained competence and learning in<br>the law by attendance at identified educational activities.<br>(e) The petitioner's conduct since the suspension or revocation<br>has been exemplary and above reproach.<br>(f) The petitioner has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards.<br>(g) The petitioner can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts.<br>(h) The petitioner has fully complied with the requirements set<br>forth in SCR 22.26.<br>(j) The petitioner's proposed use of the license if reinstated.<br>(k) A full description of all of the petitioner's business activities during the period of suspension or revocation.<br>(m) The petitioner has made restitution to or settled all claims of persons injured or harmed by petitioner's misconduct, including reimbursement to the Wisconsin lawyers' fund for client protection for all payments made from that fund, or, if not, the petitioner's explanation of the failure or inability to do so. |

28

|  |  | The petitioner has the burden of demonstrating, by clear, satisfactory, and convincing evidence, all of the following:<br>(1) That they have the moral character to practice law in Wisconsin.<br>(2) That their resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest.<br>(3) That their representations in the petition, including the representations required by SCR 22.29(4)(a) to (m) and 22.29(5), are substantiated.<br>(4) That they have complied fully with the terms of the order of suspension or revocation and with the requirements of SCR 22.26.<br><br>Here is information about reinstatement. |
|---|---|---|
| Wyoming | No<br><br>Can seek reinstatement after 5 years | Wyoming Rules of Disciplinary Procedure are here.<br><br>Reinstatement Rule 22.<br><br>The attorney seeking reinstatement must prove by clear and convincing evidence that the attorney has been rehabilitated, has complied with all applicable disciplinary orders and with all provisions of these rules, has not engaged in the unauthorized practice of law, and is fit to practice law. |

29