**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

STEVEN TERRY,                          :
                                       :        Case No. 2:24-cv-1200
          Plaintiff,                   :
                                       :        Judge Algenon L. Marbley
     v.                                :        Magistrate Judge Chelsey M. Vascura
                                       :
SHARON L. KENNEDY, et al.              :
                                       :
          Defendants.                  :

<u>OPINION & ORDER</u>

This matter is before this Court on a Motion to Dismiss (ECF No. 4) by Defendants Justice

Sharon L. Kennedy, Justice Patrick F. Fischer, Justice R. Patrick DeWine, Justice Michael P.

Donnelly, Justice Melody J. Stewart, Justice Jennifer Brunner, Justice Joseph T. Deters

("Defendant Justices"), and the Supreme Court of Ohio (collectively "Defendants"). For the

reasons set forth below, the Motion is **GRANTED in part and DENIED in part**. The Motion is

granted as to Plaintiff's claims against the Supreme Court of Ohio and the Defendant Justices in

their individual capacities. The Motion is also granted as to the excessive fines, and denial of

access to courts, claims. The Motion is denied with respect to the substantive due process claim

for deprivation of liberty and the equal protection claim against Defendant Justices in their official

capacities.

## I.        BACKGROUND

Plaintiff, Steven Terry, brings this action against Defendants to challenge the

constitutionality of  Ohio Gov. Bar. R. V, Section 12(B) (the "Disbarment Rule"). Under the

Disbarment Rule, a person who is disbarred, resigns with discipline pending, or retires from the

practice of law will not be readmitted to the practice of law in Ohio. Plaintiff argues this rule

1

compared to other jurisdictions "stands in stark contrast"[1] by not recognizing the right to rehabilitation and not allowing disbarred people to be reinstated. (ECF No. 12 at 1).

Plaintiff, an African American male, is a former judge of Cuyahoga County Common Pleas Court. (ECF No 1 ¶ 23). This came after a notable career. Plaintiff, admitted to the Ohio bar in 1989, served as an Assistant Municipal Prosecutor for the City of Akron, Assistant Cuyahoga County Prosecutor, Chief Counsel for the Law Department of the City of Cleveland, Assistant Director for the Public Safety Department, and Director of Justice Affairs Department for Cuyahoga County. (*Id*. ¶¶ 21, 22).

In April 2007, Plaintiff was appointed by Governor Ted Strickland to fill an open seat on the Cuyahoga County Common Pleas Court. (*Id*. ¶ 23). To retain the position, Plaintiff had to run for an election in November 2008 and in the process, Plaintiff garnered substantial guidance and support from an influential politician, Cuyahoga County Auditor Frank P. Russo. (*Id*.). After Plaintiff's appointment to the Cuyahoga County Common Pleas Court, Plaintiff was contacted by his supporter, Mr. Russo, urging Plaintiff to deny a motion for summary judgment pending before him. (*Id*. ¶ 24). Plaintiff did just that. He signed an order to that effect and failed to disclose his communication with Mr. Russo to the parties. (*Id*.).

Plaintiff's conduct led to a five-count federal indictment. (*Id*. ¶ 25). In June 2011, a jury found Plaintiff guilty for three counts: (1) conspiracy to commit mail fraud and honest services mail fraud; (2) mail fraud; and (3) honest services mail fraud. (*Id*. ¶ 26). Plaintiff was sentenced to

---

[1] In 2014, an Arizona presiding disciplinary judge surveyed the jurisdictions with permanent disbarment rules. At the time, only five states mandated permanent treatment of disbarment: Ohio, Oregon, New Jersey, Kentucky, and Indiana. *See* Hon. William J. O'Neil, *In re the matter of Rules 60, 64, and 65, Rules of the Supreme Court of Arizona,* Jan. 10, 2024, https://www.azcourts.gov/Portals/108/Petitions/140009.pdf. In 2024, the New Jersey State Supreme Court adopted a readmission process for disbarred attorneys. *See* Press Release, State Supreme Court Adopts Readmission Process for Disbarred Attorneys (Oct. 15, 2024), https://www.njcourts.gov/press-releases/2024/10/state-supreme-court-adopts-readmission-process-disbarred-attorneys

sixty-three months incarceration, two years of supervised release, ordered to pay restitution, and ordered to complete 250 hours of community service. (*Id*. ¶ 27).

On February 25, 2016, Plaintiff was disbarred from practice in Ohio. (*Id*. ¶ 28). This resulted after disciplinary proceedings before the Supreme Court of Ohio. (*Id*.).  In his Complaint, Plaintiff emphasized that one justice dissented in the decision and recognized "disbarment is the functional equivalent of the death penalty for a lawyer" and noted the "differing treatment and discipline issued against other attorneys." (*Id*. ¶ 29).  Plaintiff also emphasized that this conduct was part of a "justice-for sale scandal" on the Cuyahoga County Common Pleas Court for which another judge, Bridget McCafferty, was also indicted and convicted. (*Id*.). Rather than being permanently disbarred, Ms. McCafferty was indefinitely suspended. (*Id*.).  Plaintiff claimed, "[t]he only discernible difference between the two cases is that Ms. McCafferty is a Caucasian female, and Plaintiff is an African American male."  (*Id*.). Similarly, former Attorney General of Ohio Marc Dann entered an *Alford* plea to the charge of soliciting improper compensation and pled guilty to fling false financial disclosures. Mr. Dann only received a six-month suspension of his law license which is now reinstated.   (*Id*. ¶ 30; ECF No. 4 at 15).

