**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| STEVEN TERRY, | ) CASE NO.  2:24-cv-01200 |
| | ) |
| *Plaintiff,* | ) JUDGE ALEGNON L. MARBLEY |
| | ) |
| v. | ) |
| | ) |
| SHARON L. KENNEDY, *et al.,* | ) |
| | ) |
| *Defendants.* | ) |

**PLAINTIFF STEVEN TERRY'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Steven Terry, by and through counsel, respectfully submits his Memorandum in Opposition to the Motion for Summary Judgment of Defendants Justices Sharon L. Kennedy, Patrick F. Fischer, R. Patrick DeWine, Jennifer Brunner, Joseph T. Deters, Megan E. Shanahan, and Daniel R. Hawkins. Defendants' own arguments refute their claim that they are entitled to summary judgment as a matter of law. There is nothing rational about a disciplinary rule that permanently bars a disbarred attorney from ever petitioning for reinstatement - without regard to rehabilitation, present fitness, or the passage of time.

Respectfully submitted,

**EDWARD L. GILBERT CO., L.P.A.**

*/s/ Edward L. Gilbert*
Edward L. Gilbert (0014544)
3070 W. Market Street, Suite 100
Akron, Ohio 44333
(330) 376-8855 Telephone
(330) 376-8857 Facsimile
egilbert@edwardgilbert.com

*Counsel for Plaintiff Steven Terry*

i

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................................... iii

I.    INTRODUCTION ................................................................................................................. 1

II.    STATEMENT OF FACTS ................................................................................................... 3

    A.    Plaintiff's Disbarment and Rehabilitation. ............................................................... 3

    B.    The Disbarment Rule and Its History. ..................................................................... 4

    C.    Ohio Is an Outlier. ................................................................................................... 7

    D.    Lawson v. Kennedy .................................................................................................. 7

    E.    The Disbarment Rule Is Not Even-Handedly Applied. ............................................ 8

III.    LAW AND ARGUMENT ................................................................................................... 10

    A.    Defendants' Threshold Arguments Do Not Preclude Review of Plaintiffs' Constitutional Claims. .................................................................................................................... 10

        i.    The Court has already ruled that Rooker-Feldman is not a bar to Plaintiff's challenge to the constitutionality of the Disbarment Rule. ................................................... 11

        ii.    Defendants' Rooker-Feldman Theory Would Render the Permanent Disbarment Rule Immune from Constitutional Review. ................................................................. 12

        iii.    The Collateral Estoppel Argument Fares No Better. .................................... 13

            a.    Defendants' res judicata argument is a repackaging of Rooker-Feldman ................. 13

            b.    The constitutionality of the Disbarment Rule was neither litigated nor required to be litigated in the disciplinary proceeding. ........................................................... 14

            c.    This action arises from a different transaction and challenges a distinct, continuing constitutional injury. ........................................................................................... 16

            d.    The constitutional injury is ongoing and post-judgment. ........................................ 17

    B.    Even Under Rational Basis Review, Defendants Have Failed to Establish That Ohio's Lifetime Irrebuttable Disbarment Rule is Rationally Related to its Asserted Interests. ............... 17

        i.    Defendants Fail to Explain Why Permanent Incapacity to Seek Reinstatement Furthers Their Asserted Interests. ......................................................................................... 18

        ii.    Rational Basis Review Does Not Permit the State to Ignore Present Fitness Entirely. . 19

        iii.    Defendants' Improperly Define the Governmental Interest at Too High a Level of Generality. ..................................................................................................... 20

        iv.    Defendants' Position Produces an Arbitrary Classification. ........................... 20

        v.    At Minimum, Genuine Issues of Material Fact Preclude Summary Judgment. ............... 21

# TABLE OF AUTHORITIES

## Cases

*Bolinske v. N.D. Supreme Court*, 823 F. Appx. 444 (8th Cir. 2020) ....................................... 15, 16

*Disciplinary Counsel v. Blaszak,* 104 Ohio St. 3d 330, 2004-Ohio-6593 ................................... 10

*Disciplinary Counsel v. Crane*, 56 Ohio St. 3d 38, 564 NE.2d 96 (1990)...................................... 9

*Disciplinary Counsel v. Cushion*, 92 Ohio St. 3d 144, 2001-Ohio-181....................................... 10

*Disciplinary Counsel v. Dann*, 134 Ohio St. 3d 68, 2012-Ohio-5337 ..................................... 8, 13

*Disciplinary Counsel v. Ferreri,* 85 Ohio St. 3d 649, 1999-Ohio-330 ........................................ 9

*Disciplinary Counsel v. McCafferty,* 140 Ohio St. 3d 229, 2014-Ohio-3075 .......................... 8, 13

*Disciplinary Counsel v. Medley,* 128 Ohio St. 3d 317, 2011-Ohio-234 ....................................... 9

*Disciplinary Counsel v. O'Malley*, Board No. 11-113........................................................... 9

*Disciplinary Counsel v. O'Neill,* 103 Ohio St. 3d 204, 2004-Ohio-4704 ................................... 10

*Disciplinary Counsel v. Parker*, 116 Ohio St. 3d 64, 2007-Ohio-5635........................................ 9

*Disciplinary Counsel v. Terry*, 147 Ohio St. 3d 169, 2016-Ohio-563 .................................... 3, 13

*Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 383, 653 N.E.2d 226 (1995) ............................... 16

*In re Wade*, 250 N.J. 581 (2022) ............................................................................................. 7

*Lawson v. Kennedy,* No. 2:25-cv-607 (S.D. Ohio)...........................................................7, 11, 12

Ohio Gov. Bar. R. V, Section 12(B) .............................................................................. passim

*Scheer v. Pasternak*, No. CV 16–3813–R, 2017 WL 8944058  (C.D. Cal. Jan. 6, 2017)....... 15, 16

*StarLink Logistics, Inc. v. ACC, LLC,* 101 F.4th 431, 453 (6th Cir. 2024) ................................... 16

## Rules

ABA Model Rule 25A ................................................................................................................ 7

Gov. Bar. R. V, Section 25 ....................................................................................................... 5

Rule 30(b)(6)............................................................................................................................. 6

Rule V(12)(B) ......................................................................................................................... 21

Task Force of Rules of Professional Conduct (October 2025) ....................................................... 6

Task Force on Ohio Disciplinary System (September 2019)......................................................... 6

Task Force to Review the Ohio Disciplinary System (December 2009) ......................................... 6

## -MEMORANDUM IN SUPPORT-

### I.    INTRODUCTION

This case concerns the constitutional limits of Defendants' authority to regulate the legal profession, and particularly Ohio Gov. Bar. R. V, Section 12(B) (hereafter "Disbarment Rule"). Although the Supreme Court of Ohio possesses authority to discipline attorneys, that authority is not immune from constitutional constraints. The Due Process and Equal Protection Clauses prohibit government action that is arbitrary, irrational, or unrelated to a legitimate governmental purpose. A disciplinary rule that permanently prohibits a disbarred attorney from ever petitioning for reinstatement - without regard to rehabilitation, present fitness, or the passage of time - cannot satisfy constitutional scrutiny, particularly when other attorneys who engaged in similar misconduct but received lesser disciplinary sanctions are eligible to petition for reinstatement.

The Supreme Court of Ohio has repeatedly recognized that attorney discipline is not imposed to punish the lawyer, but to protect the public, preserve confidence in the legal profession, and maintain the integrity of the judicial system. Consistent with those objectives, Defendants maintain that a "disciplinary sanction is most effective when it is proportional to the misconduct precipitating it" and that disciplinary authorities must possess a broad range of sanctions to ensure the "flexibility" necessary "to craft a sanction that meets the offending misconduct." (Doc. 39, MSJ, Page ID 1162.) Those principles necessarily recognize that attorney discipline requires individualized judgment.

Yet the rule challenged here does precisely the opposite. It imposes the profession's most severe sanction and then irrevocably forecloses any future inquiry into whether its regulatory objectives continue to justify the attorney's exclusion from practice. The rule conclusively presumes that every attorney who has once been permanently disbarred will remain forever unfit to practice law, regardless of subsequent rehabilitation, restitution, exemplary conduct,

1

professional development, or decades of law-abiding citizenship. That presumption is irrebuttable, and it is irrational. A person's present fitness to practice law is not frozen in time at the moment discipline is imposed.

Once it is acknowledged that the purpose of discipline is public protection rather than punishment, a lifetime prohibition on so much as applying for reinstatement loses its constitutional justification. Public protection is fully preserved by a rigorous reinstatement process requiring the applicant to prove rehabilitation, present moral character, competence, and fitness by clear and convincing evidence. If the applicant cannot satisfy that burden, reinstatement is denied. If the applicant can satisfy it, continued exclusion serves no regulatory purpose beyond punishment for its own sake. A rule that refuses even to consider whether an individual remains unfit bears no rational relationship to protecting the public because it deliberately ignores the very fact upon which public protection depends: the applicant's present fitness.

The rule likewise violates equal protection because it creates an irrational classification among disciplined attorneys. Every other attorney subject to professional discipline is afforded, after an appropriate period and under stringent conditions, an opportunity to demonstrate rehabilitation and current fitness; oftentimes, in connection with lesser sanctions, fitness is presumed. Only permanently disbarred attorneys are conclusively presumed to be incapable of change and denied any opportunity to rebut that presumption. That distinction is not grounded in present risk to the public but solely in a permanent legal status that the rule itself makes immutable. A classification based upon an irrebuttable presumption that ignores reality and forecloses individualized consideration, especially when the rule itself is meted out in a discriminatory manner, cannot survive even the deferential requirements of rational basis review.

2

Plaintiff is not saying that the Constitution requires reinstatement of every permanently disbarred attorney. It does require, however, that Defendants exercise their regulatory authority rationally. A rule that forever bars consideration of rehabilitation while simultaneously proclaiming that attorney discipline must be proportional, flexible, and directed toward protecting the public is internally inconsistent and constitutionally arbitrary. Because the Disbarment Rule bears no rational relationship to Defendants' articulated objectives upon rehabilitation, it violates substantive due process and equal protection and cannot withstand constitutional scrutiny.

## II.     STATEMENT OF FACTS

### A.     Plaintiff's Disbarment and Rehabilitation.

The material facts leading up to Plaintiff's disbarment are straightforward and set forth in the decision of his disbarment, *Disciplinary Counsel v. Terry*, 147 Ohio St. 3d 169, 2016-Ohio-563.

- Plaintiff, an African American male, was admitted to the practice of law in the State of Ohio on May 8, 1989.

- After gaining admittance, Plaintiff dedicated his craft to public service in various capacities including Assistant Municipal Prosecutor for the City of Akron, Assistant Cuyahoga County Prosecutor, Chief Counsel for the Law Department of the City of Cleveland, Assistant Director for the Public Safety Department, and Director of Justice Affairs Department for Cuyahoga County.  Not once was Plaintiff subject to any grievance, sanction, or other form of discipline.

- In April 2007, Governor Ted Strickland appointed Plaintiff to fill an open seat on the Cuyahoga County Court of Common Pleas.

3

- Plaintiff had to run for election in November 2008 to retain this position. That election marked the first time Plaintiff ran for a public position. During the campaign, Cuyahoga County Auditor Frank P. Russo, regarded as one of the most influential politicians in Cuyahoga County, provided substantial guidance and support to Plaintiff.

- At some point, Frank P. Russo contacted Plaintiff and urged him to deny a motion for summary judgment; and ultimately, Plaintiff signed an entry to that effect, which according to expert testimony, was the appropriate ruling.

- Plaintiff's conduct led to a five-count federal indictment. On June 13, 2011, a jury found Plaintiff guilty of one count of conspiracy to commit mail fraud and two counts of honest-services mail fraud.

- Plaintiff was sentenced to sixty-three months incarceration, two years of supervised release, ordered to pay restitution, and ordered to complete 250 hours of community service. He served his term and completed these items.

- Disciplinary proceedings ensued, and through a decision of February 25, 2016, the Supreme Court of Ohio permanently disbarred Plaintiff ("Disbarment Order").

- Since the Disbarment Order, Plaintiff has worked tirelessly to rehabilitate himself, serve his community, and better his fitness and moral character. Defendants have not questioned Plaintiff's rehabilitation. (Ex. 1, Terry Declaration; Ex. 2, Queener Declaration).

## B.    The Disbarment Rule and Its History.

Under Ohio's disciplinary rules, disbarment is permanent and marks the end of a person's ability to practice law. The Disbarment Rule provides:

> Disbarment or Resignation. A person who is disbarred, who has resigned with discipline pending, or, who has retired from the practice of law on or after September 1, 2007 shall not be readmitted to the practice of law in Ohio.

4

Gov. Bar. R. V, Section 12(B).[1]  It is a blanket rule with no exceptions. (Doc. 39-1, Deposition of Allan Asbury 96:20-23, PageID 1329.)

In contrast, Gov. Bar. R. V, Section 25 entitled "Reinstatement Proceedings; Indefinite Suspension," allows a person who has been indefinitely suspended to petition for reinstatement. Thus, attorneys who receive indefinite suspensions may seek reinstatement to the Bar, whereas attorneys who have been disbarred (hereafter "Disbarred Person" or "Disbarred Persons" of which Plaintiff is one) are categorically barred from ever petitioning for reinstatement, regardless of their fitness and moral character at the time reinstatement is requested.

Permanent disbarment has not always been the law in Ohio. Before the adoption of the current rule in 1957, a disbarred attorney could petition for reinstatement under procedures substantially similar to those applicable to indefinitely suspended attorneys. The 1957 amendment eliminated any opportunity for a disbarred attorney to seek reinstatement.

