**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **STEVEN TERRY,** | ) | **CASE NO.  2:24-cv-01200** |
| | ) | |
| *Plaintiff,* | ) | **JUDGE ALGENON L. MARBLEY** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SHARON L. KENNEDY,** *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

# DEPOSITION OF ALLAN ASBURY

# ATTACHMENT TO PLAINTIFF STEVEN TERRY'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

STEVEN TERRY,

    Plaintiff,

vs.                            Case No.

SHARON L. KENNEDY, et al.,    2:24-CV-01200

    Defendants.          Judge Algenon L. Marbley

- - - - -

Remote Zoom 30(B)(6)Deposition of

ALLAN ASBURY,

called for examination under the Applicable Rules

of Federal Civil Procedure, taken before me,

Julieanne Ross, a Registered Professional Reporter

in and for the State of Ohio, pursuant to notice

and agreement of counsel, on Thursday, March 12,

2026, at 1:15 p.m.

- - - - -

Page 2

(All participants were in attendance via remote connection through individual Zoom video conferencing as follows:)

APPEARANCES:

On behalf of the Plaintiff:
Edward L. Gilbert Co., LPA
EDWARD L. GILBERT, ESQ.
3070 West Market Street, Suite 100
Akron, Ohio  44333
330.376.8855


On behalf of the Ohio Attorney General Dave Yost:
JULIE A. PFEIFFER,
SECTION CHIEF OF CONSTITUTIONAL OFFICES
STEPHEN P. TABATOWSKI, ASSOCIATE ASST. AG
GREGORY A. RUSTICO, SENIOR ASST. AG
30 East Broad Street, 16th Street
Columbus, Ohio  43215
Julie.Pfeiffer@OhioAGO.gov
Stephen.Tabatowski@OhioAGO.gov
Gregory.Rustico@OhioAGO.gov

On behalf of the Ohio Supreme Court:
RICHARD D. SHUSTER, CHIEF LEGAL OFFICER
SEPTEMBER COYNE, DEPUTY CHIEF LEGAL OFFICER
65 S. Front Street
Columbus, Ohio  43215
Richard.Shuster@SC.Ohio.gov
September.Coyne@SC.Ohio.gov
                ----

ALSO PRESENT:
Steven Terry, Plaintiff
Callie Wade, Edward L. Gilbert Assistant
                ----

Page 3

INDEX                                      PAGE

EXAMINATION OF ALLAN ASBURY BY:            4

Mr. Gilbert


PLAINTIFF'S EXHIBITS MARKED                PAGE

1, Revised Notice of Deposition            9

2, Attorney Gilbert's Public               13

   Records Request Letter


BATES STAMPED DOCUMENTS REFERENCED

0011,                                      68

0055,                                      69

0091,                                      70

0093,                                      70

0094,                                      75

0099,                                      75

0100,                                      75

0144,                                      79

0190-0192,                                 81


DEFENDANTS' EXHIBITS MARKED

None


EXCERPT REQUEST PAGES:

17,41,60,61,77

Page 4

(Prior to the deposition, all parties agreed to the remote swearing in of the witness by the court reporter.)

ALLAN ASBURY, of lawful age, called for examination, as provided by the Federal Rules of Civil Procedure, being by me first remotely sworn, as hereinafter certified, deposed and said as follows:

EXAMINATION OF ALLAN ASBURY

BY-MR.GILBERT:

Q. Okay. Mr. Asbury, can you hear me?

A. I can.

Q. Okay. My name is Edward L. Gilbert and I represent the Plaintiff in this action.

If at any time you can't hear me, please let me know, and I'll do likewise. Okay?

A. Okay.

Q. Now, I'm going to raise my voice. It's not that I'm yelling at you, but I want to make sure that we're able to hear each other because we're going remotely here. Okay?

A. Yes.

Q. So it's very important that you keep your voice up, and I'll try to do the same. Okay?

All right. Can you state your full name

and spell your first and last name for the record, please?

A.   My legal name is Damon Allan, A-l-l-a-n, last name, Asbury, A-s-b-u-r-y.

Q.   And how do you spell Damon?

A.   D-a-m-o-n.

Q.   Okay.  Okay.  May I call you Mr. Asbury, is that all right?

A.   You may.

Q.   Okay.  And, Mr. Asbury, can you tell us who is in the room with you today?

A.   Three counsel from the Attorney General's Office, one counsel from Chief Legal Counsel of the Supreme Court.

To my left is Julie Pfeiffer.  To my right is Steve -- I'm not going to pronounce your name right -- Tabatowski, Greg Rustico, and September Coyne.

Q.   Okay.  Mr. Asbury, I'm not going to ask you for your home address, but I'll ask you for your work address, please.

A.   65 South Front Street, Columbus, Ohio, 43215.

Q.   Are you employed?

A.   I am employed.

Q.   And where are you employed, please?

Page 6

A. I'm employed with the Ohio Board of Professional Conduct.

Q. How long have you been so employed?

A. With that office, eleven years.

Q. And what is your formal title, job title?

A. Deputy Director and Senior Counsel.

Q. And what do you understand your duties to be in that capacity?

A. I assist the Director of the Board in the adjudicatory functions of the Board of Professional Conduct.  And I also serve as legal counsel to the Director and to the Board of Professional Conduct.

Q. Can you give me just briefly a little bit about your background?  In other words, where have you worked in the past --

A. Well --

Q. -- before this job?

A. Sure.  I graduated from law school in 1993 and was barred in 1993.  Began practicing for the Central Ohio Transit Authority, which is a Regional Transit Authority.

Then I became employed at the Supreme Court of Ohio and I was staffed to be an authorized --

Page 7

Q. So I apologize, when was that when you started with the Supreme Court?

A. 2005.

Q. Oh, okay. And can you tell me the positions you've had?

Well, first of all, have you been with the Supreme Court since 2005?

A. In one capacity or the other, yes.

Q. I see. Okay. And can you tell me your -- do we have an interruption there?

Can you hear me okay?

A. I can.

Q. Okay. Can you tell me the positions you've had since 2005?

A. I was staff to the Unauthorized Practice of Law Board. I've been Administrative Counsel to the Administrative Director.

Q. I apologize, can you give me the dates that you've had each of these jobs?

A. Sure. I'm thinking.

Secretary to the Unauthorized Practice of Law Board was 2005 to 2011 -- I'm sorry, 2005 to 2008. Administrative Counsel, 2008 to 2013. And I've been with the Board of Professional Conduct since 2013.

Page 8

Q.    I see.  Okay.

And can you tell me what your duties are in that capacity currently?

A.    Well, I, again, assist the Deputy Director in the adjudicatory functions.  I review and draft all advisory opinions issued by the Board of Professional Conduct.

I perform legal research and writing for the Commissioners of the Board of Professional Conduct.  And I engage in outreach and education on behalf of the Board to attorneys, judges and judicial candidates.

And I also conduct all the mandatory training for new judges, new magistrates and judicial candidates relative to the Rules of Professional Conduct and the Code of Judicial Conduct.

Q.    Well, do you report directly to the Supreme Court?

A.    I do not.

Q.    Okay.  Who is your actual immediate boss?

A.    That would be Director Elizabeth Smith of the Board of Professional Conduct.

Q.    What is her actual title?

A.    Director of the Board.

Q.    I see.  Okay.

Page 9

Now, the Board of Professional Conduct, what do they do?

A. Well, it's an affiliated office of the Supreme Court. It's authorized under the Rules For the Government of the Bar, Rule V, to perform all the adjudicatory functions at the Board level in terms of lawyer and judicial discipline.

Q. Do you -- and, I'm sorry, I didn't mean to interrupt you. Are you done?

A. I am.

Q. I'm sorry, I didn't hear that. You said?

A. I finished that statement.

Q. Sorry. Okay. And if I cut you off at any time, please let me know. I don't mean to be rude, I'm just trying to move this along. Okay?

A. Understood.

Q. Okay. Exhibit Number 1, do you have that before you?

(Thereupon, Exhibit 1 was marked for purposes of identification.)

MS. PFEIFFER: This is Julie Pfeiffer. I made some copies from -- so I gave him -- so I'm giving him a copy of your Exhibit 1.

A. I do have it in front of me.

Q. Yeah. Mr. Asbury, I had sent this in earlier.

Page 10

And can you identify Exhibit Number 1?

A.    It's the Revised Notice of Deposition pursuant to Rule 30(B)6.

Q.    All right.  And have you seen this before today?

A.    I have.

Q.    Okay.  Can you tell me what documents you reviewed in preparation for your testimony here today?

A.    I reviewed the Complaint in this matter, the Answer, the Motion to Dismiss filed by Attorney General, I believe their Reply.  I've read the Court's Order making a decision on that Motion to Dismiss.

I've also reviewed the Disciplinary versus Terry matter, Ohio State Bar versus McCafferty, and several other Supreme Court decisions that deal with attorney discipline or judicial discipline.

Q.    What are the several others that you looked at?

A.    I looked at Disciplinary Counsel versus Lawson, Disciplinary Counsel versus Goodman, Disciplinary Counsel versus O'Neill, Disciplinary Counsel versus Hunter, Disciplinary Counsel versus Polizzi.

Q.    How do you spell Polizzi?

A.    P, as in Paul, o-l-i-z, as in zebra, z, as in

Page 11

zebra, i.

I reviewed Disciplinary Counsel versus Conkins -- Hoskins, Disciplinary Counsel versus Allen, spelled with an E, A-l-l-e-n, Disciplinary Counsel versus Horton.

I believe that's it.

Q. How about Dann, Marc Dann, did you look at that one?

A. Not specifically for today's deposition, but I'm familiar with it.

Q. How about McCafferty?

A. I did review McCafferty.

Q. You did review McCafferty? You did review that?

A. Yes.

Q. Okay. And how many times have you testified on behalf of the Supreme Court under similar circumstances as a 30(B)6?

A. This is my first time.

Q. Do you consider yourself an expert in regards to the Supreme Court policy and procedure?

A. I'm not sure I would characterize myself as an expert, but I'm very familiar with the Supreme Court's rules and processes, procedures, for attorney and lawyer, attorney and judicial discipline.

Page 12

Q. All right.  Can you tell me who you spoke with other than your legal counsel in preparation for your testimony here today?

A. Only the legal counsel sitting at this table and Chief Legal Counsel, Richard Shuster, of the Supreme Court.  Let me add one more, Deputy Counsel Zach -- I won't be able to pronounce his last name -- Holscher, with the Supreme Court of Ohio.

Q. What do you understand this case to be about?

A. I understand it's a challenge to what you've defined as the Disbarment Rule in the Rules of the Government of the Bar.  And I understand that it's a constitutional challenge on due process grounds.

Q. Now, I understood you to say that you had looked at the Court's Order in this case in regards to the Motion to Dismiss?

A. I have.

Q. Okay.  That's the order of March the 28th, 2025?

A. Correct.

Q. And in conclusion on that particular order on Page 23 the Court says that, "The Motion is denied as to the Fourteenth Amendment substantive due process claim for deprivation of liberty and the equal protection claim against Defendant Justices

Page 13

in their official capacity."

Is that your understanding?

A.   Yes.

Q.   Okay.  So I'm going to try to stay within that parameter in my questioning.

Can you go to Exhibit 2 for me please?

(Thereupon, Exhibit 2 was marked for purposes of identification.)

Q.   Let me know when you have that, please.

A.   I have it.

Q.   Okay.  And this is a document of January 28th, 2026.  Is that fair to say?

A.   Yes.

Q.   All right.  And it's on my letterhead and appears to be signed by myself.  Fair?

A.   Yes.

Q.   Okay.  And have you seen that before today?

A.   I do not recall.

Q.   What is the Office of Public Information for the Ohio Supreme Court?

A.   That is one of many offices of the Supreme Court.  They serve several functions.  I believe they are the initial clearinghouse for Public Records Requests here at the court.

Q.   And just looking at this document -- and for the

Page 14

record, it is I think one, two, three, four pages.

Is yours four pages?

A.    Yes.

Q.    Okay.  And would you, in looking at this, would you agree that this is a Public Records Request for documents?

MS. PFEIFFER:  Objection.  I'm going to put an objection on the record now for several reasons.

First of all, the topics of today's deposition did not include responding with regard to Public Records.  So that's not part of this deposition.

Additionally, to the extent that you're making this Public Records Request as Discovery in this case, Exhibit 2 would violate the Court's record -- I'm sorry, the Court's Order of November 19th, 2025, where the Court specifically ordered that Discovery with regard to written depositions and fact Discovery is only extended for the limited purpose of completing outstanding Discovery.  There is no new Discovery permitted in this case.

Exhibit 2 is a pretty flagrant way around the fact that the Court already ordered

that there was to be no more written Discovery. So we object on those two bases.

And I'm going to instruct the witness not to testify further regarding this exhibit.

MR. GILBERT: Are you done, Counsel?

MS. PFEIFFER: I am, Mr. Gilbert.

Q.  Okay. Now, Mr. Asbury, I need to know if you were involved in any way in responding to Exhibit Number 2?

MS. PFEIFFER: Objection. I'm going to instruct him not to answer.

MR. GILBERT: Well, I think the Ohio Supreme Court indicates -- in fact, it is my case, Gilbert versus Summit County, made it quite clear that these type of requests are proper in the Ohio Public Records case.

So I'm saying that, Counsel, to suggest that you might want to reconsider your objection on this. I don't intend to go through a lot. I just want to know did he participate in reviewing this document. And if he didn't, then I'll move on. But I think I do have a right to inquire of that.

So I'll make that request that you'll allow him to at least answer that.

Page 16

MS. PFEIFFER: He is here as a representative and speaking on behalf of the Ohio Supreme Court under Federal 30(B)6.

Are you asking him based on Allan -- whether Allan Asbury did that?

MR. GILBERT: Again, Counsel, I'm asking Mr. Asbury was he involved in the review of this document based upon his position with the Ohio Supreme Court.

MS. PFEIFFER: And your Notice of Deposition, Number One, did not involve Public Records Requests, number one. He is not here testifying as Allan Asbury. He is here as a representative of the Ohio Supreme Court.

MR. GILBERT: That's right, that's why I'm asking him that.

MS. PFEIFFER: Hold on, let me make a record.

Your questions are outside the scope of this deposition and also in violation of the Court's November 2025 Order.

So for those reasons I am instructing him not to answer any further questions regarding Exhibit 2.

Q. All right. So let's move on, Mr. Asbury. We've

Page 17

got that.

MR. GILBERT: And we'll have the Court Reporter note that for an excerpt.

(Request for excerpt of deposition was hereby noted.)

Q. Let's go on then, Mr. Asbury.

Are you familiar with the Rules of Conduct for lawyers at least as they were set up in the year of 2020 -- 2012, 2011 and 2013?

A. Yes.

Q. Okay. Now, I'm going to ask you to kind of educate me here on the definition of disbarment.

Can you tell me what that is, at least what it is from 2011 to the present?

A. Disbarment is one of several Sanctions that may be imposed against a person who holds a license or has been admitted to the Bar in Ohio, and that list is in the Rules For the Government of the Bar.

And disbarment is considered under Rule 12(B) -- strike that. I should say disbarment is one of several categories where the attorney cannot seek reinstatement.

Q. Are you done? I don't want to interrupt you.

A. I'm done.

Q.    Okay.  Thank you.

You mentioned it's a Sanction.  What does that mean?

A.    In Rules For the Government of the Bar 12 lists the four categories of Sanctions that may be imposed by the Supreme Court against attorneys for violations of the Rules of Professional Conduct or the Code of Judicial Conduct.

Q.    What are those four categories?

A.    Public reprimand, suspension, indefinite suspension, and disbarment.

Q.    Now, I have served some written Discover in this case.

Have you seen any of that?

A.    I've seen the Defendant's Responses to that Discovery.

Q.    One of the Responses that have been given to our Request is that the Rules governing the Bar were first --

THE REPORTER:  I'm sorry, excuse me, Mr. Gilbert, I will -- can you put your microphone closer to you, to your voice?  Is there any way that you can do that?  Because I want to make sure that I'm picking up all that you are saying.

MR. GILBERT:  Yeah, I appreciate that,

and we'll try to do that.  And sometimes my voice does fall.

THE REPORTER:  Thank you.

MR. GILBERT:  And I appreciate you telling me that.

THE REPORTER:  Thank you.

MR. GILBERT:  So we'll make sure we do it proper.  And we'll move this.  And I tend to move around a lot.  So thank you for helping me out.  Okay?

THE REPORTER:  Okay.

Q.    And again, Mr. Asbury, any time you can't hear me, please let me know, and I'll do the same.  Fair?

Is that fair?

A.    That's fair.

Q.    Okay.  Now, let me go back a minute.

One of the Answers to our written Discovery is that the Court developed these Rules for the Bar and Sanctions starting in 1957 and amended in 2007.

Is that your understanding?

A.    Can you repeat the question?

Q.    Yes.  That being the Rules governing the Bar, these Sanctions that you just outlined for us, and we appreciate you doing that, that originally

Page 20

started out in 1957 and were amended in 2007.

Is that your understanding?

Can you hear me okay?

A.    Yeah.  I'm thinking of an answer, please.

Generally speaking, the Rules that are in the Rules For the Government of the Bar, Rule 12(B), are very similar to the Rule that was adopted in 1957.  There's been some changes in the language from time to time.

Q.    Thank you.

When was the last change that you can recall?

A.    2007.

Q.    Okay.  And that was my understanding as well.

Can you tell me why there were changes in 2007 and what was behind that?  And when I say behind it, I just want to know what did the Court consider in viewing and implementing those changes?

MS. PFEIFFER:  I'm going to stop.  I'm going to make an objection with regard to your question.

And in moving forward, with regard to the second part of your question, asking the deponent what was behind the Court's decision,

Page 21

that invades the judicial mental process privilege.

So we would object based on that privilege to that question and any question moving forward where you may be asking the deponent what, quote, the Court thought about or considered with regard to any decision whatsoever. So we will be objecting. I will be instructing the witness not to answer based on that privilege.

Additionally, again, remembering that this deponent is here on behalf of the Ohio Supreme Court. The Court speaks only through its decisions. So anything that the Court has spoken on would be in their decisions.

He cannot testify on behalf of the Court other than directing you to a decision.

Q. Okay. Let me do it another way.

And, Mr. Asbury, let me ask you this: We know the last amendment according to your testimony was 2007. Fair?

A. Fair.

Q. Okay. Now, what I want to know is: Do you recall specifically or generally what those changes were?

A. I believe that Rule 12(B) they added resignation with discipline pending as one of the categories

Page 22

that an attorney could not seek reinstatement from.

Q.   Anything further?

A.   No.

Q.   Let's explore that a little bit.

We know that disbarment I think you said is a Sanction.  And as I understand your testimony, that's a permanent removal of the law license from an Ohio attorney; is that correct?

A.   One way to characterize disbarment is it's permanent and they cannot seek reinstatement from that Sanction.

Q.   Okay.  And is there any other Sanction that is permanent other than disbarment?

A.   No.

Q.   Okay.  So even when one resigns pending discipline, they can always come back and request some form of reinstatement; is that correct?

A.   Incorrect.

Q.   Oh, okay.

A.   They cannot seek reinstatement from a straight resignation or retirement or from a resignation of discipline pending.

Q.   All right.  Let me make sure I got that right.

Resignation with discipline pending,

right?  And you mentioned one other thing.  What was that?

A.  Retirement -- and I'm going to refer to the Rule, Counselor.

Q.  That's fine.  I appreciate that.

A.  "Resign with discipline pending or retired or disbarred."  And I'm reading from 12(B).

Q.  And that was amended in 2007?

A.  Correct.

Q.  Okay.  Now, if I retire, and I rethink and I want to go back to practicing law, can I do that under this Rule?

A.  You cannot.

Q.  So once you're retired, you stay retired no matter what?

A.  That's correct.

Q.  Okay.  Thank you.

You cannot petition the Court under the current Rule to be reinstated as a lawyer in the State of Ohio?

A.  Correct.

Q.  Okay.  And resignation pending discipline, is there any way I could come back or petition to come back as a lawyer if I resign and there is discipline pending?

A.    An attorney may not.

Q.    Okay.  Is there any other changes that you recall in 2007?

A.    No.

Q.    Now, looking at the one category where an attorney resigns with discipline pending, what happens to the discipline at that time?

