**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **STEVEN TERRY,** | : | |
| | : | |
| ***Plaintiff,*** | : | **Case No. 2:24-CV-01200** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **SHARON L. KENNEDY, et al.** | : | **Magistrate Judge Chelsey M. Vascura** |
| | : | |
| ***Defendants.*** | : | |

# DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

This facial challenge is ostensibly about whether the Disbarment Rule has a rational basis—that is, whether it bears a rational connection to a legitimate state interest. It patently does. As explained in Defendants' motion for summary judgment, the Rule serves legitimate state interests in protecting the public and the integrity of the legal system and judiciary, maintaining the public's confidence in the legal system and judiciary, and deterring other would-be attorney and judicial offenders. The Rule reflects a normative decision by Ohio about how to best serve those interests: a decision that some attorney misconduct is so egregious that only permanent disbarment will do, and so the available sanctions must include permanent disbarment.

That decision is a policy choice. And rather than inviting the Court to review the Rule for a rational basis, Plaintiff invites the Court to a policy debate about whether the Rule is the best way to vindicate the State's interests in light of what he apparently views as his right to present evidence of his post-disbarment betterment in court. Policy debates, however, should not distract the Court from Plaintiff's failure to meet his summary-judgment burden. To survive summary judgment, he must negate every conceivable rational basis for the Disbarment Rule. Because his opposition falls far short of doing that, Plaintiff would like a policy debate instead.

The Court should not bite. The Disbarment Rule easily satisfies rational-basis review. Indeed, the Court should not even reach the merits. *Rooker-Feldman* precludes jurisdiction over Plaintiff's claims, and Plaintiff's opposition makes clear this case is, aside from an attempted policy debate, a chance for Plaintiff to relitigate his disciplinary proceedings. For similar reasons, res judicata likewise bars his claims.

For these reasons, the Court should accordingly grant Defendants' motion for summary judgment.

## LAW AND ARGUMENT

### I. Plaintiff's opposition is further proof his case arises from the Supreme Court of Ohio's application of state disciplinary rules in his own disciplinary case, and is thus barred by *Rooker-Feldman* and principles of res judicata.

Plaintiff is correct that "if the relief requested in the federal action would effectively reverse the state court decision or void its holding," the constitutional issue is inextricably intertwined with the prior state-court decision. *See Planet Earth Ent. v. Edwards*, 84 F. Supp.2d 891, 898 (S.D. Ohio 1999). But that is exactly what Plaintiff does here: he attacks the legality of his disbarment as compared to other attorneys' sanctions, and seeks an order that would treat him as if he were indefinitely suspended instead. *Rooker-Feldman* prohibits precisely that.

At the outset, this Court did not decide the *Rooker-Feldman* issue as Plaintiff claims. *See* Doc. 44, PageID 1370. *Rooker-Feldman* was not argued at the motion-to-dismiss stage, and Plaintiff's citation refers to a distinct argument concerning sovereign immunity and the *Ex parte Young* exception. *See* Doc. 22, PageID 1107. Keeping in mind the Court's duty to examine its subject-matter jurisdiction before proceeding to the merits, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999), and given that *Rooker-Feldman* was not expressly raised or decided previously, the Court should give it fresh consideration now and conclude that *Rooker-Feldman* precludes jurisdiction.

Indeed, this is especially apparent in light of Plaintiff's opposition. While Plaintiff insists he seeks "a declaration that the Disbarment Rule itself is unconstitutional," Doc. 44, PageID 1370, that is belied by the 3 immediately preceding pages–therein, Plaintiff cites to myriad different disciplinary cases to demonstrate, as he believes, that "[t]he Disbarment Rule is not applied in an even-handed or consistent manner." *Id.* at PageID 1367–69. Plaintiff claims this laundry list illustrates "[a]ttorneys who have engaged in comparable misconduct" being "treated differently" such that sanctions are not "consistent[]." *Id.* at 1367. But if this case is truly about the Disbarment Rule's facial constitutionality, what is the relevance of the details of these cases?

Plaintiff calls the cases "comparators" to "illustrate the operation and consequences of the challenged rule and why it is irrational." *Id.* at PageID 1371. But as discussed in Section III *infra*, the question before the Court under rational-basis review is not so granular. The Disbarment Rule is either facially irrational or it is not; the Court can either conceive of a rational reason for permanently disbarring some attorneys and not others, or it cannot. To be sure, rarely is the rationale behind a government action as expressly laid out as in disciplinary decisions. But that is not the rationale at issue here, and *Rooker-Feldman* precludes this Court from second guessing the rationale in those cases or relitigating them here.