Since being disbarred, Plaintiff asserted he worked to rehabilitate himself and serve his community. (*Id*. ¶ 38).  On January 19, 2024, he sought reinstatement and filed a Motion to Vacate Judgment, Or Alternatively, Motion for Waiver of Gov. Bar. R. V(12)(B). (*Id*. ¶ 39). On March 4, 2024, Chief Justice Sharon L. Kennedy denied the order with no substantive opinion. (*Id*.).

On March 15, 2024, Plaintiff brought this case against the Supreme Court of Ohio and its justices in their official and individual capacities. (ECF No. 3). Plaintiff alleges the Disbarment Rule violates the Fourteenth Amendment Due Process Clause by depriving those disbarred of the fundamental right to practice law, their liberty interest in pursuing a chosen profession, and

property interest in their law license. (*Id*. ¶¶ 51, 52). He also alleges the rule violated the Fourteenth Amendment Equal Protection Clause by treating those disbarred differently from applicants to the Bar of Ohio with criminal records or those who are indefinitely suspended. (*Id*. ¶ 64). Plaintiff also brings a claim under the Eighth Amendment for excessive fines and the First and Fourteenth Amendments for denial of access to courts. (*Id*. ¶¶ 68-76). Plaintiff seeks prospective injunctive and declaratory relief. (*Id*. ¶¶ A-E; ECF No. 12 at 3). Relief sought includes a declaration that the Disbarment Rule is unconstitutional and that those disbarred may petition the Supreme Court of Ohio for reinstatement. (*Id*. ¶¶ A-C).

Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6) and 12(b)(1). (ECF No. 4). Defendants argue Plaintiff's claims are time-barred, the individual capacity claims are barred by judicial immunity, the Supreme Court of Ohio is not *sui juris* and is not subject to suit, and Plaintiff fails to state a claim.

## II. STANDARD OF REVIEW

If defendants move for dismissal for both lack of subject matter jurisdiction and failure to state a claim, the district court is "bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if [the] court lacks subject-matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth*., 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)). Even where the merits question is more readily resolved and the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied, it is improper to decide the merits of a case before finding jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998).

A party may move for dismissal of an action based on lack of subject-matter jurisdiction under Rule 12(b)(1). Where a district court's subject-matter jurisdiction is challenged under Rule

4

12(b)(1), the plaintiff bears the burden of proving jurisdiction. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). Normally, dismissal under Rule 12(b)(1) is not on the merits. *Id.* at 917.

A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). When evaluating such a motion, "[a]ll factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). But the court "need not . . . accept unwarranted factual inferences." *Id.* Complaints must state "more than a bare assertion of legal conclusions to survive a motion to dismiss." *Horn v. Husqvarna Consumer Outdoor Products N.A., Inc.*, 2013 WL 693119, at *1 (S.D. Ohio Feb. 26, 2013) (citing *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim to relief must be "'plausible on its face,'" with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### III.    LAW AND ANALYSIS

#### A.  Rule 12(b)(1)

Plaintiff brought this case against the Supreme Court of Ohio and its justices in their official and individual capacities. (ECF No. 3). Defendants argue the Complaint should be dismissed due to lack of subject matter jurisdiction and rely on: (1) absolute judicial immunity for claims against

5

Defendants in the individual capacity; and (2) the theory that the Supreme Court of Ohio is not *sui juris*. (ECF No. 4 at 5).

### 1. *Judicial Immunity*

The doctrine of judicial immunity is recognized as necessary for "shielding judges from collateral attacks challenging a judge's actions taken in her official judicial capacity." *Morgan v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 63 F.4th 510, 518 (6th Cir. 2023). "This immunity is absolute: all of a judge's actions taken in an official judicial capacity are immune from suit." *Id*. Generally, judicial immunity provides that "a judge is immune from a suit for money damages." *Mireles v. Waco,* 502 U.S. 9, 9 (1991). Moreover, "[j]ust as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, i.e., his official capacity." *Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd.*, 150 F. App'x 389, 401 (6th Cir. 2005). There are two circumstances in which judicial immunity does not apply: (1) if the judge's actions were non-judicial; or (2) if the judge performed the actions in the complete absence of all jurisdiction. *Ward v. City of Norwalk*, 640 F. App'x 462, 466 (6th Cir. 2016) (quoting *Mireles v. Waco,* 502 U.S. at 11–12. "An act is non-judicial if it is one not normally performed by a judicial officer or if the parties did not deal with the judge in his official capacity." *Id*. (quoting *King v. Love,* 766 F.2d 962, 965 (6th Cir.1985)).