**Defendants have not offered any explanation for this change**. Indeed, Defendants have not produced any substantive documents related to the Disbarment Rule at all beyond.  While Defendants produced a copy of what Plaintiff presumes is the rule as written in 1957, (Ex. 3, Gilbert Declaration), Defendants did not produce documents explaining the adoption of the permanent disbarment provision. Defendants produced no committee reports, public comments, studies, legislative history, memoranda, or other materials addressing the reasons for adopting the rule or explaining the departure from its previous practice of allowing reinstatement after

---

[1] Gov. Bar. R. V, Section 25(B) sets forth the requirements for reinstatement.  In addition to certain procedural requirements, the rule instructs that the attorney:

> (5) [e]stablish by clear and convincing evidence that he or she possesses all the mental, educational, and moral qualifications that were required of an applicant for admission to the practice of law in Ohio at the time of his or her original admission and that he or she is now a proper person to be readmitted to the practice of law in Ohio, notwithstanding the previous disciplinary action.

disbarment.[2] Nothing. (*See* Doc. 39-1, Objections to Plaintiffs' Revised Notice of Deposition, Topics 1 and 2, PageID 1223-26.)

Likewise, Defendants have not identified a rationale specific to the Disbarment Rule itself. Instead, Defendants have relied on the general purposes overriding Ohio's attorney disciplinary system, including protecting the public, maintaining public confidence in the legal profession, and preserving the integrity of the profession and the even-handedness of justice. (*See, e.g.,* Doc. 39-1, Asbury Dep. 92-93, PageID 1325-26.) Defendants have no evidence that those general objectives specifically require permanent disbarment rather than permitting consideration of reinstatement after a sufficient period of demonstrated rehabilitation. (*See generally* Asbury deposition.)

The lack of evidentiary support is reflected in the testimony of Defendants' Rule 30(b)(6) witness. Mr. Asbury was unable to identify any facts, studies, or data supporting the categorical rule. He was not aware of any studies regarding reinstatement after disbarment. (Doc. 39-1, Asbury Dep. 59, 60:9-14, PageID 1292-93.) Mr. Asbury all but admitted that the Disbarment Rule is arbitrary insofar as it does not account for rehabilitation: "The fact is a disbarment doesn't consider whether somebody can be rehabilitated under the Rules. Disbarment is permanent." (Doc. 39-1, Asbury Dep. 64:9-12, PageID 1297.) This is so even though Defendants have no facts or data suggesting that disbarred persons cannot be rehabilitated.

---

[2] In response to Plaintiff's discovery requests seeking information concerning the basis for the Disbarment Rule and throughout the Rule 30(b)(6) deposition of Mr. Asbury, Defendants declined to produce materials concerning the rule, asserting judicial mental process privilege. Defendants did produce miscellaneous "task force" reports, including Task Force of Rules of Professional Conduct (October 2025), Task Force to Review the Ohio Disciplinary System (December 2009), and Task Force on Ohio Disciplinary System (September 2019); however, not even the December 2009 and September 2019 reports addressed the Disbarment Rule in any substantive manner. This itself is telling.

6

> Q.      [A]s a 30(b)(6) witness, I'm asking you, are you aware of any facts or data that disbarred persons cannot be rehabilitated. Can you answer that?
>
> A.      I do not.

(Doc. 39-1, Asbury Dep. 66:18-23, PageID 1299; *see also* 67:7-18, PageID 1300.) All told, the evidentiary record contains no justification specific to the Disbarment Rule itself.

### C.      Ohio Is an Outlier.

Emblematic of the rule's constitutional infirmities, Ohio's "no-redemption" approach differs from most other jurisdictions. According to survey data reported in *In re Wade*, 250 N.J. 581 (2022), forty-one states and the District of Columbia permit disbarred attorneys to apply for readmission. Ohio is one of nine states that does not.

Also, ABA Model Rule 25A recommends against permanent disbarment and states: "No lawyer may petition for readmission until five years after the effective date of disbarment." (Ex. 3, ABA Model R. Lawyer Disciplinary Enft. 25(A).) The model rule then lists criteria for reinstatement and readmission grounded in principles of rehabilitation.

### D.      Lawson v. Kennedy

Since the initiation of this action, another disbarred attorney (Kenneth Lawson) filed a companion case, *Lawson v. Kennedy,* No. 2:25-cv-607 (S.D. Ohio), currently pending before Honorable Michael J. Watson ("*Lawson*"). The case further demonstrates the disconnect between the Disbarment Rule and the interests Defendants claim it serves. Lawson was permanently disbarred due to *inter alia* felonies involving drug offenses. Although Lawson has maintained sobriety since 2007 and has substantial evidence of rehabilitation, Defendants nevertheless continue to treat him as permanently unfit to practice law solely because of the Disbarment Rule.

7

Thus, even where there is substantial evidence of sustained recovery and present fitness, the Rule categorically forecloses any opportunity for those facts to be considered. This categorical lifetime prohibition is constitutionally impermissible.

### E.   The Disbarment Rule Is Not Even-Handedly Applied.

The Disbarment Rule is not applied in an even-handed or consistent manner. Attorneys who have engaged in comparable misconduct are treated differently under the disciplinary system, and the availability of reinstatement turns on distinctions that are not consistently observed in practice. The examples below illustrate the irrational distinctions the rule produces.

- *Disciplinary Counsel v. McCafferty,* 140 Ohio St. 3d 229, 2014-Ohio-3075. Bridget McCafferty was another judge on the Cuyahoga County Court of Common Pleas who was indicted and convicted as part of the Cuyahoga County justice-for-sale corruption scandal. Ms. McCafferty lied to federal agents and used her judicial position to orchestrate a settlement to benefit a friend of Frank P. Russo. There was no meaningful difference between the conduct of Ms. McCafferty and the conduct of Plaintiff. (The only discernible difference between the two cases is that Ms. McCafferty is a Caucasian female, and Plaintiff is an African American male.) The Supreme Court of Ohio indefinitely suspended Ms. McCafferty.

- *Disciplinary Counsel v. Dann,* 134 Ohio St. 3d 68, 2012-Ohio-5337. Marc Dann served as Attorney General of Ohio at the time of his misconduct. He entered an *Alford* plea to the charge of soliciting improper compensation and pled guilty to filing false financial disclosures. For this, Mr. Dann received a mere six-month suspension of his law license. His license was subsequently reinstated, and he holds an "active" license to practice law in Ohio today.

- *Disciplinary Counsel v. O'Malley*, Board No. 11-113. Mr. O'Malley was also involved in the case-fixing incident with Plaintiff. He pled guilty to lying to law enforcement and misprision of a felony re: election fixing. He received an indefinite suspension and later ran for Cuyahoga County Juvenile Court judge.

- *Disciplinary Counsel v. Medley*, 128 Ohio St. 3d 317, 2011-Ohio-234. Judge had been suspended from the practice of law and his state payroll warrants were supposed to terminate. They did not, yet Judge continued to cash them, receiving $71,400 in unearned gross wages. Judge was further charged with lying about the reissuance of four expired payroll warrants. Even though this was the Judge's third disciplinary matter, he received only an indefinite suspension.

- *Disciplinary Counsel v. Crane*, 56 Ohio St. 3d 38, 564 NE.2d 96 (1990). Judge was convicted of two federal felony offenses related to tax evasion, which resulted in an error of $2M. Judge was the executrix of the estate and submitted various documents that effected a fraud upon the court. He received an indefinite suspension.

- *Disciplinary Counsel v. Parker*, 116 Ohio St. 3d 64, 2007-Ohio-5635. Judge engaged in multiple work-related offenses, including one count of dishonesty. He was suspended 18 months with 6 months suspended.

- *Disciplinary Counsel v. Ferreri*, 85 Ohio St. 3d 649, 1999-Ohio-330. Judge lied to media in multiple interviews about the Cuyahoga County Juvenile Court and the Eighth District Court of Appeals. He was suspended 18 months with 12 months stayed.

- *Disciplinary Counsel v. O'Neill*, 103 Ohio St. 3d 204, 2004-Ohio-4704. Judge consistently misrepresented the events that occurred in the court proceedings and

9

failed to treat other judges, attorneys, and court personnel with honesty and respect. He was suspended 24 months with 12 months stayed.

- *Disciplinary Counsel v. Blaszak*, 104 Ohio St. 3d 330, 2004-Ohio-6593. Attorney sold witness testimony in violation of 18 USC 201(c)(3). Although recognizing that indefinite suspension was typical sanction for bribery-related misconduct, only a 24-month suspension imposed in light of evidence that this was out-of-character in an otherwise unblemished career.

- *Disciplinary Counsel v. Cushion*, 92 Ohio St. 3d 144, 2001-Ohio-181. Assistant prosecutor shot a female companion while under the influence of drugs and alcohol. He was indefinitely suspended, then reinstated.

Viewed as a whole, the factual record establishes that the Disbarment Rule operates arbitrarily and irrationally, without any principled or constitutionally meaningful basis for its application. Accordingly, Defendants have failed to demonstrate that they are entitled to judgment as a matter of law, and, Plaintiff respectfully submits, Defendants' Motion for Summary Judgment should be denied.

### III.  LAW AND ARGUMENT[3]

#### A.  Defendants' Threshold Arguments Do Not Preclude Review of Plaintiffs' Constitutional Claims.

Defendants begin with two threshold arguments - *Rooker-Feldman* and res judicata - before turning to the merits. While labeled differently, both arguments seek to foreclose the Court's consideration of Plaintiff's constitutional claims based on the effect of prior state court proceedings. Consistent with this Court's prior ruling rejecting that premise under *Rooker-*

---

[3] The Court previously held that there is no fundamental right to pursue one's chosen profession. Plaintiff respectfully maintains that such a right exists and preserves that issue for appellate review. Accordingly, Plaintiff further maintains that the challenged law is subject to strict scrutiny, a bar which Defendants have not satisfied.

*Feldman*, and the subsequent decision of Judge Watson in the companion *Lawson* case, neither threshold argument precludes review of the constitutional issues presented.

### i. The Court has already ruled that Rooker-Feldman is not a bar to Plaintiff's challenge to the constitutionality of the Disbarment Rule.

The Court has already held that the *Rooker-Feld*man doctrine does not bar Plaintiff's constitutional challenge to the Disbarment Rule. Defendants nevertheless recycle the same jurisdictional argument the Court rejected in denying their motion to dismiss. As the Court recognized, Plaintiff does not seek review or reversal of his disbarment order; rather, he seeks a declaration that the Disbarment Rule itself is unconstitutional. Accordingly, sovereign immunity does not bar the claim:

> Ultimately, Plaintiff seeks declaration that the Disbarment Rule violates the Constitution. The declaration sought falls squarely within the *Ex parte Young* doctrine. Thus, sovereign immunity does not preclude Plaintiff's declaratory judgment claims.

(Order on Motion to Dismiss, Doc. 22, PageID 1107.)

> This result is consistent with Judge Watson's decision in *Lawson*:

> Looking at [Lawson's] sought-after relief, a declaration that Defendants' "actions and inactions are unlawful and unconstitutional" would encompass conduct related to the promulgation and enforcement of the Disbarment Rule, irrespective of [Lawson's] involvement therewith. And [Lawson's] primary request for relief is protection from the Disbarment Rule – through a declaratory judgment and injunction – on a going-forward basis. *** It would seem, then, that at least a part of [Lawson's] Complaint may proceed.

> Defendants contend that [Lawson's] injury (his inability to seek reinstatement) "was caused by the Supreme Court of Ohio's decision to disbar him," but this position glosses over a subtle but important distinction. True, the Supreme Court of Ohio disbarred [Lawson] and was presumably fully aware of the consequences of that decision (i.e., that disbarment meant a permanent prohibition on readmission because of the Disbarment Rule.) But the Court disagrees with Defendants' contention that the "disbarment decision *is* the application of the Disbarment Rule … because that decision itself does not inherently prevent Plaintiff from applying for reinstatement – it simply classifies Plaintiff as a disbarred attorney. It is the Disbarment Rule's explicit terms that keep him from readmission. It is the

> Disbarment Rule's lack of a path to readmission in any circumstance that [Lawson] insists is unconstitutional and invalid, so it is the Disbarment Rule that is the source of his injury.

*Lawson*, March 31, 2026 Opinion and Order at 16-17 (citations omitted) (Ex. 5.) Thus, "insofar as [Lawson's] claims do no implicate the Supreme Court of Ohio's disbarment ruling," Judge Watson held that *Rooker-Feldman* does not bar his claims." *Id.* at 18.

### ii. Defendants' Rooker-Feldman Theory Would Render the Permanent Disbarment Rule Immune from Constitutional Review.

Putting aside that the Court has already rejected the argument, Defendants' *Rooker-Feldman* argument proves too much. As Defendants argue it, no disbarred attorney could ever challenge the constitutionality of Ohio's permanent disbarment rule because the only persons with standing to challenge the rule are those subject to it. Yet Defendants contend that whenever a disbarred attorney challenges the rule, the claim necessarily becomes an attack on the disciplinary judgment itself. If that were correct, the constitutionality of the Disbarment Rule could never be tested in federal court. That is not the law.

The critical distinction is between a challenge to the validity of a rule and a challenge to a judgment applying that rule. Plaintiff does not seek appellate review of the Supreme Court of Ohio's factual findings, credibility determinations, or conclusion that he committed misconduct.

Instead, Plaintiff challenges the constitutionality of a rule that categorically prohibits disbarred attorneys from ever seeking reinstatement, regardless of rehabilitation or present fitness. That constitutional question exists independently of Plaintiff's disciplinary case. The rule would either be constitutional or unconstitutional no matter who was disbarred under it.

Defendants point to Plaintiff's references to Bridget McCafferty and Marc Dann as so-called proof that he is challenging his disciplinary result. Those references merely illustrate the operation and consequences of the challenged rule and why it is irrational. Courts routinely permit

12

litigants to use comparators to demonstrate constitutional injury without transforming a constitutional challenge into an appeal of prior proceedings. That Plaintiff was disbarred while others received lesser sanctions does not mean the Court must revisit the merits of those decisions. Rather, the examples demonstrate the practical effect of a regime that permanently and irrationally bars one class of attorneys from seeking reinstatement while allowing another class to do so.

Defendants likewise rely on Plaintiff's discovery requests concerning the reasons different sanctions were imposed. But jurisdiction cannot rise or fall based on the breadth of discovery requests. The relevant inquiry under *Rooker-Feldman* is the source of the injury. Here, Plaintiff's injury is not merely that he was disbarred. It is that the Disbarment Rule forever excludes him from even applying for reinstatement, regardless of rehabilitation. That injury flows from the continuing operation of the rule itself, not from the historical judgment imposing discipline.