In other words, does the investigation stop at that point, or continue, or what happens then?

A.    If an attorney seeks to resign and there is discipline pending, then typically the Disciplinary Counsel or Certified Bar Committee conducting the investigation stays their investigation until such time as the Supreme Court rules on the resignation of discipline pending.

Q.    Now, you say typically.  Typically.

Is there a Rule on that?  In other words, is the Committee required to complete its investigation?

A.    To the best of my knowledge they are not required to complete the investigation.

But when an attorney does apply with resignation with discipline pending -- I should say it's only Disciplinary Counsel that can handle

this review at this stage.  They file a confidential report with the Supreme Court indicating whether or not the Supreme Court should accept the resignation or deny it.

Q.   What do you mean confidential?

A.   They file basically a report under seal to the Clerk of the Supreme Court.

Q.   In other words, is it up to the Disciplinary Counsel to complete the investigation, stay the investigation, or just abandon it?

A.   I don't know exactly the different choices that they might have.

Q.   What does the Rule say?

A.   Can I have a minute to confer the Rule?

Q.   Sure.

MS. PFEIFFER:  Mr. Gilbert, do you have a citation that you would like for him to review?

MR. GILBERT:  No, no, I'm just waiting.

MS. PFEIFFER:  I didn't hear you.

MR. GILBERT:  No, I don't.  I'm just waiting on him to review it.

A.   I'm not certain, Mr. Gilbert, if it's in Rules For the Government of the Bar, Rule V.  I think it may be in another Rule For the Government of the Bar that I'm not as familiar with.

Page 26

Q.    Well, I know I've represented a few people that resigned pending discipline.  And I haven't been able to find a Rule that says clearly, or for that matter not clearly, as to whether -- what would happen and who would be -- who would make that call.

But as we sit here now, you're not able to find any Rule that the Disciplinary Counsel is required to complete an investigation if a person resigns pending discipline?

A.    Not without the ability to review the entire body of the Rules For the Government of the Bar, no.

Q.    Okay.  All right.

In other words, Mr. Asbury, if a person wants to resign pending discipline and the investigation concludes that there was no violation of the Rules governing lawyers in Ohio, would that person or could that person be considered for reinstatement down the road?

MS. PFEIFFER:  Objection, speculative.

Also, are you asking him if the Court would -- what the Court would do in that hypothetical?

MR. GILBERT:  No, no, I'm just asking him what is the Rule.  And I'm just asking him

what the Rule is on that set of facts?

MS. PFEIFFER:  Okay.  Let's let the record reflect that he's already testified to you that he does not have available to him the Rules to review.

MR. GILBERT:  Wait a minute, he just reviewed the Rules.  What do you mean he doesn't have the Rules before him?

MS. PFEIFFER:  Let the record reflect that he has been reviewing the Government Bar Rule Number V.

There are other, as he testified before, there's other Rules.  You've not provided him the ability in this deposition to review those Rules.

So if you would like to continue to task his memory regarding the Rules, I believe that would be fine.  But I want to make sure the record reflects what it is you provided him to look through.

MR. GILBERT:  Well, I'm going to say something here, Counsel.  Obviously you're signaling the witness, which is inappropriate, Counsel.

MS. PFEIFFER:  No, I'm not.

MR. GILBERT:  Yeah, we're in Federal

Court, Counsel. And I don't believe that your -- the nature of your objections are allowable. Now, I'm going to tell you that. Okay?

And I would appreciate if you have an objection, you can state your objection, but I think that you are signaling the witness. And I don't think that it's appropriate. Okay?

So that's what I'm going to say.

Q. Now, I'm going to state my question again. And, Mr. Asbury, if you don't understand it, please let me know.

And the nature of my objection -- my question is specifically this: And that is, if a person resigns pending a violation of the Rules governing attorneys for the State of Ohio and there is an investigation that is completed under the Disciplinary Counsel, and that investigation concludes that there was no violation of a Disciplinary Rule, can that person make an application to be reinstated?

That's my question. And I would appreciate it if you would answer, if you know.

MS. PFEIFFER: Same objection. He can answer if he knows.

A. I don't understand your question, Counselor.

Q.   Okay.  Let me break it down.

If there is pending a disciplinary violation of an attorney and that attorney decides for whatever reason to resign his license, it's my understanding under your prior testimony that it is up to the Disciplinary Counsel as to whether it will continue that investigation.

Now, first of all, am I correct at that point?

A.   It's up to the Disciplinary Counsel to decide whether to continue the investigation or stay it pending the application to the Supreme Court.

Q.   Okay.  And if the Disciplinary Counsel in its discretion decides that they want to complete that investigation while the application to resign is pending or completed, and that investigation concludes that there was no violation of the Code of Conduct, can that person petition the Court for reinstatement of their license?

MS. PFEIFFER:  Objection, spec -- asking the witness to speculate.

To the extent you're asking the witness to testify as to what the Ohio Supreme Court would do, objection as to that.

If you're asking the witness to give you

an answer as to your speculative facts as to the operation of the Rules, then he can answer to the extent he knows.

Q. Then please respond.

A. One thing I don't know from that last part of your question, Counsel, is: Are we to assume that the resignation was permitted by the Supreme Court, did they allow the resignation.

Q. No, I said whether they -- the question was whether the Supreme Court approved the resignation or not, can the person later re-apply for their license?

A. If they're -- it depends on how the resignation is officially characterized by the Supreme Court.

If the Supreme Court considers it as resignation with discipline pending, then the answer would be, no, they cannot seek reinstatement.

Q. Under what circumstances would they be considered for reinstatement under those set of facts?

MS. PFEIFFER: Objection. Answer if you can.

A. I can't answer that question. I don't know.

Q. When you say you don't know, are you saying you don't know because it's never happened before?

A.   I don't know what the Supreme Court would do in that situation.

Q.   Well, are you saying that because it hasn't come to the attention of the Court before to your knowledge, or is there some other reason?

A.   I mean, the Supreme Court considers these applications for resignation on a case-by-case basis.

Q.   Okay.  And as far as you know, has that particular set of facts come to the Court's attention in the past?

A.   I do not know.

Q.   Okay.  Now, let's go back to the categories of Sanctions.

What is a public reprimand?

A.   Well, it's not defined in the Rule, but the Supreme Court's decision imposing public reprimand are the best example of what a public reprimand is.

Q.   Okay.  I don't know if I understand your answer there.

Under the Rule is there a definition of a public reprimand?

A.   There is not within the Rules For the Government of the Bar, Rule V.

Q. And Rule V is the Rule that governs the Bar on that particular issue. Fair?

A. Rule V, Section 12.

Q. Is that correct?

A. Rule V, Section 12, is correct.

Q. Okay. Is a public reprimand listed in that section?

A. Yes.

Q. Okay. Do I understand you to say that it's not defined?

A. It's not defined.

Q. Okay. And it's your testimony that it is defined on a case-by-case basis from the Court and from the Court's rulings?

A. My testimony is: The Supreme Court cases embodying that listing public reprimand as a Sanction embodies what a public reprimand actually is.

Q. And in the cases that you've reviewed in preparation for your testimony here today, which one of those dealt with the definition of a public reprimand?

A. None of them.

Q. Okay. So in order to get a definition of a public reprimand we have to go to the cases of the

Supreme Court, that's what you're telling me.

Fair?

A. Yes, the Court speaks through its decisions.

Q. Yeah, right.

Okay. What is a suspension as a Sanction?

A. Again, it's not specifically defined other than it states in the Rules a suspension is a suspension from the practice of law for a period of six months to two years.

Q. Well, what determines whether a suspension is going to be six months or two years or something in between?

A. That's in the discretion of the Supreme Court.

Q. Now, in the Rule, of course, there is a -- there are limits. And when I say limits, if you're suspended from the practice of law it says what you can and cannot do.

Fair?

A. I don't believe that's in the Rule.

Q. Well, if you're suspended from the practice of law you can't practice law, right, during the period of that suspension?

A. Correct. But it's the order of the Court that dictates what they can and cannot do during the

Page 34

suspension.

Q. Yeah. And they also have a suspension and they have a stay also that they institute on occasion; correct?

A. Correct.

Q. And how is that defined?

A. A stay is not defined. But if I can add, it means that part of the suspension doesn't actually prevent the attorney from practicing. It's a portion of the two-year suspension.

For example, let's say if the stay is one year, then the actual suspension where they cannot practice is one year.

Q. All right. Say that again now. I'm not sure I followed that.

A. So if someone receives a two-year suspension with a one-year stay, they only serve one year of actual suspension where they are not permitted to practice law.

Q. Yeah. What is indefinite suspension?

A. Well, Section 12(A)(2) I believe defines that type of suspension.

Q. What does that say?

A. It's a suspension from the practice of law for an indefinite period subject to reinstatement as

provided in Section 25 of the Rule.

Q. So in general what does Rule 25 tell us?

A. Section 25(A), "An attorney may petition for reinstatement two years after the entry of the order suspending the petitioner from the practice of law for an indefinite period."

Q. Anything further on that?

A. If that petition is denied then they have to wait two more years.

Q. It used to be that you could only apply once.

Am I correct on that, when you have an indefinite suspension?

A. I'm not familiar with a prior version of the Rule that said that.

Q. Oh, okay.

But an indefinite suspension now, you can at least apply for reinstatement after two years.  If you're denied, then you have to wait another two years.

Fair?

A. Correct.

Q. Is that right?

A. Correct.

Q. Okay.  And what happens then if you're denied that second time?

A.    I'm not sure I've seen a scenario where someone's been denied a second time.  So I don't know.

Q.    Well, is there any -- anything in the Rule that says you cannot apply again after the second time?

A.    There is not.

Q.    Is there anything in the Rule that tells us what the consideration is for reinstatement after indefinite suspension?

A.    In Section 25(D)(1) there's several prerequisites for reinstatement.

Q.    Now, is that D or B?

A.    D, as in dog.

Q.    Okay.  And generally what does that say?

A.    I don't know if I can answer it in general.  I think there's seven subsections.

Q.    Are any of those subsections, do they talk about rehabilitation?

A.    They do not.

Q.    Well, let's go through each one of them, if we could.  And start with -- you say there's seven of them.  Let's start with Number One.

         What does that say in general?

A.    The petitioner has to have made the appropriate restitution that's been ordered.

Q.    Okay.

Page 37

A.  D(1)(B) says, "They have to possess all the mental, educational and moral qualifications that were required of an applicant for admission to the practice of law at the time of his or her original admission."

Q.  Now, you say mental, education, and you said moral?

A.  Mental, educational and moral qualifications.

Q.  And that's compared as to when they first were -- first received their license?

A.  I'm not sure I understand the question.

Q.  That last comment that you read said something about consistent with their original application or original education.

A.  Correct.  When they were first admitted to the Bar, whatever mental, moral and educational requirements there were then, they also need to meet those upon petition for reinstatement.

Q.  Okay.  What does that mean in practicality?

A.  None of that is defined, per se.  I think you can take the plain meaning of those words as what they mean.

Q.  Well, before we take the Bar generally there's a committee, isn't there, that interviews the applicant to see if they make a recommendation as

Page 38

to whether they are fit educationally and morally to become a lawyer?

A. Correct. There's a Character and Fitness Committee.

Q. Do you know if that's what they are talking about?

A. That would be my read of that particular rule, yes.

Q. Okay. What's Number Three then?

A. "Complied with the order of suspension, including the payment of restitution."

Q. Well, I thought that was Number One.

Is that stated again or is that different?

A. Number One specifically says, D(1)(A) says, "The petitioner has made appropriate restitution to the persons who were harmed by his or her conduct."

Q. What does Number Three say?

MS. PFEIFFER: I'm going to -- hold on just a second, I'm going to object.

Let me let you know, I believe, and he is doing it, he's reading the Rule. He's sitting here reading the Rule. So if you have the Rule, it's Rule 12(D)(1)(A), (B), (C). So he's reading Number C.

Is that what you -- if you have the Rule

you could follow it, if you're asking him to read the rule.

MR. GILBERT: Well, Counsel, again, if you have an objection, that's fine, you know. I think you're going overboard in terms of for the Rules in your objection. Okay?

He said there were seven categories. I'm going through those seven categories. Okay?

MS. PFEIFFER: You're saying numbers. But you've asked him to read it and they are letters. So I'm just trying to let you know what he's doing, so if you want to follow along you could maybe use the letters, too.

MR. GILBERT: Thank you, Counsel, but I don't think I need your help. Okay?

Q. Number Three, could you state that again, please? And hopefully we won't get interrupted and it won't take up time. Go ahead.

A. D(1)(C), "The petitioner has complied with the order of suspension, including the payment of restitution."

Q. Okay. What's Number Four?

A. D is, "The petitioner has complied with the continuing education requirements of Gov. Bar Rule 10."

Q. Okay. I'm familiar with that.

Go ahead, what's Number Five?

A. That, "The petitioner has completed a term of probation, community control intervention in lieu of conviction or any other Sanction imposed as part of a sentence for a felony conviction."

Q. Okay. What's Number Six?

A. (F), that, "The petitioner is now a proper person to be readmitted to the practice of law in Ohio notwithstanding the previous disciplinary Sanction."

Q. Is that the same thing in your interpretation as rehabilitated?

MS. PFEIFFER: Objection. Again --

Q. Go ahead, sir.

MS. PFEIFFER: No, let me make my record, Mr. Gilbert.

I'm objecting to the extent that you are asking him as a representative of the Court, the Supreme Court Ohio, he is here on behalf.

To interpret these Rules that you have just asked him to read into the record would be asking him to speak to the Supreme Court's judicial mental process, and also to talk about and represent them in this deposition, which the

only way they speak is through their decisions.

So I'm going to ask him not to answer that question.

MR. GILBERT:  Okay.  And we'll note that for another excerpt.

(Request for excerpt of deposition was hereby noted.)

Q.   What's Number Seven?

A.   I'm sorry, there's six.

Q.   Okay.

A.   A through F.

Q.   Is there anything that specifically says rehabilitation?

A.   The Rule speaks for itself.  And there is nothing in the Rule about rehabilitation.

Q.   Now, I'd like to go through a couple things with you, Mr. Asbury.

If there is a complaint in regards to a lawyer violating the Rules governing lawyer conduct, I'd like for you to walk me through what your understanding is as to the procedure.  I'd like to walk through that procedure.  Okay?

Let's assume that the complaint comes directly to the Supreme Court.  Procedurally what happens to that complaint?

Page 42

How does that progress through the process?

A. Well, no complaint comes to the Supreme Court.

Q. All right.  And it comes through your department; correct?

A. A complaint is filed with the Board of Professional Conduct.

Q. Right, which is where you work, right?

A. Correct.

Q. So, I mean, a citizen can file a complaint or send a complaint to the Supreme Court.  The Supreme Court would send it to your office for follow-up.
Fair?

A. Incorrect.

Q. Oh.  Then what would happen then?

A. Citizens don't file complaints.

Q. Oh, well, I guess a number of my clients have.  So I don't know.
I mean, if someone sends a complaint to your address, what happens to that complaint?
They are saying I'm complaining about X lawyer and I don't think I was treated right, or the lawyer did me wrong, or whatever, what happens to that?

A. Well, you're using the wrong terms as provided in

Rules For the Government of the Bar.

Q. But, Mr. Asbury, a regular citizen doesn't know what particular terms to use other than he has felt that he or she was done wrong.

I'm just asking you, do you just throw it away or do you put it in some type of file, or what do you do?

What's the magic word there?

A. Let me help you.

Q. All right.

A. Anyone can file a grievance with the Office of Disciplinary Counsel or a Certified Grievance Committee.  That's the term of art in the Rule.

Q. Well, and you've got -- I'm sorry, go ahead.

A. I finished my statement.

Q. Okay.  So we have a number of Certified Grievance Committees around the state with the local Bars.

Fair?

A. Correct.

Q. Okay.  And some of those Certified Committees, which I was a Chair in this community for a number of years, we would take the complaint and we'd send it down to Columbus if we had a conflict.

Fair?

A. Well, do you mean a grievance?

Q.   Yeah, you can call it a grievance.  Okay.

A.   When you say sending it to Columbus, I'm not sure I know what you mean by that.

Q.   Okay.  Send it to your Professional Conduct.

A.   We don't receive grievances and have no mechanism to receive grievances.

Q.   Okay.  So if there is a conflict with a local Bar or Committee, where is it supposed to go then?

A.   You can ask for the governance to be transferred to another Certified Grievance Committee or the Office of Disciplinary Counsel.

Q.   Let's say it goes to the Office of Disciplinary Counsel.

A.   Okay.

Q.   What happens then?

A.   Well, I'm not representing the Office of Disciplinary Counsel, so I'm not 100 percent familiar with all of their different processes and procedures when processing a grievance.

Q.   Okay.  Then let me do it this way.

How did Mr. Terry's situation, which you say you reviewed that file, how did that go through the process?

A.   I reviewed the Supreme Court's decision, I did not review his file.

Page 45

Q. Okay. All right.

Now, does the Office of Disciplinary Counsel do any investigation as you understand it?

A. They do have authority under the Rules for the Government of the Bar to conduct investigations.

Q. All right. Well, you tell me how that -- I'm not sure I understand how it works with your -- how the Office of Disciplinary Counsel coordinates with the Office of Professional Conduct.

How do those two offices work?

A. Well, the Office of Disciplinary Counsel, if they determine that they want to file a complaint with the Board of Professional Conduct based upon their investigation of the grievance, they are permitted by the Rule to file a complaint with the Board of Professional Conduct.

Q. Okay. And your Board of Professional Conduct, once it gets a grievance or complaint from whatever source, what do you do?

A. When we receive a complaint it's assigned to a Probable Cause Committee made up of three Commissioners of the Board.

Q. Now, do you just call it a complaint at that time or a grievance?

A. Anything we receive we call a complaint.

Page 46

Q. Oh. So it's a grievance when it first starts out and becomes a complaint when you get a hold of it, is that the way it goes?

A. Yes.

Q. Okay. Now, it goes to a three-person committee. And then these three persons generally are not in the general area that the lawyer practiced in terms of geographical area.

Fair?

A. That is correct.

Q. All right. And who appoints these three people?

A. Well, the Chair of the Board determines which members of the Board will serve on a Probable Cause Committee.

Q. Now, these three people, are they part of the Board of Commissioners?

A. They are.

Q. Okay. What is the Board of Commissioners?

A. The Board of Commissioners are 28 attorneys, judges and lay people that are appointed by the Supreme Court of Ohio.

Q. And they are sort of all over the state, right?

A. The Rule dictates how many Commissioners come from each district in Ohio, each appellate district.

Q. All right. Now, that Three-Person Panel, they are

Page 47

Q. the Panel that actually hears the case for a complaint, is that fair to say?

A. That first Three-Person Panel determines whether or not there's probable cause to certify the complaint.

Q. Yeah, you're right, probable cause.  And then the complaint is what you call certified.

And then what happens?

A. The complaint is certified or not certified in all or in part.  And if there's anything that remains after the Probable Cause Committee has looked at it, it will be assigned to a Hearing Panel of three Commissioners.

Q. Now, just so I understand, is certification and probable cause, are those two different steps?

A. The purpose of the Probable Cause Committee is to certify the complaint to the Board.

Q. Oh, okay.

A. They can deny probable cause and the complaint doesn't go any further.

Q. Okay.  After the complaint is certified, what happens then?

A. It's assigned to a Hearing Panel of three Commissioners.

Q. Now, are these Commissioners, these hearing

persons, again part of the Board?

A.  They are.

Q.  Excuse me?

A.  Yes, they are.

Q.  Okay.  Now, is that when the hearing is held?

A.  They will eventually conduct the hearing, yes.

Q.  Okay.  And that's sort of like a mini trial, would that be fair to say?

A.  I don't know what you mean by mini trial.

Q.  Well, they take testimony, right, under oath?

A.  It is an Evidentiary Hearing.

Q.  All right.  And then they would record that through a court reporter.

Fair?

A.  Correct.

Q.  They would take witnesses.

Fair?

A.  If needed, yes.

Q.  They would have documents; correct?

A.  They do admit exhibits.

Q.  And then they would, after they have that hearing, they would then issue a recommendation; is that fair?

A.  They write a Panel Report and recommendation to the Board, yes.

MR. GILBERT:  Okay.  Steve, that's the report that I've been asking for.  Okay?