Thus, the long list of disciplinary cases Plaintiff takes umbrage with cannot be relevant to illustrate facial irrationality of the rule. The real reason they are cited is simple: Plaintiff believes them relevant because this case is not about whether the Disbarment Rule has a rational basis—it is about Plaintiff's belief that the Supreme Court of Ohio misapplied its disciplinary rules to him. And that is evident via Plaintiff's requested relief: he would like to be treated as if he had been indefinitely suspended instead. *Rooker-Feldman* bars such claims.

Res judicata also applies to preclude Plaintiff's claims, and for similar reasons as *Rooker-Feldman*: Plaintiff is disguising his attempt to relitigate his disciplinary proceedings as a federal constitutional challenge. Again, this is why he relies on the Supreme Court of Ohio's application of its disciplinary rules (e.g., the varying mitigating and aggravating factors in crafting a sanction and its precedent interpreting and applying them) to "comparators" to demonstrate the Rule's irrationality. *See* Doc. 44, 1367–69. While Plaintiff tries to frame his case otherwise, his focus on comparator disciplinary actions demonstrates that his claims are an effort to relitigate his disciplinary case here. The Court should reject his attempts to do so and find that his claims are barred by *Rooker-Feldman* and res judicata.

## II. Plaintiff fails to meet his summary-judgment burden by negating every conceivable basis for the Disbarment Rule.

### a. Plaintiff's opposition confuses the extent of his burden on summary judgment and who must carry it.

Plaintiff may have even bigger problems on the merits, to which Plaintiff dedicates the last four pages of his opposition. Tellingly, nowhere in those four pages is *any* citation to *any* authority—not one case, not one rule. Plaintiff cannot satisfy his burden of negating every conceivable basis for the Rule by waxing about the policy wisdom of the Disbarment Rule. Ultimately, Plaintiff fails to satisfy that burden because the Disbarment Rule easily satisfies rational-basis review.

Plaintiff does not dispute Ohio's interests in the Disbarment Rule and concedes, as he must, that they are legitimate. Doc. 44, PageID 1379. His argument instead centers on whether the Disbarment Rule advances those interests. The way Plaintiff sees it, his claims survive summary judgment because of a failure of evidence on whether the means meet the ends: according to Plaintiff, Defendants "identify no evidence demonstrating that every permanently disbarred

attorney remains permanently unfit." Doc. 44, PageID 1377. But that is in no way the question before the Court, and this framing reflects a fundamental misunderstanding of what rational-basis review is and how it applies here.

We start first with a presumption that the Disbarment Rule is valid. *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 790 (6th Cir. 2005). Plaintiff appears to get that backwards—he cites the lack of "empirical evidence" that the State's interests can only be served by the Disbarment Rule as one reason his claims survive summary judgment. Doc. 44, PageID 1377. But the government needn't produce *any* evidence of a law's rationality for it to be upheld (although Defendants have done so here), let alone the kind of "empirical evidence" Plaintiff claims is missing. *Id.*, citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 790 (6th Cir. 2005) (holding that the State "has no obligation to produce evidence to sustain the rationality of its actions; its choice is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data.").

Plaintiff incorrectly characterizes this as a "concession" that somehow "underscores [his] claim." Doc. 44, PageID 1378. But it is no concession to remind Plaintiff that the burden here is his to "demonstrate that a government action lacks a rational basis," which he can do in "one of two ways." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 711 (6th Cir. 2005) (brackets and internal quotation marks omitted). Plaintiff can survive summary judgment by either "negativing every conceivable basis which might support" the Disbarment Rule or "by demonstrating that the [Rule] was motivated by animus or ill-will." *Id.* (internal brackets omitted).

Plaintiff falls well short of negating every conceivable basis for the Disbarment Rule in his opposition. First, his claim that Defendants "have offered no explanation for t[he] change" to the Disbarment Rule from the "previous practice of allowing reinstatement after disbarment" falls flat.

If Plaintiff seeks consistency and uniformity he will be hard-pressed to find it in pre-1957 attorney discipline in Ohio. In 1957, Ohio "centralized the rule making and adjudicatory power" over attorney discipline "in the state's supreme court." Stanley A. Samad, *The True Story of Lawyer Discipline in Ohio: 1967–1983*, Akron L. Rev., Winter 1985, at 366. (1985). Before that, attorneys could be suspended or "remove[d] . . . from office" by (and thus faced potentially inconsistent adjudications from) not only the Supreme Court of Ohio but also "the circuit court, or the court of common pleas" under Section 563 of the General Statutes. *See State v. Byrkett*, 4 Ohio Dec. 89, 90 (C.P.1895).