Plaintiff argues the nature of this action is not judicial because it relates to the Disbarment Rule rather than a particular court order, thus immunity does not apply. (ECF No. 12 at 6). This argument is unconvincing. As Defendants explain, actions related to attorney discipline are completed by Defendants as duties of their judicial capacity. (ECF No. 4 at 5). *See, e.g., Purola v. Hall, No. 2:22-cv-3885*, 2023 U.S. Dist. LEXIS 30752, at *9 (S.D. Ohio Feb. 23, 2023)

(disagreeing with argument that Supreme Court of Ohio Justice "was not acting as a judge" in disciplinary action which was the responsibility of the Supreme Court of Ohio under Ohio law). Under Ohio law, the Ohio Supreme Court's Justices have original jurisdiction over the "[a]dmission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law. Ohio Const. art. IV, §2(B)(1)(g). Plaintiff has failed to allege any facts suggesting that Defendants were not acting in their official capacity.

Plaintiff similarly fails to provide any authority to support pursuing claims against Defendants in their individual capacity. Plaintiff references *Raymond v. O'Connor*, 526 F. App'x. 526 (6th Cir. 2013). In *Raymond*, the court granted a Rule 12(b)(6) motion to dismiss a claim pertaining to a plaintiff's challenge of the procedures governing admission to the Ohio bar without examination. *Raymond*, 526 F. App'x at 527. Plaintiff argues *Raymond* demonstrates that immunity does not apply when challenging a rule because "the court proceeded to analyze the constitutionality of the challenged rules and practices of the Supreme Court of Ohio." (ECF No. 11 at 6). *Raymond* is not controlling here. The court does not distinguish between claims brought against a defendant in their official or individual capacity. The defendant in *Raymond* did not raise a Rule 12(b)(1) motion based on absolute judicial immunity, so the question was not before the court to review while deciding the Rule 12(b)(6) motion.

Here, the relief Plaintiff is requesting is in connection with the Defendants in their official capacities. Accordingly, judicial immunity precludes Plaintiff's claims against Defendant Justices in their individual capacities. Thus, the Motion is **GRANTED** with respect to those claims**.**

Additionally, with respect to Defendants' official capacity, injunctive relief is not available for Plaintiff. Plaintiff argues that immunity does not apply for §1983 injunctive relief. (ECF No. 12 at 7). The plain language of § 1983 allows suits for injunctions only after a litigant has sought

a declaratory judgment. *Ward*, 640 F. App'x at 467. Under the 1996 amendments to the statute, injunctive relief "shall not be granted" against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Plaintiff cannot seek an injunction against Defendants without first seeking declaratory judgment. Plaintiff fails to allege that a declaratory decree was violated or that declaratory relief was unavailable as such the injunctive relief is barred. *See, e.g.*, *Ward*, 640 F. App'x at 467 (affirming district court's dismissal of injunctive relief claims when the plaintiff's complaint requested declaratory and injunctive relief against a judicial officer based on § 1983 without first seeking declaratory judgment). Defendant's Motion is **GRANTED** as to Plaintiff's request for injunctive relief.

### 2. *Eleventh Amendment*

The Eleventh Amendment bars "any suit in law or equity, commenced or prosecuted against" a state. U.S. Const. amend. XI; *Cimerman v. Cook*, 561 F. App'x 447, 449 (6th Cir. 2014). Nonetheless, there is an exception, the *Ex parte Young* doctrine, permitting official capacity suits against state officials for injunctive relief to stop violations of federal law. *Cimerman*, 561 F. App'x 447, 449 (citing *Ex parte Young*, 209 U.S. 123 (1908)). This exception allows plaintiffs to seek prospective relief to end a continuing violation of federal law. Accordingly, the prospective relief Plaintiff seeks is not precluded.

Defendants argue that to the extent Plaintiff's claims challenge his disbarment, they are retrospective and precluded by the Eleventh Amendment and should be dismissed for seeking retrospective relief. (ECF No. 13 at 7). Defendant specifically argues Plaintiff's equal protection claim challenges the grounds of his disbarment and thus the only available relief is recission of his

permanent disbarment. (ECF No. 13 at 7). The Complaint includes no request for retrospective relief. Plaintiff's requested declaratory relief includes:

A.  A declaration that the Disbarment Rule is in violation of the United States Constitution and cannot be enforced.

B.  A declaration that persons disbarred by order of The Supreme Court of Ohio may petition The Supreme Court of Ohio for reinstatement, and that the petition will be heard in the same manner and under the same standards as persons who The Supreme Court of Ohio indefinitely suspended.

(ECF No. 3).

Ultimately, Plaintiff seeks declaration that the Disbarment Rule violates the Constitution. The declaration sought falls squarely within the *Ex parte Young* doctrine. Thus, sovereign immunity does not preclude Plaintiffs' declaratory judgment claims. *See Ward*, 640 F. App'x at 468.