Nor would the requested relief require the Court to reverse the disciplinary judgment. Plaintiff does not seek an order vacating the *Terry* decision, restoring his law license, or converting his disbarment into an indefinite suspension. A declaration that the Disbarment Rule is unconstitutional would leave the disciplinary judgment intact. Plaintiff would remain disbarred unless and until he successfully pursued reinstatement. The disciplinary judgment and the challenged rule are distinct. Invalidating the latter does not overturn the former.

Defendants' position creates categorical immunity from constitutional review for the Disbarment Rule itself. *Rooker-Feldman* does not go that far. The doctrine bars federal district courts from reviewing state court judgments. It does not bar independent constitutional challenges to the rules, statutes, or policies that govern future legal rights and obligations.

### iii.    The Collateral Estoppel Argument Fares No Better.

#### a.    Defendants' res judicata argument is a repackaging of Rooker-Feldman.

13

The threshold problem with Defendants' res judicata argument is that it mirrors their rejected Rooker-Feldman theory. Both arguments rest on the premise that Plaintiff's injury is his disbarment. It is not. As explained above, Plaintiff does not challenge the validity of the Disbarment Order or seek its reversal. Instead, he challenges the constitutionality of the separate rule that permanently bars him from seeking reinstatement regardless of subsequent rehabilitation. His alleged constitutional injury therefore arises not from the Disbarment Order itself but from the continuing operation of Ohio's permanent disbarment regime. Because this action challenges the constitutionality of that continuing rule - not the correctness of the disciplinary judgment - Defendants' res judicata argument fails because it misidentifies the source of Plaintiff's alleged injury.

### b.    *The constitutionality of the Disbarment Rule was neither litigated nor required to be litigated in the disciplinary proceeding.*

Defendants' claim preclusion argument fails because the prior judgment resolved only that Plaintiff committed professional misconduct warranting disbarment. It did not adjudicate whether Ohio may constitutionally impose a lifetime prohibition on seeking reinstatement after rehabilitation. The Ohio Supreme Court's disciplinary opinion contains no ruling on substantive due process, equal protection, or the constitutionality of the permanent-disbarment rule.

Defendants incorrectly rely on the principle that res judicata bars claims that "could have been litigated." That principle extends only to claims arising from the same transaction or occurrence. The disciplinary proceeding concerned Plaintiff's past misconduct and the appropriate sanction. This case challenges the continuing enforcement of a separate rule that permanently bars Plaintiff, after rehabilitation, from even applying for reinstatement.

Although Defendants cite cases recognizing that constitutional issues may be raised in disciplinary proceedings, those decisions establish only that such challenges are sometimes

14

permissible. They do not hold that every constitutional challenge relating to attorney regulation must be asserted during the disciplinary proceeding or forever be barred.[4] The relevant question is not whether Plaintiff could have uttered the words "due process" or "equal protection" during his disciplinary case. The question is whether the constitutional claims asserted here arose from the same transaction litigated in that proceeding. They did not.

Moreover, this case is much closer to *Scheer v. Pasternak*, No. CV 16–3813–R, 2017 WL 8944058 (C.D. Cal. Jan. 6, 2017) than *Bolinske v. N.D. Supreme Court*, 823 F. Appx. 444 (8th Cir. 2020). In *Scheer*, the plaintiff challenged the constitutionality of a rule governing discretionary review, not the validity of the disciplinary judgment itself. The district court rejected the defendants' claim preclusion defense, reasoning that the disciplinary proceeding afforded no meaningful opportunity to challenge the rule because it had not yet been applied to the plaintiff. 2017 WL 8944058 at 7-8. The constitutional claim therefore arose from the later application of the challenged rule rather than from the disciplinary proceeding itself.

*Bolinske* is materially different. There, the attorney's constitutional claims challenged the disciplinary proceeding. Because those claims attacked the same proceeding that resulted in discipline, they could have been raised during that proceeding and were therefore subject to claim preclusion. (The court also found the claim barred under *Rooker-Feldman*.) 823 F. Appx. at 447.

This case follows *Scheer*, not *Bolinske*. Plaintiff does not challenge the findings of misconduct or the validity of the Disbarment Order. Instead, he challenges the constitutionality of Ohio's separate Disbarment Rule, which permanently bars him from ever seeking reinstatement regardless of subsequent rehabilitation. Like the rule in *Scheer*, the Disbarment Rule did not

---

[4] The authorities Defendants offered, *In re Judicial Campaign Complaint against O'Toole*, 141 Ohio St. 3d 355, 2014-Ohio-4046 and *Disciplinary Counsel v. Tamburrino*, 151 Ohio St. 3d 148, 2016-Ohio-8014, involved First Amendment issues at the heart of the underlying disciplinary conduct. A similar comparison does not exist here.

15

become operative as to Plaintiff until the Disbarment Order was entered. Until then, Plaintiff was defending against disciplinary charges, not seeking reinstatement, and the constitutional injury alleged here had not yet arisen. Because Plaintiff's claims challenge the later application and continuing enforcement of a separate rule rather than the disciplinary judgment itself, *Scheer* provides the proper analogy.

### c. *This action arises from a different transaction and challenges a distinct, continuing constitutional injury.*

Defendants' "same transaction" argument is misleading. The disciplinary case arose from alleged attorney misconduct occurring years ago. This case arises from a different set of operative facts:

- Plaintiff's completion of his sentence and rehabilitation;

- the passage of time since disbarment;

- his present desire to return to the practice of law; and

- Ohio's continuing enforcement of a rule that categorically prohibits him from even applying for reinstatement.

Those facts did not exist when the disciplinary proceeding occurred.

The Sixth Circuit and the Ohio Supreme Court focus on whether the same nucleus of operative facts give rise to both actions. *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 383, 653 N.E.2d 226 (1995); *StarLink Logistics, Inc. v. ACC, LLC*, 101 F.4th 431, 453 (6th Cir. 2024). The facts necessary to prove misconduct and justify disbarment are entirely different from the facts necessary to prove that a permanent ban on seeking reinstatement violates substantive due process or equal protection. Plaintiff can prevail in this case while fully accepting every factual finding made in the disciplinary proceeding. That alone demonstrates that the two actions do not arise from the same transaction.

16

### d. The constitutional injury is ongoing and post-judgment.

The constitutional injury alleged in this action did not occur when Plaintiff was disbarred. It occurs each day Ohio continues to enforce a rule that categorically bars him from seeking reinstatement despite rehabilitation. The challenged conduct is therefore post-judgment conduct, which is ordinarily not extinguished by claim preclusion because it could not have been fully litigated in the earlier proceeding.

Because this case challenges a distinct rule, a distinct injury, and distinct post-judgment conduct, claim preclusion does not apply.

### B. Even Under Rational Basis Review, Defendants Have Failed to Establish That Ohio's Lifetime Irrebuttable Disbarment Rule is Rationally Related to its Asserted Interests.

Defendants repeatedly remind the Court that rational basis review is deferential. Plaintiff agrees. What Defendants overlook, however, is that deferential review is not meaningless review. The Equal Protection and Due Process Clauses still require that a governmental classification bear a rational relationship to the governmental interests it purportedly serves. Defendants never establish that connection.

Instead, Defendants employ a familiar sleight of hand. They identify unquestionably legitimate governmental interests—protecting the public, maintaining confidence in the judiciary, preserving the integrity of the profession, and deterring attorney misconduct—and then simply assume that a lifetime, absolute prohibition on ever seeking reinstatement necessarily advances those interests. That leap is unsupported.

The constitutional question is not whether Ohio has a legitimate interest in disciplining attorneys. It unquestionably does. Nor is the question whether Ohio may permanently disbar some attorneys. It plainly may.

17

Rather, the constitutional question presented in this case is whether Ohio may constitutionally create an irrebuttable lifetime classification under which every permanently disbarred attorney is forever prohibited from even demonstrating rehabilitation, regardless of the passage of time, evidence of reform, present moral character, or current fitness to practice law. Defendants never answer that question.

Instead, their brief repeatedly conflates the legitimacy of attorney discipline with the constitutionality of an absolute, irrevocable ban on any future consideration of rehabilitation. Those are not the same inquiry. The existence of a legitimate governmental objective does not automatically validate every conceivable means chosen to achieve it.

### i. Defendants Fail to Explain Why Permanent Incapacity to Seek Reinstatement Furthers Their Asserted Interests.

Ohio unquestionably possesses broad authority to regulate the legal profession. But every disciplinary sanction, including suspension, indefinite suspension, probation, and disbarment, is already designed to protect the public and preserve confidence in the profession.

The issue, therefore, is not whether discipline advances those interests. The issue is why only permanently disbarred attorneys must forever remain outside any process that evaluates rehabilitation.

Defendants never explain why a lawyer who was indefinitely suspended may demonstrate rehabilitation decades later, while a permanently disbarred attorney is categorically forbidden even to present evidence of rehabilitation. That distinction, not discipline itself, is the constitutional classification at issue.

Defendants identify no evidence demonstrating that every permanently disbarred attorney remains permanently unfit. Nor do they identify any empirical evidence suggesting that allowing a future petition for reinstatement after twenty or thirty years would undermine public confidence.

Indeed, Defendants expressly acknowledge that they need not produce any evidence. That concession underscores Plaintiff's claim. Ohio has chosen the most absolute disciplinary rule imaginable while offering no explanation why individualized review after decades of demonstrated rehabilitation would fail to protect the public.

**ii.      Rational Basis Review Does Not Permit the State to Ignore Present Fitness Entirely.**

Defendants repeatedly argue that Plaintiff seeks merely to substitute his preferred policy judgment for that of the State. That mischaracterizes Plaintiff's claim. Plaintiff does not argue that Ohio must reinstate permanently disbarred attorneys.

Plaintiff argues only that Ohio cannot forever prohibit any consideration of present fitness. The entire attorney disciplinary system rests upon the premise that present moral character matters. First-time bar applicants are evaluated based upon current fitness. Applicants with criminal convictions may demonstrate rehabilitation. Attorneys indefinitely suspended for serious misconduct may petition for reinstatement upon proof of rehabilitation.

Only one class of persons is denied any opportunity whatsoever to demonstrate present fitness: permanently disbarred attorneys. Defendants never explain why current fitness is relevant for every other applicant before the Supreme Court of Ohio but constitutionally irrelevant for this single class.

The complete refusal even to consider rehabilitation bears no evident relationship to protecting the public because an individualized reinstatement proceeding itself protects the public by ensuring that only qualified applicants return to practice. Indeed, allowing a petition for reinstatement does not require reinstatement. It merely permits the Supreme Court to evaluate present fitness. Ohio's categorical refusal even to consider that evidence is precisely what renders the Rule irrational.

### iii.    Defendants' Improperly Define the Governmental Interest at Too High a Level of Generality.

Defendants' analysis repeatedly relies upon broad governmental interests such as preserving public confidence in the judiciary and protecting the integrity of the profession. Those interests are undoubtedly legitimate. But every attorney disciplinary sanction serves those same objectives. If identifying those generalized interests alone were sufficient, then any disciplinary rule, no matter how arbitrary, would automatically survive constitutional review. That is not the law.

The relevant inquiry is whether the particular classification challenged here, i.e.: permanent exclusion from any future reinstatement proceeding, is rationally related to those interests. Defendants never explain why allowing an attorney, decades after disbarment, to file a petition demonstrating rehabilitation would somehow diminish public confidence.

To the contrary, public confidence is arguably enhanced when disciplinary systems recognize both accountability and the possibility of genuine rehabilitation while retaining complete discretion to deny reinstatement whenever public protection requires.

### iv.    Defendants' Position Produces an Arbitrary Classification.

The irrationality of Rule V(12)(B) becomes particularly apparent when viewed alongside the remainder of Ohio's disciplinary system. Ohio recognizes rehabilitation everywhere except here.

An attorney convicted of serious felony offenses may receive an indefinite suspension and later seek reinstatement. A first-time applicant with felony convictions may seek admission after proving rehabilitation. Yet an attorney permanently disbarred, even after decades of exemplary conduct, is forever barred from making the same showing.

Defendants never identify any rational explanation why rehabilitation is relevant for these classes but constitutionally irrelevant for permanently disbarred attorneys. The Rule therefore rests not upon an individualized assessment of present danger but upon an irrebuttable presumption that rehabilitation can never occur.

Such an absolute presumption bears no rational relationship to the State's professed interest in evaluating an attorney's fitness. Fitness, by its nature, concerns present qualifications, not immutable historical status.

### v.    At Minimum, Genuine Issues of Material Fact Preclude Summary Judgment.

Even under the deferential rational basis standard, Defendants are not entitled to judgment merely by invoking generalized governmental interests. The record contains substantial factual disputes regarding whether a lifetime prohibition on even seeking reinstatement actually advances those interests or merely imposes an arbitrary permanent disability untethered to present fitness.

A reasonable factfinder could conclude that individualized reinstatement proceedings adequately protect the public while avoiding the constitutional infirmity created by an irrebuttable lifetime prohibition. Accordingly, summary judgment should be denied.

Respectfully submitted,

**EDWARD L. GILBERT CO., L.P.A.**

/s/ Edward L. Gilbert
Edward L. Gilbert (0014544)
3070 W. Market Street, Suite 100
Akron, Ohio 44333
(330) 376-8855 Telephone
(330) 376-8857 Facsimile
egilbert@edwardgilbert.com

*Attorney for Plaintiff Steven Terry*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Plaintiff Steven Terry's Memorandum in Opposition to Defendants' Motion for Summary Judgment* was electronically filed on this _14_ day of July, 2026, and will be accessible to all parties through the Court's electronic filing system.