I got something from you and Greg today. And that's what I've been asking for, okay, that report of that Panel.

MR. TABATOWSKI:  Greg identified where that report is by the Bates Number in his last email to you.

MR. GILBERT:  Yeah, it's not there. It's not there, okay?  It's not there.

These -- and I'll get to that in a minute.

MR. TABATOWSKI:  (Inaudible) identified in the email.

Q.  Okay.  So, Mr. Asbury, the panel, Three-Person Panel issues a report to the Board of Commissioners; correct?

A.  Correct.

Q.  The Board of Commissioners then would do what?

A.  Then the matter is scheduled for one of the six Board meetings that are held each year.  And the Board will then deliberate on the Panel's Report and recommendation and vote on it.

Q.  And they need -- I'm sorry, did you say something else?

Page 50

A.  They deliberate and vote on the Panel Report.

Q.  Okay.  And, I'm sorry, I interrupted you again?

A.  They vote on whether to accept the report.

Q.  All right.  This Board of Commissioners, they can agree with the conclusion of the Panel or not agree with it; correct?

A.  Correct.

Q.  And then the Board of Commissioners prepares a report to the Supreme Court; is that correct?

A.  A report for recommendation, yes.

Q.  Okay.  So the Three-Person Panel is totally different from the Board of Commissioners, correct, in terms of their consideration of the complaint?

A.  Correct.  But the Panel does also participate in the voting and deliberation of the report before the Board sends it to the Court.

Q.  And is that a majority vote?

A.  Yes.

Q.  Okay.  And that recommendation is then submitted to the Supreme Court and the Supreme Court does what they do, right?

A.  Correct.

Q.  Okay.

        MS. PFEIFFER:  Mr. Gilbert, I don't mean

Page 51

to interrupt your flow, but we've been going for more than an hour.  Would mind if at some point when you transition to another subject, can we take a break?

MR. GILBERT:  Yes, we can.  Give me just one second, okay?

Q. Does the Board of Commissioners make a presentation to the Supreme Court or do they just submit the report?

A. No presentation, we just submit the report.

Q. Okay.  So you don't -- at that point no one from the Board of Commissioners actually appears before the Supreme Court and gives a summary or a recommendation orally?

A. Correct.

MR. GILBERT:  Okay.  Then let's take -- do you want to take five minutes?

MS. PFEIFFER:  Yes, please.  Thank you.

(Recess taken.)

MR. GILBERT:  Back on the record.

Q. Mr. Asbury, are you all right?

A. Okay.

Q. Can you hear me okay?

A. I can.

Q. Okay.  Mr. Asbury, you had talked about the

Page 52

Disciplinary Counsel under Rule V giving a sealed document to the Supreme Court in regards to I think it was a scenario where a person resigned pending discipline.

Do you recall?

A.   I do.

Q.   Okay.  Now, am I correct, was that under Rule V?

A.   I went through Rule V and I couldn't find an exact Rule governing that process.  And my suspicion is it might be in another Rule For the Government of the Bar, but I'm not certain.

Q.   Because I couldn't find that either.

But do you know what the criteria is for the -- or is there any criteria that the Disciplinary Counsel uses as to whether they want to submit a sealed report to the Supreme Court?

A.   I don't know of any of the criteria, no.

Q.   Do you know of that being done on occasion?

A.   Filing a report?

Q.   A sealed report to the Supreme Court.

A.   Every time an attorney files for resignation, Disciplinary Counsel files a sealed report as to whether or not the Supreme Court should accept that resignation.

Q.   Do they do that automatically or they only do that

when there's a complaint pending or a grievance pending?

A.   I don't know for certain.

Q.   Now, sealed to me means that it's confidential; is that fair?

A.   Well, yes, but it also means that it's not available in the Court file or on the public docket.

Q.   I guess the bottom line is:  The attorney that is resigning, is he aware of this, the contents of this sealed document?

A.   I don't know.

Q.   That would not be in your Department of Professional Conduct?

A.   Correct, it's not in our department.

Q.   If I want to know the answer to that question other than going to the Court, is there another -- is that the Disciplinary Counsel that I would need to talk to about that?

A.   To the extent that they can testify about it, yes.

Q.   Well, okay.

Now, there's another category, isn't there, Mr. Asbury, where the Court will suspend a lawyer pending further action to protect the public?

Page 54

A.    I'm not sure I heard your entire question or understand it.

Q.    Okay.  I apologize.

Isn't there a process where the Court would suspend a lawyer even though a grievance or a complaint had not been filed in order to protect the public?

A.    Yes.

Q.    What is that called?

A.    There's an interim felony suspension.  There's an interim remedial suspension.

Q.    I'm sorry.  I'm sorry, let me make sure I get this.

Can you start over there, please?  Start that over, please.

A.    There's an interim felony suspension on conviction of a felony.  There's an interim remedial suspension.  Bear with me, there's one more.  An interim suspension for default under a Child Support Order.

Q.    Now, is that in the Rule as well?

A.    It is Section 18 and Section 19.

Q.    And am I correct that these interim suspensions are done to protect the public?

A.    Generally speaking, yes, with the exception of

maybe the child support.

Q. Now, in the Rule does it specifically talk about protecting the public under these interim suspensions?

A. I'm checking. I don't know after reviewing the Rule.

Q. Isn't that one of the -- or you tell me, I could be wrong -- is that one of the new rulings that came out in 2007 when there was an amendment of the Rules, or was that in before that?

A. The interim suspension?

Q. Yes.

A. I don't know the answer to that.

Q. Okay. Now, you know in McCafferty's case, in her case she was suspended, interim suspension.

Do you recall that?

A. I don't recall that specifically, but the Court's decision would weigh that out.

Q. And do you remember that being done in the Terry case as well?

A. That I believe I recall.

Q. Okay. Do you recall -- well, are those the only three interim suspensions that you have there under Rule 18 and 19?

A. 18 and 19, yes.

Page 56

Q.    Okay.  Did I miss anything?

Are there any other interim suspensions that the Court has issued?

A.    Not to the best of my knowledge.

Q.    Now, we talked about -- well, let's stay on this interim suspension for a moment.

When are the -- when is the interim suspension lifted in regards to a felony or remedial?

A.    I didn't catch the first part there.

Q.    Yeah.  What does the Rule say about how long these interim suspensions last?

A.    The Rules speak for themselves, but I don't see a temporal limitation.

Q.    Now, there are occasions where the -- let me withdraw that question and let me put it this way:

Are there occasions where the Supreme Court will on its own issue a grievance or a complaint against a lawyer?

A.    I have no knowledge of that.

Q.    Okay.  Now, I would like to go to another area.

If a person receives an indefinite suspension, we've gone through that they can apply for reinstatement after two years.  If it doesn't work they can apply for reinstatement two years

after that.

Is there anything in the Rules that you're aware of that gives an outline on what must be shown in order to be reinstated from an indefinite suspension?

A.     In the Rules, no, other than what we talked about earlier, the requisites for reinstatement in 25(D)(1).

Q.     Is that those six points that we talked about?

A.     Correct.

Q.     And in going back through that, I think we had agreed that rehabilitation was not a category that was laid out in 25(D)(1).  Fair?

A.     It is not laid out in 25(D).  However, I stand corrected when you asked me the question of whether or not it was in the Rule, the word rehabilitation is used in Division E.

Q.     Is that 25(E)?

A.     25(E).

Q.     And what does that deal with, 25(E)?

A.     Sorry?

Q.     I'm sorry?

A.     What does it say?

Q.     Yeah, what does that deal with?

We talked about 25(D)(1).  What is

25(E), what category is that dealing with?

A.  25(E) is titled, "Petition For Reinstatement Referred to the Board."

"Unless denied... the clerk shall forward five copies of the petition to the Director... the Board shall conduct a hearing... and take and report evidence relevant to the rehabilitation of the petitioner and his or her possession of all mental, educational and moral qualifications required of an applicant for admission to the practice of law in Ohio at the time of his or her original admission."

Q.  Now, are you aware of any studies that would identify whether a person should receive -- I'll start with this first -- a suspension or a reprimand based on a complaint or a grievance?

A.  I'm not sure what you mean by studies.

Q.  All right.  We know that in 2007 there was an amendment of the Rules.  We talked about that, right?

A.  Yes.

Q.  Remember that?  Do you recall that?

A.  Yes.

Q.  Okay.  Are you aware of any studies or any information that was given to the Court in regards

to whether a person should receive any type of discipline for offenses?

A. I'm not aware of any studies of that nature.

Q. Are you aware of any studies that highlight whether a person should be considered for reinstatement after being disbarred?

A. Studies sent to who, just in general?

Q. Well, let's start with in general.

A. I'm not aware of any studies to that regard.

Q. Are you aware of any -- and I can't really say anything more than studies because I've seen some reports that concentrated on facts and circumstances, which I call studies, as to why a person should be considered for reinstatement after being disbarred.

Are you familiar with any of those reports?

MS. PFEIFFER:  Objection, vague, as to the use of the word report in conjunction with studies.  He can answer to the extent that he knows.

A. You're talking about any jurisdiction?

Q. Yeah, any jurisdiction.  I'm just talking about in general, any studies, reports, that have analyzed why a person should be considered for

reinstatement after being disbarred?

A.    I am not.

Q.    Okay.  I thought you said you looked at the complaint in this case.

A.    I did, but the complaint is not a study.

Q.    Well, did you see the exhibits that were attached?

A.    I'm not certain exhibits were attached to what I looked at.

Q.    Okay.  Are you aware of any studies, any information, any facts that have been provided to the Supreme Court in regards to why a person should be considered for reinstatement even though they have been disbarred?

A.    I am not.

Q.    Has the Ohio Supreme Court ever submitted to you a request to secure any such studies or reports to determine whether persons that were disbarred should be considered for reinstatement?

            MS. PFEIFFER:  Objection.  And based on the judicial mental process privilege I'm instructing the witness not to answer.

            MR. GILBERT:  Note that for an excerpt.

                (Request for excerpt of deposition was
                 hereby noted.)

Q.    Are you aware of any information, any information

Page 61

at all that would suggest that a person that has been disbarred from the practice of law in Ohio cannot be reinstated due to public safety?

MS. PFEIFFER: Objection. Don't answer, please.

Objection. Again, are you asking this question to Allan Asbury, the Assistant Director, or are you asking him on behalf of the Ohio Supreme Court?

Again, he is here on behalf of the Ohio Supreme Court. To the extent that invades on the judicial mental process privilege I'm instructing him not to answer.

And, also, if you're asking him if Allan Asbury has ever received anything, again, that is beyond the scope of this deposition and he need not answer.

MR. GILBERT: Note that for an excerpt, but I'm going to state the question again.

(Request for excerpt of deposition was hereby noted.)

Q. Mr. Asbury, you understand that you're here as a 30(B)(6) witness speaking for the Ohio Supreme Court in this case; correct?

A. I do.

Page 62

Q.    I didn't hear you.

A.    I do.

Q.    Okay.  In your status as a 30(B)6 witness, are you aware of any information from any source that would indicate that a person who has been disbarred from the practice of law in the State of Ohio could not be, should not be reinstated as a lawyer in the State of Ohio due to public safety issues?

          MS. PFEIFFER:  Objection.  I'm asking the witness not to answer based on the same objections I just made.

Q.    Mr. Asbury, are you aware of any information at all that would even suggest that an individual that's been disbarred from the practice of law in Ohio should not be reinstated as a lawyer even though he had been rehabilitated?

          MS. PFEIFFER:  Objection.  Same reasons as I've stated before.  I'm telling the witness not to answer.

Q.    Mr. Asbury, are you aware of any information that Mr. Steve Terry would be a danger to the public safety of the state if his license were rehabilitated -- I should say if his license was reinstated?

MS. PFEIFFER: Objection. I'm making the same objections that I've been making the last three or four questions. I'm instructing the witness not to answer based on those objections.

Q. Mr. Asbury, are you aware of any information that would indicate that Mr. Terry should not be given his law license back after being disbarred as a result of any allegation that he was not rehabilitated?

MS. PFEIFFER: Objection. Same reasons. Don't answer, please.

Q. Mr. Asbury, are you aware of facts or data that disbarred persons from the practice of law in Ohio cannot be rehabilitated or would continue to be a danger to society?

MS. PFEIFFER: Are you asking him to answer for the Court just in general?

Q. Again, I'll state the question again, Mr. Asbury.

Mr. Asbury, you understand you are here as a witness 30(B)6 for the Court; correct?

A. Correct.

Q. And it's my understanding that you've been testifying as such so far today; correct?

You understand that; correct?

A. I do.

Q. Okay. I'm going to break this question up and you let me know if you don't understand it.

Are you aware of any facts or data that disbarred persons from the practice of law in Ohio cannot be rehabilitated?

MS. PFEIFFER: You can answer that one.

A. Well --

Q. I can't hear you.

A. I'm thinking. The fact is a disbarment doesn't consider whether or not somebody can be rehabilitated under the Rules. Disbarment is permanent.

Q. I don't want to interrupt you. Are you done?

A. I'm done.

Q. Okay. Unfortunately that's not my question, Mr. Asbury. I'll ask it again.

Are you aware of any facts or data that a disbarred person cannot be rehabilitated?

MS. PFEIFFER: And, again, are you asking him with regard to generally or in a certain case?

MR. GILBERT: Again, Mr. Asbury is here as a 30(B)6 witness. And I'm asking him as a 30(B)6 witness that question. And I will say it again.

Q.    Mr. Asbury, are you aware of any facts or data that a disbarred person from the practice of law cannot be rehabilitated?

MS. PFEIFFER:  And it's been asked and answered, Mr. Gilbert.  We've asked you to clarify.  You continue to say the same thing.

He has answered your question.

MR. GILBERT:  Well, he has not.  He just tried to answer, but it wasn't the question that was asked.  He wasn't answering the question I posed.

Q.    Now, can you answer that question, Mr. Asbury?

MS. PFEIFFER:  I'm instructing my witness that he can -- if you are asking it in a general sense.  But if you're asking it with respect to any one particular individual whether or not the Supreme Court received information in a case regarding one particular individual, I am going to instruct him not to answer.

If your question is just in general whether or not there is information that people in general that have been disbarred are rehabilitatable, I believe that he can answer whether or not he knows if the Ohio Supreme Court has ever received that kind of general

information.

MR. GILBERT: Are you done?

Counsel, are you done?

MS. PFEIFFER: I'm done.

A. I don't think so.

Q. Okay. Then I'm going to ask it two different ways, Mr. Asbury.

First of all, your lawyer is going to let you answer it one way and I'm going to ask it -- answer it one way and I'm going to answer it -- or ask you rather, both ways.

First of all, as a professional, as a person working in the field that you're in, are you aware of any facts or data that disbarred persons cannot be rehabilitated?

Can you answer that?

A. I do not.

Q. Okay. Now, as a 30(B)6 witness I'm asking you, are you aware of any facts or data that disbarred persons cannot be rehabilitated?

MS. PFEIFFER: Same objection. He can answer if he knows.

A. I do not.

Q. Are you aware as in your business, speaking as a professional in your business, any facts or data

that a disbarred person from the practice of law in the State of Ohio would be a danger to society if their license were reinstated?

MS. PFEIFFER:  Same objection as before. He can answer if he knows.

A. Can you repeat the question, please?

Q. The question is:  Are you aware of any facts or data that a disbarred person in the State of Ohio would be a danger to society if their license were reinstated?

A. I do not know.

Q. And as a 30(B)(6) witness are you aware of any facts or data that a disbarred person in the State of Ohio would be a danger to society if their license was reinstated?

MS. PFEIFFER:  Same objection.  He can answer if he knows.

A. I do not know.

Q. Have you been ever asked in a professional capacity to find out the answers to those two questions?

A. I have not.

Q. Now, in your capacity dealing with professional conduct, do you review issues of conflict of interest?

A.    I do.

Q.    I didn't hear you.  Say that again.

A.    I do.

Q.    Okay.  Did you review the Marc Dann discipline?

A.    For today, no.

Q.    But you'd say you're generally familiar with it, right?

A.    I am.

Q.    I would like to pull up a series of pages and I'm going to go through them with you.

The first page is Supreme Court of Ohio Bates Stamp 0011.  We're going to try to get that as big as we can.

(Supreme Court of Ohio Bates Stamp 0011 was referenced.)

Q.    Can you see that?

A.    No.

Q.    I can't hear you.

A.    No.

MR. GILBERT:  He said, no, he can't see it.

Q.    Can you see it now?

A.    I can.

MR. GILBERT:  Keep it there, the first paragraph.

Page 69

A.   Not now.

MR. GILBERT:  Make it bigger.

(Discussion had off the record.)

Q.   Can you see it now, Mr. Asbury?

A.   Yes.

(Discussion had off the record.)

Q.   Do you see that is Disciplinary Counsel versus Marc Edward Dann?  Do you see that?

A.   I do.

Q.   Okay.  And the next to the last sentence in the first paragraph says, "Marc Edward Dann be suspended from the practice of law for a period of six months."

Do you see that?

A.   Yes.

Q.   And that is a -- it appears to be a Supreme Court Order.

Would that be fair to say?

A.   Yes.

MR. GILBERT:  Okay.  Turn to Page 0050.

(Supreme Court of Ohio Bates Stamp 0050 was referenced.)

Q.   Now, that is another Order from the Supreme Court.

Do you see that?

A.   You can load up one more increment.  Thank you.

Page 70

Q.    Okay.  Now, that's dated June 11, 2013.

A.    Yes.

Q.    Okay.  And that is a reinstatement of his license, do you agree?

      The next to the last paragraph, "Therefore, it is ordered by the Court that the Respondent is reinstated to the practice of law in the State of Ohio."

      Do you see that?

A.    I can't because you have a -- I can't see the scroll.  Okay.  Yes, I see that.

Q.    Okay.  Now, I'm going to go to how we get to that.

      MR. GILBERT:  And I would like to go to 0093.

      (Supreme Court of Ohio Bates Stamp 0093 was referenced.)

      MR. GILBERT:   Well, first, I should back up to 0091 so we'll know where we are with this document.  0091.

      (Supreme Court of Ohio Bates Stamp 0091 was referenced.)

Q.    Okay.  Now, Mr. Asbury, that's a report of the Board of Commissioners On Grievance and Discipline.

      Do you see that?

A.    I do.

Q.    Okay.  And that's the Board we've been talking
      about earlier.  Fair?

A.    Correct.

Q.    All right.  This Board talks about the Panel
      that -- and they have the three Panel Members
      there and they have the Chair there in that first
      sentence.  And they say that a hearing was had on
      November the 3rd, 2011.

             Do you notice that?

A.    Can you increase it one increment?  Thank you.

Q.    Do you see that?

A.    Yes.

Q.    This matter was heard on November the 3rd, 2011,
      and they go on and they name the three Panel
      Members.

             And that's the process we talked about
      earlier, right?

A.    Correct.

Q.    Okay.  And it's my understanding from your
      previous testimony that the Panel would hear
      testimony, take the documents, and do a report.

             Fair?

A.    Hear testimony, admit exhibits and file or create
      a report and recommendation to the Board.

Page 72

Q. Right. And this particular item here says that this Board did, in fact, do their work and that they did submit a request of probable cause to the Board.

Fair?

A. I'm not sure I understand your question.

Q. Well, okay, I'll just try to speed this along in the sense that -- from this document from what you can see, it was a hearing conducted on November 3rd, 2011, in Cleveland, Ohio. There are three persons appointed.

And they did on April the 4th -- 14th rather, of 2011, the Hearing Panel was assigned to this matter. And evidently there was a hearing and there was a report.

You know that; correct?

A. Yes.

Q. Okay. And as you recall, you said the Panel would make a recommendation, right?

A. Right.

MR. GILBERT: Okay. So go to Page 0093. Let's move it up just a little bit. Keep it large. There we go. That's good.

(Supreme Court of Ohio Bates Stamp 0093 was referenced.)

Q.   Can you see that, Mr. Asbury?

A.   Yes.

Q.   It says here, "Respondent served as Ohio Attorney General from January the 8th, 2007, to May the 14th, 2008."

Do you see that?

A.   Yeah.

Q.   Okay.  And would that in your mind be a public figure?

A.   I mean, this is a decision of the Board of Professional Conduct.  It speaks for itself.  The Board speaks through its report.