The change to centralized discipline included permanent disbarment as a possible sanction, and it was included for the reasons expressed throughout Defendants' motion for summary judgment: protecting the public, maintaining its confidence in the profession and legal system, and deterring others from similar misconduct. Plaintiff decries a lack of "evidence that those general objectives specifically require permanent disbarment rather than permitting consideration of reinstatement after a sufficient period of demonstrated rehabilitation" or evidence "suggesting that disbarred persons cannot be rehabilitated." Doc. 44, PageID 1365–66. Again, however, the question is not whether the quantum of evidence suggests the Disbarment Rule "in fact is rational. It's whether [the Supreme Court of Ohio] *could plausibly think so*." *See Tiwari v. Friedlander*, 26 F.4th 355, 369 (6th Cir. 2022).

For all the reasons discussed throughout (and in Defendants' motion for summary judgment), the self-evident answer is "yes." Arguments about whether Defendants developed enough evidence on the effectiveness of the Disbarment Rule do not change the calculus. Plaintiff ignores that the Rule is presumptively valid and improperly tries to shift his burden to Defendants. He does so to sidestep his failure to demonstrate a lack of a rational basis.

**b. Plaintiff fails to address the Disbarment Rule's rational connection to other legitimate state interests apart from protecting the public from recidivists.**

Plaintiff's next error is to ignore the other interests, aside from protecting the public, that Ohio serves via the Disbarment Rule. Plaintiff characterizes the constitutional violation here as forever denying him "from even demonstrating rehabilitation, regardless of the passage of time, evidence of reform, present moral character, or current fitness to practice law." *E.g.*, Doc. 44, PageID 1377. According to Plaintiff, the "complete refusal even to consider rehabilitation" of permanently disbarred attorneys "bears no evident relationship to protecting the public," and that is why the Rule fails rational-basis review. *Id.* at PageID 1378; *see also id.* at PageID 1380 (claiming the Rule "rests not upon an individualized assessment of present danger" but on an "irrebuttable presumption that rehabilitation can never occur"). Setting aside the obvious question (what federal constitutional right does someone have to "present evidence of rehabilitation" to a licensing authority?), Plaintiff only tells half the story. He focuses his constitutional attack on the efficacy of the Disbarment Rule in preventing disciplined attorneys from re-offending and hurting the public. But he leaves the Rule's rational relation to the State's other identified interests unaddressed.

Consider the State's interest in promoting the public perception of the legal system. *See* Doc. 39, PageID 1184–85. It is hardly news that the public has traditionally taken a dim view of lawyers—President Lincoln wrote in 1850 of the "vague popular belief that lawyers are necessarily dishonest." Abraham Lincoln, *Notes for a Law Lecture*, *in* The Collected Works of Abraham Lincoln, 81, 82 (Roy P. Basler, ed., Rutgers Univ. Press 1953).[1] In a 2002 study released by the American Bar Association, seventy-four percent of those polled agreed that attorneys are "more

[1] Available on-line at: https://www.abrahamlincolnonline.org/lincoln/speeches/lawlect.htm (last accessed July 27, 2026).

interested in winning than seeing justice served." Karen H. Rothenberg, *Leadership in Legal Education Symposium IX: Essay: Recalibrating the Moral Compass: Expanding "Thinking Like a Lawyer" into "Thinking Like a Leader"*, 40 U. Tol L. Rev. 411, 411 (2009). With that in mind, consider also that "[t]he practice of law is a self-regulating profession." *Greene v. Frost Brown Todd, LLC*, No. 3:14-CV-00619-TBR, 2016 U.S. Dist. LEXIS 160898, at *33 (W.D.K.Y. Nov. 21, 2016). Logically, the public's perception of lawyers stands to improve if the public is aware that a state bar punishes the serious misconduct of industry peers with permanent disbarment.

Plaintiff never bothers grappling with the Disbarment Rule's role in improving public perception, choosing instead to repeatedly question only whether the Rule is effective in protecting the public from recidivist attorneys. *See id.* at PageID 1360 (arguing the rule "presumes that every attorney who has once been permanently disbarred will remain forever unfit to practice law"); PageID 1361 ("A rule that refuses even to consider whether an individual remains unfit bears no rational relationship to protecting the public because it ignores . . . the applicant's present fitness."); PageID 1378 (arguing there is "no explanation why individualized review after decades of demonstrated rehabilitation would fail to protect the public.").

Even setting aside the goal of protecting the public from re-offending attorneys, however, the Disbarment Rule rationally serves the State's interest in improving the general perception of lawyers and the legal field. "There is a level of misconduct," says the State to the public when an attorney is disbarred, "that this self-regulated industry will not tolerate." The Rule is thus rationally related to promoting the public's perception of and confidence in the legal field—an "unquestionably legitimate" interest, as Plaintiff admits. *See* Doc. 44, PageID 1376.