### 3.  Sui Juris

Defendants also argue that any claims against the Supreme Court of Ohio must be dismissed because "Ohio Courts are not *sui juris* and are not eligible to sue or be sued absent specific statutory authority." (ECF No. 4 at 6-7). Indeed, this Court previously recognized that "[u]nder Federal Rule of Civil Procedure 17(b)(3), the capacity to sue or be sued in federal court is determined by the law of the state in which that court is located. The Supreme Court of Ohio has held that, absent statutory authority, Ohio courts are not *sui juris*." *Williams v. Franklin Cnty. Mun. Ct.*, No. 2:10-CV-1155, 2011 WL 13160383, at *3 (S.D. Ohio Aug. 22, 2011). Plaintiff has not identified any authority to permit the Supreme Court of Ohio to be a defendant in this case. Accordingly, Defendants' Motion is **GRANTED** as to claims against the Supreme Court of Ohio.

The fact that the Supreme Court of Ohio cannot be a named defendant in this case has no bearing on claims against Defendants in their official capacity. *See Cimerman*, 561 F. App'x at

450. Claims against a defendant in their official capacity "for prospective relief are not treated as actions against the State." *Id*. (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 n.10 (1989)).

### B.  Motion to Dismiss: Statute of Limitations

What remains are Plaintiff's claims against Defendant Justices in their official capacity. Defendants argue that, provided Plaintiff can overcome the jurisdictional bar, Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6). (ECF No. 4 at 3). Defendants raise the statute of limitations as a bar to Plaintiff's Complaint and assert that Plaintiff nonetheless fails to state a claim under the Fourteenth (due process and equal protection), Eighth (excessive fines), and First (denial of access to courts) Amendments.

Generally, the statute of limitations is an affirmative defense, and a plaintiff need not plead the lack of affirmative defenses to state a valid claim. *Cataldo v. U.S. Steel Corp*., 676 F.3d 542, 547 (6th Cir. 2012) (citing Fed.R.Civ.P. 8(a)). Nonetheless, when the complaint affirmatively shows that the claim is time-barred, dismissing the claim under Rule 12(b)(6) is appropriate. (citing *Jones v. Bock,* 549 U.S. 199, 215 (2007)).

Plaintiff's claims are brought under 42 U.S.C. § 1983. (ECF No. 3). The statute of limitations in § 1983 actions is governed by the state personal injury statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Ohio, federal courts apply a two-year period beginning when the plaintiff knows, or has reason to know, that the injury providing the basis of the claim has occurred. *Cooey v. Strickland*, 479 F.3d. 412, 416-417 (6th Cir. 2007). Courts take "a common-sense approach" and ask, "to what event should have alerted the typical lay person to protect his

or her rights." *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005) (quoting *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir.2000)).

Defendants asserted that Plaintiff's two-year period began after his disbarment on February 25, 2016. (ECF No 4 at 4). On this date, the Disbarment Rule impacted Plaintiff to the extent alleged in his Complaint, and on that day, Plaintiff had known, or should have known, that he would be unable to be readmitted to practice law in Ohio. (*Id*. at 5; ECF No. 13 at 3). Plaintiff, however, filed his Complaint on March 15, 2024, eight years after the Disbarment Rule applied to him. (*Id*. ¶ 31). Plaintiff opposed the application of the two-year period in 2016 for two reasons: (1) the Disbarment Rule prevents him from seeking reinstatement every day; and (2) Plaintiff did not seek reinstatement until January 19, 2024, when he filed a Motion to Vacate Judgment which was not denied until March 4, 2024. (ECF No. 12 at 5-6). While Plaintiff did not expressly address or provide any authority or support, Plaintiff seems to make an argument that the Disbarment Rule is a "continuing violation."

A "continuing violation" may prevent an action from being time-barred. *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003). The continuing violation applies when: (1) the defendant engages in continuing wrongful conduct; (2) injury to the plaintiff accrues continuously; and (3) had the defendant at any time ceased its wrongful conduct, further injury would have been avoided. *Goldsmith v. Sharrett*, 614 F. App'x 824, 827 (6th Cir. 2015). The Sixth Circuit, however, has noted that the continuing violations doctrine is most commonly applied to Title VII cases and is rarely extended to § 1983 actions. *Id*. at 828 (citing *Sharpe,* 319 F.3d at 267). This Court, as did the Defendants, will construe Plaintiff's argument as invoking the doctrine and review its application to each cause of action in Plaintiff's Complaint.