Respectfully submitted,

**EDWARD L. GILBERT CO., L.P.A.**

*/s/ Edward L. Gilbert*
Edward L. Gilbert (0014544)

*Attorney for Plaintiff Steven Terry*

22

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| STEVEN TERRY, | ) | CASE NO.: 2:24-cv-01200 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE ALGENON L. MARBLEY |
| vs. | ) | MAG. JUDGE CHELSEY M. VASCURA |
| | ) | |
| SHARON L. KENNEDY, *et al.*, | ) | **DECLARATION OF STEVEN TERRY** |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | SS: |
| COUNTY OF ~~Summit~~ | ) | |

I, Terry Steven, declare the following under penalty of perjury:

1)      I am of majority age and otherwise competent to make this declaration.

2)      I authored the document attached to this declaration, which is a true and accurate copy of the original.

3)      The contents of said letter are true and correct to the best of my knowledge, information, and belief.

_Steven Terry_
STEVEN TERRY

_July 13, 2026_
DATE

Ex. 1

July 24, 2023

To whom it may concern:

I write this letter in support of my request to once again practice law following permanent disbarment by the Ohio Supreme Court in 2016.

First and foremost, I want to express how truly sorry I am for my actions. I have engaged in considerable hours of counseling and self-reflection since my conviction and disbarment. This, in conjunction with the experience of losing my freedoms during my period of incarceration, have redefined the person I am today and have served to reset my moral compass. I recognize the gravity of my actions and their adverse reflection on the integrity of the judicial system as a whole. I am a better and stronger person today, one who is better equipped to act with the utmost integrity no matter what the pressure or temptation confronted. I know if granted the opportunity, I would make a difference in the lives of a great many in need of accessible legal services.

For two decades prior to taking the bench, I held a myriad of positions in public service, including those in the City Prosecutor Offices in Akron, Cleveland, and Warrensville Heights, Ohio. I also served as an Assistant Cuyahoga County Prosecutor in the Criminal Division and was a Director of a Cuyahoga County Department with 10 divisions and approximately 130 employees. In these various positions I was able to have a meaningful impact on the lives of many members of several communities. It is this ability to assist those who lack the practical ability to help themselves that I have missed the most.

I have refocused my energies since returning home from a Federal Prison Camp in December 2015 upon serving the public good. I was immediately employed as the Director of Human Resources for a commercial sales trucking company. I handled all aspects of personnel from recruitment to FMLA for five different dealership locations in Ohio and Michigan.

Upon leaving the commercial trucking industry, I served as a consultant for a Neighborhood Development Corporation building affordable housing in Akron, Ohio for impoverished and underprivileged citizens.. I was responsible for organizing documentation associated with the agreements to build and purchase affordable housing. While consulting, an offer of employment was made to me for the purpose of assisting senior citizens living in five counties in Northeast, Ohio working for The Western Reserve Area Agency on Aging. In 2020, I started in the Resource Center which provides assistance to the elderly regarding home health services based on their specific need for care. I found this work to be particularly rewarding because each day on the job I provided assistance to someone in need.

In 2021, I took an opportunity to work in Provider Operations at WRAAA. Currently, I assess home health agencies, assisted living agencies, independent home health providers, and several other home health related agencies for compliance with The Ohio Department of Aging and Ohio Department of Health Regulations.

I have been fortunate to have the trust, support, and encouragement of so many in my efforts to make a difference since returning home. I have obtained letters of support from individuals who have known me and know my character as a person to help demonstrate to you that I am rehabilitated and eager to give back to the community as a whole, and also to the legal community. If reinstated and given a second chance to practice law, I will do whatever is necessary to demonstrate to you that I am and remain competent, qualified, and exhibit the appropriate moral fitness to practice law. There are so many in need of legal services, and I respectfully request a chance, once again, to serve them.

Sincerely,

Steven J. Terry

Ex. 2

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| STEVEN TERRY, | ) | CASE NO.: 2:24-cv-01200 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE ALGENON L. MARBLEY |
| vs. | ) | MAG. JUDGE CHELSEY M. VASCURA |
| | ) | |
| SHARON L. KENNEDY, *et al.*, | ) | **DECLARATION OF JOHN E.** |
| | ) | **QUEENER, PH.D.** |
| Defendants. | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | SS: |
| COUNTY OF Summit | ) | |

I, John E. Queener, Ph.D., declare the following under penalty of perjury:

1)    I am of majority age and otherwise competent to make this declaration.

2)    I authored the document attached to this declaration, which is a true and accurate copy of the original.

3)    My opinions as expressed in the attached are based upon generally accepted medical principles, my clinical experience, and my evaluation as explained therein.

*John E Queener*

JOHN E. QUEENER, PH.D.

7-14-26

DATE

# Minority Behavioral Health Group

1293 Copley Road, Akron, OH 44320

**Pastor Jeffrey A. Dennis**
**CHIEF EXECUTIVE OFFICER**

Phone: 330-374-1199                                Fax: 330-374-0151

December 28, 2023

Attorney Edward Gibert
3070 W Market St.
Suite 100
Akron, Ohio 44333

Dear Attorney Gilbert:

Thank you for your referral of Steven Terry. My understanding is that you wanted Mr. Terry to receive a psychological evaluation as part of the process for his law license to be reinstated. Therefore, on December 27, 2023, I conducted a virtual diagnostic assessment on the mental health of Mr. Terry. Below is the results of his mental health assessment.

Summary of Diagnostic Assessment

Identifying Information and Behavioral Observation
Mr. Terry is a single, 65-year-old African American man. He currently lives with his mother and is presently employed. Mr. Terry attended the virtual session neatly dressed. He answered questions in an open and honest manner with no evidence of hallucinations or delusions.

Relevant History
Mr. Terry denies having any history of psychological or emotional distress except for on two occasions. First, he reported that received couples counseling with his ex-wife. He did not, however, receive a diagnosis and the counseling focused on resolving communication and relationship difficulties between he and his ex-wife when they were married. Second, Mr. Terry reported experiencing emotional distress during the court process and during his first year of being incarcerated. Mr. Terry reported experiencing a great sense of remorse for the crimes that he committed while a judge and that lead to episodes of of depressive feelings. During the first year of being imprisoned, he reported that he experienced sadness, loneliness, and difficulty adjusting to being in prison. He stated that this psychological and emotional distress to being in prison lasted for approximately one year before he stated that his psychological and emotional distress dissipated, as he adjusted to prison life.

Current Psychological Functioning
Mr. Terry's current psychological functioning was in part assessed using the Symptom Checklist, which assess clients for a range of DSM-5 related diagnoses and symptoms including depression, sleeping problems, eating problems, worrying, anxiety, concentration, attention problems, general stress, hallucinations, delusions, and other psychotic features. He denies currently experiencing any mild or severe psychological symptoms. Moreover, he denies any medical conditions that could affect his psychological and emotional state. He currently is recovering from a partially torn Achillies Tendon,

Contract Agency of the County of Summit, Alcohol, Drug Addiction, and Mental Health Services Board
Nationally Accredited by Council of Accreditation
State Certified by Ohio Department of Mental Health

but that rehabilitation is going well, and he expects a full recovery. In addition to the absence of psychological or emotional issues, Mr. Terry reported that he possesses several attributes that allow him to maintain healthy psychological functioning. These include patience, good communication skills, listening skills, and good assertion skills. Furthermore, Mr. Terry identified a good support system which includes his mother, sister, adult son, and several friends with whom he has a strong bond with law school.

Conclusion

The purpose of this psychological evaluation was to assess the mental health functioning of Mr. Terry. After completing a diagnostic assessment, it is my professional opinion that Mr. Terry is psychologically and emotionally healthy. Moreover, he participates in physical activities and has a good support system which serves as protective factors for his psychological and emotional health. If you have any other questions concerning this matter, please feel free to contact me.

Sincerely,

X  *John E Queener*
John Queener

John E. Queener, PhD
Licensed Psychologist # 5209
Minority Behavioral Health Group

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| STEVEN TERRY, | ) | CASE NO.: 2:24-cv-01200 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE ALGENON L. MARBLEY |
| vs. | ) | MAG. JUDGE CHELSEY M. VASCURA |
| | ) | |
| SHARON L. KENNEDY, *et al.*, | ) | **DECLARATION OF EDWARD L.** |
| | ) | **GILBERT, ESQ.** |
| Defendants. | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | SS: |
| COUNTY OF Summit | ) | |

I, Edward L. Gilbert, Esq., declare the following under penalty of perjury:

1)    I am of majority age and otherwise competent to make this declaration.

2)    The documents filed in connection with Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, which bear the "SCO" bate label, were produced to me by Defendants in response to discovery requests. They are true and accurate copies of same.

EDWARD L. GILBERT, ESQ.

7-13-26

DATE

Ex. 3

lxxviii          RULES OF PRACTICE.

December 1 of the preceding year. Vacancies for any cause shall be forth-with filled by appointment by this Court for the unexpired term. The Court shall each year designate one member as Chairman of said Board of Commissioners, and designate a Secretary, who may, but need not, be a member.

(4) BOARD TO HAVE EXCLUSIVE JURISDICTION; AUTHORITY OF LOCAL COMMITTEES. From and after the effective date of this rule, all proceedings for the investigation of complaints and grievances involving alleged misconduct by attorneys and counselors at law and judges, all proceedings for the discipline of such attorneys and counselors at law and judges, and all proceedings for reinstatement as an attorney and counselor at law shall be brought, conducted and disposed of in accordance with the provisions of this rule; provided, however, that nothing herein contained shall be construed to prevent any committee of any regularly organized local bar association or of the Ohio State Bar Association from investigating and reporting on any complaint filed with it, referred to it, considered by it, or coming to its attention.

(5) DEFINITION OF MISCONDUCT. Misconduct, as the term is used herein, shall mean any violation of any provision of the oath of office taken upon admission to practice of law in this state, or any violation of the Canons of Professional Ethics or the Canons of Judicial Ethics as adopted by the Court from time to time, or the commission or conviction of a crime involving moral turpitude.

(6) MANNER OF DISCIPLINE. Each attorney and counselor at law or judge found guilty of misconduct shall be disciplined. The discipline of such persons shall be

(a) a permanent disbarment from the practice of law, or

(b) suspension for an indefinite period from the practice of law subject only to reinstatement as hereinafter provided, or

(c) a public reprimand, or

(d) a private reprimand.

(7) EFFECT OF DISCIPLINE. A person disbarred shall never thereafter be readmitted to the practice of law in this state. A person who shall have voluntarily surrendered his license to practice and thereafter has been reinstated in the manner hereinafter provided and a person who has been suspended for an indefinite period from the practice of law and thereafter reinstated in the manner hereinafter provided shall be disbarred upon being found guilty of subsequent misconduct. A person who has been publicly reprimanded for misconduct, upon being found guilty of subsequent misconduct, shall be suspended for an indefinite period from the practice of law or permanently disbarred, depending upon the seriousness of such misconduct.

(8) THE COMPLAINT, BY WHOM SIGNED. A complaint, as the term is used herein, shall mean a formal written complaint alleging misconduct of one, who shall be designated therein as the Respondent. Such complaint shall not be accepted for filing unless it is signed by one or more members of the Bar of Ohio in good standing (who shall be counsel for the Relator) and supported by a certificate in writing signed either by the Chairman of the Committee on Legal Ethics and Professional Conduct of the Ohio State Bar Association or by the President, Secretary or Chairman of the Grievance Committee of any regularly organized local bar association in the State (which association shall be deemed the Relator), certifying that said counsel

SCO_5023

https://www.americanbar.org/groups/professional_responsibility/resourc...

July 16, 2020

# Rule 25

Share:

f   X   in   ✉   🖶

## Model Rules for Lawyer Disciplinary Enforcement

A.    *1*    **Generally.** A lawyer suspended for more than six months or a disbarred lawyer shall be reinstated or readmitted only upon order of the court. No lawyer may petition for reinstatement until [six months before] the period of suspension has expired. No lawyer may petition for readmission until [five] years after the effective date of disbarment. A lawyer who has been placed on interim suspension and is then disbarred for the same misconduct that was the ground for the interim suspension may petition for readmission at the expiration of [five] years from the time of the effective date of the interim suspension.

B.    *2*    **Petition.** A petition for reinstatement or readmission must be under oath or affirmation under penalty of perjury and shall specify with particularity the manner in which the lawyer meets each of the criteria specified in paragraph E or, if not, why there is good and sufficient reason for reinstatement or readmission. [Unless abated under Rule 26] the petition must be accompanied by an advance cost deposit in the amount set from time to time by the board to cover anticipated costs of the proceeding.

C.      **Service of Petition.** The lawyer shall file a copy of the petition with disciplinary counsel and disciplinary counsel shall serve a copy of

**Ex. 4**

the petition upon each complainant in the disciplinary proceeding that led to the suspension or disbarment.

D. *4* **Publication of Notice of Petition.** At the same time that a lawyer files a petition for reinstatement or readmission, the lawyer shall also publish a notice of the petition in the journal of the state bar and in a newspaper of general circulation in each judicial district in which the lawyer maintained an office for the practice of law when the lawyer was suspended or disbarred. The notice shall inform members of the bar and the public about the application for reinstatement or readmission, and shall request that any individuals file notice of their opposition or concurrence with the board within [sixty] days. In addition, the lawyer shall notify the complainant(s) in the disciplinary proceeding that led to the lawyer's suspension or disbarment that the lawyer is applying for reinstatement or readmission, and shall inform each complainant that he or she has [sixty] days to raise objections to or to support the lawyer's petition.

E. *5* **Criteria for Reinstatement and Readmission.** A lawyer may be reinstated or readmitted only if the lawyer meets each of the following criteria, or, if not, presents good and sufficient reason why the lawyer should nevertheless be reinstated or readmitted:

(1) The lawyer has fully complied with the terms and conditions of all prior disciplinary orders except to the extent that they are abated under Rule 26.

(2) The lawyer has not engaged nor attempted to engage in the unauthorized practice of law during the period of suspension or disbarment.

(3) If the lawyer was suffering under a physical or mental disability or infirmity at the time of suspension or disbarment, including alcohol or other drug abuse, the disability or infirmity has been removed. Where alcohol or other drug abuse was a causative

Case: 2:24-cv-01200-ALM-CMV Doc #: 44 Filed: 07/14/26 Page: 36 of 77 PAGEID #: 1392
https://www.americanbar.org/groups/professional_responsibility/resourc...

factor in the lawyer's misconduct, the lawyer shall not be reinstated or readmitted unless:

(a) the lawyer has pursued appropriate rehabilitative treatment;

(b) the lawyer has abstained from the use of alcohol or other drugs for at least [one year]; and

(c) the lawyer is likely to continue to abstain from alcohol or other drugs.