Q.   Well, wait a minute.  You know that Ohio Attorney General's office is a public office, don't you?

A.   Yes.

Q.   Okay.  So you would know that this was a -- he would be a public figure, wouldn't he?

MS. PFEIFFER:  Objection.  Are you asking -- you're asking Allan Asbury what he thinks?

Q.   I mean, you would agree, Mr. Asbury, that Mr. Dann was a public figure when he was Ohio Attorney General?  I mean, that's not so hard, is it?

MS. PFEIFFER:  Well, I think it's, like he said, the report speaks for itself.  The Court

speaks through its decisions.

MR. GILBERT:  Counsel, you're going way overboard on your objections now.  And, you know, I'm going to -- I'll have to petition the Court.

Now, I'm just asking him a straight-up question.

Q.    Would the Ohio Attorney General be a public figure in your mind?

MS. PFEIFFER:  And he is not here as Allan Asbury, an individual.  He's here representing the Ohio Supreme Court.

Q.    Okay.  As the Ohio Supreme Court 30(B)6 witness, would you say that, Mr. Asbury, would you say the Ohio Attorney General is a public figure?

MS. PFEIFFER:  Mr. Gilbert, I'm making an objection.  Do not ask him questions while I make objections.

MR. GILBERT:  Look --

MS. PFEIFFER:  I'm instructing him not to answer because (inaudible.)  He cannot opine, as the Court he cannot opine further on its decision.  He cannot opine further on the Board of Commissioner's opinion.

Q.    Okay.  Mr. Asbury, we're going to go to Number 0094.

Page 75

(Supreme Court of Ohio Bates Stamp 0094 was referenced.)

Q.   Now, at the top of that page it says that this guy, Dann, used his committee, campaign committee, to make payments to -- illegal payments of some $30,000.

Do you see $30,000 there?

A.   I do.

Q.   Okay.  Now, it also goes on and talks about him travelling on a private jet and using financial -- his finance committee to pay for those trips.  And it says here that he was charged criminally for ethical violations.

(Supreme Court of Ohio Bates Stamp 0099 was referenced.)

Q.   Now, on Page 0099 there are certain recommendations that are presented in regards to Mr. Dann's Sanctions.

And I'm going to try to move ahead and go to Page 001 -- 00 -- 0100.

(Supreme Court of Ohio Bates Stamp 0100 was referenced.)

Q.   Now, the recommendation of the Panel according to this document was a six-month suspension.

Did you ever become aware of that in

Page 76

your capacity with the Board?

A.    This case was prior to my tenure.

Q.    Okay.  The recommendation from this Board to the Ohio Supreme Court, according to Page 0100, is that he be given a six-month suspension from the practice of law.

But I want to go back to 0099.  Now, in the middle of that page -- go in just a little bit -- it says, "As a consequence of his criminal conduct Respondent cannot hold office for seven years."

Then it goes on and it says, "In the opinion of this Panel that poor judgment is not an aggravating factor."

Now, as a 30(B)6 witness are you aware of there being aggravating factors and mitigating factors?

MS. PFEIFFER:  Objection.  Are you asking him to review this document that you have put up on the screen?

MR. GILBERT:  No, I'm just asking him a basic question.

Q.    Are there mitigating and aggravating factors that are considered in discipline?

MS. PFEIFFER:  Objection.  Vague,

Page 77

overbroad.

Q.   Go ahead and answer.

A.   Yes.

Q.   Okay.  Now, Mr. Asbury, were you aware that after the Court reinstated Mr. Dann's license that he then held a fundraiser for the Supreme Court Justices?

A.   I'm not aware of that.

Q.   Now, if that occurred on more than one occasion after he was reinstated, his license was reinstated, does that raise any ethical concerns in your mind?

        MS. PFEIFFER:  Objection.  And based on the judicial mental process privilege this is outside the scope of the deposition.  The Court speaks through its decisions.

        I'm instructing him not to answer.

        MR. GILBERT:   Note that as an excerpt, please.

        (Request for excerpt of deposition was hereby noted.)

Q.   Let's go to Page 0144.

        MS. PFEIFFER:  Mr. Gilbert, I would like to request that if you're going to continue to ask this witness to answer questions regarding this

Page 78

document, that you provide him with a full and complete copy.

I want the record to reflect that you have placed this up on the screen and you are showing him mere excerpts of a document.  He does not have access to the entire document.

I think it only fair that you provide him with the entire document if you are going to proceed to ask him questions about it.

MR. GILBERT:  These are your own exhibits, Counsel.  These are your own documents that you've Bates Stamped.  And I'm using Bates Stamped documents.

And I'm asking specific questions on certain areas of the document.  There is no reason to have that --

MS. PFEIFFER:  I've given you hundreds of documents.

This is your deposition.  You've called him to testify.  It is incumbent upon the attorney who is taking the deposition to provide full and complete copies of documents that you wish this deponent to talk about.

MR. GILBERT:  Well, you don't have --

MS. PFEIFFER:  We can take a break, if

you would like to send over the documents that you are asking this deponent to testify to so that he can have a complete copy.

MR. GILBERT: No, I'm not going to do that. We're going to continue on. I'm going to ask him specific items in the document, and this is only to verify certain issues.

I'm not going to provide any documents. I'm going through documents that are your documents.

(Supreme Court of Ohio Bates Stamp 0144 was referenced.)

Q. So I'm on Page 0144, Mr. Asbury. This is a -- would you note that for the record that this is an Order -- I should say recommendation before the Board of Commissioners of the Grievance of Discipline on Supreme Court of Ohio, Case Number 13-0939.

Do you see that, Mr. Asbury?

A. Yes.

Q. Okay. Now, it says here that this is dealing with a person by the name of Bridget Marie McCafferty.

Do you see that?

A. Yes.

Q. As I understand your previous testimony, you

reviewed this file before in preparation of your testimony; is that correct?

A.   I reviewed the Supreme Court's reported decision in the McCafferty matter.  I did not review the Board's report.

Q.   Okay.  This is the Board's report that is referenced in the Court Order.

Do you recall that?

A.   No.

MS. PFEIFFER:  Objection.  Again, you're showing him one half of a page on a screen and you're asking him to tell you what that document is.

For purposes of today if, in fact, those are Bates Stamped and you are saying to us today that these are documents that were given to you by the Attorney General's Office on behalf of the Supreme Court, we will stipulate that what we gave you is a true and accurate copy of what we gave you.

If you feel as though you need to verify that, if there's a Bates Stamp on it we can take a look at it.  And if there's authenticity issues we can work through those.

But insofar as today is concerned, if

Page 81

you're going to continue to ask him questions about this document I need you to send us a full and complete copy of it.

Q. Okay. We're on Page 0144, Mr. Asbury.

And according to this document, do you recall Ms. McCafferty being a judge in Cuyahoga County at any time?

MS. PFEIFFER: Objection. We're not going to answer any questions with regard to this document until we're given a full and complete copy of it.

Q. Okay. Let's then do this, let's go to the Court Order then, Mr. Asbury.

MR. GILBERT: And I object to your comments, Counsel, but I'm trying to get through this. And I think that you are being inappropriate in regards to this.

But I'm trying to get through it. And these are your documents. I'm just going through this. And we will do it a different way. But I think it's inappropriate what you're doing.

Page 0190, turn to that. Okay?

(Supreme Court of Ohio Bates Stamp 0190-0192 was referenced.)

Q. Now, Mr. Asbury, I believe you had indicated that

you had reviewed this document in preparation for your testimony here today, which is the Court -- the Supreme Court Order on McCafferty; correct?

MS. PFEIFFER:  Objection.  We need a complete copy of that.

You're asking him to identify a document that you don't even have the full document.

Q.  We have 10 -- Supreme Court document 0190 through 092.  And we'll run that through -- go ahead and go to 0190 to 092.  And you tell me, Mr. Asbury, if this is the document you reviewed.

A.  I did not review that document.

Q.  Oh, I thought you said you reviewed the Order.

A.  I reviewed the Supreme Court's decision in the McCafferty matter.

Q.  This is not what you reviewed then?

A.  It's not.

Q.  Oh, okay.  Then I'll be interested in what was the date of the Order you looked at?

A.  I looked at the reported decision of the Supreme Court of Ohio in Ohio State Bar versus McCafferty.

Q.  And this is not what you saw here today?

A.  No.  It was a, you know, 12 to 15-page decision.

Q.  All right.  Let's do it this way then, Mr. Asbury.

Were you aware that the decision that

Page 83

the Cuyahoga County Judge McCafferty had made commitments to two persons by the name of Russo and Dimora to do favors for them in cases that were -- two cases that were in her courtroom?

A. I'm only aware of what the Supreme Court's decision was and that's --

Q. I'm sorry?

A. In terms of facts regarding that case.

Q. All right. And those are some of the facts, wasn't it, that Russo and Dimora called her on two separate cases and she offered to give them favors in regards to the cases.

That's what this was about, wasn't it?

A. The decision speaks for itself. The Court speaks through its decision.

Q. Well, maybe so, but what was your understanding of what this was about based on hearing or reading that decision?

MS. PFEIFFER: Objection. Allan Asbury as an individual is not here testifying as to what he thinks the decision says. The decision is recorded. Everyone cab read it.

MR. GILBERT: Yeah, and he says he read it. And I'm asking him questions about it.

MS. PFEIFFER: So you're testing his

Page 84

memory as to what he remembers about the decision that he read.

MR. GILBERT:  Counsel, I'm not dealing with you.  I'm not debating this with you.  I'm asking questions here.

And if you want to give an objection, you give an objection.  But, again, I'm going to file a motion because you're way over, way over what you should be on depositions.  You're violating the Rules.

Now, I'm asking him a question in regards to this case now.  He said he's read it and I'm asking him specifics about it.

If he doesn't remember, he doesn't know, that's one thing.  But I have a right to ask him the question on this now.  He's a 30(B)6 witness.

MS. PFEIFFER:  He's a 30(B)6, sir.  I think there's a fundamental misunderstanding of what you're --

MR. GILBERT:  I'm not talking to you about that now.  Now, we're staying on this deposition.  We're not getting off on some argument with you.

MS. PFEIFFER:  I'm objecting as to --

Q.    Mr. Asbury, I'm asking you, do you recall this

case with McCafferty being about her giving favors to Russo and Dimora on two separate cases?

MS. PFEIFFER:  Objection.

Q.    Go ahead, Mr. Asbury.

A.    Well, I mean, if you're giving me a summary of what the facts are, I can't give you an answer because I'm not sure that that summary is accurate with the written decision reported by the Court.

Q.    Well, I'm asking you whether you recall that or not.

MS. PFEIFFER:  And I'm going to make an objection.

MR. GILBERT:  Okay.  Make your objection, that's fine.  Let me ask another question.

Q.    Mr. Asbury, were you aware that Ms. McCafferty was found guilty by a jury?  Did you get that out of the case?

MS. PFEIFFER:  Do not answer, sir.  Do not answer.  Mr. Asbury, do not answer.  I am making an objection.

Number one, it is completely irrelevant as to what Allan Asbury remembers or doesn't remember with regard to a reported decision made by the Ohio Supreme Court.

Page 86

To the extent he is here representing the Ohio Supreme Court, he can testify as to what the Court said about the decision. What the Court said about the decision is in its written decision.

MR. GILBERT: Okay. Are you done now? We're trying to get through this deposition. Okay?

Q. Now, Mr. Asbury, I'm going to ask you a few series of more questions.

Now, were you aware that Ms. McCafferty continued to lie even to the Panel in her case?

MS. PFEIFFER: Objection. You're asking Mr. Asbury what he remembers is irrelevant to this case. It is outside the scope of this deposition. And I'm instructing him not to testify.

That is completely irrelevant as to what Allan Asbury remembers or doesn't remember with regard to the written decision of the Ohio Supreme Court in the matter of Bridget McCafferty.

Q. Mr. Asbury, in regards to rulings of the Supreme Court, you being a 30(B)6 witness and all, is there any mechanism that has been set up to ensure consistency between persons that have been found violation -- in violation of the Code of Conduct?

A.    I'm not sure what you mean by mechanism.

Q.    Well, has there been any procedure or any type of follow-up or any type of layout to ensure that there is consistency of the Court in regards to decisions made on cases before dealing with disciplinary procedures?

A.    I'm not sure how to answer your question, but each case is decided on an individual basis on the facts that are brought forth.

Q.    And my question goes a little bit further, and that is:  Are you aware of any policy or procedure or any type of decision that's been set up with the Court to ensure that there's consistency in regards to penalties for similar violations?

A.    The Court follows its own precedent.  Each decision is based upon the precedent and the individual facts laid before it in the record.

Q.    Okay.  And is there any type of procedure that's been set up to assure that there is going to be consistency based on like violation of the --

            MS. PFEIFFER:  Objection.  Asked and answered.

Q.    Go ahead.

            MS. PFEIFFER:  You can answer again if you like, but he'S answered that question.

Page 88

Q.  Go ahead, Allen.

A.  Other than what I previously said, no, not that I'm aware of.

Q.  Now, the reason why I asked that, Mr. Asbury, is that the facts and circumstances between the McCafferty case and the Terry case are extremely similar.

And I wanted to know why Mr. Terry was permanently disbarred and McCafferty was given an indefinite suspension.

Do you know why?

MS. PFEIFFER:  Objection.  And based on the judicial mental process privilege he is instructed not to testify.

The Court speaks through its decisions. The answer to that question can be found in its decision.  He's not answering.  I'm instructing him not to answer.

MR. GILBERT:  Will you let the witness answer?

MS. PFEIFFER:  He will not answer.

Q.  Okay.  Now, Mr. Asbury, other than Ms. McCafferty being a white female and Mr. Terry being an African American, are you aware of any other reason or differences between the two sets of

Page 89

facts and different tone(phonetic)?

MS. PFEIFFER:  Objection.  Same objections that I just made.

Additionally, this case does not present a valid racial discrimination claim.  Therefore, the question is also irrelevant.

I'm instructing the witness not to answer.

Q.  All right.  And I was under the impression when we started out, Mr. Asbury, you were aware of the Court ruling of equal protection and substantive due process, 14th Amendment and equal protection, as being the two issues that the Court found to be violated areas of Discovery.

You're aware of that; correct?

A.  I've read the Court's Order, yes.

Q.  You indicate that you had read several other opinions in preparation for your testimony here today and you gave me quite a few of those opinions.

And I would like to know from your review of those documents -- I should say review of those documents and those cases, which particular case of those ones that you highlighted for me were similar to the Terry case?

Page 90

MS. PFEIFFER: Objection.

Q. Go ahead, Mr. Asbury.

MS. PFEIFFER: I'm going to instruct him not to answer. On behalf of the Ohio Supreme Court, it has spoken. Its decisions are online, you can see those decisions. He is instructed not to answer.

Q. And, Mr. Asbury, can you tell me why you reviewed those cases, those -- that list of cases that you gave me in preparation for your testimony here today?

A. Well, to the extent the scope of the deposition today was to consider the rational basis and legitimate government interest, I wanted to make sure that I had a fair survey of the Supreme Court's decisions relative to its legitimate governmental interest for attorney discipline in general and disbarment specifically.

Q. What do you mean by rational basis?

A. Well, I understand one of the issues in the case is that you believe it's a fundamental right to have a license to practice law and not be disbarred.

And there is another argument that a compelling state interest is not needed, there

Page 91

just needs to be a rational basis of the review.

Q.  Are you prepared to testified to the rational basis in regards to the Terry matter?

MS. PFEIFFER:  Objection.

Q.  Go ahead.

A.  To the underlying disciplinary case or this case?

Q.  The Terry case, which we're on here today.

MS. PFEIFFER:  Objection.  What is your question?

Q.  Again, Mr. Asbury, are you prepared to testify to a rational basis for the decision in Terry?

MS. PFEIFFER:  Objection.  The rational basis of the decision in Terry is set forth in the Ohio Supreme Court's decision.  He will not testify further beyond what is in that decision.

Q.  What is the rational basis then, Mr. Asbury, for that decision?

MS. PFEIFFER:  Objection.  He's not going to answer.

Q.  What is the overwhelming government interest in the Terry case then, Mr. Asbury?

MS. PFEIFFER:  Objection.  Same objection.  He will not answer.  Again, those answers can be found in the published decision by the Ohio Supreme Court.

Page 92

Q. I understood from your testimony, Mr. Asbury, that you came prepared to talk about and testify to the rational basis of government interest in regards to the cases that you reviewed, which one of those cases was Terry.

And I'm asking you to tell me about that. I'd like to know about that.

MS. PFEIFFER: Objection.

Q. What is the rational basis?

MS. PFEIFFER: Mischaracterization of his testimony.

MR. GILBERT: What are you saying? You objected, but you object to everything.

Q. But I'm asking you to respond to that, Mr. Asbury.

A. I reviewed cases to survey the legitimate governmental interest that the Supreme Court has articulated, a number of cases regarding attorney and judicial discipline in general.

I'm able to testify as to what the Court has said generally.

Q. All right. Tell me that then.

A. Well, there are several.

The purpose of attorney discipline in Ohio is to protect public, the courts, and the profession. It's to ensure the administration of

justice.  It's to maintain the integrity of the legal profession, to maintain the public confidence in the profession.

Relative to judges specifically, the Court has articulated that the purpose of the disciplinary system is to guarantee the even-handedness of the administration of justice, to bolster and uphold the public's confidence in the institution of the judiciary, restore the integrity of the judiciary, and as an overall deterrent effect.

Q.    Okay.  What do you mean by even-handed justice?

What does that mean?

A.    That is a direct quote out of Disciplinary Counsel versus O'Neill.  And I would refer you to that decision to understand what the meaning or context of that sentence may mean.

Q.    Well, what does it say that it means?

A.    It says, "Ensure the administration of -- guarantee the even-handedness of the administration of justice," that's what the Court has said.  I can't add or take away from that.

Q.    Okay.  And in regards to you said the reasoning of the Court was to protect the Court, the public, and the profession.

Page 94

And I'll ask you -- and I think I asked you this earlier but I think you've given me more information now -- can you tell me how denying a person who has been disbarred from applying for reconsideration of his license does not support the public interest for the profession?

MS. PFEIFFER: Objection.

Q. Go ahead and answer.

MS. PFEIFFER: I would instruct him not to answer. That would impede on -- you would be asking him to act as the Ohio Supreme Court in deciding a hypothetical that you have presented to him. It's beyond the scope. He cannot do that. I'm instructing him not to answer.

Q. Well, in all of the areas that you've just testified to, Mr. Asbury, can you tell me how not considering the petition of a disbarred lawyer for reinstatement in some way is contrary to the list of items that you've just given us?

MS. PFEIFFER: Objection. Same objections as before. I'm instructing him not to answer.

Q. In other words, you said that public safety, integrity, even-handedness of justice. And you went on and on about that. And I can understand

Page 95

those areas.

Of all the things that you've listed here in terms of what you pulled out of these cases, do you have any statistics or any type of data that would support the denial of a disbarred person from applying for reinstatement or be considered for reinstatement of their license?

A.    I'm not --

MS. PFEIFFER:  I'm sorry, objection. Same objections, and instruct him not to answer.

Q.    And as I understand your testimony, Mr. Asbury, you're not aware of any data or any type of study or any type of constitutional claim that would support a disbarred person from being reconsidered for reinstatement of his license; is that correct?

MS. PFEIFFER:  Same objections. Instructing the witness not to testify.

Q.    Are you aware of any legislation, Mr. Asbury, that has been passed by our General Assembly, Ohio General Assembly, that indicates that a disbarred person cannot be reinstated as a lawyer in the State of Ohio?

MS. PFEIFFER:  I just said that he can answer, that's all I said.

A.    I'm not aware.

Q. Okay. So we are at least in agreement on one thing, and that is the Ohio General Assembly, General Assembly, has not taken that issue up as far as you know.

Fair?

A. As far as I know.

Q. So that decision of a disbarred person being denied forever the right to petition for reinstatement to the Bar is a decision to date solely of the Ohio Supreme Court.

Fair?

A. Well, Bar Rule V(12) speaks for itself. That's the Court's Rule.

Q. Okay. And there is nothing in that rule that outlines what a person would need to show or present in order to be considered for reinstatement of his license if the person has been disbarred.

Fair?