Plaintiff's primary issue is with the truism that legislators and rulemakers have to determine that "some line is essential." *Mathews v. Diaz*, 426 U.S. 67, 83 (1976). But standing alone that is

no constitutional problem, and courts may not second-guess such a legislative line-drawing judgment, so long as it has a rational basis. Indeed, this particular line is drawn differently amongst the states, ten of which provide for some form of permanent disbarment.[2] The Constitution does not require governments "to draw the perfect line" nor a line "superior to some other line it might have drawn." *See Armour v. City of Indianapolis*, 566 U.S. 673, 685 (2012). While Plaintiff believes he has drawn a better line when it comes to disciplinary sanctions, the place for him to make that case is in the policy arena—not in federal court clothed in constitutional garb.

Perhaps realizing he cannot negate every conceivable rationale behind the Disbarment Rule, Plaintiff ends his opposition with the claim that the State's interests are identified "at too high a level of generality." Doc. 44, PageID 1379. This is confusing, as he concedes the State's interests are "undoubtedly legitimate" in the same breath. *Id.* Regardless, the Supreme Court has upheld statutes based on the State's interest in "preserving public confidence in the integrity of the judiciary" even under strict scrutiny. *See Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015). If

---

[2] Plaintiff cites survey data from *In re Wade*, 250 N.J. 581 (2022) to suggest the number is 9 states. Doc. 44, PageID 1366. By their survey, Defendants' count is 10: Florida, Indiana, Kentucky, Louisiana, Mississippi, Nevada, New Mexico, Ohio, Oregon, and Tennessee. *See* Fla. Bar Reg. R. 3-7.10(n)(1) ("An order of disbarment that states the disbarment is permanent precludes readmission to The Florida Bar."); Indiana R. Admission Bar & Discipline Att'ys Rule 23, Section 3(a) (allowing "permanent disbarment from the practice of law"); Ky. Sup. Ct. R. 3.380 (allowing "permanent disbarment"); La. Sup. Ct. R. Discipline 19, Section 10(A)(1) ("In any order or judgment of the court in which a lawyer is disbarred, the court retains the discretion to permanently disbar the lawyer and permanently prohibit any such lawyer from being readmitted to the practice of law."); R. Discipline Miss. State Bar 13(d) ("An attorney who has been disbarred for conviction of [certain listed offenses] shall be ineligible for reinstatement to the practice of law."); Nev. Sup. Ct. R. 102(1) (allowing "[i]rrevocable disbarment by the supreme court"); N.M. State Ct. R. 17-214(A) ("A person who has been disbarred may not apply for reinstatement."); Ohio Gov. Bar R. V(12)(b) (see supra); Or. State Bar R. P. 6.1(3) ("An attorney or LP disbarred as a result of a disciplinary proceeding commenced by formal complaint after December 31, 1995, shall never be eligible to apply and shall not be considered for admission under ORS 9.220 or reinstatement."); Tenn. Sup. Ct. R. 9, Section 30.2 ("Individuals disbarred on or after July 1, 2020, are not eligible for reinstatement.").

an interest of that level of generality suffices as a compelling interest under strict scrutiny, it certainly suffices here as a legitimate interest for rational-basis purposes. Defendants have identified specific interests unique to the legal field that the Disbarment Rule advances.

Ultimately, Plaintiff is wrong that the Disbarment Rule does not recognize rehabilitation. In recommending a sanction, the Board of Professional Conduct and the Supreme Court of Ohio consider, among other things, whether an attorney has made good faith efforts at restitution, whether the attorney has had sustained successful treatment in cases of mental or substance-use disorders, and "[o]ther interim rehabilitation." Gov. Bar. Rule V § 15. In some cases, those mitigating factors do not outweigh the aggravating factors or the general seriousness of the misconduct. While that is, at bottom, a judgment call by the Supreme Court of Ohio—both in promulgating a rule permitting permanent disbarment, and in enforcing that rule against some offending attorneys—that does not render it irrational. Instead, the Disbarment Rule is rationally related to legitimate government interests. This entitles Defendants to summary judgment on Plaintiffs claims.

## **CONCLUSION**

For the foregoing reasons, there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law.

Respectfully submitted,

ANDY WILSON
Ohio Attorney General

*/s/ Stephen P. Tabatowski*
STEPHEN P. TABATOWSKI (0099175)*
**Counsel Of Record*
JULIE M. PFEIFFER (0069792)
GREGORY A. RUSTICO (0104103)
Assistant Attorneys General
Constitutional Offices Section

30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Stephen.Tabatowski@OhioAGO.gov
Julie.Pfeiffer@OhioAGO.gov
Gregory.Rustico@OhioAGO.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I certify that the foregoing *Defendants' Reply in Further Support of their Motion for Summary Judgment* was electronically filed with the U.S. District Court for the Southern District of Ohio on July 28, 2026. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Stephen P. Tabatowski*
STEPHEN P. TABATOWSKI (0099175)
Assistant Attorney General