*1. Substantive Due Process*

With respect to Plaintiff's substantive due process claim for deprivation of a liberty interest, the application of the continuing violations doctrine is well-taken. Plaintiff has alleged: (1) a continuous enforcement of an unconstitutional rule that deprives him of a liberty interest (pursuing a chosen profession); (2) the injury to the Plaintiff is a deprivation of liberty that accrues continuously; and (3) had Defendants at any time ceased enforcing the rule, further injury would have been avoided. Defendants argue that the doctrine does not apply because Plaintiff has not alleged continuing wrongful conduct or an injury inflicting "continuing and accumulating harm." (ECF No. 13 at 5). Defendants rely on a few cases this Court finds unconvincing. One case is *Crawford v. City of Detroit*, 2022 U.S. App. LEXIS 24057, *6 (6th Cir. 2022). In *Crawford*, the plaintiff brought a claim challenging his conviction and the legality of his arrest based on the defendants' failure to train officials, and the plaintiff asserted that the action was timely based on the continuing violations doctrine. *Crawford*, 2022 U.S. App. LEXIS 24057, at *4. The governing law imposed a three-year statute of limitations to challenge convictions but plaintiff, convicted in 2006, did not bring his claim until 2021. *Id*. at *6. The court found plaintiff's "claims cannot be deemed timely under the continuing-violation doctrine because the doctrine is triggered by continuing unlawful acts, rather than by a continued injury, i.e., his incarceration." *Id*.

Defendants additionally rely on *Hebron v. Shelby Cnty. Gov't*, 406 F. App'x 28, 31 (6th Cir. 2010), for the proposition that the rejection of Plaintiff's petition for reinstatement is not a continuing unlawful act that would support the doctrine's application. (ECF No, 13 at 6). In *Hebron*, the plaintiffs brought claims under § 1983 claiming the defendants deprived them of their property interest in their employment and rank without due process of law. *Hebron*, 406 F. App'x at 29–30. The plaintiffs maintained the defendants failed to comply with applicable county code

by failing either to recognize the plaintiffs' entitlement to reinstatement over other applicants or their entitlement to immediate reinstatement. *Id*. at 30. The court noted that the plaintiffs were informed of a new process used by defendants in 2006 under which defendants would not be following the reinstatement policy at issue. *Id*. at 30. The plaintiffs, however, brought their claims in 2008 after defendants promoted others rather than reinstating the plaintiffs. *Id*. The court found that the statute-of-limitations clock began when the plaintiffs knew or should have known their rights were violated; in other words, when the plaintiffs learned or should have learned that the defendants would not be following the reinstatement policy. *Id*. at 31. The court also found that the promotions were "the effects of any initial violation" rather than a continuing violation. *Id*. at 31

Both *Crawford* and *Hebron* are inapposite here. At issue in *Crawford* was a claim for injury resulting from failure to train, and at issue in *Hebron* was injury resulting from the failure to comply with relevant code.

Instead, the case *sub judice* challenges the constitutionality of an ongoing rule enforced continuously against Plaintiff. Where the claim is challenging an unconstitutional rule rather than particular conduct, courts have applied the continuing violations doctrine to § 1983 claims. *See, e.g.*, *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997) ("A law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within two years of its enactment."). In *Kuhnle*, for example, the court applied the continuing violation doctrine to a § 1983 claim when a trucking company challenged the constitutionality of a county resolution that banned through truck travel on certain county roads. *Id.* The plaintiff brought a takings claim, due process claim for deprivation of property, and a due process claim for deprivation of liberty. *Id.* at 520–21. The court found that

the takings and deprivation of property claims were time-barred because the action—the taking of the property and the deprivation of property—happened when the resolution was enacted. *Id*. The court distinguished those claims from the deprivation of liberty claim and found that the resolution deprived the plaintiff "of liberty interests assertedly created by a fundamental constitutional right" and "[i]f such liberty interests do in fact exist in this case . . . then each day that the invalid resolution remained in effect, it inflicted 'continuing and accumulating harm' on" the plaintiff. *Id*. at 521–22. As such, the plaintiff's claim was not entirely time-barred. *Id.* at 522.

Turning back to the criteria this Court must consider before applying the continuing violation doctrine, the court in *Kuhnle* applied the criteria and found that the continuing violations doctrine applied to the plaintiff's deprivation of liberty claim. The invalid through-truck traffic ban continued after the date of enactment of the resolution at issue, the injury alleged continued to accrue, and further injury could have been avoided if the defendant had repealed the resolution. *Kuhnle*, 103 F.3d at 522. The court held that since the last alleged deprivation was within the statute of limitations, the action was not time-barred. *Id*. Similarly here, Plaintiff's claims are not time-barred. Plaintiff alleged an unconstitutional rule, the Disbarment Rule, currently enforced by Defendants; the injury and allegedly unconstitutional act of being permanently disbarred without opportunity to seek reinstatement is continuing  to accrue; and further injury could have been avoided if the rule was no longer in force. Like the plaintiff in *Kuhnle*, Plaintiff Terry has alleged suffering  from a new deprivation of constitutional rights every day that the rule is effective, "rather than merely suffering additional harm from a prior unconstitutional act." *See id*.