(4) The lawyer recognizes the wrongfulness and seriousness of the misconduct for which the lawyer was suspended or disbarred.

(5) The lawyer has not engaged in any other professional misconduct since suspension or disbarment.

(6) Notwithstanding the conduct for which the lawyer was disciplined, the lawyer has the requisite honesty and integrity to practice law.

(7) The lawyer has kept informed about recent developments in the law and is competent to practice.

(8) In addition, a lawyer who has been disbarred must pass the bar examination and the character and fitness examination.

F.   6   **Review of Petition.** Within [ninety] days after receiving a lawyer's petition for reinstatement or readmission, disciplinary counsel shall either: (1) advise the lawyer and the [board] court that disciplinary counsel will stipulate to the lawyer's reinstatement or readmission, or (2) advise the lawyer and the [board] court that disciplinary counsel opposes reinstatement or readmission and request the [board] court to set a hearing.

G.  7  **Hearing; Report.** Upon receipt of disciplinary counsel's request for a hearing, the [board] court shall promptly refer the matter to a hearing committee. Within [ninety] days of the request, the hearing committee shall conduct a hearing at which the lawyer shall have the burden of demonstrating by clear and convincing evidence that he or she has met each of the criteria in paragraph E or, if not, that there is good and sufficient reason why the lawyer should nevertheless be reinstated or readmitted. The hearing committee shall file a report with the [board] court containing its findings and recommendations. [The board shall promptly review the report of the hearing committee and the record and shall file its own findings and recommendations with the court.]

H.  8  **Decision as to Reinstatement or Readmission.** The court shall review the report filed by the [hearing committee] [board] or any stipulation agreed to by the lawyer and disciplinary counsel. If the court finds that the lawyer has complied with each of the criteria of paragraph E, or has presented good and sufficient reason for failure to comply, the court shall reinstate or readmit the lawyer. If the court reinstates or readmits the lawyer, the court shall issue a written opinion setting forth the grounds for its decision; if the court denies reinstatement or readmission, the court shall issue a written opinion setting forth the ground for its decision and shall identify the period after which the lawyer may reapply. Generally, no lawyer should be permitted to reapply for reinstatement or readmission within one year following an adverse judgment upon a petition for reinstatement or readmission.

I.  9  **Conditions of Reinstatement or Readmission.** The court may impose conditions on a lawyer's reinstatement or readmission. The conditions shall be imposed in cases where the lawyer has met the burden of proof justifying reinstatement or readmission, but the court reasonably believes that further precautions should be taken to protect the public.

J. *10* The court may impose any conditions that are reasonably related to the grounds for the lawyer's original suspension or disbarment, or to evidence presented at the hearing regarding the lawyer's failure to meet the criteria for reinstatement or readmission. Passing the bar examination and the character and fitness examination shall be conditions to readmission following disbarment. The conditions may also include any of the following: limitation upon practice (to one area of law or through association with an experienced supervising lawyer); participation in continuing legal education courses; monitoring of the lawyer's practice (for compliance with trust account rules, accounting procedures, or office management procedures); abstention from the use of drugs or alcohol; active participation in Alcoholics Anonymous or other alcohol or drug rehabilitation program; monitoring of the lawyer's compliance with any other orders (such as abstinence from alcohol or drugs, or participation in alcohol or drug rehabilitation programs). If the monitoring lawyer determines that the reinstated or readmitted lawyer's compliance with any condition of reinstatement or readmission is unsatisfactory and that there exists a potential for harm to the public, the monitoring lawyer shall notify the court and, where necessary to protect the public, the lawyer may be suspended from practice under Rule 20(B).

K. *11* **Reciprocal Reinstatement or Readmission.** Where the court has imposed a suspension or disbarment solely on the basis of imposition of discipline in another jurisdiction, and where the lawyer gives notice to the court that he or she has been reinstated or readmitted in the other jurisdiction, the court shall determine whether the lawyer should be reinstated or readmitted. Unless disciplinary counsel presents evidence demonstrating procedural irregularities in the other jurisdiction's proceeding or presents other compelling reasons, the court shall reinstate or readmit a lawyer who has been reinstated or readmitted in the jurisdiction where the misconduct occurred.

https://www.americanbar.org/groups/professional_responsibility/resourc...

## Commentary

Readmission occurs when a disbarred lawyer is returned to practice. Since the purpose of lawyer discipline is not to punish, readmission may be appropriate; the presumption, though, should be against readmission. In no event should a lawyer be considered for readmission until at least five years after the effective date of disbarment.

Reinstatement occurs when a suspended lawyer is returned to practice. Reinstatement is appropriate when a lawyer shows rehabilitation. Application for reinstatement should be permitted at the expiration of the ordered period of suspension. While reinstatement should not be ordered prior to the expiration of the ordered period of suspension, application for reinstatement may be allowed up to six months preceding the expiration so that the time required for a decision on the application does not unfairly prolong the suspension.

As a condition of readmission or reinstatement, a disbarred or suspended lawyer is usually required to establish rehabilitation, fitness to practice and competence, and may be required to pay the costs of the disciplinary proceedings, to make restitution, to disgorge all or part of the lawyer's or law firm's fee, to pass an examination in professional responsibility, and to comply with court orders.

There is a compelling reason not to grant reciprocal reinstatement under paragraph J if the forum jurisdiction imposed a longer suspension than the original jurisdiction or if there was a delay between the imposition of the original discipline and the imposition of the reciprocal discipline.

Next - RULE 26. ABATEMENT OR MODIFICATION OF CONDITIONS OF DISCIPLINE, REINSTATEMENT, OR READMISSION

Table of Contents

Case: 2:24-cv-01200-ALM-CMV Doc #: 44 Filed: 07/14/26 Page: 40 of 77 PAGEID #: 1396

Center for Professional Responsibility

**ABA** American Bar Association |
/content/aba-cms-dotorg/en/groups/professional_responsibility/resources/lawyer_ethics_regulation/
model_rules_for_lawyer_disciplinary_enforcement/rule_25

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**Kenneth Lawson,**

      **Plaintiff,**

      **v.**

**Chief Justice Sharon Kennedy,**
*et al.,*

      **Defendants.**

**Case No. 2:25-cv-607**

**Judge Michael H. Watson**

**Magistrate Judge Vascura**

## OPINION AND ORDER

This matter is before the Court on (1) the motion seeking declaratory relief and preliminary injunction, ECF No. 2, filed by Kenneth Lawson ("Plaintiff"); and (2) the motion to dismiss, ECF No. 34, filed by the Supreme Court of Ohio, Chief Justice Sharon Kennedy, and Justices Jennifer Brunner, Joseph Deters, Patrick DeWine, Patrick Fischer, Daniel Hawkins, and Megan Shanahan (collectively, "Defendants"). Defendants also move to exclude the report of Plaintiff's expert, Dr. Jeffrey Goldsmith, which Plaintiff submitted in support of his preliminary injunction motion. ECF No. 25.

For the reasons below, Plaintiff's motion for declaratory relief and preliminary injunction is **DENIED**, Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**, and Defendants' motion to exclude Plaintiff's expert report is **DENIED as moot**.

**Ex. 5**

## I.    FACTUAL BACKGROUND

The following summary draws from the allegations in Plaintiff's Complaint, ECF No. 1, and any documents integral to and incorporated therein.[1]  Any facts beyond the Complaint that are relevant to Plaintiff's preliminary injunction motion are incorporated and discussed in Section IV below.

Plaintiff was admitted to practice law in Ohio in 1989.  Compl. ¶¶ 6, 20, ECF No. 1.  Taft Stettinius & Hollister LLP (a law firm based in Cincinnati, Ohio) hired Plaintiff as its first Black attorney.  *Id.* ¶ 21.  A few years later, Plaintiff left the firm and founded his own firm, where he specialized in criminal defense and civil rights law and served as "a lawyer for the people" and "a strong advocate for members of the Black community."  *Id.*

Plaintiff practiced law for over a decade without any disciplinary violations.  Compl. ¶ 37, ECF No. 1.  But in the early 2000s, Plaintiff was prescribed opioids in connection with a medical problem.  *Id.* ¶ 22.  He subsequently became addicted to opioids, which caused him to neglect his work and mismanage his clients' cases and funds.  *Id.* ¶¶ 22, 49.  As a result, the Supreme Court of Ohio entered an interim remedial suspension against Plaintiff.  *Id.*; *see Disciplinary Couns. v. Lawson*, 866 N.E.2d 508 (Ohio 2007) (table).[2]  In particular, the

---

[1] Plaintiff's Complaint references three exhibits, *see* Compl. ¶¶ 25, 28, 40, but Plaintiff did not attach those exhibits to the Complaint for the Court to review or consider.

[2] Federal courts may take judicial notice of proceedings in other courts of record.  *See Lyons v. Stovall*, 188 F.3d 327, 333 n.3 (6th Cir. 1999).

Supreme Court of Ohio ordered, *inter alia*, that Plaintiff "immediately cease and desist from the practice of law in any form" pending the final disposition of his disciplinary proceedings. *Lawson*, 866 N.E.2d at 508.

Shortly thereafter, a panel of the Board of Commissioners on Grievances and Discipline ("BCGD") held a hearing on Plaintiff's conduct, during which Plaintiff admitted to "the existence of a scheme whereby a doctor would write phony prescriptions for him, including by using the names of his clients, so he could have a continuous supply of prescription opioids." Compl. ¶ 25, ECF No. 1. The panel "made numerous findings of misconduct" and recommended that Plaintiff be indefinitely suspended from the practice of law. *See Cincinnati Bar Assn. v. Lawson*, 891 N.E.2d 749, 754 (Ohio 2008). The full BCGD adopted the panel's recommendation, and the Supreme Court of Ohio accepted the same. *Id.*; *see also* Compl. ¶ 26, ECF No. 1.

The Government, in the meantime, charged Plaintiff with conspiracy to obtain controlled substances by deception, a felony in violation of 21 U.S.C. §§ 843(a)(3) and 846. Compl. ¶ 27, ECF No. 1; *see* Information, ECF No. 1, *United States v. Lawson*, No. 1:08-cr-97 (Sept. 5, 2008). Plaintiff pleaded guilty to the charge, and another Judge of this Court sentenced him to two years of imprisonment and one year of supervised release. Compl. ¶ 27, ECF No. 1; *see* Am. Judgment, ECF No. 24, *Lawson*, No. 1:08-cr-97 (Apr. 14, 2009). Considering Plaintiff's felony conviction, the Supreme Court of Ohio entered

another interim suspension order in July 2009. *See In re Lawson*, 910 N.E.2d 1038 (Ohio 2009) (table).

In December 2009, a second disciplinary complaint was filed against Plaintiff arising from the conduct underlying his felony conviction. Compl. ¶ 28, ECF No. 1; *see Disciplinary Couns. v. Lawson*, 956 N.E.2d 839, 841 (Ohio 2011). The BCGD concluded that Plaintiff had committed the infractions alleged in the complaint and recommended an indefinite suspension to run consecutively to the previously imposed indefinite suspension that Plaintiff was serving. *Lawson*, 956 N.E.2d at 841. "Despite the fact that the criminal case and the second disciplinary proceeding were based on the same evidence that had been presented in the initial disciplinary proceeding," the Supreme Court of Ohio did not follow the BCGD's recommendation. Compl. ¶¶ 29–30, ECF No. 1. Instead, the Supreme Court of Ohio ordered that Plaintiff be permanently disbarred, notwithstanding his interim rehabilitation. *Id.*; *see Lawson*, 956 N.E.2d at 847.

Plaintiff, who was 61 years old at the time he filed the Complaint in this case, has been sober and drug free since February 2007. Compl. ¶¶ 23, 31, ECF No. 1. After completing his term of imprisonment, he moved to Hawai'i and now serves as a tenured professor of law at Richardson School of Law in Honolulu. *Id.* ¶ 32. He also acts as the Co-Director of the Hawai'i Innocence Project. *Id.* ¶ 33.

Along with these positions, Plaintiff desires to practice law in Hawai'i. Compl. ¶ 33, ECF No. 1. The Rules of the Supreme Court of the State of

Hawai'i, however, provide that lawyers who are disbarred or suspended from the practice of law in other states will not be admitted to the Hawai'i bar. *Id.* ¶ 34; *see also* Sup. Ct. Hawai'i R. 1.3(b)(5) ("An applicant shall not be allowed to . . . be admitted to the Hawai'i bar during any period in which the applicant is suspended or disbarred or allowed to practice only with supervision in any other jurisdiction."). Thus, Plaintiff seeks to secure readmission in Ohio so that the Supreme Court of Hawai'i will grant him admission to the Hawai'i bar. Compl. ¶ 35, ECF No. 1.

Ohio's disbarment rule ("Disbarment Rule"), however, imposes a permanent bar to the practice of law in Ohio. *See* Ohio Gov. Bar R. V, § 12(B) ("A person who is disbarred . . . shall not be readmitted to the practice of law in Ohio."). This is in contrast to Ohio's rules surrounding indefinite suspension, which permit a petition for reinstatement. Ohio Gov. Bar R. V, § 25. Plaintiff accordingly filed a motion for relief from judgment in the Supreme Court of Ohio in 2024, requesting indefinite suspension instead of disbarment. Compl. ¶ 36, ECF No. 1. The Supreme Court of Ohio denied the motion. *Id.*; *see also Disciplinary Couns. v. Lawson*, 233 N.E.3d 635 (Ohio 2024) (table). Because Plaintiff cannot apply for readmission in Ohio, he cannot apply for admission in Hawai'i. Notably, Ohio is one of only a few states that impose permanent disbarment. Compl. ¶ 1, ECF No. 1.