A. Yes. The Rule itself says reinstatement is not permitted.

Q. Yeah. And that's just a blanket rule with no exceptions; correct?

A. It's a rule with no exceptions.

Q. Okay. And you know of no statistics, facts, or

information to support the Court's conclusion that disbarred persons cannot apply for reinstatement.

Fair?

MS. PFEIFFER:  Objection, same as before.  You're asking him to testify as to whether or not there is information that the Court may or may not -- the Supreme Court may support their decision or not.  It invades the judicial mental process privilege.  And I'm instructing him not to testify.

Q.  Now, consideration of reinstatement of a disbarred attorney, I take it, Mr. Asbury, your testimony is that that would be judicial, a judicial consideration, therefore, not permissible in terms of the testimony today; is that correct?

MS. PFEIFFER:  Objection.  I could not understand you.

MR. GILBERT:  I can't hear you.

MS. PFEIFFER:  I'm sorry, I did not understand.  Could you rephrase that?

Q.  Mr. Asbury, I want to make sure that I get this straight, so I'm bringing out my notes to make sure I get the question straight for you.

Is it your testimony today that consideration of a disbarred person for

Page 98

reconsideration to reinstate his license is part of the judicial mental process privilege?

MS. PFEIFFER: I'm asserting the privilege. I'm instructing him not to testify as to what he thinks is a privilege. I'm his counsel. I'm asserting the privilege as I see fit.

MR. GILBERT: Well, okay. I don't think the Court's going to agree with that, but I think I do have a right to ask him that.

Q. Can you identify, Mr. Asbury, judicial mental process as it relates to the Court's consideration of reinstating a disbarred person?

MS. PFEIFFER: Objection. I'm going to -- I don't even understand the question. I'm going to instruct him not to answer because I don't -- if you're asking him to explain to you my use of the privilege today, if that's what you're asking, then I'm going to instruct him --

Q. Let me pose the question again, Mr. Asbury. Your Counsel will object no matter what I do.

But can you identify the judicial mental process that a Court has to go through in determining whether a disbarred person should be allowed to petition for reinstatement of his

Page 99

license?

MS. PFEIFFER: Objection. It invades on the judicial process privilege. How a Court goes about making a decision invades on that privilege. I'm instructing him not to testify.

Q. And, Mr. Asbury, the Court has never identified facts or circumstances that would be considered for reinstatement of a disbarred person.

Fair?

MS. PFEIFFER: Objection. You can answer to the extent that you can.

A. To the best of my knowledge, no.

Q. Because I remember your testimony being that disbarred persons cannot apply for reinstatement and that's a set, firm rule, right?

A. Correct.

Q. No deviation at all, right?

A. Correct.

Q. No matter what the circumstances, right?

A. Yes.

Q. And that that blanket rule to your knowledge as a 30(B)(6) witness has not been supported by any study, data or legislation.

Fair?

MS. PFEIFFER: Objection,

mischaracterizes his testimony.  I'm going to instruct him not to answer.  He's answered all those questions.

Let's take a quick break if we can. We've been going now for more than an hour again I think.  So will you be finishing up in an hour?

MR. GILBERT:  Hold on a second.  I've just got one more question on this, then we can take our break.

Q.    Have you ever become aware of any Supreme Court ruling saying a disbarred person cannot be rehabilitated?

A.    Well, the Court's decisions speak for themselves. I can't say I'm aware of any.

MR. GILBERT:  All right.  Then let's take a break.

MS. PFEIFFER:  Thank you.

(Recess taken.)

MR. GILBERT:  Back on the record.

Q.    Okay, Mr. Asbury, I just have a few more questions for you.

To your knowledge has the Supreme Court of Ohio ever commissioned a study to determine whether persons that are disbarred should be considered for reinstatement of their license?

Page 101

A.    To the best of my knowledge, no.

MR. GILBERT:  Nothing further.  Other than I will be filing a motion.  That's down the road.

MS. PFEIFFER:  Did you get we'll read?

THE REPORTER:  Thank you.

(Remote Zoom Deposition concluded at 4:19 p.m.)

(Signature not waived.)

(Errata form attached.)

- - - - -

Page 102

ERRATA FORM

Re: Steven Terry vs. Sharon L. Kennedy, et al.

Deposition of:  ALLAN ASBURY


PAGE    LINE    CHANGE/REASON FOR CHANGE

_____   _____   _____

_____   _____   _____

_____   _____   _____

_____   _____   _____

_____   _____   _____

_____   _____   _____

_____   _____   _____

_____   _____   _____

_____   _____   _____

_____   _____   _____

_____   _____   _____

_____   _____   _____

_____   _____   _____

_____  NO CHANGES

SIGNATURE:_____DATE:_____
                ALLAN ASBURY

_____
Notary Public in and for the
State of _____
My commission expires:

Page 103

CERTIFICATE

The State of Ohio, )
                   )                SS:
County of Summit.  )

          I, Julieanne Ross, a Notary Public in and for the State of Ohio, duly commissioned and qualified, do hereby certify that the witness, ALLAN ASBURY, was by me first remotely sworn to testify the truth, the whole truth and nothing but the truth in the cause aforesaid; that the testimony then given by the above-referenced witness was by me reduced to stenotypy in the presence of said witness; afterwards transcribed, and that the foregoing is a true and correct transcription of the testimony so given by the above-referenced witness.

          I do further certify that this deposition was taken at the time and place in the foregoing caption specified and was completed without adjournment.

          I do further certify that I am not a relative, counsel or attorney for either party, that I am not, nor is the court reporting firm with which I am affiliated, under a contract as defined in Civil Rule 28(D), or otherwise interested in the outcome of this action.

          IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal of office at Stow, Ohio, on this 23rd  day of_March_____, 2026.

                              ___Julieanne Ross_____
                              Julieanne Ross, Notary Public
                              in and for the State of Ohio
                              My commission expires:
                              December 29, 2029.

**A**

A-l-l-a-n 5:3
A-l-l-e-n 11:4
A-s-b-u-r-y 5:4
abandon 25:10
ability 26:11
  27:14
able 4:20 12:7
  26:3,7 92:19
above-referen...
  103:7,9
accept 25:4 50:3
  52:23
access 78:6
accurate 80:19
  85:7
act 94:11
action 4:14
  53:24 103:15
actual 8:20,23
  34:12,18
add 12:6 34:7
  93:22
added 21:24
Additionally
  14:14 21:10
  89:4
address 5:20,21
  42:20
adjournment
  103:12
adjudicatory
  6:10 8:5 9:6
administration
  92:25 93:7,19
  93:21
Administrative
  7:16,17,23
admission 37:3
  37:5 58:11,12
admit 48:20
  71:24
admitted 17:17
  37:15
adopted 20:8
advisory 8:6

affiliated 9:3
  103:14
affixed 103:17
aforesaid 103:6
African 88:24
AG 2:9,9
age 4:4
aggravating
  76:14,16,23
agree 14:5 50:5
  50:6 70:4
  73:21 98:9
agreed 4:1 57:12
agreement 1:18
  96:1
ahead 39:18
  40:2,15 43:14
  75:19 77:2
  82:9 85:4
  87:23 88:1
  90:2 91:5 94:8
Akron 2:6
al 1:7 102:2
Algenon 1:8
Allan 1:13 3:2
  4:4,9 5:3 16:4
  16:5,13 61:7
  61:14 73:19
  74:10 83:19
  85:23 86:18
  102:3,21 103:5
allegation 63:8
Allen 11:4 88:1
allow 15:25 30:8
allowable 28:2
allowed 98:25
amended 19:20
  20:1 23:8
amendment
  12:23 21:19
  55:9 58:19
  89:12
American 88:24
analyzed 59:24
answer 10:9
  15:11,25 16:23
  20:4 21:9

28:22,24 30:1
30:2,17,21,23
31:20 36:14
41:2 53:16
55:13 59:20
60:21 61:4,13
61:17 62:11,20
63:4,11,17
64:6 65:9,12
65:19,23 66:9
66:10,10,16,22
67:5,17 74:20
77:2,17,25
81:9 85:6,19
85:20,20 87:7
87:24 88:16,18
88:20,21 89:8
90:4,7 91:19
91:23 94:8,10
94:14,22 95:10
95:24 98:16
99:11 100:2
answered 65:5,7
  87:22,25 100:2
answering 65:10
  88:17
answers 19:17
  67:20 91:24
apologize 7:1,18
  54:3
APPEARAN...
  2:3
appears 13:14
  51:12 69:16
appellate 46:24
Applicable 1:14
applicant 37:3
  37:25 58:10
application
  28:20 29:12,15
  37:13
applications
  31:7
apply 24:23
  35:10,17 36:4
  56:23,25 97:2
  99:14

applying 94:4
  95:6
appointed 46:20
  72:11
appoints 46:11
appreciate
  18:25 19:4,25
  23:5 28:4,22
appropriate
  28:7 36:23
  38:15
approved 30:10
April 72:12
area 46:7,8
  56:21
areas 78:15
  89:14 94:15
  95:1
argument 84:23
  90:24
art 43:13
articulated
  92:17 93:5
Asbury 1:13 3:2
  4:4,9,11 5:4,7
  5:10,19 9:25
  15:7 16:5,7,13
  16:25 17:6
  19:12 21:18
  26:14 28:10
  41:17 43:2
  49:15 51:21,25
  53:23 61:7,15
  61:22 62:13,21
  63:5,12,18,19
  64:16,22 65:1
  65:12 66:7
  69:4 70:22
  73:1,19,21
  74:10,13,24
  77:4 79:13,19
  81:4,13,25
  82:10,24 83:19
  84:25 85:4,16
  85:20,23 86:9
  86:14,18,21
  88:4,22 89:10

90:2,8 91:10
91:16,21 92:1
92:14 94:16
95:11,18 97:12
97:21 98:11,20
99:6 100:20
102:3,21 103:5
asked 39:10
  40:22 57:15
  65:4,5,10
  67:19 87:21
  88:4 94:1
asking 16:4,6,16
  20:24 21:5
  26:21,24,25
  29:20,22,25
  39:1 40:19,23
  43:5 49:2,4
  61:6,8,14
  62:10 63:16
  64:20,23 65:14
  65:15 66:18
  73:19,19 74:5
  76:19,21 78:14
  79:2 80:12
  82:6 83:24
  84:5,11,13,25
  85:9 86:13
  92:6,14 94:11
  97:5 98:17,19
Assembly 95:19
  95:20 96:2,3
asserting 98:3,6
assigned 45:20
  47:12,23 72:13
assist 6:9 8:4
Assistant 2:18
  61:7
ASSOCIATE
  2:9
ASST 2:9,9
assume 30:6
  41:23
assure 87:19
attached 60:6,7
  101:9
attendance 2:1

attention 31:4 31:10
attorney 2:7 3:7 5:12 10:9,16 11:24,24 17:22 22:1,9 24:1,5 24:11,23 29:3 29:3 34:9 35:3 52:21 53:9 73:3,13,22 74:7,14 78:20 80:17 90:17 92:17,23 97:12 103:13
attorneys 8:11 18:6 28:15 46:19
authenticity 80:23
authority 6:21 6:22 45:4
authorized 6:25 9:4
automatically 52:25
available 27:4 53:7
aware 53:10 57:3 58:13,24 59:3,4,9,10 60:9,25 62:4 62:13,21 63:5 63:12 64:3,17 65:1 66:14,19 66:24 67:7,12 75:25 76:15 77:4,8 82:25 83:5 85:16 86:11 87:11 88:3,24 89:10 89:15 95:12,18 95:25 100:10 100:14

**B**

B 36:11 38:23
back 19:16

22:17 23:11,23 23:24 31:13 51:20 57:11 63:7 70:18 76:7 100:19
background 6:15
Bar 9:5 10:14 12:13 17:17,19 18:4,18 19:19 19:23 20:6 24:13 25:23,24 26:12 27:10 31:25 32:1 37:16,23 39:24 43:1 44:7 45:5 52:11 82:21 96:9,12
barred 6:20
Bars 43:17
based 16:4,8 21:3,9 45:13 58:16 60:19 62:11 63:4 77:13 83:17 87:16,20 88:12
bases 15:2
basic 76:22
basically 25:6
basis 31:8 32:13 87:8 90:13,19 91:1,3,11,13 91:16 92:3,9
Bates 3:10 49:7 68:12,14 69:21 70:15,20 72:24 75:1,14,21 78:12,12 79:11 80:15,22 81:23
Bear 54:18
Began 6:20
behalf 2:4,7,13 8:11 11:16 16:2 21:11,15 40:20 61:8,10 80:17 90:4
believe 10:10

11:6 13:22 21:24 27:16 28:1 33:20 34:21 38:20 55:21 65:23 81:25 90:21
best 24:21 31:18 56:4 99:12 101:1
beyond 61:16 91:15 94:13
big 68:13
bigger 69:2
bit 6:14 22:5 72:22 76:9 87:10
blanket 96:22 99:21
Board 6:1,9,10 6:12 7:16,22 7:24 8:6,9,11 8:22,24 9:1,6 42:6 45:13,15 45:17,22 46:12 46:13,16,18,19 47:17 48:1,25 49:16,19,21,22 50:4,8,12,17 51:7,12 58:3,6 70:23 71:2,5 71:25 72:2,4 73:10,12 74:22 76:1,3 79:16
Board's 80:5,6
body 26:11
bolster 93:8
boss 8:20
bottom 53:9
break 29:1 51:4 64:1 78:25 100:4,9,16
Bridget 79:22 86:20
briefly 6:14
bringing 97:22
Broad 2:10
brought 87:9

business 66:24 66:25
BY-MR.GILB... 4:10

**C**

C 38:23,24
cab 83:22
call 5:7 26:6 44:1 45:23,25 47:7 59:13
called 1:14 4:4 54:9 78:19 83:10
Callie 2:18
campaign 75:4
candidates 8:12 8:15
capacity 6:8 7:8 8:3 13:1 67:20 67:23 76:1
caption 103:11
case 1:6 12:10 12:16 14:16,23 15:13,16 18:13 47:1 55:14,15 55:20 60:4 61:24 64:21 65:18 76:2 79:17 83:8 84:12 85:1,18 86:12,15 87:8 88:6,6 89:4,24 89:25 90:20 91:6,6,7,21
case-by-case 31:7 32:13
cases 32:15,19 32:25 83:3,4 83:11,12 85:2 87:5 89:23 90:9,9 92:4,5 92:15,17 95:4
catch 56:10
categories 17:22 18:5,9 21:25 31:13 39:7,8

category 24:5 53:22 57:12 58:1
cause 45:21 46:14 47:4,6 47:11,15,16,19 72:3 103:6
Central 6:20
certain 25:22 52:11 53:3 60:7 64:21 75:16 78:15 79:7
CERTIFICA... 103:1
certification 47:14
certified 4:7 24:13 43:12,16 43:20 44:10 47:7,9,9,21
certify 47:4,17 103:5,10,13
Chair 43:21 46:12 71:7
challenge 12:11 12:14
change 20:11 102:5
CHANGE/RE... 102:5
changes 20:8,15 20:19 21:23 24:2 102:20
Character 38:3
characterize 11:21 22:10
characterized 30:14
charged 75:12
checking 55:5
Chief 2:8,13,14 5:13 12:5
child 54:19 55:1
choices 25:11
circumstances 11:17 30:19

59:13 88:5
99:7,19
**citation** 25:17
**citizen** 42:10
43:2
**Citizens** 42:16
**Civil** 1:15 4:6
103:15
**claim** 12:24,25
89:5 95:13
**clarify** 65:6
**clear** 15:14
**clearinghouse**
13:23
**clearly** 26:3,4
**clerk** 25:7 58:4
**Cleveland** 72:10
**clients** 42:17
**closer** 18:22
**Code** 8:16 18:8
29:17 86:25
**Columbus** 2:10
2:15 5:22
43:23 44:2
**come** 22:17
23:23,24 31:3
31:10 46:23
**comes** 41:23
42:3,4
**comment** 37:12
**comments** 81:15
**commission**
102:24 103:21
**commissioned**
100:23 103:4
**Commissioner's**
74:23
**Commissioners**
8:9 45:22
46:16,18,19,23
47:13,24,25
49:17,19 50:4
50:8,12 51:7
51:12 70:23
79:16
**commitments**
83:2

**committee** 24:13
24:19 37:24
38:4 43:13
44:8,10 45:21
46:5,14 47:11
47:16 75:4,4
75:11
**Committees**
43:17,20
**community** 40:4
43:21
**compared** 37:9
**compelling**
90:25
**complaining**
42:21
**complaint** 10:8
41:18,23,25
42:3,6,10,11
42:19,20 43:22
45:12,15,18,20
45:23,25 46:2
47:2,5,7,9,17
47:19,21 50:14
53:1 54:6
56:19 58:16
60:4,5
**complaints**
42:16
**complete** 24:19
24:22 25:9
26:9 29:14
78:2,22 79:3
81:3,10 82:5
**completed** 28:16
29:16 40:3
103:11
**completely**
85:22 86:17
**completing**
14:21
**complied** 38:9
39:19,23
**concentrated**
59:12
**concerned** 80:25
**concerns** 77:11

**concluded** 101:7
**concludes** 26:16
28:18 29:17
**conclusion**
12:21 50:5
97:1
**conduct** 6:2,11
6:13 7:25 8:7
8:10,13,16,17
8:22 9:1 17:8
18:7,8 29:18
38:16 41:20
42:7 44:4 45:5
45:9,13,16,17
48:6 53:14
58:6 67:24
73:11 76:10
86:25
**conducted** 72:9
**conducting**
24:14
**confer** 25:14
**conferencing**
2:2
**confidence** 93:3
93:8
**confidential**
25:2,5 53:4
**conflict** 43:23
44:7 67:24
**conjunction**
59:19
**Conkins** 11:3
**connection** 2:1
**consequence**
76:9
**consider** 11:19
20:18 64:10
90:13
**consideration**
36:7 50:13
97:11,14,25
98:12
**considered**
17:20 21:6
26:19 30:19
59:5,14,25

60:12,18 76:24
95:7 96:16
99:7 100:25
**considering**
94:17
**considers** 30:15
31:6
**consistency**
86:24 87:4,13
87:20
**consistent** 37:13
**constitutional**
2:8 12:14
95:13
**contents** 53:10
**context** 93:16
**continue** 24:9
27:15 29:7,11
63:14 65:6
77:24 79:5
81:1
**continued** 86:12
**continuing**
39:24
**contract** 103:14
**contrary** 94:18
**control** 40:4
**conviction** 40:5
40:6 54:16
**coordinates** 45:8
**copies** 9:22 58:5
78:22
**copy** 9:23 78:2
79:3 80:19
81:3,11 82:5
**correct** 12:20
22:9,18 23:9
23:16,21 29:8
32:4,5 33:24
34:4,5 35:11
35:21,23 37:15
38:3 42:5,9
43:19 46:10
48:15,19 49:17
49:18 50:6,7,9
50:13,15,23
51:15 52:7

53:15 54:23
57:10 61:24
63:20,21,23,24
71:4,19 72:16
80:2 82:3
89:15 95:15
96:23 97:15
99:16,18 103:8
**corrected** 57:15
**counsel** 1:18
5:12,13,13 6:6
6:12 7:16,23
10:19,20,21,21
10:22 11:2,3,5
12:2,4,5,7 15:5
15:17 16:6
24:13,25 25:9
26:8 27:21,23
28:1,17 29:6
29:10,13 30:6
39:3,14 43:12
44:11,13,17
45:3,8,11 52:1
52:15,22 53:18
66:3 69:7 74:2
78:11 81:15
84:3 93:14
98:6,21 103:13
**Counselor** 23:4
28:25
**County** 15:14
81:7 83:1
103:3
**couple** 41:16
**course** 33:15
**court** 1:1 2:13
4:3 5:14 6:24
7:2,7 8:18 9:4
10:15 11:16,20
12:6,8,22
13:20,21,24
14:18,25 15:13
16:3,9,14 17:2
18:6 19:18
20:17 21:6,12
21:12,13,15
23:18 24:15