Defendants argue that, unlike in *Kuhnle*, there is no fundamental right that creates Plaintiff's alleged liberty interest.  (ECF No. 13 at 6). While this Court is unconvinced that Plaintiff has stated a claim for violation of a fundamental right, for the reasons discussed below, this Court

14

nonetheless finds that Plaintiff has stated a a substantive due process claim for deprivation of liberty even without also demonstrating the deprivation of a fundamental right. *See, e.g.*, *Lawrence v. Pelton*, No. 1:17-CV-289, 2020 WL 6193886, at *7 (W.D. Mich. Sept. 25, 2020), *aff'd*, No. 20-2011, 2021 WL 1511664 (6th Cir. Apr. 9, 2021) (finding the right to practice law is not a fundamental right then applying the rational basis test determining whether the act was arbitrary or capricious so as to state a viable substantive due process claim). Plaintiff has properly alleged a "law that works an ongoing violation of constitutional rights" which inflicts a "new injury" each day that it remains in effect. *See Kuhnle*, 103 F.3d at 522 (quoting *Virginia Hosp. Ass'n v. Baliles,* 868 F.2d 653, 663 (4th Cir.1989)).

As such, the complaint does not affirmatively show that the substantive due process claim for deprivation of a liberty interest is time-barred; thus, dismissing the claim under Rule 12(b)(6) for this reason is inappropriate. *See Cataldo*, 676 F.3d 542 at 547.

### 2. Equal Protection and Denial of Access to Courts

The reasoning for applying the continuing violations doctrine to the substantive due process claim for deprivation of liberty interests also supports applying the doctrine to Plaintiff's claims for equal protection and denial of access to courts. These claims are based on the same right, the right to choose one's own profession, and the continued enforcement of an allegedly unconstitutional rule excluding Plaintiff from exercising the right. (ECF No. 3 ¶¶ 62, 74).

### 3. Excessive Fines (forfeiture)

The same cannot be said for the excessive fines claim or claim of any deprivation of property. Returning to *Kuhnle* as an example, the court found that the takings and deprivation of property claims were time-barred because the action—the taking of the property and the

deprivation of property—and resulting injury happened when the resolution was enacted. *Kuhnle*, 103 F.3d at 520–21. *Id*.

Here, Plaintiff alleges the Disbarment Rule is a punitive forfeiture that violates the Excessive Fines Clause. (ECF No. 3 ¶¶ 68-72). Indeed, "'[t]he Eighth Amendment protects against excessive civil fines, including forfeitures.'" *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 774 F. App'x 959, 967 (6th Cir. 2019) (quoting *Hudson v. United States*, 522 U.S. 93, 103 (1997)). Nonetheless, any alleged excessive fines or forfeiture is on par with the analysis of the takings and deprivation of property claims in *Kuhnle*. As this Court has explained, the statute of limitations for § 1983 actions is a two-year period beginning when the plaintiff knows, or has reason to know, that the injury providing the basis of the claim has occurred. The alleged penalty—the taking of Plaintiff's license to practice law—was imposed in February 2016. Plaintiff knew, or should have known, that the basis for any claim challenging this penalty occurred. Thus, the statute of limitations began to run in 2016. As such, the excessive fines claim is time-barred. To the extent Plaintiff states a claim for deprivation of property under the Due Process Clause, the same reasoning applies.

Accordingly, the Motion to Dismiss based on the statute of limitations is **GRANTED** as to the Eighth Amendment claim and any deprivation of property claim. The Motion is **DENIED** as to the substantive due process claim for deprivation of liberty, equal protection claim, and denial of access to courts claim. This Court will now turn to the substance of Plaintiff's claims to determine whether each is sufficiently alleged in his Complaint.

### C. Motion to Dismiss for Failure to State a Claim

#### 1. Substantive Due Process

Plaintiff claims that the Disbarment Rule violates the Fourteenth Amendment due process clause by depriving those disbarred of the fundamental right to practice law, liberty interests in

pursuing one's chosen profession, and a property interest in a law license. (ECF No. 3 ¶ 47–52). Defendants argue the due process claim should be dismissed because Plaintiff has failed allege a particular constitutional guarantee and failed to allege that the Disbarment Rule is arbitrary or capricious. (ECF Nos. 4 at 7–11; 13 at 8–11).

Under the Fourteenth Amendment, "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This due process clause has both substantive and procedural components. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). Plaintiff only alleged the substantive component in his Complaint. The substantive component "'bar[s] certain government actions regardless of the fairness of the procedures used to implement them.'" *Guertin v. State*, 912 F.3d 907, 918 (6th Cir. 2019) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Protection is for "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). There is a "short" list of fundamental rights which "includes: the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity . . . and possibly the right to refuse unwanted lifesaving medical treatment." *Langston v. Charter Twp. of Redford*, 623 F. App'x. 749, 759 (6th Cir. 2015) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).