## II.    PROCEDURAL HISTORY

Plaintiff sued Defendants in this Court in June 2025.  *See generally* Compl., ECF No. 1.  He brings three claims for relief: (1) a disability discrimination claim against Defendants under Title II of the Americans with Disabilities Act ("ADA"); (2) a Fourteenth Amendment substantive due process claim against Chief Justice Kennedy and Justices Brunner, Deters, DeWine, Fischer, Hawkins, and Shanahan (collectively, the "Justices") in their official capacities under 42 U.S.C. § 1983; and (3) a Fourteenth Amendment equal protection claim against the Justices in their official capacities under 42 U.S.C. § 1983.  *Id.* ¶¶ 53–72.  Plaintiff does not seek monetary damages but requests declaratory and injunctive relief.  *See id.* at Prayer for Relief.

In conjunction with filing his Complaint, Plaintiff moved for a preliminary injunction.[3]  ECF No. 2.  The Court held an informal conference with the parties and set a briefing schedule on particular issues raised in Plaintiff's motion.  ECF No. 15; *see also* S.D. Ohio Civ. R. 65.1.

After briefing was completed, Defendants moved to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, for failure to state a claim under Federal

---

[3] Plaintiff also moved to consolidate the instant case with a case pending before another Judge of this Court, captioned *Terry v. Kennedy*, No. 2:24-CV-1200 (S.D. Ohio) (Marbley, J.).  Although both cases involve challenges to the Disbarment Rule and assert claims against the same Defendants, the Court denied Plaintiff's consolidation request because the instant case had been pending for a shorter period and contains a different legal claim.  *See* ECF No. 21.

Rule of Civil Procedure 12(b)(6). ECF No. 34. Defendants also moved to exclude Plaintiff's expert offered in support of a preliminary injunction. ECF No. 25. All motions are fully briefed and ripe for consideration. *See* ECF Nos. 19, 20, 26, 31–33, 35–36.

## III.   MOTION TO DISMISS

Because Defendants seek dismissal of Plaintiff's Complaint for lack of subject-matter jurisdiction, the Court first addresses the motion to dismiss.

### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when a court lacks subject-matter jurisdiction. Without subject-matter jurisdiction, a federal court lacks authority to hear a case. *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990). When subject-matter jurisdiction is challenged, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

"Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack "questions merely the sufficiency of the pleading"—thus the trial court takes the allegations of the complaint as true. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A factual attack challenges the factual existence of subject-matter jurisdiction, such that no presumption of truth applies to the alleged facts. *Ritchie*, 15 F.3d at 598.

Separately, a claim survives a motion to dismiss under Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). This standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful conduct]." *Twombly*, 550 U.S. at 556. A pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). At the motion-to-dismiss stage, a district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wamer v. Univ. Toledo*, 27 F.4th 461, 466 (6th Cir. 2022) (internal quotation marks and citations omitted). However, the non-moving party must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## B.   Analysis

Defendants move to dismiss Plaintiff's Complaint on several grounds. First, Defendants argue that the Court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine because Plaintiff has brought an as-applied challenge

to the Disbarment Rule as opposed to a facial challenge. ECF No. 34 at

PAGEID # 1828 (citing *District of Columbia Court of Appeals v. Feldman*, 460

U.S. 462, 476 (1983)); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413

(1923). Second, Defendants contend that Plaintiff's claims are time barred. ECF

No. 34 at PAGEID # 1831. Third, Defendants argue that § 1983 does not

provide injunctive relief against the Justices for actions taken in their judicial

capacities. *Id*. at PAGEID # 1834. Finally, Defendants attack the merits of

Plaintiff's claims. *Id*. at PAGEID # 1835.

### 1.     The *Rooker-Feldman* Doctrine

Defendants initially argue that the *Rooker-Feldman* doctrine bars Plaintiff's

claims in this case because his Complaint constitutes "an improper attempt to

appeal the Supreme Court of Ohio's disbarment decision[.]" ECF No. 34 at

PAGEID # 1828. Upon review, the Court finds that the *Rooker-Feldman* doctrine

precludes the Court's jurisdiction over some, but not all, of Plaintiff's Complaint.

Specifically, insofar as Plaintiff retrospectively attacks Defendants' decision to

disbar him, his claims are barred. But to the extent that Plaintiff generally and

prospectively challenges the constitutionality and validity of the Disbarment Rule,

his claims may proceed.

### a.     Doctrine Overview

The *Rooker-Feldman* doctrine "is confined to cases of the kind from which

the doctrine acquired its name: cases brought by state-court losers complaining

of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). But "[i]f a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* at 293 (internal quotation marks and citations omitted). The *Rooker-Feldman* doctrine thus applies "only when a plaintiff complains of injury from the state court judgment itself." *Coles v. Granville*, 448 F.3d 853, 858 (6th Cir. 2006); *see also McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2007) ("The key point is that the source of the injury must be from the state court judgment itself; a claim alleging another source of injury is an independent claim.").

*Feldman* is particularly instructive in this case. There, two plaintiffs were denied admission to the District of Columbia bar because neither had graduated from accredited law schools as the District of Columbia's admission rules required. *Feldman*, 460 U.S. at 465–73. The Supreme Court held, *inter alia*, that the district court below had jurisdiction over only those elements of the plaintiffs' complaints that involved "a general challenge to the constitutionality" of the admissions rule. *Id.* at 487.

In so holding, the *Feldman* Court recognized "the difference between seeking review in a federal district court of a state court's final judgment in a bar admission matter and challenging the validity of a state bar admission rule[.]" *Id.*

at 483–84; *see also id.* at 485 (noting "the distinction between general challenges to state bar admission rules and claims that a state court has unlawfully denied a particular applicant admission"). On one hand, district courts "have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case." *Id.* at 486. On the other hand, district courts do not have jurisdiction "over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Id.*; *see also* 28 U.S.C. § 1257(a) ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed *by the Supreme Court* by writ of certiorari[.]" (emphasis added)).

Applying these principles, the *Feldman* Court concluded that the district court lacked jurisdiction over the plaintiffs' complaints to the extent that they sought review of the decision denying their petitions for a waiver of the admissions rule. *Feldman*, 460 U.S. at 487. These allegations, the *Feldman* Court observed, were "inextricably intertwined with the District of Columbia Court of Appeals' decisions, in judicial proceedings, to deny [the plaintiffs'] petitions," such that the district court did "not have jurisdiction over these elements."[4] *Id.*

---

[4] To be sure, the Supreme Court implicitly repudiated the circuits' post-*Feldman* use of the phrase "inextricably intertwined" to extend *Rooker-Feldman* to situations where the source of the injury was not the state court judgment. *See Exxon Mobil Corp v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 286 n.1 (2005). "In short, the phrase 'inextricably

However, the remaining allegations in plaintiffs' complaints "involve[d] a general attack on the constitutionality of" the admissions rule. *See id.* (detailing plaintiffs' claims "that the rule is unconstitutional because it creates an irrebuttable presumption that only graduates of accredited law schools are fit to practice law, discriminates against those who have obtained equivalent legal training by other means, and impermissibly delegates the . . . power to regulate the bar"). Consequently, because "review of a judicial decision" was not required to adjudicate those claims, the district court could exercise jurisdiction. *Id.* at 488.

### b.    Application to Plaintiff's Complaint

In evaluating Defendants' *Rooker-Feldman* challenge, the Court's "central task" is to "distinguish between a claim that attacks a state court judgment and an independent claim, the latter in which jurisdiction may be asserted." *King v. CitiMortgage, Inc.*, No. 2:10-CV-01044, 2011 WL 2970915, at *6 (S.D. Ohio July 20, 2011). The Court looks to the "source of the injury [Plaintiff] alleges in the [Complaint]" and Plaintiff's request for relief. *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) (citations omitted). Additionally, Defendants aver that they make a "factual attack on subject matter jurisdiction," ECF No. 34 at PAGEID # 1827, so "the [C]ourt is free to take and weigh the

---

intertwined' only describes the conclusion that a claim asserts an injury whose source is the state court judgment, a claim that is thus barred by *Rooker-Feldman*." *McCormick*, 451 F.3d at 394–95.

evidence and satisfy itself as to the existence of its power to hear the case," *King*, 2011 WL 2970915, at *4 (citing *Ritchie*, 15 F.3d at 598).

Focusing on Plaintiff's alleged injury, he asserts that he is unable to "secure readmission in Ohio" because he has been prevented from "seek[ing] reinstatement" to the Ohio bar. Compl. ¶¶ 35, 51–52, ECF No. 1. According to Plaintiff, Defendants have harmed him "by imposing disbarment and denying to him any opportunity to seek re-admission to practice for the rest of his life." *Id.* ¶¶ 61, 65, 72. In terms of relief for these injuries, Plaintiff seeks a declaratory judgment that the Disbarment Rule "violates the United States Constitution and federal law." Compl. ¶ 2, ECF No. 1; *see also id.* at Prayer for Relief (requesting "a declaratory judgment that Defendant[s'] actions and inactions are unlawful and unconstitutional as applied to Plaintiff"). He also seeks preliminary and permanent injunctive relief prohibiting Defendants from enforcing the Disbarment Rule against him and requiring Defendants to allow him to seek reinstatement to the Ohio bar in accordance with the procedures for attorneys who have been indefinitely suspended. *Id.* at Prayer for Relief.

Portions of Plaintiff's Complaint clearly take issue with Defendants' imposition of disbarment, which occurred in the context of the Supreme Court of Ohio's disbarment order in 2011 (and, to some extent, its denial of Plaintiff's motion for relief from judgment in 2024).[5] *See Lawson*, 956 N.E.2d at 847.

---

[5] To clarify, though, none of the Justices named as Defendants in this case participated in the Supreme Court of Ohio's disbarment decision in 2011. *See Lawson*, 956 N.E.2d

Although Plaintiff maintains that "[h]e does not challenge the disbarment itself," ECF No. 35 at PAGEID # 1865, certain allegations in his Complaint belie his position.  For instance, Plaintiff protests that Defendants "noted Plaintiff's addiction and interim rehabilitation, but imposed permanent disbarment notwithstanding that finding."  Compl. ¶ 30, ECF No. 1.  He contends that *his* case "is an outlier when compared with other attorneys disciplined between 2008 and 2011" and that *his* disbarment was "highly unusual."  *Id.* ¶¶ 38, 41; *see also id.* ¶¶ 39–40, 42–43 (offering statistics showing infrequency of disbarment and alleging that "Defendant Ohio Supreme Court followed the recommendation of or gave a lower sanction [than] . . . the Board of Commissioners on Grievances and Discipline in all these cases except for [Plaintiff's]").  "In light of [his] rehabilitation and recovery," Plaintiff continues, Defendants' decision to disbar him "based on his history of addiction substitutes judgment of [Plaintiff's] current fitness to practice law[ ] for an impermissible generalization about the moral character and qualifications of persons with active addiction."  *Id.* ¶ 61.  These allegations essentially amount to criticisms of the Supreme Court of Ohio's disbarment decision and how it arrived at the same, confirming that the decision is, to some extent, the source of Plaintiff's injury.

---

at 847 (listing Chief Justice O'Connor and Justices Pfeifer, Lundberg Stratton, O'Donnell, Cupp, McGee Brown, and Lanzinger).  Additionally, Justices Brunner and Deters did not participate in the Supreme Court of Ohio's denial of Plaintiff's motion for relief from judgment in 2024, *see Lawson*, 233 N.E.3d at 635, nor did Justices Shanahan and Hawkins, who had yet to be appointed.

Plaintiff's requested relief further reinforces this conclusion. He broadly asks the Court to declare that "Defendant[s'] actions and inactions are unlawful and unconstitutional as applied to [him]." Compl. at Prayer for Relief, ECF No. 1. These "actions and inactions" include, *inter alia*, deciding to disbar Plaintiff and refusing to amend that judgment. Where, as here, "a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law," the *Rooker-Feldman* doctrine acts to preclude jurisdiction. *McCormick*, 451 F.3d at 395; *see, e.g.*, *Loriz v. Connaughton*, 233 F. App'x 469, 475 (6th Cir. 2007) ("[T]he relief the Lorizes seek—a declaration that the state courts reached an improper result based on a faulty application of the law—is . . . a specific grievance over specific decisions. These claims are exactly the type the *Rooker-Feldman* doctrine intended to bar[.]"). Moreover, Plaintiff urges the Court to require Defendants to allow him "to seek reinstatement to the Ohio bar in accordance with the procedures indefinitely suspended attorneys are required to follow." Compl. at Prayer for Relief, ECF No. 1. This is the same relief that Plaintiff sought from the Supreme Court of Ohio in 2024 when he moved to amend the disbarment judgment. *See id.* ¶ 36. Such averments indicate that Plaintiff is, in part, challenging his disbarment and Defendants' conduct during the same, which he may not do in this Court under the *Rooker-Feldman* doctrine.

On the other hand, some parts of Plaintiff's Complaint suggest that he is *also* launching an attack on the constitutionality and validity of the Disbarment

Rule, separate and apart from his prior disbarment proceedings. Plaintiff explicitly alleges the Justices' general "authority to promulgate and amend" the Disbarment Rule. Compl. ¶ 57, ECF No. 1. He points to Ohio's overarching recognition of substance abuse disorders as diseases requiring treatment, and he references "recovered addicts" and "disciplined attorney[s]" as generalized groups (albeit, of which he is an example). *Id.* ¶¶ 47–48; *see also id.* ¶¶ 67, 71 (alleging that the Disbarment Rule improperly "prevents any presentation of the rehabilitation and reform of the disciplined attorney" and "treats those disbarred differently than other similarly situated people").

Looking at Plaintiff's sought-after relief, a declaration that Defendants' "actions and inactions are unlawful and unconstitutional" would encompass conduct related to the promulgation and enforcement of the Disbarment Rule, irrespective of Plaintiff's involvement therewith. *Id.* at Prayer for Relief. And Plaintiff's primary request for relief is protection from the Disbarment Rule— through a declaratory judgment and injunction—on a going-forward basis. *Id.*; *see also id.* ¶ 2 ("[Plaintiff] seeks a declaratory judgment declaring that the Ohio Disciplinary Rule authorizing disbarment violates the United States Constitution and federal law and an injunction against enforcing the disbarment rule as applied to him under the ADA."); *State v. Yellen*, 539 F. Supp. 3d 802, 813 (S.D. Ohio 2021) ("To be sure, this is in part a declaratory judgment action, which is inherently a form of prospective relief."); *see, e.g.*, *Dubuc v. Michigan Bd. of L. Examiners*, 342 F.3d 610, 619 (6th Cir. 2003) (finding plaintiff's claims

permissible under the *Rooker-Feldman* doctrine when "the relief he seeks relates to his rights with regard to reapplying for admission to the Bar"). It would seem, then, that at least a part of Plaintiff's Complaint may proceed.