25:2,3,7 26:21
26:22 28:1
29:12,18,23
30:7,10,14,15
31:1,4,6 32:13
32:15 33:1,3
33:14,24 40:19
40:20 41:24
42:3,11,12
46:21 48:13
50:9,17,21,21
51:8,13 52:2
52:16,20,23
53:7,17,23
54:4 56:3,18
58:25 60:11,15
61:9,11,24
63:17,20 65:17
65:24 68:11,14
69:16,21,23
70:6,15,20
72:24 73:25
74:4,11,12,21
75:1,14,21
76:4 77:5,6,15
79:11,17 80:7
80:18 81:12,23
82:2,3,8,21
83:14 85:8,25
86:2,3,3,20,22
87:4,13,15
88:15 89:11,13
90:5 91:25
92:16,19 93:5
93:21,24,24
94:11 96:10
97:6,7 98:23
99:3,6 100:10
100:22 103:14
**Court's** 10:11
11:23 12:16
14:16,17 16:21
20:25 31:10,17
32:14 40:23
44:24 55:17
80:3 82:14
83:5 89:16

90:16 91:14
96:13 97:1
98:9,12 100:13
**courtroom** 83:4
**courts** 92:24
**Coyne** 2:14 5:18
**create** 71:24
**criminal** 76:9
**criminally** 75:12
**criteria** 52:13,14
52:17
**current** 23:19
**currently** 8:3
**cut** 9:13
**Cuyahoga** 81:6
83:1

---

**D**

**D** 2:13 36:11,12
39:23
**D-a-m-o-n** 5:6
**D(1)(A)** 38:14
**D(1)(B)** 37:1
**D(1)(C)** 39:19
**Damon** 5:3,5
**danger** 62:22
63:15 67:2,9
67:14
**Dann** 11:7,7
68:4 69:8,11
73:21 75:4
**Dann's** 75:18
77:5
**data** 63:12 64:3
64:17 65:1
66:14,19,25
67:8,13 95:5
95:12 99:23
**date** 82:19 96:9
102:21
**dated** 70:1
**dates** 7:18
**Dave** 2:7
**day** 103:17
**deal** 10:16 57:20
57:24
**dealing** 58:1

67:23 79:21
84:3 87:5
**dealt** 32:21
**debating** 84:4
**December**
103:22
**decide** 29:10
**decided** 87:8
**decides** 29:3,14
**deciding** 94:12
**decision** 10:11
20:25 21:7,16
31:17 44:24
55:18 73:10
74:22 80:3
82:14,20,23,25
83:6,14,15,18
83:21,21 84:1
85:8,24 86:3,4
86:5,19 87:12
87:16 88:17
91:11,13,14,15
91:17,24 93:16
96:7,9 97:8
99:4
**decisions** 10:16
21:13,14 33:3
41:1 74:1
77:16 87:5
88:15 90:5,6
90:16 100:13
**default** 54:19
**Defendant** 12:25
**Defendant's**
18:15
**Defendants** 1:8
**DEFENDAN...**
3:21
**defined** 12:12
31:16 32:10,11
32:12 33:7
34:6,7 37:20
103:15
**defines** 34:21
**definition** 17:12
31:22 32:21,24
**deliberate** 49:22

50:1
**deliberation**
50:16
**denial** 95:5
**denied** 12:22
35:8,18,24
36:2 58:4 96:8
**deny** 25:4 47:19
**denying** 94:3
**department**
42:4 53:13,15
**depends** 30:13
**deponent** 20:25
21:5,11 78:23
79:2
**deposed** 4:7
**deposition** 3:6
4:1 10:2 11:9
14:11,13 16:11
16:20 17:4
27:14 40:25
41:6 60:23
61:16,20 77:15
77:20 78:19,21
84:22 86:7,15
90:12 101:7
102:3 103:11
**depositions**
14:19 84:9
**deprivation**
12:24
**Deputy** 2:14 6:6
8:4 12:6
**determine** 45:12
60:17 100:23
**determines**
33:11 46:12
47:3
**determining**
98:24
**deterrent** 93:11
**developed** 19:18
**deviation** 99:17
**dictates** 33:25
46:23
**differences**
88:25

**different** 25:11
38:13 44:18
47:15 50:12
66:6 81:20
89:1
**Dimora** 83:3,10
85:2
**direct** 93:14
**directing** 21:16
**directly** 8:18
41:24
**Director** 6:6,9
6:12 7:17 8:4
8:21,24 58:6
61:7
**disbarment**
12:12 17:12,15
17:20,21 18:11
22:6,10,14
64:9,11 90:18
**disbarred** 23:7
59:6,15 60:1
60:13,17 61:2
62:6,15 63:7
63:13 64:4,18
65:2,22 66:14
66:19 67:1,8
67:13 88:9
90:23 94:4,17
95:5,14,20
96:7,18 97:2
97:11,25 98:13
98:24 99:8,14
100:11,24
**disciplinary**
10:13,19,20,20
10:21,22 11:2
11:3,4 24:13
24:25 25:8
26:8 28:17,19
29:2,6,10,13
40:10 43:12
44:11,12,17
45:2,8,11 52:1
52:15,22 53:18
69:7 87:6 91:6
93:6,14

discipline 9:7 10:16,17 11:25 21:25 22:17,23 22:25 23:6,22 23:25 24:6,7 24:12,16,24 26:2,10,15 30:16 52:4 59:2 68:4 70:24 76:24 79:17 90:17 92:18,23
Discover 18:12
Discovery 14:15 14:19,20,22,22 15:1 18:16 19:18 89:14
discretion 29:14 33:14
discrimination 89:5
Discussion 69:3 69:6
Dismiss 10:9,12 12:17
district 1:1,2 46:24,24
Division 57:17
docket 53:8
document 13:11 13:25 15:21 16:8 52:2 53:11 70:19 72:8 75:24 76:19 78:1,5,6 78:8,15 79:6 80:12 81:2,5 81:10 82:1,6,7 82:8,11,12
documents 3:10 10:6 14:6 48:19 71:22 78:11,13,18,22 79:1,8,9,10 80:16 81:19 89:22,23
dog 36:12

doing 19:25 38:21 39:12 81:21
draft 8:5
due 12:14,23 61:3 62:8 89:12
duly 103:4
duties 6:7 8:2

**E**

E 11:4 57:17
earlier 9:25 57:7 71:3,18 94:2
East 2:10
educate 17:12
education 8:10 37:6,14 39:24
educational 37:2 37:8,16 58:9
educationally 38:1
Edward 2:4,5 2:18 4:13 69:8 69:11
effect 93:11
either 52:12 103:13
eleven 6:4
Elizabeth 8:21
email 49:8,14
embodies 32:17
embodying 32:16
employed 5:23 5:24,25 6:1,3 6:23
engage 8:10
ensure 86:23 87:3,13 92:25 93:19
entire 26:11 54:1 78:6,8
entry 35:4
equal 12:25 89:11,12
Errata 101:9

102:1
ESQ 2:5
et 1:7 102:2
ethical 75:13 77:11
even-handed 93:12
even-handedn... 93:7,20 94:24
eventually 48:6
evidence 58:7
Evidentiary 48:11
evidently 72:14
exact 52:8
exactly 25:11
examination 1:14 3:2 4:5,9
example 31:18 34:11
exception 54:25
exceptions 96:23 96:24
excerpt 3:24 17:3,4 41:5,6 60:22,23 61:18 61:20 77:18,20
excerpts 78:5
excuse 18:20 48:3
exhibit 9:17,19 9:23 10:1 13:6 13:7 14:16,24 15:4,8 16:24
exhibits 3:5,21 48:20 60:6,7 71:24 78:11
expert 11:19,22
expires 102:24 103:21
explain 98:17
explore 22:5
extended 14:20
extent 14:14 29:22 30:3 40:18 53:20 59:20 61:11

86:1 90:12 99:11
extremely 88:6

**F**

F 40:8 41:11
fact 14:20,25 15:13 64:9 72:2 80:14
factor 76:14
factors 76:16,17 76:23
facts 27:1 30:1 30:20 31:10 59:12 60:10 63:12 64:3,17 65:1 66:14,19 66:25 67:7,13 83:8,9 85:6 87:9,17 88:5 89:1 96:25 99:7
fair 13:12,15 19:13,14,15 21:20,21 32:2 33:2,19 35:20 42:13 43:18,24 46:9 47:2 48:8 48:14,17,23 53:5 57:13 69:18 71:3,23 72:5 78:7 90:15 96:5,11 96:19 97:3 99:9,24
fall 19:2
familiar 11:10 11:22 17:7 25:25 35:13 40:1 44:18 59:16 68:6
far 31:9 63:23 96:4,6
favors 83:3,11 85:1
Federal 1:15 4:5 16:3 27:25

feel 80:21
felony 40:6 54:10,16,17 56:8
felt 43:4
female 88:23
field 66:13
figure 73:9,17 73:22 74:7,14
file 25:1,6 42:10 42:16 43:6,11 44:22,25 45:12 45:15 53:7 71:24 80:1 84:8
filed 10:9 42:6 54:6
files 52:21,22
filing 52:19 101:3
finance 75:11
financial 75:10
find 26:3,8 52:8 52:12 67:20
fine 23:5 27:17 39:4 85:14
finished 9:12 43:15
finishing 100:6
firm 99:15 103:14
first 4:6 5:1 7:6 11:18 14:10 18:19 29:8 37:9,10,15 46:1 47:3 56:10 58:15 66:8,12 68:11 68:24 69:11 70:17 71:7 103:5
fit 38:1 98:7
Fitness 38:3
five 40:2 51:17 58:5
flagrant 14:24
flow 51:1

| | | | | |
|---|---|---|---|---|
| **follow** 39:1,12 | 73:23 74:7,14 | 76:5 78:17 | 98:16,19 100:1 | 42:15 |
| **follow-up** 42:12 | 90:18 92:18 | 80:16 81:10 | 100:5 | **happened** 30:25 |
| 87:3 | 95:19,20 96:2 | 88:9 94:2,19 | **good** 72:23 | **happens** 24:6,9 |
| **followed** 34:15 | 96:3 | 103:7,9 | **Goodman** 10:20 | 35:24 41:25 |
| **follows** 2:2 4:8 | **General's** 5:12 | **gives** 51:13 57:3 | **Gov** 39:24 | 42:20,23 44:15 |
| 87:15 | 73:14 80:17 | **giving** 9:23 52:1 | **governance** 44:9 | 47:8,22 |
| **foregoing** 103:8 | **generally** 20:5 | 85:1,5 | **governing** 18:18 | **hard** 73:23 |
| 103:11 | 21:23 36:13 | **go** 13:6 15:19 | 19:23 26:17 | **harmed** 38:16 |
| **forever** 96:8 | 37:23 46:6 | 17:6 19:16 | 28:15 41:19 | **hear** 4:11,15,20 |
| **form** 22:18 | 54:25 64:20 | 23:11 31:13 | 52:9 | 7:11 9:11 |
| 101:9 102:1 | 68:6 92:20 | 32:25 36:19 | **government** 9:5 | 19:12 20:3 |
| **formal** 6:5 | **geographical** | 39:18 40:2,15 | 12:13 17:18 | 25:19 51:23 |
| **forth** 87:9 91:13 | 46:8 | 41:16 43:14 | 18:4 20:6 | 62:1 64:8 68:2 |
| **forward** 20:23 | **getting** 84:22 | 44:8,22 47:20 | 25:23,24 26:12 | 68:18 71:21,24 |
| 21:5 58:5 | **Gilbert** 2:4,5,18 | 56:21 68:10 | 27:10 31:24 | 97:18 |
| **found** 85:17 | 3:3 4:13 15:5,6 | 70:12,13 71:15 | 43:1 45:5 | **heard** 54:1 |
| 86:24 88:16 | 15:12,14 16:6 | 72:21,23 74:24 | 52:10 90:14 | 71:14 |
| 89:13 91:24 | 16:15 17:2 | 75:20 76:7,8 | 91:20 92:3 | **hearing** 47:12 |
| **four** 14:1,2 18:5 | 18:21,25 19:4 | 77:2,22 81:12 | **governmental** | 47:23,25 48:5 |
| 18:9 39:22 | 19:7 25:16,18 | 82:9,10 85:4 | 90:17 92:16 | 48:6,11,21 |
| 63:3 | 25:20,22 26:24 | 87:23 88:1 | **governs** 32:1 | 58:6 71:8 72:9 |
| **Fourteenth** | 27:6,20,25 | 90:2 91:5 94:8 | **graduated** 6:19 | 72:13,14 83:17 |
| 12:23 | 39:3,14 40:17 | 98:23 | **Greg** 5:17 49:3,6 | **hears** 47:1 |
| **front** 2:14 5:22 | 41:4 49:1,9 | **goes** 44:12 46:3 | **GREGORY** 2:9 | **held** 48:5 49:21 |
| 9:24 | 50:25 51:5,16 | 46:5 75:9 | **Gregory.Rusti...** | 77:6 |
| **full** 4:25 78:1,21 | 51:20 60:22 | 76:12 87:10 | 2:12 | **help** 39:15 43:9 |
| 81:2,10 82:7 | 61:18 64:22 | 99:3 | **grievance** 43:11 | **helping** 19:9 |
| **functions** 6:10 | 65:5,8 66:2 | **going** 4:18,20 | 43:12,16,25 | **hereinafter** 4:7 |
| 8:5 9:6 13:22 | 68:20,24 69:2 | 5:16,19 13:4 | 44:1,10,19 | **hereunto** 103:16 |
| **fundamental** | 69:20 70:13,17 | 14:7 15:3,10 | 45:14,18,24 | **highlight** 59:4 |
| 84:18 90:21 | 72:21 74:2,15 | 17:11 20:20,21 | 46:1 53:1 54:5 | **highlighted** |
| **fundraiser** 77:6 | 74:18 76:21 | 23:3 27:20 | 56:18 58:16 | 89:24 |
| **further** 15:4 | 77:18,23 78:10 | 28:3,8,9 33:12 | 70:23 79:16 | **hold** 16:17 38:18 |
| 16:23 22:3 | 78:24 79:4 | 38:18,19 39:5 | **grievances** 44:5 | 46:2 76:10 |
| 35:7 47:20 | 81:14 83:23 | 39:8 41:2 51:1 | 44:6 | 100:7 |
| 53:24 74:21,22 | 84:3,20 85:13 | 53:17 57:11 | **grounds** 12:14 | **holds** 17:16 |
| 87:10 91:15 | 86:6 88:19 | 61:19 64:1 | **guarantee** 93:6 | **Holscher** 12:8 |
| 101:2 103:10 | 92:12 97:18 | 65:19 66:6,8,9 | 93:20 | **home** 5:20 |
| 103:13 | 98:8 100:7,15 | 66:10 68:10,12 | **guess** 42:17 53:9 | **hopefully** 39:17 |
| | 100:19 101:2 | 70:12 74:2,4 | **guilty** 85:17 | **Horton** 11:5 |
| _____ **G** _____ | **Gilbert's** 3:7 | 74:24 75:19 | **guy** 75:4 | **Hoskins** 11:3 |
| **general** 2:7 | **give** 6:14 7:18 | 77:24 78:8 | | **hour** 51:2 100:5 |
| 10:10 35:2 | 29:25 51:5 | 79:4,5,5,8,9 | _____ **H** _____ | 100:6 |
| 36:14,22 46:7 | 83:11 84:6,7 | 81:1,9,19 84:7 | **half** 80:11 | **hundreds** 78:17 |
| 59:7,8,24 | 85:6 | 85:11 86:9 | **hand** 103:17 | **Hunter** 10:22 |
| 63:17 65:15,20 | **given** 18:17 | 87:19 90:3 | **handle** 24:25 | **hypothetical** |
| 65:22,25 73:4 | 58:25 63:6 | 91:19 98:9,14 | **happen** 26:5 | 26:23 94:12 |

**I**

identification 9:20 13:8
identified 49:6 49:13 99:6
identify 10:1 58:14 82:6 98:11,22
illegal 75:5
immediate 8:20
impede 94:10
implementing 20:18
important 4:23
imposed 17:16 18:6 40:5
imposing 31:17
impression 89:9
inappropriate 27:22 81:17,21
inaudible 49:13 74:20
include 14:11
including 38:9 39:20
Incorrect 22:19 42:14
increase 71:11
increment 69:25 71:11
incumbent 78:20
indefinite 18:10 34:20,25 35:6 35:12,16 36:8 56:22 57:5 88:10
INDEX 3:1
indicate 62:5 63:6 89:17
indicated 81:25
indicates 15:13 95:20
indicating 25:3
individual 2:1 62:14 65:16,18

74:10 83:20 87:8,17
information 13:19 58:25 60:10,25,25 62:4,13,21 63:5 65:17,21 66:1 94:3 97:1 97:6
initial 13:23
inquire 15:22
insofar 80:25
institute 34:3
institution 93:9
instruct 15:3,11 65:19 90:3 94:9 95:10 98:16,19 100:2
instructed 88:14 90:6
instructing 16:22 21:8 60:21 61:12 63:3 65:13 74:19 77:17 86:16 88:17 89:7 94:14,21 95:17 97:9 98:4 99:5
integrity 93:1,10 94:24
intend 15:19
interest 67:25 90:14,17,25 91:20 92:3,16 94:6
interested 82:18 103:15
interim 54:10,11 54:16,17,19,23 55:3,11,15,23 56:2,6,7,12
interpret 40:21
interpretation 40:12
interrupt 9:9 17:24 51:1

64:13
interrupted 39:17 50:2
interruption 7:10
intervention 40:4
interviews 37:24
invades 21:1 61:11 97:8 99:2,4
investigation 24:8,14,15,20 24:22 25:9,10 26:9,16 28:16 28:17 29:7,11 29:15,16 45:3 45:14
investigations 45:5
involve 16:11
involved 15:8 16:7
irrelevant 85:22 86:14,17 89:6
issue 32:2 48:22 56:18 96:3
issued 8:6 56:3
issues 49:16 62:9 67:24 79:7 80:23 89:13 90:20
item 72:1
items 79:6 94:19

**J**

January 13:11 73:4
jet 75:10
job 6:5,18
jobs 7:19
judge 1:8 81:6 83:1
judges 8:11,14 46:20 93:4
judgment 76:13
judicial 8:12,15

8:16 9:7 10:17 11:24 18:8 21:1 40:24 60:20 61:12 77:14 88:13 92:18 97:8,13 97:13 98:2,11 98:22 99:3
judiciary 93:9 93:10
Julie 2:8 5:15 9:21
Julie.Pfeiffer ... 2:11
Julieanne 1:16 103:4,20,20
June 70:1
jurisdiction 59:22,23
jury 85:17
justice 93:1,7,12 93:21 94:24
Justices 12:25 77:7

**K**

keep 4:23 68:24 72:22
Kennedy 1:7 102:2
kind 17:11 65:25
know 4:16 9:14 13:9 15:7,20 19:13 20:17 21:19,22 22:6 25:11 26:1 28:11,22 30:5 30:23,24,25 31:1,9,12,20 36:2,14 38:5 38:20 39:4,11 42:18 43:2 44:3 48:9 52:13,17,18 53:3,12,16 55:5,13,14

58:18 64:2 67:11,18 70:18 72:16 73:13,16 74:3 82:23 84:14 88:8,11 89:21 92:7 96:4,6,25
knowledge 24:21 31:5 56:4,20 99:12 99:21 100:22 101:1
knows 28:24 30:3 59:21 65:24 66:22 67:5,17

**L**

L 1:7,8 2:4,5,18 4:13 102:2
laid 57:13,14 87:17
language 20:9
large 72:23
law 6:19 7:15,22 22:8 23:11 33:9,17,21,22 34:19,24 35:6 37:4 40:9 58:11 61:2 62:6,15 63:7 63:13 64:4 65:2 67:1 69:12 70:7 76:6 90:22
lawful 4:4
Lawson 10:19
lawyer 9:7 11:24 23:19,24 38:2 41:19,19 42:22 42:23 46:7 53:24 54:5 56:19 62:8,16 66:8 94:17 95:21
lawyers 17:8 26:17

lay 46:20
layout 87:3
left 5:15
legal 2:13,14 5:3
    5:13 6:11 8:8
    12:2,4,5 93:2
legislation 95:18
    99:23
legitimate 90:14
    90:16 92:15
let's 16:25 17:6
    22:5 27:2
    31:13 34:11
    36:19,21 41:23
    44:12 51:16
    56:5 59:8
    72:22 77:22
    81:12,12 82:24
    100:4,15
Letter 3:8
letterhead 13:14
letters 39:11,13
level 9:6
liberty 12:24
license 17:16
    22:9 29:4,19
    30:12 37:10
    62:23,24 63:7
    67:3,9,15 70:3
    77:5,10 90:22
    94:5 95:7,15
    96:17 98:1
    99:1 100:25
lie 86:12
lieu 40:4
lifted 56:8
likewise 4:16
limitation 56:14
limited 14:21
limits 33:16,16
line 53:9 102:5
list 17:18 90:9
    94:18
listed 32:6 95:2
listing 32:16
lists 18:4
little 6:14 22:5