If a fundamental right is implicated,  the act is reviewed under the strict-scrutiny test and will be invalidated unless it is 'narrowly tailored to serve a compelling state interest.'  *Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 500 (6th Cir. 2007) (quoting  *Reno v. Flores,* 507 U.S. 292, 302 (1993)). If a fundamental right is not implicated, courts will utilize rational-basis

review. *Id.* (citing *LensCrafters, Inc. v. Robinson*, 403 F.3d 798, 806 (6th Cir. 2005)). Specifically, the court must ask whether the rule is "rationally related to legitimate government interests." *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997). This standard is highly deferential. *Id.* at 501.

The right to pursue one's chosen profession is not an established fundamental right. While courts have found that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to one's chosen profession, the right is subject to reasonable government regulation. *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999) (citing *Dent v. West Virginia,* 129 U.S. 114 (1889); *Truax v. Raich,* 239 U.S. 33, 41 (1915). As such, Plaintiff has failed to allege a fundamental right was violated.

Plaintiff has, however, stated a substantive due process claim by alleging that the Disbarment Rule is not rationally related to a legitimate government interest. Although Plaintiff alleges a violation of a fundamental right in his Complaint, Plaintiff does not argue he has satisfied the requirements to establish a fundamental right in its opposition to Defendants' Motion. (ECF No. 12 at 9–12). Rather, Plaintiff opposes the Motion because the Disbarment rule is irrational and that "[a] claim for substantive due process requires a violation of a constitutionally protected interest deprived by arbitrary state action." (*Id.* at 10). The parties thus agree that Plaintiff must allege "the existence of a constitutionally-protected property or liberty interest" and an "arbitrary and capricious action" to establish a substantive due process claim. *Johnson v. Morales*, 946 F.3d 911, 932 (6th Cir. 2020). Plaintiff has sufficiently done so.

Plaintiff sufficiently alleged the failure of the Disbarment Rule to meet the standards of rational-basis review by stating that: "[t]here is no rational justification for an outright ban on the consideration of reinstatement of Disbarred Persons" and "[t]o arbitrarily and immutably ban the

opportunity to seek reinstatement to the Bar, regardless of a subsequent demonstrated record of rehabilitation, good conduct, and clean living, is harsh, unremitting, and unconstitutional." (ECF No. 3 ¶¶ 54, 58). These allegations, coupled with the facts alleged in the Complaint regarding permanent disbarment without possibility of reinstatement, established a claim for relief "'plausible on its face." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). De

Plaintiff's substantive due process claim for deprivation of liberty is further supported by case law suggesting that a complete prohibition of the pursuit of one's profession is less likely to be found constitutional than a brief prohibition. For example, the Sixth Circuit has noted "it is only where the defendant's action effectively precludes the plaintiff from practicing his trade with all employers or customers that the plaintiff's liberty interest in pursuing his occupation is infringed." *Jackson v. Heh*, 215 F.3d 1326 (6th Cir. 2000).

Moreover, in *Conn* the Supreme Court noted that cases involving a complete prohibition of the right to choose to follow one's calling have established a claim for due process violations, while a "a brief interruption" did not rise to the level of a violation of the Fourteenth Amendment. *Conn*, 526 U.S. at 292. The plaintiff in *Conn* was representing a witness testifying before the grand jury when defendants took plaintiff to a private room to execute a search warrant on plaintiff. *Conn*, 526 U.S. at 288–90. The plaintiff brought suit against defendants under § 1983 arguing his Fourteenth Amendment right to practice his profession was violated when the search warrant was executed during his client's testimony. *Id*. at 289. The Court found plaintiff's rights were not violated and noted that the cases relied upon by the plaintiff could not support the allegation that a right was violated because the cases involved "a complete prohibition of the right to engage in a calling, and not the sort of brief interruption" alleged by the plaintiff. *Id*. at 292. (citing *Dent* , 129 U.S. 114; *Truax,* 239 U.S. 33; *Schware v. Board of Bar Examiners of N. M*., 353 U.S. 232, 238–

239 (1957)). One case referenced in *Conn* is *Schware* where the Court held a plaintiff's former membership in the Communist Party and arrest record relating to union activities did not have a rational connection to the plaintiff's fitness or capacity to practice law. *Schware*, 353 U.S. at 238–39. The Court concluded the "State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." *Id*. Here, Plaintiff has alleged the same: a complete prohibition from the practice of law that has no rational connection to his fitness to practice law. (ECF No. 3 ¶ 35, 50). This is sufficient to survive a motion to dismiss.

Defendants' Motion is accordingly **DENIED** as to the substantive due process claim.

### 2. Equal protection

Plaintiff also brings an Equal Protection claim, alleging that the Disbarment Rule violates the Fourteenth Amendment Equal Protection clause by allowing some people to practice law upon proof of rehabilitation or present fitness and moral character but denying that opportunity to those disbarred. (ECF No. 3 ¶ 65).