Defendants contend that Plaintiff's injury (his inability to seek reinstatement) "was caused by the Supreme Court of Ohio's decision to disbar him," ECF No. 36 at PAGEID # 1870, but this position glosses over a subtle but important distinction. True, the Supreme Court of Ohio disbarred Plaintiff and was presumably fully aware of the consequences of that decision (i.e., that disbarment meant a permanent prohibition on readmission because of the Disbarment Rule). But the Court disagrees with Defendants' contention that the "disbarment decision *is* the application of the Disbarment Rule," ECF No. 34 at PAGEID # 1830 (emphasis in original), because that decision itself does not inherently prevent Plaintiff from applying for reinstatement—it simply classifies Plaintiff as a disbarred attorney. It is the Disbarment Rule's explicit terms that keep him from readmission. *See* Ohio Gov. Bar R. V, § 12(B) ("A person who is disbarred . . . shall not be readmitted to the practice of law in Ohio."). It is the Disbarment Rule's lack of a path to readmission in any circumstance that Plaintiff insists is unconstitutional and invalid, so it is the Disbarment Rule that is the source of his injury.

Defendants further highlight that Plaintiff is attacking the constitutionality and ADA compliance of the Disbarment Rule *as applied to him* as a rehabilitated drug addict. Although this is not the traditional "facial" constitutional challenge

that the *Rooker-Feldman* doctrine envisions, "[w]hen the litigant is challenging the constitutionality of a rule that was applied to him, but is not asking to correct or revise the determination that he violated the rule, *Rooker-Feldman* is no obstacle to the maintenance of the suit." *Dubuc*, 342 F.3d at 618. Plaintiff claims, at least in part, that the Disbarment Rule violates the Constitution and the ADA, not that the Supreme Court of Ohio made a legal error in imposing disbarment. The Disbarment Rule sets forth conduct that a disbarred attorney may not take part in after disbarment and does not, itself, affect past disbarment proceedings. Consequently, insofar as Plaintiff's claims do not implicate the Supreme Court of Ohio's disbarment ruling, he is not seeking review of a state court decision, and *Rooker-Feldman* does not bar his claims.

## 2. Statute of Limitations

Defendants next argue that Plaintiff's claims are barred by the statute of limitations. ECF No. 34 at PAGEID ## 1831–34. Specifically, Defendants contend that a two-year statute of limitations applies to all of Plaintiff's claims and that the statute of limitations began to run on the date that the Supreme Court of Ohio disbarred Plaintiff (September 20, 2011) because he knew on that day that the Disbarment Rule would forever prevent his readmission to the Ohio bar. *Id.* Moreover, Defendant urges the Court to depart from the decision in *Terry* and decline to find a continuing violation here. *Id.* (citing *Terry v. Kennedy*, No. 2:24-CV-1200, 2025 WL 948919, at *7 (S.D. Ohio Mar. 28, 2025)).

But the Court finds *Terry* persuasive as to each of Plaintiff's claims here. The *Terry* Court determined that the disbarred plaintiff's claim was analogous to the claim in *Kuhnle Bros., Inc., v. Cty. of Geauga*, 103 F.3d 516, 521–22 (6th Cir. 1997). In *Kuhnle*, the Sixth Circuit applied the continuing violation theory in the context of a substantive due process challenge to a traffic resolution. *Id.* at 522. Although the county that enacted the traffic resolution had not "commit[ted] any invalid acts" after passing the resolution, it still "barred Kuhnle from using the roads in question on an ongoing basis, and thus actively deprived Kuhnle of its asserted constitutional rights every day that it remained in effect." *Id.*

So too, here. As explained above, it is not the case that Plaintiff's 2011 disbarment decision forever prohibited him from reapplying for admission and that he thus merely continues to feel the effect of that prohibition. Instead, the Disbarment Rule is what prevents disbarred attorneys from applying for readmission. That Disbarment Rule continues, every day, to prohibit Plaintiff from applying for readmission. In other words, if the Disbarment Rule were stricken tomorrow, Plaintiff could presumably apply for readmission— notwithstanding his 2011 disbarment—which shows that the Disbarment Rule causes a new harm each day that it remains in effect. *See Centifanti v. Nix*, 865 F.2d 1422, 1432–33 (3d Cir. 1989) (finding disbarred attorney's general challenges to state rule were subject to the continuing violation theory).

This case is unlike the two cases on which Defendants rely. First, it is unlike *Cornelius v. Mich. Attorney Grievance Comm'n*, 510 F. App'x 404 (6th Cir.

2013), because the plaintiff in that case challenged only the actual order revoking his law license—he did not raise a general constitutional challenge to the state's disciplinary rules. *Id.* at 406. Similarly, the plaintiff in *Printup v. Director, Ohio Dept. of Jobs and Family Servs.*, 654 F. App'x 781 (6th Cir. 2016), attacked discrete decisions, and the Sixth Circuit concluded that the plaintiff could not end-run the statute of limitations merely by arguing that those decisions arose from an ongoing "custom or policy" of failing to train county employees. *Id.* at 789. Moreover, because that plaintiff's initial designation as a child abuser resulted in her appearance in a central registry and the loss of her job, the mere continued appearance on the registry and continued unemployment were simply the effects of the initial action rather than daily unlawful acts. *Id.* at 789–90.

As in *Cornelius* or *Printup*, Plaintiff here could not invoke the continuing violation doctrine merely by arguing that he continues to be disbarred under Ohio law. Continued disbarment is merely the lasting effect of the 2011 decision. But Plaintiff's challenge to the ongoing application of the Disbarment Rule, without which he could reapply for admission despite his prior disbarment, distinguishes this case from *Cornelius* and *Printup*. As explained above, Plaintiff alleges that the Disbarment Rule causes new harm each day because that rule, rather than the past disbarment, applies each day to prevent him from seeking readmission.

Finally, though *Kuhnle* and *Terry* are on point only as to the substantive due process and equal protection claims, the Court concludes that the continuing violation theory also applies to Plaintiff's ADA claim. To the extent that he is not

arguing that he was previously discriminated against because of his disability and continues to feel the effect of that discrimination, he sufficiently alleges that the Disbarment Rule works to discriminate against him anew each day.

### 3. Injunctive Relief under § 1983

Section 1983 provides for suits in law and in equity arising from the deprivation of a claimant's rights, privileges, or immunities. *See* 42 U.S.C. § 1983. As relevant here, though, the statute prohibits a grant of injunctive relief "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." *Id.* In other words, "[t]he plain language of § 1983 allows suits for injunctions" in such actions "only after a litigant has sought a declaratory judgment." *Terry*, 2025 WL 948919, at *4 (citing *Ward v. City of Norwalk*, 640 F. App'x 462, 466 (6th Cir. 2016)).

Plaintiff's Complaint requests both declaratory and injunctive relief against the Justices, who were acting in their official capacities as judicial officers. *See, e.g.*, Compl. ¶ 7, ECF No. 1 ("The Ohio Supreme Court is vested with the power to regulate the practice of law in Ohio, including admitting new attorneys, disciplining current attorneys, and setting the rules for readmission to the practice of law of disbarred or disciplined attorneys."); *id.* ¶ 65 ("The defendant members of the Ohio Supreme Court in their official capacities have violated Plaintiff's right to due process of law by imposing disbarment and denying to him any opportunity to seek re-admission to practice for the rest of his life."). But Plaintiff

has not alleged any facts suggesting that a declaratory decree was violated or that declaratory relief was unavailable. So, Plaintiff must first seek a declaratory judgment (or demonstrate the unavailability of the same) before he may demand an injunction.[6] *See, e.g.*, *Ward*, 640 F. App'x at 467; *Terry*, 2025 WL 948919, at *4. Because he has not done so, the injunctive relief that he seeks against the Justices under § 1983 is statutorily barred, and Defendants' motion to dismiss is **GRANTED** as to this issue.[7]

### 4.     Merits of Plaintiff's Claims

Finally, Defendants attack the merits of Plaintiff's ADA, due process, and equal protection claims. The Court, however, finds that these claims may proceed at this juncture.

#### a.     ADA Claim

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Courts

---

[6] For this reason, Plaintiff's position that he "asks that this Court [grant] injunctive relief against [the] Justices only after the issuance of a declaratory judgment" and that he is "merely presev[ing] [his] rights in the event a declaratory judgment is not complied with," ECF No. 35 at PAGEID # 1866, is unavailing and highlights the prematurity of his claim for injunctive relief.

[7] Plaintiff does not assert § 1983 claims against the Supreme Court of Ohio, nor could he. *See, e.g.*, *Terry*, 2025 WL 948919, at *5 (observing that the Supreme Court of Ohio is not *sui juris* for purposes of § 1983 claims); *see also Malone v. Court of Common Pleas of Cuyahoga County*, 344 N.E.2d 126, 128 (Ohio 1976) ("Absent express statutory authority, a court can neither sue nor be sued in its own right.").

broadly construe the phrase "services, programs, or activities," finding that it captures "virtually everything that a public entity does." *Marble v. Tennessee*, 767 F. App'x 647, 651 (6th Cir. 2019) (citation omitted).  A "public entity," in turn, is any state or local government, including departments and agencies.[8]  42 U.S.C. §§ 12131(1)(A)–(B).

"Title II requires a plaintiff to show that (1) he has a disability; (2) he is a 'qualified individual'; and (3) he was 'being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of' his disability." *Larson v. Eppinger*, No. 2:20-CV-4997, 2021 WL 2659998, at *6 (S.D. Ohio June 29, 2021) (quoting *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015)).  At the pleading stage, the plaintiff need not allege facts establishing a *prima facie* case of disability discrimination to survive a motion to dismiss—rather, the plaintiff must only allege "sufficient facts, accepted as true . . . to state a claim under the ADA[.]" *Morgan v. St. Francis Hosp.*, No. 19-5162, 2019 WL 5432041, at *2 (6th Cir. Oct. 3, 2019) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002)).

---

[8] Here, Plaintiff brings his ADA claim against all Defendants, alleging that the Supreme Court of Ohio is a public entity encompassed by Title II and that the Justices may be sued "in the same manner as a 'public entity' may be sued." Compl. ¶ 55, ECF No. 1. Although Congress specifically abrogated Eleventh Amendment immunity for ADA claims, that abrogation is not absolute. *See Babcock v. Michigan*, 812 F.3d 531, 534–35 (6th Cir. 2016); *see also, e.g., O'Mara v. Cmty. Mental Health of Washtenaw Cnty.*, No. 21-12278, 2022 WL 6581110, at *5 (E.D. Mich. Aug. 8, 2022), *R&R adopted*, 2022 WL 4355140 (E.D. Mich. Sept. 19, 2022) (outlining factors for courts to consider in determining immunity).  The Court need not wade into this fray, however, because Defendants neither challenge Plaintiff's allegations as to their public-entity status nor point to this element as a basis for dismissal.

Defendants do not challenge the existence of Plaintiff's disability in this case. *See also, e.g.*, *Maxson v. Baldwin*, No. 23-3702, 2024 WL 1282458, at *3 (6th Cir. Mar. 26, 2024) ("Addictions that substantially limit a major life activity are covered disabilities under the ADA."). Instead, Defendants attack the second and third elements, arguing that Plaintiff's misconduct means he is not "otherwise qualified" to petition for reinstatement and that Plaintiff has not alleged facts showing that but for his disability (being a recovered addict), he would be able to petition for reinstatement. ECF No. 34 at PAGEID # 1836.

### i. Qualified Individual

Turning to the second element, "[t]he term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Plaintiff seeks to practice law, and the allegations in his Complaint suggest that he has the ability to perform the essential functions of a legal practitioner— he has a J.D. from a reputable law school and did practice law for eighteen years, during which time he started his own firm with "great success." Compl. ¶¶ 6, 20–21, ECF No. 1. Sober since February 2007, Plaintiff is now a tenured law professor and co-directs the Hawai'i Innocence Project, and his current employer "entrusts him with fiduciary and fiduciary-like responsibilities in the administration of grants and other university programs." *Id.* ¶¶ 32–33, 50. The Complaint, as a whole, alleges that Plaintiff was a successful attorney when he

was not using drugs. Putting aside his misconduct, Plaintiff appears to otherwise meet the essential eligibility criteria to be an attorney in Ohio, and Defendants do not disagree.

Defendants instead draw the line at the misconduct. Defendants maintain that Ohio requires individuals seeking bar admission to demonstrate a particular "level of moral character," a trait that the Supreme Court of Ohio found Plaintiff to be lacking when it disbarred him. ECF No. 34 at PAGEID # 1837.

As pertinent here, "a qualified individual with a disability shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12114(a). But the ADA offers a safe harbor to litigants who, like Plaintiff, have alleged their rehabilitation from past drug use—indeed, the statute provides that "[n]othing in subsection (a) shall be construed to exclude as a qualified individual with a disability an individual who . . . (1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use." 42 U.S.C. § 12144(b). So, Plaintiff's former use of illegal drugs does not, standing alone, prevent the Court from deeming Plaintiff an otherwise qualified individual. And Plaintiff's misconduct arose directly from his addiction, or at least he alleges as much. *See, e.g.*, Compl. ¶ 49, ECF No. 1 ("Plaintiff was disbarred for, *inter alia*, misappropriation of client funds. His misconduct was driven by his addiction[.]"). That is sufficient, at this stage of the proceedings, for the Court to

find this element satisfied, particularly considering the discussion of reasonable accommodations below.