72:22 76:8
87:10
load 69:25
local 43:17 44:7
long 6:3 56:11
look 11:7 27:18
    74:18 80:23
looked 10:18,19
    12:15 47:11
    60:3,8 82:19
    82:20
looking 13:25
    14:4 24:5
lot 15:19 19:9
LPA 2:4

___ M ___
magic 43:8
magistrates 8:14
maintain 93:1,2
majority 50:18
making 10:11
    14:15 63:1,2
    74:15 85:21
    99:4
mandatory 8:13
Marbley 1:8
Marc 11:7 68:4
    69:8,11
March 1:18
    12:19
Marie 79:22
marked 3:5,21
    9:20 13:8
Market 2:5
matter 10:8,14
    23:14 26:4
    49:20 71:14
    72:14 80:4
    82:15 86:20
    91:3 98:21
    99:19
McCafferty
    10:15 11:11,12
    11:13 79:22
    80:4 81:6 82:3
    82:15,21 83:1

85:1,16 86:11
86:20 88:6,9
88:22
McCafferty's
    55:14
mean 9:8,14
    18:3 25:5 27:7
    31:6 37:19,22
    42:10,19 43:25
    44:3 48:9
    50:25 58:17
    73:10,21,23
    85:5 87:1
    90:19 93:12,13
    93:17
meaning 37:21
    93:16
means 34:7 53:4
    53:6 93:18
mechanism 44:5
    86:23 87:1
meet 37:18
meetings 49:21
members 46:13
    71:6,16
memory 27:16
    84:1
mental 21:1
    37:2,6,8,16
    40:24 58:9
    60:20 61:12
    77:14 88:13
    97:9 98:2,11
    98:22
mentioned 18:2
    23:1
mere 78:5
microphone
    18:21
middle 76:8
mind 51:2 73:8
    74:8 77:12
mini 48:7,9
minute 19:16
    25:14 27:6
    49:12 73:13
minutes 51:17

Mischaracteri...
    92:10
mischaracteri...
    100:1
misunderstan...
    84:18
mitigating 76:16
    76:23
moment 56:6
months 33:10,12
    69:13
moral 37:2,7,8
    37:16 58:9
morally 38:1
motion 10:9,11
    12:17,22 84:8
    101:3
move 9:15 15:21
    16:25 19:8,9
    72:22 75:19
moving 20:23
    21:4

___ N ___
name 4:13,25
    5:1,3,4,17 12:8
    71:15 79:22
    83:2
nature 28:2,12
    59:3
need 15:7 37:17
    39:15 49:24
    53:18 61:16
    80:21 81:2
    82:4 96:15
needed 48:18
    90:25
needs 91:1
never 30:25 99:6
new 8:14,14
    14:22 55:8
Notary 102:23
    103:4,20
note 17:3 41:4
    60:22 61:18
    77:18 79:14
noted 17:5 41:7

60:24 61:21
77:21
notes 97:22
notice 1:17 3:6
    10:2 16:10
    71:10
notwithstandi...
    40:10
November 14:17
    16:21 71:9,14
    72:9
number 9:17
    10:1 15:9
    16:11,12 27:11
    36:21 38:8,11
    38:14,17,24
    39:16,22 40:2
    40:7 41:8
    42:17 43:16,21
    49:7 74:24
    79:17 85:22
    92:17
numbers 39:9

___ O ___
O'Neill 10:21
    93:15
o-l-i-z 10:25
oath 48:10
object 15:2 21:3
    38:19 81:14
    92:13 98:21
objected 92:13
objecting 21:8
    40:18 84:24
objection 14:7,8
    15:10,18 20:21
    26:20 28:5,5
    28:12,23 29:20
    29:24 30:21
    39:4,6 40:14
    59:18 60:19
    61:4,6 62:10
    62:18 63:1,10
    66:21 67:4,16
    73:18 74:16
    76:18,25 77:13

80:10 81:8 82:4 83:19 84:6,7 85:3,12 85:14,21 86:13 87:21 88:12 89:2 90:1 91:4 91:8,12,18,22 91:23 92:8 94:7,20 95:9 97:4,16 98:14 99:2,10,25

**objections** 28:2 62:12 63:2,4 74:3,17 89:3 94:21 95:10,16

**Obviously** 27:21

**occasion** 34:3 52:18 77:9

**occasions** 56:15 56:17

**occurred** 77:9

**of_March** 103:17

**offenses** 59:2

**offered** 83:11

**office** 5:12 6:4 9:3 13:19 42:12 43:11 44:11,12,16 45:2,8,9,11 73:14,14 76:10 80:17 103:17

**OFFICER** 2:13 2:14

**offices** 2:8 13:21 45:10

**official** 13:1

**officially** 30:14

**Oh** 7:4 22:20 35:15 42:15,17 46:1 47:18 82:13,18

**Ohio** 1:2,17 2:6 2:7,10,13,15 5:22 6:1,21,24 10:14 12:9 13:20 15:12,15

16:2,8,14 17:17 21:11 22:9 23:20 26:17 28:15 29:23 40:9,20 46:21,24 58:11 60:15 61:2,8 61:10,23 62:7 62:8,16 63:13 64:4 65:24 67:2,8,14 68:11,14 69:21 70:8,15,20 72:10,24 73:3 73:13,22 74:7 74:11,12,14 75:1,14,21 76:4 79:11,17 81:23 82:21,21 85:25 86:2,19 90:4 91:14,25 92:24 94:11 95:19,22 96:2 96:10 100:23 103:2,4,17,21

**okay** 4:11,13,16 4:17,21,24 5:7 5:7,10,19 7:4,9 7:11,13 8:1,20 8:25 9:13,15 9:17 10:6 11:15 12:19 13:4,11,17 14:4 15:7 17:11 18:1 19:10,11,16 20:3,14 21:17 21:22 22:13,16 22:20 23:10,17 23:22 24:2 26:13 27:2 28:3,7 29:1,13 31:9,13,20 32:6,9,12,24 33:5 35:15,24 36:13,25 37:19 38:8 39:6,8,15

39:22 40:1,7 41:4,10,22 43:16,20 44:1 44:4,7,14,20 45:1,17 46:5 46:18 47:18,21 48:5,7 49:1,2,4 49:10,15 50:2 50:11,20,24 51:6,11,16,22 51:23,25 52:7 53:21 54:3 55:14,22 56:1 56:21 58:24 60:3,9 62:3 64:1,15 66:6 66:18 68:4 69:10,20 70:1 70:3,11,12,22 71:2,20 72:7 72:18,21 73:8 73:16 74:12,24 75:9 76:3 77:4 79:21 80:6 81:4,12,22 82:18 85:13 86:6,8 87:18 88:22 93:12,23 96:1,14,25 98:8 100:20

**once** 23:14 35:10 45:18

**one-year** 34:17

**ones** 89:24

**online** 90:5

**operation** 30:2

**opine** 74:20,21 74:22

**opinion** 74:23 76:13

**opinions** 8:6 89:18,20

**orally** 51:14

**order** 10:11 12:16,19,21 14:17 16:21 32:24 33:24

35:5 38:9 39:20 54:6,20 57:4 69:17,23 79:15 80:7 81:13 82:3,13 82:19 89:16 96:16

**ordered** 14:18 14:25 36:24 70:6

**original** 37:4,13 37:14 58:12

**originally** 19:25

**outcome** 103:15

**outline** 57:3

**outlined** 19:24

**outlines** 96:15

**outreach** 8:10

**outside** 16:19 77:15 86:15

**outstanding** 14:21

**overall** 93:10

**overboard** 39:5 74:3

**overbroad** 77:1

**overwhelming** 91:20

---

**P**

---

**P** 2:9 10:25

**p.m** 1:19 101:7

**page** 3:1,5 12:21 68:11 69:20 72:21 75:3,16 75:20 76:4,8 77:22 79:13 80:11 81:4,22 102:5

**pages** 3:24 14:1 14:2 68:9

**panel** 46:25 47:1 47:3,12,23 48:24 49:5,15 49:16 50:1,5 50:11,15 71:5 71:6,15,21

72:13,18 75:23 76:13 86:12

**Panel's** 49:22

**paragraph** 68:25 69:11 70:5

**parameter** 13:5

**part** 14:12 20:24 30:5 34:8 40:6 46:15 47:10 48:1 56:10 98:1

**participants** 2:1

**participate** 15:20 50:15

**particular** 12:21 31:9 32:2 38:6 43:3 65:16,18 72:1 89:24

**parties** 4:1

**party** 103:13

**passed** 95:19

**Paul** 10:25

**pay** 75:11

**payment** 38:10 39:20

**payments** 75:5,5

**penalties** 87:14

**pending** 21:25 22:16,23,25 23:6,22,25 24:6,12,16,24 26:2,10,15 28:14 29:2,12 29:16 30:16 52:4 53:1,2,24

**people** 26:1 46:11,15,20 65:21

**percent** 44:17

**perform** 8:8 9:5

**period** 33:9,22 34:25 35:6 69:12

**permanent** 22:8 22:11,14 64:12

**permanently**

88:9
**permissible**
97:14
**permitted** 14:22
30:7 34:18
45:14 96:21
**person** 17:16
26:9,14,18,18
28:14,19 29:18
30:11 40:8
52:3 56:22
58:14 59:1,5
59:14,25 60:11
61:1 62:5
64:18 65:2
66:13 67:1,8
67:13 79:22
94:4 95:6,14
95:21 96:7,15
96:17 97:25
98:13,24 99:8
100:11
**persons** 38:16
46:6 48:1
60:17 63:13
64:4 66:15,20
72:11 83:2
86:24 97:2
99:14 100:24
**petition** 23:18
23:23 29:18
35:3,8 37:18
58:2,5 74:4
94:17 96:8
98:25
**petitioner** 35:5
36:23 38:15
39:19,23 40:3
40:8 58:8
**Pfeiffer** 2:8 5:15
9:21,21 14:7
15:6,10 16:1
16:10,17 20:20
25:16,19 26:20
27:2,9,24
28:23 29:20
30:21 38:18

39:9 40:14,16
50:25 51:18
59:18 60:19
61:4 62:10,18
63:1,10,16
64:6,19 65:4
65:13 66:4,21
67:4,16 73:18
73:24 74:9,15
74:19 76:18,25
77:13,23 78:17
78:25 80:10
81:8 82:4
83:19,25 84:17
84:24 85:3,11
85:19 86:13
87:21,24 88:12
88:21 89:2
90:1,3 91:4,8
91:12,18,22
92:8,10 94:7,9
94:20 95:9,16
95:23 97:4,16
97:19 98:3,14
99:2,10,25
100:17 101:5
**picking** 18:24
**place** 103:11
**placed** 78:4
**plain** 37:21
**Plaintiff** 1:5 2:4
2:18 4:14
**PLAINTIFF'S**
3:5
**please** 4:15 5:2
5:21,25 9:14
13:6,9 19:13
20:4 28:10
30:4 39:16
51:18 54:14,15
61:5 63:11
67:6 77:19
**point** 24:9 29:9
51:2,11
**points** 57:9
**policy** 11:20
87:11

**Polizzi** 10:23,24
**poor** 76:13
**portion** 34:10
**pose** 98:20
**posed** 65:11
**position** 16:8
**positions** 7:4,13
**possess** 37:1
**possession** 58:9
**practicality**
37:19
**practice** 7:15,21
33:9,17,21,22
34:13,19,24
35:5 37:4 40:9
58:11 61:2
62:6,15 63:13
64:4 65:2 67:1
69:12 70:7
76:6 90:22
**practiced** 46:7
**practicing** 6:20
23:11 34:9
**precedent** 87:15
87:16
**preparation**
10:7 12:2
32:20 80:1
82:1 89:18
90:10
**prepared** 91:2
91:10 92:2
**prepares** 50:8
**prerequisites**
36:9
**presence** 103:8
**present** 2:17
17:14 89:4
96:16
**presentation**
51:8,10
**presented** 75:17
94:12
**pretty** 14:24
**prevent** 34:9
**previous** 40:10
71:21 79:25

**previously** 88:2
**prior** 4:1 29:5
35:13 76:2
**private** 75:10
**privilege** 21:2,4
21:9 60:20
61:12 77:14
88:13 97:9
98:2,4,5,6,18
99:3,4
**probable** 45:21
46:13 47:4,6
47:11,15,16,19
72:3
**probation** 40:4
**Procedurally**
41:24
**procedure** 1:15
4:6 11:20
41:21,22 87:2
87:11,18
**procedures**
11:23 44:19
87:6
**proceed** 78:9
**process** 12:14,24
21:1 40:24
42:2 44:23
52:9 54:4
60:20 61:12
71:17 77:14
88:13 89:12
97:9 98:2,12
98:23 99:3
**processes** 11:23
44:18
**processing**
44:19
**profession** 92:25
93:2,3,25 94:6
**professional**
1:16 6:1,11,13
7:24 8:7,9,16
8:22 9:1 18:7
42:7 44:4 45:9
45:13,16,17
53:14 66:12,25

67:19,23 73:11
**progress** 42:1
**pronounce** 5:16
12:7
**proper** 15:15
19:8 40:8
**protect** 53:24
54:6,24 92:24
93:24
**protecting** 55:3
**protection** 12:25
89:11,12
**provide** 78:1,7
78:21 79:8
**provided** 4:5
27:13,18 35:1
42:25 60:10
**public** 3:7 13:19
13:23 14:5,12
14:15 15:16
16:11 18:10
31:15,17,18,23
32:6,16,17,21
32:24 53:7,25
54:7,24 55:3
61:3 62:8,22
73:8,14,17,22
74:7,14 92:24
93:2,24 94:6
94:23 102:23
103:4,20
**public's** 93:8
**published** 91:24
**pull** 68:9
**pulled** 95:3
**purpose** 14:21
47:16 92:23
93:5
**purposes** 9:20
13:8 80:14
**pursuant** 1:17
10:2
**put** 14:8 18:21
43:6 56:16
76:20

—————— **Q** ——————

37:2,8 58:10
**qualified** 103:5
**question** 19:22
  20:22,24 21:4
  21:4 28:9,13
  28:21,25 30:6
  30:9,23 37:11
  41:3 53:16
  54:1 56:16
  57:15 61:7,19
  63:18 64:1,15
  64:24 65:7,9
  65:10,12,20
  67:6,7 72:6
  74:6 76:22
  84:11,16 85:15
  87:7,10,25
  88:16 89:6
  91:9 97:23
  98:15,20 100:8
**questioning**
  13:5
**questions** 16:19
  16:23 63:3
  67:21 74:16
  77:25 78:9,14
  81:1,9 83:24
  84:5 86:10
  100:3,20
**quick** 100:4
**quite** 15:14
  89:19
**quote** 21:6 93:14

—— **R** ——
**racial** 89:5
**raise** 4:18 77:11
**rational** 90:13
  90:19 91:1,2
  91:11,12,16
  92:3,9
**re-apply** 30:11
**read** 10:10
  37:12 38:6
  39:1,10 40:22
  83:22,23 84:2
  84:12 89:16,17

101:5
**reading** 23:7
  38:21,22,23
  83:17
**readmitted** 40:9
**really** 59:10
**reason** 29:4 31:5
  78:15 88:4,25
**reasoning** 93:23
**reasons** 14:9
  16:22 62:18
  63:10
**recall** 13:18
  20:12 21:22
  24:2 52:5
  55:16,17,21,22
  58:22 72:18
  80:8 81:6
  84:25 85:9
**receive** 44:5,6
  45:20,25 58:14
  59:1
**received** 37:10
  61:15 65:17,25
**receives** 34:16
  56:22
**Recess** 51:19
  100:18
**recommendati...**
  37:25 48:22,24
  49:23 50:10,20
  51:14 71:25
  72:19 75:23
  76:3 79:15
**recommendati...**
  75:17
**reconsider**
  15:18
**reconsideration**
  94:5 98:1
**reconsidered**
  95:14
**record** 5:1 14:1
  14:8,17 16:18
  27:3,9,17
  40:17,22 48:12
  51:20 69:3,6

78:3 79:14
  87:17 100:19
**recorded** 83:22
**Records** 3:8
  13:23 14:5,12
  14:15 15:16
  16:12
**reduced** 103:7
**refer** 23:3 93:15
**referenced** 3:10
  68:15 69:22
  70:16,21 72:25
  75:2,15,22
  79:12 80:7
  81:24
**Referred** 58:3
**reflect** 27:3,9
  78:3
**reflects** 27:18
**regard** 14:11,19
  20:21,23 21:7
  59:9 64:20
  81:9 85:24
  86:19
**regarding** 15:4
  16:23 27:16
  65:18 77:25
  83:8 92:17
**regards** 11:19
  12:16 41:18
  52:2 56:8
  58:25 60:11
  75:17 81:17
  83:12 84:12
  86:21 87:4,14
  91:3 92:3
  93:23
**Regional** 6:21
**Registered** 1:16
**regular** 43:2
**rehabilitatable**
  65:23
**rehabilitated**
  40:13 62:17,24
  63:9,14 64:5
  64:11,18 65:3
  66:15,20

100:12
**rehabilitation**
  36:17 41:13,15
  57:12,17 58:8
**reinstate** 98:1
**reinstated** 23:19
  28:20 57:4
  61:3 62:7,16
  62:25 67:3,10
  67:15 70:7
  77:5,10,11
  95:21
**reinstatement**
  17:23 22:1,11
  22:18,21 26:19
  29:19 30:18,20
  34:25 35:4,17
  36:7,10 37:18
  56:24,25 57:7
  58:2 59:6,14
  60:1,12,18
  70:3 94:18
  95:6,7,15 96:9
  96:17,20 97:2
  97:11 98:25
  99:8,14 100:25
**reinstating**
  98:13
**relates** 98:12
**relative** 8:15
  90:16 93:4
  103:13
**relevant** 58:7
**remains** 47:10
**remedial** 54:11
  54:17 56:9
**remember** 55:19
  58:22 84:14
  85:24 86:18
  99:13
**remembering**
  21:10
**remembers** 84:1
  85:23 86:14,18
**remote** 1:12 2:1
  4:2 101:7
**remotely** 4:6,21

103:5
**removal** 22:8
**repeat** 19:22
  67:6
**rephrase** 97:20
**Reply** 10:10
**report** 8:18 25:2
  25:6 48:24
  49:2,5,7,16,22
  50:1,3,9,10,16
  51:9,10 52:16
  52:19,20,22
  58:7 59:19
  70:22 71:22,25
  72:15 73:12,25
  80:5,6
**reported** 80:3
  82:20 85:8,24
**reporter** 1:16
  4:3 17:3 18:20
  19:3,6,11
  48:13 101:6
**reporting**
  103:14
**reports** 59:12,17
  59:24 60:16
**represent** 4:14
  40:25
**representative**
  16:2,14 40:19
**represented**
  26:1
**representing**
  44:16 74:11
  86:1
**reprimand**
  18:10 31:15,17
  31:18,23 32:6
  32:16,17,22,25
  58:16
**request** 3:8,24
  14:5,15 15:24
  17:4 18:18
  22:17 41:6
  60:16,23 61:20
  72:3 77:20,24
**requests** 13:24

15:15 16:12
**required** 24:19
24:21 26:9
37:3 58:10
**requirements**
37:17 39:24
**requisites** 57:7
**research** 8:8
**resign** 23:6,24
24:11 26:15
29:4,15
**resignation**
21:24 22:22,22
22:25 23:22
24:16,24 25:4
30:7,8,10,13
30:16 31:7
52:21,24
**resigned** 26:2
52:3
**resigning** 53:10
**resigns** 22:16
24:6 26:10
28:14
**respect** 65:16
**respond** 30:4
92:14
**Respondent**
70:7 73:3
76:10
**responding**
14:11 15:8
**Responses** 18:15
18:17
**restitution** 36:24
38:10,15 39:21
**restore** 93:9
**result** 63:8
**rethink** 23:10
**retire** 23:10
**retired** 23:6,14
23:14
**retirement**
22:22 23:3
**review** 8:5 11:12
11:13,13 16:7
25:1,17,21