To state an Equal Protection claim, Plaintiff must show: "(1) he or 'she has been intentionally treated differently from others similarly situated'; and (2) 'there is no rational basis for the difference in treatment.'" *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "'Similarly situated' is a term of art" and "a comparator" in the situation "must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada, Michigan*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green,* 654 F.3d 637, 651 (6th Cir. 2011)) .Plaintiff alleged that the Disbarment Rule treats those Disbarred differently than other, similarly situated people—others with criminal records—who were given

an opportunity to rehabilitate and later "demonstrate rehabilitation and present fitness and moral character." (ECF No. 3 ¶ 64).

Defendants moved to dismiss the Equal Protection claim based on those identified by Plaintiff's as being similarly situated, namely, first time applicants to the bar and those who have been indefinitely suspended. (ECF No. 13 at 12). Defendants argued that the first-time applicants are fundamentally different as they have not been offered an opportunity to practice law and subsequently found to have committed a wrongdoing. (ECF No. 13 at 12). Similarly, Defendants asserted that the indefinitely suspended individuals Plaintiff identifies are not similarly situated because they have not been "convicted and sentenced for the same crimes as Plaintiff and their respective punishments differ accordingly." (*Id*.). They were not convicted and sentenced for the same crimes as Plaintiff and their respective punishments differ accordingly.

At the motion to dismiss stage the plaintiff must simply state "a plausible claim for relief." *Iqbal*, 556 U.S. at 678. While this Court is unconvinced by Plaintiff's reference to first-time applicants, Plaintiff's reference to others who were allowed to practice law, subsequently committed a wrong doing, and allowed to demonstrate rehabilitation, is sufficient. In his Complaint, Plaintiff alleged that people who were licensed in Ohio and later obtained a criminal record, specifically Bridget McCafferty and Marc Dann, had the ability to demonstrate rehabilitation for reinstatement while those disbarred cannot. (*Id*. ¶¶ 29, 30). More significantly, it was alleged that Ms. McCafferty was another judge on the Cuyahoga County Court of Common Pleas who was indicted and convicted as part of the same justice-for-sale corruption scandal as Plaintiff. (*Id*. ¶¶ 29, 30). As Plaintiff alleged, the Disbarment Rule "irrationally preclude[ed]" people from applying for reinstatement and the rule "arbitrarily and immutably cut off the opportunity to seek reinstatement." (*Id*. ¶¶ 63, 66). These factual allegations are sufficient to

21

survive a motion to dismiss. Defendants' Motion to Dismiss Plaintiffs' Equal Protection claim is therefore **DENIED**.

### 3.   Denial of Access to Courts

In his Complaint, Plaintiff also alleges Defendants denied his right to access the courts in violation of the First and Fourteenth Amendments. (ECF No. 3 ¶¶ 73-76).  "It is beyond dispute that the right of access to the courts is a fundamental right protected by the Constitution." *Swekel v. City of River Rouge,* 119 F.3d 1259, 1262 (6th Cir.1997) (citing *Graham v. National Collegiate Athletic Ass'n,* 804 F.2d 953, 959 (6th Cir.1986)). There are two types of right to access cases: forward looking and backward looking. *Christopher v. Harbury,* 536 U.S. 403, 413–14 (2002). A forward-looking case involves "systematic official action [that] frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Id.* at 413. A backward-looking case involves an action that precludes certain relief. *Id.* at 414.  To make a claim, a plaintiff must allege that defendants prevented the filing of a non-frivolous legal claim by alleging suffering an actual injury to state a claim. *Clark v. Corr. Corp. of Am.*, 113 F. App'x 65, 67–68 (6th Cir. 2004). This means alleging "that a non-frivolous claim was lost or rejected, or that the presentation of such a claim is currently being prevented." *Id.*

Here, Plaintiff alleges that "Defendants have instructed and continue to instruct the Clerk of Court for the Supreme Court of Ohio to refuse to accept petitions for reinstatement, thereby denying Disbarred Persons access to courts for purposes of having a petition for reinstatement presented and heard." (ECF No. 3 ¶ 75).  There is, however, no available legal claim for Plaintiff, or disbarred individuals, to make. Plaintiff has provided no support or legal authority for this Court to consider or find otherwise. As such, Plaintiff has failed to allege "that a non-frivolous claim was

22

lost or rejected, or that the presentation of such a claim is currently being prevented." *Clark*, 113 F. App'x at 67–68.

Thus, plaintiff failed to state a cognizable denial of access to courts claim and Defendants' Motion with respect to the claim is **GRANTED**.

## IV. CONCLUSION

Accordingly, Defendants' Motion to Dismiss (ECF No. 4) is **GRANTED in part and DENIED in part**. The Motion is **DENIED** as to the Fourteenth Amendment substantive due process claim for deprivation of liberty and the equal protection claim against Defendant Justices in their official capacity. With respect to the following, the Motion is **GRANTED,** and the claims are **DISMISSED**:

- Claims against the Supreme Court of Ohio

- Claims against Defendant Justices in their individual capacity

- Eighth Amendment claim for excessive fines (third cause of action)

- First Amendment claim for denial of access to courts (fourth cause of action)

- Any claim for injunctive relief

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT COURT JUDGE**

**DATED: March 28, 2025**