### ii.     Causation

A plaintiff may satisfy the third element (causation) using two different theories: (1) intentional discrimination, and (2) failure to make reasonable accommodations. *Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024) (citing *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008)). Plaintiff alleges failure to reasonably accommodate. ECF No. 35 at PAGEID # 1855; ECF No. 32 at PAGEID ## 1807–08. This theory stems from a regulation implementing Title II, which states in relevant part:

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7)(i).

Thus, to state a claim for failure-to-accommodate under Title II, a plaintiff may allege facts to show that he was "excluded from participation in, denied the benefits of, or subjected to discrimination because of" a disability due to the public entity's failure to make a "reasonable modification" pursuant to this regulation.[9] *See Larson*, 2021 WL 2659998, at *6. The entity need not make the

---

[9] In his preliminary injunction briefing, Plaintiff references another regulation, 28 C.F.R. § 35.130(b)(8), which prohibits public entities from imposing or applying "eligibility criteria that screen out . . . an individual with a disability . . . from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be

accommodation, however, if it either "imposes undue financial and administrative burdens on a grantee, or requires a fundamental alteration in the nature of [the] program." *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1034 (6th Cir. 1995) (quoting *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 n.17 (1987)).

Plaintiff has sufficiently alleged, at this stage of the proceedings, that he was subjected to discrimination because of his addiction disability. *See Douglas v. Muzzin*, No. 21-2801, 2022 WL 3088240, at *5 (6th Cir. Aug. 3, 2022) ("[T]he ADA requires that discrimination occur 'because of' a plaintiff's disability[.]"). The Disbarment Rule forecloses a path to readmission for any disbarred attorney, and as noted above, Plaintiff alleges that his chemical dependency directly led to his disbarment and, by extension, his inability to apply for re-admission. *See* Compl. ¶¶ 22, 49, ECF No. 1. He asserts that he would be able to apply for readmission but for his status as a disbarred recovered addict. Instead, the Disbarment Rule discriminates against him by excluding him from participating in the reinstatement process as a result of his addiction-related misconduct.

---

necessary for the provision of the service, program, or activity being offered." However, allegations of Defendants' liability under this theory are absent from the Complaint. A plaintiff may not assert new theories of liability in a preliminary injunction motion, so the Court will not consider the allegations surrounding this "screening" regulation. *See, e.g.*, *HealthCall of Detroit, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 22-10797, 2022 WL 3153780, at *10 n.12 (E.D. Mich. Aug. 8, 2022) ("In its *Motion for Preliminary Injunction*, HealthCall asserts that Section 3157 'leaves certain medical providers' with 'a confiscatory rate freeze under Sections 3157(2) and (8)[,]' . . . [b]ut no confiscatory 'rate freeze' claim is pleaded *in HealthCall's operative complaint*. HealthCall cannot assert new claims in its Motion for Preliminary Injunction." (emphasis in original)).

Additionally, "[w]hen a plaintiff shows that the proposed modification is needed to avoid the denial of services or benefits, the causation requirement is satisfied." *Douglas*, 2022 WL 3088240, at *6. Here, Plaintiff alleges that he would be able to access the reinstatement procedure (i.e., have the option to reapply) if Defendants accommodated him. Specifically, Plaintiff suggests that Defendants modify the Disbarment Rule to permit disbarred attorneys to seek reinstatement in the same way that similarly situated indefinitely suspended attorneys do. *See* Compl. ¶ 52, ECF No. 1; *cf. id.* ¶ 47 ("To reasonably accommodate recovered addicts, they must be given an opportunity to show that they are now recovered[.]"). Whether this is a *reasonable* accommodation is not a proper inquiry for this stage of the case, particularly where, as here, Defendants do not move to dismiss Plaintiff's Complaint on the ground that this proposed accommodation would fundamentally alter Ohio's disciplinary regime. *See* ECF No. 36 at PAGEID # 1871 n.1; *Ability Ctr. of Greater Toledo v. Lumpkin*, 808 F. Supp. 2d 1003, 1024 (N.D. Ohio 2011) ("Determining whether a modification or accommodation is reasonable always requires a fact-and context-specific inquiry." (citing cases)).

Accordingly, Plaintiff has alleged sufficient facts that, when accepted as true, state a claim under Title II of the ADA. Defendants' motion to dismiss this claim is therefore **DENIED**.

### b. Due Process

Under the Fourteenth Amendment, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The due process clause has both substantive and procedural components. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). A review of Plaintiff's Complaint (and his opposition to Defendants' motion to dismiss) indicates that Plaintiff brings only a substantive due process claim.

Substantive due process "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It "specifically protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (internal quotation marks and citations omitted).

If a rule or provision implicates a fundamental right, courts review that rule or provision under the strict-scrutiny test, which requires narrow tailoring to serve a compelling state interest. *Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 500 (6th Cir. 2007). If a fundamental right is not implicated, courts utilize rational basis review and ask whether the rule or provision is "rationally related to legitimate government interests." *Glucksberg*, 521 U.S. at 728.

The list of fundamental rights is "short," and "[t]he right to pursue one's chosen profession is not an established fundamental right." *Terry*, 2025 WL

948919, at *9 (citations omitted).  As such, Plaintiff's allegations about "[t]he right to practice law," Compl. ¶ 64, ECF No. 1, do not involve a fundamental right.  So, to prevail under rational basis, Plaintiff must allege "the existence of a constitutionally-protected property or liberty interest" and an "arbitrary and capricious action" to establish a substantive due process claim.  *Johnson v. Morales*, 946 F.3d 911, 932 (6th Cir. 2020).  Plaintiff has pleaded both of these elements here.

The *Terry* case is again instructive.  There, another Judge of this Court determined that the plaintiff, who was also alleging a substantive due process violation stemming from the Disbarment Rule, had "sufficiently alleged the failure of the Disbarment Rule to meet the standards of rational-basis review."  *Terry*, 2025 WL 948919, at *9.  The plaintiff's assertions that no rational justification existed for the Disbarment Rule's "outright ban on the consideration of reinstatement" of disbarred attorneys regardless of rehabilitation—coupled with the facts "regarding permanent disbarment without possibility of reinstatement" and case law "suggesting that a complete prohibition of the pursuit of one's profession is less likely to be found constitutional than a brief prohibition"— convinced the Court in *Terry* that the plaintiff had adequately alleged "a complete prohibition from the practice of law that has no rational connection to his fitness to practice law" to survive a motion to dismiss.  *Id*. at *9–10.

This Court finds the *Terry* Court's reasoning persuasive here.  Plaintiff asserts similar allegations surrounding the Disbarment Rule's rationality as the

plaintiff in *Terry*. Plaintiff maintains that the Disbarment Rule's complete prohibition from the practice of law is not rationally linked to his current ability to be a lawyer. *See* Compl. ¶ 68, ECF No. 1. "This is sufficient to survive a motion to dismiss." *Terry*, 2025 WL 948919, at *10.

Therefore, the Justices' motion to dismiss this claim is **DENIED**.

### c. Equal Protection

Last, the Justices challenge Plaintiff's equal protection claim under the Fourteenth Amendment, which provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. To state such a claim, a plaintiff must adequately plead that the government treated the plaintiff "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011); *see also, e.g., Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006) (observing that the "threshold element of an equal protection claim is disparate treatment").

Here, Plaintiff alleges neither the infringement of a fundamental right nor his membership in a suspect class, so he must allege disparate treatment having no rational basis as part of his "class of one" claim. He does that here. Specifically, he asserts that "[t]he Disbarment Rule treats those disbarred differently than other similarly situated people—others with similar criminal and disciplinary records—who were given an opportunity to rehabilitate and later

demonstrate rehabilitation and present fitness and moral character." Compl. ¶ 71, ECF No. 1.  Plaintiff contends that the Justices, by virtue of the permanent Disbarment Rule, are treating him differently because of his past illegal drug use and that such treatment has no legitimate rationale.  *Id.* ¶¶ 67, 68, 72.

The Justices' arguments to the contrary are unavailing.  First, the Justices maintain that Plaintiff has failed to show the lack of a rational basis for the Disbarment Rule, but their argument fails to persuade for the same reasons as the Court explains above with respect to due process.

Second, the Justices contend that Plaintiff has not "identified comparators." ECF No. 36 at PAGEID # 1877.  But Plaintiff points to felons and people whose chemical dependency was at issue in their disciplinary proceedings as two comparator groups.  *See* Compl. ¶¶ 42–43, ECF No. 1.  Despite their similarities, certain members of these groups received indefinite suspensions, not disbarments.  *Id.*

"Similarly situated" is a term of art and requires that the comparators be similar in "all relevant respects."  *Paterek v. Vill. of Armada, Mich.*, 801 F.3d 630, 650 (6th Cir. 2015).  The "similarly situated" inquiry does not demand "exact correlation" but rather seeks only "relevant similarit[ies]."  *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462–63 (6th Cir. 2012).  "[T]he court must undertake a case-specific analysis to determine if the identified comparator employee is similarly-situated to the plaintiff."  *Bhatara v. Potter*, No. 1:06-CV-527, 2008 WL 11351285, at *3 (S.D. Ohio Dec. 17, 2008).  In this case, the Court

does not find such an analysis appropriate at the motion to dismiss stage, given that whether an individual is similarly situated or is an appropriate comparator is typically a question for the fact finder. *Cf. Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 757 (6th Cir. 2012) ("But whether the other identified supervisors who did not admit misconduct are similarly situated to Bobo is a jury question." (citation omitted)), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013).

Based on this, the Court **DENIES** the Justices' motion to dismiss Plaintiff's equal protection claim.

### IV.    MOTION FOR PRELIMINARY INJUNCTION

In tandem with his Complaint, Plaintiff also moved for declaratory and preliminary injunctive relief—namely, (1) a declaration that the Disbarment Rule violates the Constitution and the ADA, (2) a declaration that Plaintiff may petition for reinstatement under the same standards as those applied to indefinitely suspended attorneys, and (3) an injunction against Defendants' enforcement of the Disbarment Rule against him.  ECF No. 2.

### A.    Declaratory Relief

The Declaratory Judgment Act provides that a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 938 (S.D. Ohio 2012) (quoting 28 U.S.C. § 2201(a)).  Courts have discretion to

decide whether to entertain a declaratory judgment action and routinely "deny declaratory relief if an alternative remedy is better or more effective." *Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citing cases). Courts also consistently find that declaratory relief is inappropriate when "claims have already ripened into a cause of action." *Miami Valley*, 852 F. Supp. 2d at 938.

The declarations that Plaintiff seeks from the Court are undeniably subsumed within Plaintiff's ADA, due process, and equal protection claims. Indeed, the basis of those claims is that the Disbarment Rule violates the Constitution and federal law. The Court will decide whether that is true, and whether Plaintiff, as a result, should be able to petition for reinstatement (if at all) as if he had been indefinitely suspended, in connection with those claims that have survived dismissal.

Plaintiff's declaratory judgment requests have already ripened into causes of action, such that a declaratory judgment on these issues would be "duplicative and unnecessary." *Gregor v. Rice Drilling D, LLC*, No. 2:21-CV-3999, 2024 WL 169119, at *4 (S.D. Ohio Jan. 16, 2024). Accordingly, Plaintiff's motion is **DENIED** as to the declaratory relief he seeks.

## B. Injunctive Relief

The preliminary injunction portion of Plaintiff's motion similarly fails. To determine whether preliminary injunctive relief is warranted, courts balance four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*Grassi v. Grassi*, No. 24-3291, 2024 WL 4715614, at *3 (6th Cir. Nov. 5, 2024) (internal quotation marks and citations omitted).

"Although these factors are ordinarily balanced, the existence of irreparable injury is mandatory." *Id.* (internal quotation marks and citation omitted). "Mere speculation about, or bald assertion of, irreparable harm is insufficient." *Id.* (citation omitted). Moreover, injuries that can be adequately compensated with monetary relief are not "irreparable." *Id.* (citation omitted). Thus, absent a showing of a real or immediate threat, the plaintiff cannot show irreparable injury and, therefore, is not entitled to preliminary injunctive relief. *Id.* (citation omitted).

Although the Court found that Plaintiff has stated a claim as to each of his causes of action—which implies at least a decent likelihood of success on the merits—Plaintiff is not entitled to a preliminary injunction. Even putting aside the plain language in § 1983 barring injunctive relief against the Justices, Plaintiff has not shown that he would suffer irreparable injury without an injunction. True, courts have deemed constitutional and ADA violations as irreparable harm, but delays in seeking emergency relief severely undercut the propriety of preliminary injunctive relief. *See, e.g., Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*, 511 F. App'x 398, 405 (6th Cir. 2013). In this case, Plaintiff waited nearly

fourteen years after he was disbarred to file this lawsuit and more than a year after the Supreme Court of Ohio declined to amend that disbarment decision. The Court is thus not convinced that there is an immediate threat in this case necessitating a preliminary injunction.

Therefore, the Court **DENIES** Plaintiff's motion for a preliminary injunction.

## V.    MOTION TO EXCLUDE EXPERT

In support of his supplemental preliminary injunction briefing, Plaintiff offered the "preliminary expert opinion" of Dr. Jeffrey Goldsmith, M.D. ECF No. 19-1. Defendants now move to exclude Dr. Goldsmith's opinion pursuant to Federal Rule of Evidence 702, challenging his qualifications. ECF No. 25.

Because the Court does not rely on Dr. Goldsmith's opinion in ruling on Plaintiff's preliminary injunction motion, however, Defendants' motion to exclude, ECF No. 25, is **DENIED as moot**.

## VI.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, ECF No. 34, is **GRANTED in part** and **DENIED in part**. Defendants' motion is **GRANTED** as to (1) Plaintiff's requested injunctive relief against the Justices under § 1983, and (2) the allegations in Plaintiff's Complaint that assert a backward-looking challenge to Defendants' decision to disbar him. Defendants' motion is otherwise **DENIED**.

Plaintiff's motion for a preliminary injunction, ECF No. 2, is **DENIED**, and

Defendants' related motion to exclude Plaintiff's expert, ECF No. 25, is **DENIED**

**as moot**.

The Clerk shall terminate ECF Nos. 2, 25, and 34 as pending motions.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**