26:11 27:5,14
44:25 67:24
68:4 76:19
80:4 82:12
89:22,22 91:1
**reviewed** 10:6,8
10:13 11:2
27:7 32:19
44:22,24 80:1
80:3 82:1,11
82:13,14,16
90:8 92:4,15
**reviewing** 15:20
27:10 55:5
**Revised** 3:6 10:2
**Richard** 2:13
12:5
**Richard.Shust...**
2:15
**right** 4:25 5:8,16
5:17 10:4 12:1
13:14 15:22
16:15,25 22:24
22:24 23:1
26:13 33:4,22
34:14 35:22
42:4,8,8,22
43:10 45:1,6
46:11,22,25
47:6 48:10,12
50:4,22 51:21
58:18,20 68:7
71:5,18 72:1
72:19,20 82:24
83:9 84:15
89:9 90:21
92:21 96:8
98:10 99:15,17
99:19 100:15
**road** 26:19
101:4
**room** 5:11
**Ross** 1:16 103:4
103:20,20
**rude** 9:14
**rule** 9:5 10:3
12:12 17:20

20:6,7 21:24
23:3,12,19
24:18 25:13,14
25:23,24 26:3
26:8,25 27:1
27:10 28:19
31:16,22,25
32:1,1,3,5
33:15,20 35:1
35:2,13 36:3,6
38:6,21,22,22
38:23,25 39:2
39:24 41:14,15
43:13 45:15
46:23 52:1,7,8
52:9,10 54:21
55:2,6,24
56:11 57:16
96:12,13,14,20
96:22,24 99:15
99:21 103:15
**rules** 1:14 4:5
8:15 9:4 11:23
12:12 17:7,18
18:4,7,18
19:18,23 20:5
20:6 24:16
25:22 26:12,17
27:4,7,8,13,14
27:16 28:14
30:2 31:24
33:8 39:6
40:21 41:19
43:1 45:4
55:10 56:13
57:2,6 58:19
64:11 84:10
**ruling** 89:11
100:11
**rulings** 32:14
55:8 86:21
**run** 82:9
**Russo** 83:2,10
85:2
**Rustico** 2:9 5:17

───── S ─────

**S** 2:14
**safety** 61:3 62:8
62:23 94:23
**Sanction** 18:2
22:7,12,13
32:17 33:6
40:5,11
**Sanctions** 17:15
18:5 19:19,24
31:14 75:18
**saw** 82:22
**saying** 15:17
18:24 30:24
31:3 39:9
42:21 80:15
92:12 100:11
**says** 12:22 26:3
33:17 36:4
37:1 38:14,14
41:12 69:11
72:1 73:3 75:3
75:12 76:9,12
79:21 83:21,23
93:19 96:20
**scenario** 36:1
52:3
**scheduled** 49:20
**school** 6:19
**scope** 16:19
61:16 77:15
86:15 90:12
94:13
**screen** 76:20
78:4 80:11
**scroll** 70:11
**se** 37:20
**seal** 25:6 103:17
**sealed** 52:1,16
52:20,22 53:4
53:11
**second** 20:24
35:25 36:2,4
38:19 51:6
100:7
**Secretary** 7:21
**section** 2:8 32:3
32:5,7 34:21

35:1,3 36:9
54:22,22
**secure** 60:16
**see** 7:9 8:1,25
37:25 56:13
60:6 68:16,20
68:22 69:4,7,8
69:14,24 70:9
70:10,11,25
71:12 72:9
73:1,6 75:7
79:19,23 90:6
98:6
**seek** 17:23 22:1
22:11,21 30:17
**seeks** 24:11
**seen** 10:4 13:17
18:14,15 36:1
59:11
**send** 42:10,12
43:23 44:4
79:1 81:2
**sending** 44:2
**sends** 42:19
50:17
**Senior** 2:9 6:6
**sense** 65:15 72:8
**sent** 9:25 59:7
**sentence** 40:6
69:10 71:8
93:17
**separate** 83:11
85:2
**September** 2:14
5:18
**September.Co...**
2:16
**series** 68:9 86:9
**serve** 6:11 13:22
34:17 46:13
**served** 18:12
73:3
**set** 17:8 27:1
30:20 31:10
86:23 87:12,19
91:13 99:15
103:16

sets 88:25
seven 36:15,20
  39:7,8 41:8
  76:10
Sharon 1:7
  102:2
show 96:15
showing 78:5
  80:11
shown 57:4
Shuster 2:13
  12:5
signaling 27:22
  28:6
Signature 101:8
  102:21
signed 13:15
similar 11:16
  20:7 87:14
  88:7 89:25
sir 40:15 84:17
  85:19
sit 26:7
sitting 12:4
  38:21
situation 31:2
  44:21
six 33:9,12 40:7
  41:9 49:20
  57:9 69:13
six-month 75:24
  76:5
Smith 8:21
society 63:15
  67:2,9,14
solely 96:10
somebody 64:10
someone's 36:1
sorry 7:22 9:8
  9:11,13 14:17
  18:20 41:9
  43:14 49:24
  50:2 54:12,12
  57:21,22 83:7
  95:9 97:19
sort 46:22 48:7
source 45:19

62:4
South 5:22
SOUTHERN
  1:2
speak 40:23
  41:1 56:13
  100:13
speaking 16:2
  20:5 54:25
  61:23 66:24
speaks 21:12
  33:3 41:14
  73:11,12,25
  74:1 77:16
  83:14,14 88:15
  96:12
spec 29:20
specific 78:14
  79:6
specifically 11:9
  14:18 21:23
  28:13 33:7
  38:14 41:12
  55:2,17 90:18
  93:4
specifics 84:13
specified 103:11
speculate 29:21
speculative
  26:20 30:1
speed 72:7
spell 5:1,5 10:24
spelled 11:4
spoke 12:1
spoken 21:13
  90:5
SS 103:2
staff 7:15
staffed 6:24
stage 25:1
Stamp 68:12,14
  69:21 70:15,20
  72:24 75:1,14
  75:21 79:11
  80:22 81:23
Stamped 3:10
  78:12,13 80:15

stand 57:14
start 36:20,21
  54:14,14 58:15
  59:8
started 7:1 20:1
  89:10
starting 19:19
starts 46:1
state 1:17 4:25
  10:14 23:20
  28:5,9,15
  39:16 43:17
  46:22 61:19
  62:6,8,23
  63:18 67:2,8
  67:13 70:8
  82:21 90:25
  95:22 102:23
  103:2,4,21
stated 38:12
  62:19
statement 9:12
  43:15
states 1:1 33:8
statistics 95:4
  96:25
status 62:3
stay 13:4 23:14
  25:9 29:11
  34:3,7,11,17
  56:5
staying 84:21
stays 24:14
stenotypy 103:7
STEPHEN 2:9
Stephen.Taba...
  2:11
steps 47:15
Steve 5:16 49:1
  62:22
Steven 1:4 2:18
  102:2
stipulate 80:18
stop 20:20 24:9
Stow 103:17
straight 22:21
  97:22,23

straight-up 74:5
Street 2:5,10,10
  2:14 5:22
strike 17:21
studies 58:13,17
  58:24 59:3,4,7
  59:9,11,13,20
  59:24 60:9,16
study 60:5 95:12
  99:23 100:23
subject 34:25
  51:3
submit 51:9,10
  52:16 72:3
submitted 50:20
  60:15
subsections
  36:15,16
substantive
  12:23 89:11
suggest 15:17
  61:1 62:14
Suite 2:5
summary 51:13
  85:5,7
Summit 15:14
  103:3
support 54:20
  55:1 94:5 95:5
  95:14 97:1,7
supported 99:22
supposed 44:8
Supreme 2:13
  5:14 6:23 7:2,7
  8:18 9:3 10:15
  11:16,20,22
  12:6,8 13:20
  13:21 15:13
  16:3,9,14 18:6
  21:12 24:15
  25:2,3,7 29:12
  29:23 30:7,10
  30:14,15 31:1
  31:6,17 32:15
  33:1,14 40:20
  40:23 41:24
  42:3,11,11

44:24 46:21
  50:9,21,21
  51:8,13 52:2
  52:16,20,23
  56:17 60:11,15
  61:9,11,23
  65:17,24 68:11
  68:14 69:16,21
  69:23 70:15,20
  72:24 74:11,12
  75:1,14,21
  76:4 77:6
  79:11,17 80:3
  80:18 81:23
  82:3,8,14,20
  83:5 85:25
  86:2,19,21
  90:4,15 91:14
  91:25 92:16
  94:11 96:10
  97:7 100:10,22
sure 4:19 6:19
  7:20 11:21
  18:23 19:7
  22:24 25:15
  27:17 34:14
  36:1 37:11
  44:2 45:7 54:1
  54:12 58:17
  72:6 85:7 87:1
  87:7 90:15
  97:21,23
survey 90:15
  92:15
suspend 53:23
  54:5
suspended
  33:17,21 55:15
  69:12
suspending 35:5
suspension
  18:10,11 33:5
  33:8,8,11,23
  34:1,2,8,10,12
  34:16,18,20,22
  34:24 35:12,16
  36:8 38:9

39:20 54:10,11
54:16,18,19
55:11,15 56:6
56:8,23 57:5
58:15 75:24
76:5 88:10
**suspensions**
54:23 55:4,23
56:2,12
**suspicion** 52:9
**swearing** 4:2
**sworn** 4:6 103:5
**system** 93:6

**T**

**Tabatowski** 2:9
5:17 49:6,13
**table** 12:4
**take** 37:21,23
39:18 43:22
48:10,16 51:4
51:16,17 58:7
71:22 78:25
80:22 93:22
97:12 100:4,9
100:16
**taken** 1:15 51:19
96:3 100:18
103:11
**talk** 36:16 40:24
53:19 55:2
78:23 92:2
**talked** 51:25
56:5 57:6,9,25
58:19 71:17
**talking** 38:5
59:22,23 71:2
84:20
**talks** 71:5 75:9
**task** 27:15
**tell** 5:10 7:4,9,13
8:2 10:6 12:1
17:13 20:15
28:3 35:2 45:6
55:7 80:12
82:10 90:8
92:6,21 94:3

94:16
**telling** 19:5 33:1
62:19
**tells** 36:6
**temporal** 56:14
**tend** 19:8
**tenure** 76:2
**term** 40:3 43:13
**terms** 9:6 39:5
42:25 43:3
46:8 50:13
83:8 95:3
97:14
**Terry** 1:4 2:18
10:14 55:19
62:22 63:6
88:6,8,23
89:25 91:3,7
91:11,13,21
92:5 102:2
**Terry's** 44:21
**testified** 11:15
27:3,12 91:2
94:16
**testify** 15:4
21:15 29:23
53:20 78:20
79:2 86:2,16
88:14 91:10,15
92:2,19 95:17
97:5,10 98:4
99:5 103:6
**testifying** 16:13
63:23 83:20
**testimony** 10:7
12:3 21:20
22:8 29:5
32:12,15,20
48:10 71:21,22
71:24 79:25
80:2 82:2
89:18 90:10
92:1,11 95:11
97:12,15,24
99:13 100:1
103:7,9
**testing** 83:25

**thank** 18:1 19:3
19:6,9 20:10
23:17 39:14
51:18 69:25
71:11 100:17
101:6
**thing** 23:1 30:5
40:12 65:6
84:15 96:2
**things** 41:16
95:2
**think** 14:1 15:12
15:22 22:6
25:23 28:6,7
36:15 37:20
39:5,15 42:22
52:3 57:11
66:5 73:24
78:7 81:16,21
84:18 94:1,2
98:8,9 100:6
**thinking** 7:20
20:4 64:9
**thinks** 73:20
83:21 98:5
**thought** 21:6
38:11 60:3
82:13
**three** 5:12 14:1
38:8,17 39:16
45:21 46:6,11
46:15 47:13,23
55:23 63:3
71:6,15 72:10
**three-person**
46:5,25 47:3
49:15 50:11
**throw** 43:5
**Thursday** 1:18
**time** 4:15 9:13
11:18 19:12
20:9,9 24:7,15
35:25 36:2,4
37:4 39:18
45:23 52:21
58:12 81:7
103:11

**times** 11:15
**title** 6:5,5 8:23
**titled** 58:2
**today** 5:11 10:4
10:7 12:3
13:17 32:20
49:3 63:23
68:5 80:14,15
80:25 82:2,22
89:19 90:11,13
91:7 97:15,24
98:18
**today's** 11:9
14:10
**tone(phonetic)**
89:1
**top** 75:3
**topics** 14:10
**totally** 50:11
**training** 8:14
**transcribed**
103:8
**transcription**
103:9
**transferred** 44:9
**Transit** 6:21,22
**transition** 51:3
**travelling** 75:10
**treated** 42:22
**trial** 48:7,9
**tried** 65:9
**trips** 75:11
**true** 80:19 103:8
**truth** 103:6,6,6
**try** 4:24 13:4
19:1 68:12
72:7 75:19
**trying** 9:15
39:11 81:15,18
86:7
**turn** 69:20 81:22
**two** 14:1 15:2
33:10,12 35:4
35:9,17,19
45:10 47:15
56:24,25 66:6
67:20 83:2,4

83:10 85:2
88:25 89:13
**two-year** 34:10
34:16
**type** 15:15 34:21
43:6 59:1 87:2
87:3,12,18
95:4,12,13
**typically** 24:12
24:17,17

**U**

**Unauthorized**
7:15,21
**underlying** 91:6
**understand** 6:7
12:10,11,13
22:7 28:10,25
31:20 32:9
37:11 45:3,7
47:14 54:2
61:22 63:19,24
64:2 72:6
79:25 90:20
93:16 94:25
95:11 97:17,20
98:15
**understanding**
13:2 19:21
20:2,14 29:5
41:21 63:22
71:20 83:16
**understood** 9:16
12:15 92:1
**Unfortunately**
64:15
**UNITED** 1:1
**uphold** 93:8
**use** 39:13 43:3
59:19 98:18
**uses** 52:15

**V**

**V** 9:5 25:23
27:11 31:25
32:1,3,5 52:1,7
52:8

**V(12)** 96:12
**vague** 59:18 76:25
**valid** 89:5
**verify** 79:7 80:21
**version** 35:13
**versus** 10:14,14 10:19,20,21,22 10:22 11:2,3,5 15:14 69:7 82:21 93:15
**video** 2:1
**viewing** 20:18
**violate** 14:16
**violated** 89:14
**violating** 41:19 84:10
**violation** 16:20 26:17 28:14,18 29:3,17 86:25 86:25 87:20
**violations** 18:7 75:13 87:14
**voice** 4:18,23 18:22 19:1
**vote** 49:23 50:1 50:3,18
**voting** 50:16
**vs** 1:6 102:2

**W**

**Wade** 2:18
**wait** 27:6 35:8 35:18 73:13
**waiting** 25:18,21
**waived** 101:8
**walk** 41:20,22
**want** 4:19 15:18 15:20 17:24 18:23 20:17 21:22 23:10 27:17 29:14 39:12 45:12 51:17 52:15 53:16 64:13 76:7 78:3 84:6

97:21
**wanted** 88:8 90:14
**wants** 26:15
**wasn't** 65:9,10 83:10,13
**way** 14:24 15:8 18:22 21:17 22:10 23:23 41:1 44:20 46:3 56:16 66:9,10 74:2 81:20 82:24 84:8,8 94:18
**ways** 66:7,11
**we'll** 17:2 19:1,7 19:8 41:4 70:18 82:9 101:5
**we're** 4:20,20 27:25 68:12 74:24 79:5 81:4,8,10 84:21,22 86:7 91:7
**we've** 16:25 51:1 56:23 65:5 71:2 100:5
**weigh** 55:18
**went** 52:8 94:25
**West** 2:5
**whatsoever** 21:7
**WHEREOF** 103:16
**white** 88:23
**wish** 78:22
**withdraw** 56:16
**witness** 4:2 15:3 21:8 27:22 28:6 29:21,22 29:25 60:21 61:23 62:3,11 62:19 63:4,20 64:23,24 65:14 66:18 67:12 74:12 76:15 77:25 84:16

86:22 88:19 89:7 95:17 99:22 103:5,7 103:8,9,16
**witnesses** 48:16
**word** 43:8 57:16 59:19
**words** 6:15 24:8 24:19 25:8 26:14 37:21 94:23
**work** 5:20 42:8 45:10 56:25 72:2 80:24
**worked** 6:16
**working** 66:13
**works** 45:7
**wouldn't** 73:17
**write** 48:24
**writing** 8:8
**written** 14:19 15:1 18:12 19:17 85:8 86:4,19
**wrong** 42:23,25 43:4 55:8

**X**

**X** 42:21

**Y**

**Yeah** 9:25 18:25 20:4 27:25 33:4 34:2,20 44:1 47:6 49:9 56:11 57:24 59:23 73:7 83:23 96:22
**year** 17:9 34:12 34:13,17 49:21
**years** 6:4 33:10 33:12 35:4,9 35:18,19 43:22 56:24,25 76:11
**yelling** 4:19
**Yost** 2:7

**Z**

**z** 10:25
**Zach** 12:7
**zebra** 10:25 11:1
**Zoom** 1:12 2:1 101:7

**0**

**00** 75:20
**001** 75:20
**0011** 3:11 68:12 68:14
**0050** 69:20,21
**0055** 3:12
**0091** 3:13 70:18 70:19,20
**0093** 3:14 70:14 70:15 72:21,24
**0094** 3:15 74:25 75:1
**0099** 3:16 75:14 75:16 76:7
**0100** 3:17 75:20 75:21 76:4
**0144** 3:18 77:22 79:11,13 81:4
**0190** 81:22 82:8 82:10
**0190-0192** 3:19 81:24
**092** 82:9,10

**1**

**1** 3:6 9:17,19,23 10:1
**1:15** 1:19
**10** 39:25 82:8
**100** 2:5 44:17
**11** 70:1
**12** 1:18 18:4 32:3,5 82:23
**12(A)(2)** 34:21
**12(B)** 17:21 20:7 21:24 23:7
**12(D)(1)(A)** 38:23
**13** 3:7

**13-0939** 79:18
**14th** 72:12 73:5 89:12
**15-page** 82:23
**16th** 2:10
**17,41,60,61,77** 3:25
**18** 54:22 55:24 55:25
**19** 54:22 55:24 55:25
**1957** 19:19 20:1 20:8
**1993** 6:19,20
**19th** 14:18

**2**

**2** 3:7 13:6,7 14:16,24 15:9 16:24
**2:24-CV-01200** 1:7
**2005** 7:3,7,14,22 7:22
**2007** 19:20 20:1 20:13,16 21:20 23:8 24:3 55:9 58:18 73:4
**2008** 7:23,23 73:5
**2011** 7:22 17:9 17:14 71:9,14 72:10,13
**2012** 17:9
**2013** 7:23,25 17:9 70:1
**2020** 17:9
**2025** 12:19 14:18 16:21
**2026** 1:19 13:12 103:17
**2029** 103:22
**23** 12:22
**23rd** 103:17
**25** 35:1,2
**25(A)** 35:3
**25(D)** 57:14

**25(D)(1)** 36:9
 57:8,13,25
**25(E)** 57:18,19
 57:20 58:1,2
**28** 46:19
**28(D)** 103:15
**28th** 12:19 13:11
**29** 103:22

**3**

**30** 2:10
**30(B)(6)** 61:23
 67:12 99:22
**30(B)(6)Depos...**
 1:12
**30(B)6** 10:3
 11:17 16:3
 62:3 63:20
 64:23,24 66:18
 74:12 76:15
 84:16,17 86:22
**30,000** 75:6,7
**3070** 2:5
**330.376.8855**
 2:6
**3rd** 71:9,14
 72:10

**4**

**4** 3:2
**4:19** 101:7
**43215** 2:10,15
 5:22
**44333** 2:6
**4th** 72:12

**5**

**6**

**65** 2:14 5:22
**68** 3:11
**69** 3:12

**7**

**70** 3:13,14
**75** 3:15,16,17
**79** 3:18

**8**

**81** 3:19
**8th** 73:4

**9**

**9** 3:6